**No. 26-1757**
**No. 26-1859**

---

# In the United States Court of Appeals
# For the Seventh Circuit

---

PREPARED FOOD PHOTOS, INC.,
    f/k/a Adlife Marketing & Communications Co., Inc.
    *Plaintiff-Appellee and Cross-Appellant*

v.

SHARIF JABER,
    *Defendant-Appellant,*

NOFAL, LLC
    *Defendant-Cross Appellee,*

---

An Appeal from a final order of the
    United States District Court for the Eastern District of Wisconsin
    No. 2:22-cv-000642, Judge Joseph Peter Stadtmueller

---

## INITIAL BRIEF OF APPELLANT SHARIF JABER

---

Griffin C. Klema, Esq.
**Klema Law, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606
PO Box 172381
Tampa, FL 33672
(202) 713-5292
Griffin@KlemaLaw.com

## CERTIFICATE OF INTERESTED PERSON AND CORPORATE DISCLOSURE STATEMENT

Appellant Sharif Jaber, pursuant to Fed. R. App. P. 26.1(d)(2) and 7th Cir.

R. 26.1, certifies the following are interested persons in this appeal:

> Prepared Food Photos, Inc.,
>     f/k/a AdLife Marketing & Communi-
>     cations Co., Inc.

> Jaber, Sharif

> Stadtmueller, Joseph Peter (District
>     Judge)

> CopyCat Legal, PLLC

> DeSouza, Daniel, Esq.

> Klema Law, PL

> Klema, Griffin C., Esq.

> Terschan, Steinle, Hodan & Ganzer, Ltd.

> Steinle, Timothy, Esq.

> Herda, Amber L., Esq.

> Jeffrey & Borton SC

> Borton, Austin B., Esq.

> Leavell, Jeffrey L., Esq.

Jaber is a natural person, and thus he has no corporate disclosure state-

ii

ment. However, Jaber is the owner of cross-appellee and co-defendant (below), Nofal, LLC. That entity has no parent company and no publicly traded company owns more than ten percent of its stock.

No publicly traded company or corporation has an interest in the outcome of the underlying case or this appeal.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Attorney for Appellant Sharif Jaber and*
*Cross-Appellee Nofal, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Sharif Jaber respectfully requests oral argument. Oral argument is warranted because one of the issues presented is of first impression in this circuit: Can one defendant that fully resists a plaintiff's claim against him be a "prevailing party" when the plaintiff obtains relief against another defendant on a different claim in the same lawsuit?

iii

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSON AND
  CORPORATE DISCLOSURE STATEMENT ........................................ ii

STATEMENT REGARDING ORAL ARGUMENT ..................................... iii

TABLE OF CONTENTS ............................................................... iv

TABLE OF CITATIONS ............................................................... vi

STATEMENT OF SUBJECT-MATTER AND  APPELLATE
  JURISDICTION ..................................................................... 1

STATEMENT OF THE ISSUES ........................................................ 2

STATEMENT OF THE CASE .......................................................... 3

SUMMARY OF THE ARGUMENT .................................................... 11

ARGUMENT .......................................................................... 15

    I.     STANDARD OF REVIEW ................................................... 15

    II.    PREVAILING DEFENDANTS ARE EVALUATED
          UNDER A DIFFERENT STANDARD THAN
          PLAINTIFFS ................................................................ 15

          1.  The Supreme Court has expressly drawn a line between
              its prevailing plaintiff cases and the "different body of
              case law" for prevailing defendants ............................. 16

          2.  Defendants come to court with different objectives and
              are evaluated under *CRST*'s rebuffing framework, not
              *Buckhannon* ......................................................... 17

          3.  The rebuffing framework of *CRST* ............................ 18

    III.   A MAJORITY OF CIRCUITS THAT HAVE ADDRESSED
          PREVAILING DEFENDANTS IN MULTI-DEFENDANT
          CASES ARE IN AGREEMENT ........................................... 20

1.  The Eleventh Circuit ....................................................21

2.  The Fourth Circuit.......................................................22

3.  The Tenth Circuit........................................................23

4.  The Second Circuit .....................................................24

5.  The Federal Circuit .....................................................25

6.  The Third Circuit ........................................................26

IV.   COPYRIGHT DEFENDANTS ARE PREVAILING
      PARTIES WHEN THEY FULLY RESIST A
      PLAINTIFF'S CLAIM AGAINST THEM .........................................28

1.  The plain language of the Copyright Act allows a
    defendant to be a prevailing party irrespective of the
    success or failures of other parties ...........................................28

2.  "Prevailing party" is construed pursuant to its plain
    common law meaning, absent words that would vary
    that meaning .......................................................................30

3.  A rule disentitling a defendant to prevailing party status
    whenever a plaintiff obtains a recovery or settlement
    from another defendant incentivizes abusive litigation...........32

V.   JABER IS A PREVAILING PARTY-DEFENDANT....................34

1.  The district court erred as a matter of law when it
    concluded Jaber was not a prevailing party ...........................34

2.  *Narkiewicz-Laine* is inapt ..........................................36

3.  The district court erred in analyzing the prevailing
    party issue under an abuse of discretion standard .................38

VI.   THIS COURT SHOULD RENDER JUDGMENT OF
      ENTITLEMENT ...............................................................40

CONCLUSION.....................................................................43

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
      LIMIT, TYPEFACE REQUIREMENTS, AND  TYPE-
      STYLE REQUIREMENTS.................................................44

CERTIFICATE OF FILING AND SERVICE ..............................................45

SHORT APPENDIX ............................................................................. i

## TABLE OF CITATIONS

Page

**Cases**

*ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir. 1999)...................................41

*Adlife Marketing & Communications Co., Inc. v. Karns Prime and Fancy Food, Ltd.*, no. 21-2074, 2023 WL 179840 (3d Cir. Jan. 13, 2023) ................................................................................4

*Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315 (11th Cir. 2002)......................................................................................41

*Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 22 F.3d 1150 (D.C. Cir. 1994)......................................................39

*Bailey v. Mississippi*, 407 F.3d 684 (5th Cir. 2005)........................................15

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 783 (E.D. Va. 2017) .........................................................11

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) ...........................................9, 16

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) .....................32, 39

*Comstock v. Bayard*, 2 Sand. 705.....................................................................18

*Conley v. Vacanti*, No. 23-CV-60384, 2026 WL 177595 (S.D. Fla. Jan. 22, 2026) ......................................................................12

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ....................................1

*CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419 (2016)....................... passim

*De Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir. 1989) ....................................42

*Divane v. Krull Elec. Co.*, 319 F.3d 307 (7th Cir. 2003) ....................................41

*Edward B. Marks Music Corp. v. Foullon*, 171 F.2d 905 (2d Cir. 1949)........................................................................................25, 26

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ........................................15, 31, 32

*Fox v. Vice*, 563 U.S. 826 (2011) ....................................................................31

*GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ..............................................................11

*Gray v. Koch Foods, Inc.*, 144 F.4th 1298 (11th Cir. 2025) ...................... passim

*H. M. Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70 (2d Cir. 1963)...........24, 26

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)....................................................40, 41

*In re Hronek*, 563 F.2d 296 (6th Cir. 1977)........................................................42

*Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004)........................................................................................28

*Kansas City So. R. Co. v. Guardian Trust Co.*, 281 U.S. 1 (1930)...................38

*Kollsman v. Cohen*, 996 F.2d 702 (4th Cir. 1993).............................................23

*Lackey v. Stinnie*, 145 S. Ct. 659 (2025)...................................................... passim

*Lefemine v. Wideman*, 568 U.S. 1 (2012).........................................................16

*Levin v. Miss. River Fuel Corp.*, 386 U.S. 162 (1967) ................................41, 42

*Liu v. Monthly*, 170 F.4th 1090 (7th Cir. 2026).................................................32

*Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630 (7th Cir. 2023)........................................................................................40

*Manildra Milling Corp. v. Ogilvie Mills*, 76 F.3d 1178 (Fed. Cir. 1996)........................................................................................15, 26

*Marks v. Bard*, 1 Abb. 62 .................................................................18

*McCleskey v. Kemp*, 481 U.S. 279 (1987) .................................................38

*Meyer v. Holley*, 537 U.S. 280 (2003)....................................................34

*Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019)................3, 10, 36, 37

*Narkiewicz-Laine v. Doyle*, No. 11-cv-1826 (N.D. Ill. Oct. 3, 2017).............................................................................36, 37

*Palmetto Props., Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004).................................................................................15

*Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396 (Fed. Cir. 2004)..............................................................................25, 26

*Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011) ........................29

*Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372 (11th Cir. 2022)...........................................................10, 22, 36

*Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010) .........................26

*Singer v. Dungan*, 45 F.3d 823 (4th Cir. 1995)..................................42

*Softball Country Club-Atlanta v. Decatur Fed. Sav. and Loan Ass'n*, 121 F.3d 649 (11th Cir. 1997) ...........................................41

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ....................................................................................34

*Southworth v. Bd. of Regents of Univ. of Wisc. Sys.*, 376 F.3d 757 (7th Cir. 2004)...........................................................................38

*Stone v. Duffy*, 3 Sand. 761 ..............................................................18

*Tempest Publ'g, Inc. v. Hacienda Recs. & Recording Studio, Inc.*, 141 F. Supp. 3d 712 (S.D. Tex. 2015) ......................................11

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989) .................................................................................9

*Tulsa Litho Co. v. Tile and Decorative Surfaces Mag. Publ'g, Inc.*, 69 F.3d 1041 (10th Cir. 1995) ..............................................23, 24, 25, 26

*United States v. Gilbert*, 198 F.3d 1293 (11th Cir. 1999)...................................42

*Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988) .......................................40, 41

*Vela v. City of Houston*, 276 F,3d 659 (5th Cir. 2001) .......................................42

*Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010 (7th Cir. 1991)................10

*Western Coal and Mining Co. v. Petty*, 132 F. 603 (8th Cir. 1904) .................12

*Williams v. City of Fairburn, Ga.*, 640 F.2d 635 (5th Cir. 1981) ....................42

*Wise v. DeWerd*, 373 F.2d 306 (3d Cir. 1967) ..............................................27, 28

## Statutes

1 U.S.C. § 1 ................................................................................................29, 35

17 U.S.C. § 40 (1909).........................................................................................24

17 U.S.C. § 505 .............................................................................................2, 29

## Other Authorities

ABRAHAM CLARK FREEMAN, A TREATISE ON THE LAW OF JUDGMENTS, INCLUDING ALL FINAL DETERMINATIONS OF THE RIGHTS OF PARTIES IN ACTIONS OR PROCEEDINGS AT LAW OR IN EQUITY (Edward W. Tuttle, ed., 5th ed. 1925)..............17, 37, 39

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (1st ed. 2012).....................................30

BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT (2016) ..............................................................................................................19

ix

F. M. PARSONS, A TREATISE ON THE LAW OF COSTS AS SETTLED
   IN THE STATE OF NEW YORK AND ADAPTED TO THE CODE OF
   THE STATE OF OHIO (1876)..........................................................................18, 35

FREDERICK C. BRIGHTLY, A PRACTICAL TREATISE ON THE LAW
   OF COSTS IN PENNSYLVANIA Ch. II §§ 1-3 (1847) ...................................17, 18

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Plaintiff-Appellee Prepared Food Photos, Inc. ("Food Photos") brought a copyright infringement suit pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.* invoking federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). [DE 1]. That remained the basis of the district court's subject matter jurisdiction through Food Photos' subsequent two amended complaints. [DE 9] and App. 18.[1]

After a jury trial finding Defendant-Appellant Sharif Jaber had no liability to Food Photos and a subsequent judgment, App. 29-38, which was not altered by Food Photos' post-trial motion, App. 40, the district court then had continuing "collateral" or "independent proceeding supplemental" jurisdiction to the main action over Jaber's motion for attorney's fees and bill of costs. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

Jaber obtained an extension of time to file his fees motion and bill of costs, [DE 81], and in compliance with that order he then timely filed both (1) his fees motion pursuant to Fed. R. Civ. P. 54(d)(2) and 17 U.S.C. § 505, App. 83, and (2) his bill of costs pursuant to Rule 54(d)(1), App. 173.

---

[1] Citations to the record correspond to the short and long appendix consecutive pagination on appeal, with prefix "A" as stamped in the lower-righthand corner, and cited herein as "App."

1

On March 18, 2026, the district court denied Jaber's motion for attorney's fees and bill of costs. App 1-16.

Jaber timely filed his notice of appeal on April 13, 2026. [DE 90]. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(1)(A) over the district court's order concluding Jaber was not a prevailing party and thus denying his motion for attorney's fees and bill of costs.

## STATEMENT OF THE ISSUES

This appeal presents a novel question in this circuit: Can one defendant that fully resists a plaintiff's claim against him be a "prevailing party" when the plaintiff obtains relief against another defendant on a different claim in the same lawsuit?

The district court framed its own question—one not presented by the parties—as: "who is the prevailing party in this case, [Food Photos], Jaber, neither, or both?" App. 7. It answered its own question as neither. It concluded that there was no "prevailing party" in the underlying copyright infringement action for purposes of both attorney's fees and costs under the Copyright Act, 17 U.S.C. § 505 and under Rule 54.

Food Photos' complaint alleged one count of direct copyright infringement against Nofal, LLC, and one count of vicarious copyright infringement against

Sharif Jaber. App. 23-26. The jury returned a verdict in favor of Jaber and a $200 verdict in favor of Food Photos against Nofal. App. 30-31.

Despite acknowledging that Food Photos "concede[d] that Jaber is the prevailing party on Plaintiff's vicarious infringement claim," and recognizing that "both [Food Photos] and Jaber theoretically could be considered prevailing parties," App. 4, it nevertheless reasoned it had discretion to determine what parties prevailed, App. 12. After surveying various circuit and district court decisions primarily involving one-on-one disputes, the district court ultimately concluded that *Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019) was the "most relevant and instructive" and denied Jaber's motion for attorney's fees and bill of costs. App. 11-12. Reversal is warranted.

**STATEMENT OF THE CASE**

The underlying copyright infringement litigation was straightforward. It involved three parties: one plaintiff and two defendants. From among hundreds of its suits, Food Photos had never encountered defendants unwilling to pay its demanded tens of thousands of dollars for a single photo in an obscure social media post, and so it forced the defendants to a jury trial—its first—only to lose to Jaber and obtain $200 from Nofal. The district court concluded neither Jaber nor Food Photos had prevailed, and denied their subsequent du-

3

eling fees and costs motions. This appeal follows.

## A. Food Photos' copyright infringement business model

Food Photos is in the business of copyright enforcement. Its owner, Joel Albrizio, says that this approach "has been, and will remain to be, one of [Food Photos'] top priorities." [DE 80-1 at 4].[2] In 2016 it proceeded to register its library of dated, film-based images with the United States Copyright Office, and at the same time engaged attorney Richard Liebowitz to start enforcing those copyrights. *Id.*[3] Based on its arbitrary and pretextual number of $999 "per month" fee, Decl. of Rebecca Jones, [DE 36-1 at 1], Food Photos then started demanding tens of thousands of dollars for a single image from accused infringers.

After starting down its current path of revenue-through-litigation in 2016, it morphed from AdLife Marketing & Communications, then to Prepared Food Photos, and now as Rockefeller Photos. Across those three identities it

---

[2] Consistent with Fed. R. App. P. 28(e) and Practitioner's Handbook for Appeals, § XXIV. L., citations to the record not contained in the Appendix are designated by their docket number and page within square brackets.

[3] Food Photos was not Mr. Leibowitz's only client, and he proceeded to file hundreds of copyright infringement suits of dubious merit and was eventually disbarred. *Adlife Marketing & Communications Co., Inc. v. Karns Prime and Fancy Food, Ltd.*, no. 21-2074, 2023 WL 179840 (3d Cir. Jan. 13, 2023).

has filed 436 copyright infringement suits,[4] often based on a single photograph. That figure does not include the inestimable number of demands that were sent and paid without maturing to a lawsuit, and spans 62 different district courts (66% of all districts) while averaging one new suit about every eight days.[5]

### B. Food Photos' copyright suit against Jaber and Nofal

The underlying suit is but one of hundreds that Food Photos has brought over the years. In 2021 it found a Facebook post with three images of raw meat, one of which it believed was its own. App. 95. And so that discovery fed into its enforcement machine, with its lawyers sending a boilerplate letter with a boilerplate settlement demand of $30,000. *Compare id. with* [DE 80-3] (14 such letters). In support of that position, the letter employed *in terrorem* threats that, if not paid, could lead to damages of $150,000. *Id.* (stating that actual damages, for each photograph "could range from $35,964.00 - $71,928.00" and further threatening that those damages could "be trebled ...

---

[4] Based on a PACER search as of June 25, 2026, with unique case numbers, either as AdLife Marketing & Communications Co. Inc. (between 2016 and 2021) or Prepared Food Photos, Inc. (between 2020 and 2024), or now as Rockefeller Photos, LLC (2025 to present). In ten of those cases it was a defendant in a declaratory judgment action, but still involved Food Photos' assertion of copyright. This is a matter of public record, readily ascertainable through the Federal Courts website.

[5] From August 18, 2016, to June 25, 2026, is 3,598 days, divided by 436 suits.

to $107,892.00 - $150,000.00 ... without taking into account any award of costs or prevailing party attorneys' fees"). *Id.*

That large demand went unpaid, and so Food Photos filed suit against Villard Foodtown LLC. Compl. [DE 1]. It later amended its complaint, naming only Sharif Jaber, individually. Am. Compl. [DE 9]. Later still, it filed a second amended complaint adding Nofal LLC as a co-defendant, and which became the operative pleading. App. 18. It asserted one claim against each: direct copyright infringement against Nofal LLC, App. 23-25, and vicarious copyright infringement against Sharif Jaber, App. 25-26.

Pre-trial, Food Photos' settlement demand increased substantially, from $30,000 to an unapportioned sum of $90,000 just prior to trial. App. 111. By that point, Food Photos was nearly unwilling to settle: "PFP seems to prefer the trial path ... they didn't want to demand anything at this point." *Id.* And so Food Photos forced Jaber and Nofal to defend themselves at trial.

### C. The jury trial, verdict, and final judgment

The defendants put on a simple case, primarily opposing the amount of Food Photos' claimed damages through logic and commonsense. In closing argument, Nofal and Jaber pointed out the absurdity of Food Photos' damages theory, emphasizing that it was "one photograph on a Facebook page," encour-

6

aging the jury to "decide what the value of one photograph [is]," and observing that "that's 1/20000 of the entire library." Trial Tr. [DE 58 at 305:6-305:16]. Defendants further urged that Food Photos wasn't "damaged on any level" suggesting that the reasonable amount could be $0 for actual damages. *Id.* at 305:23-306:3.

Food Photos argued its "minimum" license fee was "999 a month." Trial Tr. [DE 57 at 68:11-68:12]. But the jury rejected that amount, and awarded Food Photos $200 in actual damages or $1,000 in statutory damages against Nofal LLC. Verdict, App. 31. The jury also didn't agree that Sharif Jaber was vicariously liable for the Facebook post, returning a verdict of no liability to him. App. 30.

After Food Photos elected the actual damages verdict, [DE 52], the district court then entered a final judgment awarding Food Photos $200 from Nofal, LLC and dismissed Sharif Jaber with prejudice. App. 33-34. The district court then entered a final judgment. App. 37-38.

Dissatisfied with that award, Food Photos moved to alter the judgment and for a new trial, contending that the "only evidence" as to Food Photos' "actual damages were $23,976.00, representing 2x annual license periods predicated on Plaintiff's $999.00/month license" and further asserting the defendants "did

7

not challenge" the testimony of Food Photos' corporate representative. Pl.'s Mot. for New Trial and/or to Amend the J., [DE 56]. The district court denied that motion, concluding Food Photos' arguments were simply "challenges to the sufficiency and weight of the evidence and the jury's assessment thereof." App. 40-71.

### D. Post-trial fees motions and bills of costs

Following the final judgment, and after being granted an extension of time, Order, [DE 81], Sharif Jaber moved for his attorney's fees and costs under 17 U.S.C. § 505, App. 113-38. He argued that he had obtained a complete defense judgment as to him, and therefore was a prevailing party under the standard articulated in *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419 (2016). *Id.* at App. 121-23. He pointed out that Food Photos essentially conceded the point in a prior filing, when Food Photos stated that "Jaber had prevailed on Plaintiff's claim for vicarious liability." App. 123 (citing Pl.'s Opp'n, [DE 77 at 8]).

Food Photos also moved for costs and attorney's fees pursuant to the Copyright Act and Rule 37, [DE 62, 64], which Nofal opposed, App. 73-111.[6]

### E. The District Court's Fees and Costs Order

---

[6] Nofal's opposition memorandum is included in the Appendix because Jaber incorporated certain factual information by reference into his affirmative motion for attorney's fees. A119.

After full briefing on the parties' competing motions for attorney's fees and bills of costs, the district court denied all of them. App. 1-16 (the "Fees Order").

It started by recognizing that Food Photos conceded Jaber's prevailing party status in its opposition to Jaber's fees motion. App. 4 ("Plaintiff concedes that Jaber is the prevailing party on Plaintiff's vicarious infringement claim") (quoting Plf.'s Mem. in Opp'n, [DE 87 at 1]). But it quickly abandoned that concession, and proceeded to analyze whether Jaber had in fact prevailed.

Rather than citing *CRST* for when a defendant is considered a prevailing party, the district court quoted *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) for the standard. Fees Order at App. 4. Based on *Buckhannon*'s definition, the district court then hypothesized that "both Plaintiff and Jaber theoretically could be considered prevailing parties." *Id.* Yet the court recognized that "Jaber's victory cannot 'be characterized as purely technical or de minimis.'" *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

The district court felt the parties had, in their briefing, "bypass[ed] threshold questions on whether they can both be considered prevailing parties." Fees

9

Order at App. 5.[7] It then framed its own question it believed was common to the competing motions and bills before it: "who is the prevailing party in this case, Plaintiff, Jaber, neither, or both?" App. 7.

It proceeded to cite cases in which plaintiffs, despite obtaining a damages award, were held to be nonprevailing. App. 5-8 (citing *Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019), *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010 (7th Cir. 1991), *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372 (11th Cir. 2022), and cases cited by *Royal Palm*). Based on that collection of cases, the district court concluded that it could deny Food Photos' "fee motion because Plaintiff's trial victory was only partial and offset by Jaber's success." App. 8. Without any further analysis, the district court summarily concluded that it "could deny Jaber's fee motion on the same logic." *Id.*

Without explicitly recognizing the difference between a one-versus-one dispute and multiparty suits, the district court again cited *Narkiewicz-Laine*, though it recognized that at least one sister district had found a defendant was a prevailing party despite the plaintiff's later success at trial against a different defendant. App. 8-9 (discussing *GC2 Inc. v. Int'l Game Tech., IGT, Dou-*

---

[7] The district court's characterization of Jaber's briefing is unfair. Jaber explicitly argued over more than three pages of his fees motion both (1) why the proper standard for a prevailing defendant is embodied in *CRST* and not *Buckhannon*, and (2) why, under *CRST*, Jaber was a prevailing party. App. 119-20, 123.

*bledown Interactive LLC*, 391 F. Supp. 3d 828 (N.D. Ill. 2019)). It also cited *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 783 (E.D. Va. 2017), in which another district court had faced a slight variation on multiparty suits, but which the district court here recognized was vacated as a consequence of granting a new trial. App. 9-10. The district court further cited *Tempest Publ'g, Inc. v. Hacienda Recs. & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 721 (S.D. Tex. 2015), but again did not explicitly recognize the one-on-one posture of that case. App. 10.

After its survey of the cases it believed most apt, the district court then lamented the "challenge[] of attempting to answer questions that" it felt "the parties did not brief" and which it concluded was "essential to the appropriate resolution of [the] motions." App. 11. It ultimately returned to and relied on "*Narkiewicz-Laine* [as the] most relevant and instructive in the present situation and [] follow[ed] its reasoning to deny both Plaintiff's and Jaber's fee motions." App. 12. The parties' bills of costs were likewise denied on the same basis. App. 15-16.

## SUMMARY OF THE ARGUMENT

The district court's decision, both as to attorney's fees and court costs, hinged on the first step of the fee-shifting analysis: whether Jaber was a pre-

11

vailing party or not. But the determination of whether a party is a "prevailing party" is not a discretionary act. Rather, it is a legal term of art born of the common law with a legal analysis.

Plaintiffs and defendants each come to court with different objectives, *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016), and therefore are evaluated differently in whether they have "prevailed," *Lackey v. Stinnie*, 145 S. Ct. 659, 669 n.* (2025).

The Copyright Act does not inflexibly bind a court to identify a singular prevailing party, especially where a suit involves multiple parties. That is particularly true where a suit comprises what could otherwise be multiple separate standalone suits. *See Western Coal and Mining Co. v. Petty*, 132 F. 603 (8th Cir. 1904) (finding defendant was the prevailing party in federal suit even though plaintiff obtained a judgment against a joint tortfeasor in state court action); *see also Conley v. Vacanti*, No. 23-CV-60384, 2026 WL 177595 (S.D. Fla. Jan. 22, 2026), *report and recommendation adopted*, 2026 WL 923346 (S.D. Fla. Apr. 6, 2026) (concluding defendants prevailed on dismissed copyright claims notwithstanding possible re-filing of state law claims in state court after dismissal of those claims without prejudice). Joinder of multiple parties into a singular proceeding does not disentitle some or all of them to prevailing

12

party status by mere virtue of their joinder, *see Gray v. Koch Foods, Inc.*, 144 F.4th 1298, 1313-14 (11th Cir. 2025), nor does that posture force a court to make only "one side of the vee" prevailing.

Further, neither the text nor history of the Copyright Act empowers a court with authority to redefine "prevailing party" different from its common law meaning or place a party outside that definition based on its own discretion. That phrase is a term of art, and either a party is or is not a prevailing party based on the judgment that party obtained against an adversary. While judgments might vary, the outcome on the fact of the judgment is a pure legal question. Discretion lies at the second step (*whether* costs or fees should be awarded), or the third step (the *amount* of fees or costs), not at the threshold issue of prevailing party status.

Ultimately, the lower court failed to cite relevant decisions of other circuits—nearly all of which have found that a defendant, like Jaber, can be a prevailing defendant even where a plaintiff, like Food Photos, obtains some limited relief from another defendant. The district court's reliance on inapposite one-on-one cases and its misapplication of a discretionary standard warrants reversal and a finding from this court that Jaber is a prevailing party. The record is complete such that the Court should also render judgment that

13

Jaber is entitled to fees and costs.

## ARGUMENT

### I.      STANDARD OF REVIEW

The determination of who is a prevailing party is made de novo. *See Palmetto Props., Inc. v. County of DuPage*, 375 F.3d 542, 547 (7th Cir. 2004) (de novo review where district court "extended the definition of a 'prevailing party'"); *see also Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005) ("every Circuit to address the issue has determined that the characterization of prevailing-party status for awards under fee-shifting statutes [] is a legal question subject to de novo review"); *but see Manildra Milling Corp. v. Ogilvie Mills*, 76 F.3d 1178, 1180-81 (Fed. Cir. 1996) (noting apparent tension in Tenth Circuit's jurisprudence).

This appeal does not reach steps two and three under 17 U.S.C. § 505: entitlement to fees pursuant to the factors under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), or the lodestar analysis thereafter. While those issues are discretionary, determination of prevailing party status is not. *Cf. Palmetto Props.*, 375 F.3d at 547.

### II.      PREVAILING DEFENDANTS ARE EVALUATED UNDER A DIFFERENT STANDARD THAN PLAINTIFFS

A careful reading of recent Supreme Court decisions, as well as historical understanding of the term "prevailing party," properly frames the analysis for

when a defendant prevails. And that analysis differs from plaintiffs. The definition provided under *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419 (2016) applies, not that articulated for prevailing plaintiffs in *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001).

> **1.    The Supreme Court has expressly drawn a line between its prevailing plaintiff cases and the "different body of case law" for prevailing defendants**

A defendant's status as prevailing party is not evaluated by the same standard as that of a plaintiff. That is because plaintiffs and defendants come to court with differing objectives. *CRST*, 578 U.S. at 431.

A "plaintiff prevails … when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (emphasis added). In contrast, "[a] defendant seeks to prevent this alteration." *CRST*, 578 U.S. at 431.

This latter standard, embodied in *CRST*, is an entirely "different body of caselaw [which] addresses when a *defendant* is a 'prevailing party' for the purposes of  [] fee-shifting statutes." *Lackey v. Stinnie*, 145 S. Ct. 659, 669 n.* (2025) (emphasis in original). Thus, the Supreme Court has emphasized that

16

prevailing plaintiff decisions are separate from its prevailing defendant jurisprudence, so much so that it is a "different body of caselaw." *Id.* That distinction is consistent with the historical understanding of when a defendant prevails.

> **2.    Defendants come to court with different objectives and are evaluated under *CRST*'s rebuffing framework, not *Buckhannon***

The historic and long-established meaning of when a defendant prevailed over a plaintiff occurred under any of seven possible outcomes: "Every judgment against a plaintiff is either upon a retraxit, non prosequitur, nonsuit, nolle prosequi, discontinuance, or a judgment on an issue found by jury in favor of defendant, or upon demurrer." 2 ABRAHAM CLARK FREEMAN, A TREATISE ON THE LAW OF JUDGMENTS, INCLUDING ALL FINAL DETERMINATIONS OF THE RIGHTS OF PARTIES IN ACTIONS OR PROCEEDINGS AT LAW OR IN EQUITY § 751, at 1580 (Edward W. Tuttle, ed., 5th ed. 1925). In each outcome, the defendant was, as the prevailing party, entitled to "recover of plaintiff his costs." *Id.*; *accord* FREDERICK C. BRIGHTLY, A PRACTICAL TREATISE ON THE LAW OF COSTS IN PENNSYLVANIA Ch. II §§ 1-3 (1847). Thus, historical cases awarding costs to various parties illustrate when those parties were considered to have prevailed.

17

Consistent with those outcomes, a defendant's status as prevailing party also did not depend on or change as a consequence of the existence of other parties to a suit and their separate disposition, provided it was a several judgment and not a joint judgment. *See* F. M. PARSONS, A TREATISE ON THE LAW OF COSTS AS SETTLED IN THE STATE OF NEW YORK AND ADAPTED TO THE CODE OF THE STATE OF OHIO § 7 at 32 (1876) (citing *Stone v. Duffy*, 3 Sand. 761; *Marks v. Bard*, 1 Abb. 62); *id.* at § 9 (some defendants prevailed while others did not, and the prevailing defendants were entitled to costs, citing *Comstock v. Bayard*, 2 Sand. 705); BRIGHTLY, LAW OF COSTS, Ch. II § 4, at 93-99.

Therefore, concepts found in recent prevailing plaintiff decisions (such as "material alteration" and "judicial imprimatur") are simply inapplicable to defendants. *Lackey* indicates that conflating the two standards are incorrect, because *CRST* is a "different body of case law" which applies to defendants. *Lackey*, 145 S. Ct. at 669 n.*.

### 3.     The rebuffing framework of *CRST*

Under *CRST*, a commonsense analysis is used to determine whether a defendant has prevailed: whether it has "rebuffed" the plaintiff's claims. *CRST*, 578 U.S. at 431.

That reading obtains by first looking to *CRST*'s structure to discern its actual holding and parse that from both background and dicta. It is divided into three sections. Section I is mere background. It speaks generally of the Court's prevailing *plaintiff* caselaw.[8] Section II then recounts *CRST*'s specific factual and procedural history. Section III arrives at the Court's analysis and holding.

Given that structure, Section I does not embody any rules of law or holdings applicable to the prevailing *defendant* context, and it is error for courts to apply statements from that section to a prevailing defendant because it is mere dicta. BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT § 4, at 44 (2016) ("the background information on how the law developed" in an opinion is dicta). Illustrating that Section I is dicta is *CRST*'s clear articulation that it was in fact *breaking* from that prevailing plaintiff jurisprudence when the Court concluded Section I with the observation that it "has not articulated a precise test for when a defendant is a prevailing party" *CRST*, 578 U.S. at 422. It then framed the question presented and resolved in *CRST*: "whether [the defendant] is a prevailing party." *Id.* at 423. After that point in the opinion, never again did the Court cite any prevailing plaintiff cases in its rationale or

---

[8] The first section recounts the Court's prevailing plaintiff cases, including *Buckhannon*.

holding embodied in Section III (i.e. the Court did not cite *Buckhannon* in answering the question presented). *CRST*'s holding is explicit, and consistent with a historical understanding of when a defendant prevails: "a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'" *Id.* at 431. Central to the Court's analysis was that the defendant's status as prevailing  is the mirror image of *Buckhannon*'s prevailing plaintiff standard: defendants seek to *prevent* a material alteration. *Id.*

Regardless of the different tests as between *CRST* for defendants and cases like *Buckhannon* for plaintiffs, in multiparty cases the majority of circuits have found a defendant can be prevailing even where other defendants were not, consistent with historical understanding of what "prevailing party" means.

### III.    A MAJORITY OF CIRCUITS THAT HAVE ADDRESSED PREVAILING DEFENDANTS IN MULTI-DEFENDANT CASES ARE IN AGREEMENT

Most circuits that have confronted the question of whether one defendant can be considered a prevailing party even where a plaintiff has obtained some relief in its action against another defendant have reached the same conclusion: yes. They are consistent with the historical decisions awarding costs to prevailing defendants. While the question remains open in this Circuit, the

20

weight of authority is that a defendant is a prevailing party irrespective of whether other defendants prevail or not. Only the Third Circuit has held differently.

### 1. The Eleventh Circuit

The Eleventh Circuit's decision in *Gray v. Koch Foods, Inc.*, 144 F.4th 1298 (11th Cir. 2025), hews most closely to the procedural posture here. It addressed "whether [two of the four defendants] are proper prevailing parties with respect to [plaintiff's] claims against them." *Id.* at 1304.

Plaintiff Gray was a lone plaintiff that sued four defendants on various claims. *Id.* at 1304. The case proceeded to trial, and the jury returned a several verdict: no liability for two of those defendants, but found for the plaintiff against the other two defendants, awarding the plaintiff damages. *Id.* Post-trial, the two defendants that secured a favorable judgment then sought their attorney's fees. The district court found they were prevailing parties, notwithstanding the outcome against the other two. *Id.* at 1314.

Dissatisfied that it was saddled with fees for losing against two of the four defendants, the plaintiff cross-appealed after the two losing defendants appealed the damages judgment against them. *Id.* at 1304. The Eleventh Circuit affirmed. *Id.* at 1315.

It distinguished its earlier decision in *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372 (11th Cir. 2022), and found that the two juristic defendants were prevailing parties notwithstanding the other two individual defendants that were adjudged liable to the plaintiff. *Gray*, 144 F.4th. at 1314 ("Koch Foods and Ala-Koch prevailed on every claim Gray asserted against them"). It rejected the plaintiff's reliance on *Royal Palm*, stating that was a case "where one plaintiff sued one defendant," whereas the facts then before it concerned "one plaintiff" that had "sued multiple defendants." *Id.* at 1314.

In support of its conclusion that two of the defendants had prevailed, the panel reasoned that it would be "nonsensical" if a "plaintiff could sue any number of defendants and, if she prevailed on a single claim against a single defendant" then "the numerous other defendants who successfully defended the claims against them would be barred from" being regarded as prevailing parties. *Id.* It further observed that disallowing prevailing party status to defendants in such situations "would upset the purpose of joining parties in the first instance." *Id.*

## 2. The Fourth Circuit

Though not as extensive as the Eleventh Circuit's analysis, the Fourth Cir-

22

cuit concluded similarly to the holding in *Gray*. It observed that the plaintiff, while it "was a prevailing party with respect to" certain defendants (the juristic defendants with which it settled), "it was not a prevailing party with respect to" the second defendant, an individual who was dismissed with prejudice. *Kollsman v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993). The plaintiff had argued that the fees and costs allocable to the individual defendant (for his guardian ad litem) could not "be taxed against it because [it was] a prevailing party." *Id.* The court rejected that argument, concluding "as between [plaintiff] and [the dismissed individual defendant, he] is a prevailing party." *Id.*

*Kollsman* thus stands for the proposition that a defendant is a prevailing party when the suit against him is dismissed even if a plaintiff settles (and thus obtains some of the benefits in bringing the suit) with other co-defendants.

### 3.    The Tenth Circuit

Thirty years before *Gray*, the Tenth Circuit, relying on state law, reached the same conclusion as *Gray*. It observed that "that attorney fees and costs in multi-party cases as well as in certain consolidated cases are awarded to different parties on the basis of the separate judgments obtained, not the overall trial result." *Tulsa Litho Co. v. Tile and Decorative Surfaces Mag. Publ'g, Inc.*, 69 F.3d 1041, 1043 (10th Cir. 1995) (citing two Oklahoma state supreme

23

court decisions). It further characterized that holding it as the "general rule." *Id.* In doing so, it distinguished other decisions that "pit[] a single party against another single party." *Id.* Instead, where a case "involve[es] multiple parties, each defendant" can be considered as "a separate party" for purposes of a prevailing party analysis. *Id.*

In *Tulsa Litho*, like here, the individual defendant that prevailed was a corporate officer of the juristic co-defendants, but that relationship did "not make him personally liable." *Id.* Because the district "court granted Mr. Fisher summary judgment over [plaintiff] Tulsa Litho, he was the prevailing party as between himself and Tulsa Litho." *Id.* That remained true even though the plaintiff had obtained relief from the corporate co-defendants. *Id.*

### 4. The Second Circuit

In a case under the 1909 Copyright Act,[9] the Second Circuit held that one of several defendants had prevailed, and was "entitled to full costs" despite the plaintiff obtaining an interlocutory judgment of liability against another co-defendant (subject to the district court entering a final judgment as to amount). *H. M. Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70, 75 (2d Cir. 1963).

In yet another copyright case, it affirmed the district court's fee award to

---

[9] The Copyright Act of 1909 was substantially the same as the 1976 Act, which provided for discretionary attorney's fees to the "prevailing party." 17 U.S.C. § 40 (1909).

24

one of three defendants, observing that "it was [] an oversight for the [district] judge to fail to grant 'full costs' to" that defendant, despite the plaintiff obtaining relief from other defendants. *Edward B. Marks Music Corp. v. Foullon*, 171 F.2d 905, 908 (2d Cir. 1949).

The Second Circuit's decisions in *H. M. Kolbe* and *Edward B. Marks* thus align with the decisions reached in *Gray* by the Eleventh Circuit and *Tulsa Litho* by the Tenth Circuit.

### 5.    The Federal Circuit

Similar to the Eleventh, Tenth, and Second Circuits, the Federal Circuit has observed in dicta that one defendant, as among other defendants, enjoys prevailing party status when "all claims against it [are] dismissed with prejudice." *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415-17 (Fed. Cir. 2004). There, the plaintiff voluntarily dismissed with prejudice two defendants early in the proceedings (collectively, International Rectifier, "IR"). *Id.* at 1403. Other defendants later prevailed on the merits of the plaintiff's claims against them. *Id.* Looking only at whether IR, as dismissed parties, could be considered prevailing, the Federal Circuit observed that where "one party wins completely on every claim at issue, determining which party has prevailed is a straightforward task." *Id.* at 1416 (quoting *Manildra Mill-*

*ing Corp. v. Ogilvie Mills*, 76 F.3d 1178 (Fed. Cir. 1996)). It concluded that "IR, which had all claims against it dismissed with prejudice, is therefore a prevailing party." *Id.* However, because IR made certain representations that it would not oppose the voluntary dismissal and "did not raise the issue of costs" in its filing, the district court did not err "in viewing the situation as an agreement between the parties regarding dismissal and therefore denying [IR its] costs." *Id.* at 1417. But for the defendant's concession, turning what was otherwise a holding into dicta, the Federal Circuit is aligned with the outcomes in *Gray*, *Tulsa Litho*, *H. M. Kolbe*, and *Edward B. Marks*.[10]

While the plaintiff, Power Mosfet, did not obtain relief on any of its claims against IR, and despite IR's apparent waiver of its status as a prevailing party under Rule 54, the Federal Circuit correctly focused on the dispute as between the plaintiff and the IR defendants only—without regard to what occurred respecting the other defendants—to conclude, albeit in dicta, that those defendants would have been considered prevailing parties. *Id.* at 1416.

### 6.    The Third Circuit

In an outlier decision, the Third Circuit has taken a different view than the

---

[10] *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010) is not to the contrary, where "both sides won on some claims and lost on others" and was therefore a "mixed judgment" case without one party prevailing entirely against another party. It did not embody a "several" judgment in which one party fully prevailed against an adversary.

majority under the costs provision of the Virgin Islands Code, Title 5 § 541.

Rather than looking at the individual party-vs-party claims and counter-claims, it netted the judgment among four parties: two plaintiffs and two defendants to identify a singular prevailing party. *Wise v. DeWerd*, 373 F.2d 306 (3d Cir. 1967). After a first appeal and remand and for a new judgment, plaintiff Wise obtained a $5,000 judgment from defendant DeWerd. *Id.* at 307. But DeWerd had obtained a $7,148.67 judgment from Wise's co-plaintiff company, WDW Inc. *Id.* And plaintiff WDW secured a $10,652.97 judgment against the second defendant, Cote de la Mer Corporation. *Id.* Rather than evaluating each relationship on its own, as between the various claims and counterclaims and discrete judgment each obtained against their corresponding adversary (a several judgment), the Third Circuit concluded with little analysis that it was "perfectly clear that the plaintiffs are the prevailing parties" because the net judgment resulted in an overall liability of $8,504.30 from the defendants to the plaintiffs. *Id.*[11]

In contrast to *Gray*, the netting of the judgment among four different parties fundamentally inverted DeWerd's status from a prevailing defendant to a

---

[11] Under the majority party-by-party rule, WDW would have been the prevailing party against Cote de la Mer, DeWerd the prevailing party against WDW, and Wise the prevailing party against DeWerd, and any costs award would have then been set-off against or added to any corresponding recoveries of each party.

losing litigant despite his success against WDW, which he would still enjoy even if netted as between plaintiffs WDW and Wise.[12]

Ultimately, *Wise* is an outlier in an otherwise broad consensus that one defendant can be a prevailing party even where the plaintiff obtains relief on its claims against other co-defendants. Both the plain language and purpose of Copyright Act's fee-shifting provision supports such an outcome.

## IV. COPYRIGHT DEFENDANTS ARE PREVAILING PARTIES WHEN THEY FULLY RESIST A PLAINTIFF'S CLAIM AGAINST THEM

### 1. The plain language of the Copyright Act allows a defendant to be a prevailing party irrespective of the success or failures of other parties

The phrase "prevailing party" is a term of art. *Lackey*, 145 S. Ct. at 662. That term is found in the Copyright Act's fee-shifting provision, which reads in full:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an

---

[12] Netting the recoveries of all parties also fundamentally destroyed the individuality of each litigant. Absent certain exceptions, such as alter ego, corporations maintain a separate legal existence from individuals. *Cf. Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004). It may well be, however, that the individual litigants in *Wise* were one-and-the-same as their corresponding juridical entities, thus possibly explaining the Third Circuit's affirmance. *Wise v. DeWerd*, 358 F.2d 389 (7th Cir. 1966) (observing that plaintiff WDW was wholly owned by plaintiff Wise and defendant Cote De La Mer was wholly owned by defendant DeWerd, but nevertheless maintaining the separate distinction of each in reaching its judgment as to which parties were liable to the others).

> officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Like many fee-shifting statutes, it speaks in the singular, "party." *Id.* Yet that does not control the plain language analysis.

Congress has explicitly provided for a more expansive meaning for statutes like § 505 by requiring that, "unless the context indicates otherwise—words importing the singular include and apply to several persons, [or] parties." Dictionary Act, 1 U.S.C. § 1. This Court has observed that congressional law-drafting guides "instruct legislators to write all statutes in the singular in order to avoid ambiguity." *Purcell v. Bank of Am.*, 659 F.3d 622, 624 (7th Cir. 2011) (citing House Legislative Counsel's Manual on Drafting Style § 351(g) (1995) and Office of the Legislative Counsel, United States Senate, Legislative Drafting Manual §§ 104, 113 (1997)). Thus the singular word "party" is to be understood as encompassing more than one, unless the Copyright Act "indicates otherwise." It doesn't.

Nothing within Section 505 or elsewhere in the Copyright Act suggests that only a singular party within a multi-party copyright lawsuit can be deemed prevailing. Consequently, the statute itself does not prevent a defendant, like Jaber, from being found prevailing even if other defendants are held

29

liable to a plaintiff.

## 2. "Prevailing party" is construed pursuant to its plain common law meaning, absent words that would vary that meaning

Because "prevailing party" is a term of art, it is understood first as such without regard to the statute in which congress placed it. Resort to the underlying law as a matter of statutory construction may be made, however, simply to confirm that where congress employs the term "prevailing party" without modification, it has employed that ordinary, common law meaning. *See CRST*, 578 U.S. at 432; 423 (reasoning that congress, by using the term "prevailing party," did not intend to "block[] a whole category of defendants" at "the first part of the fee-shifting inquiry"); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 53 at 320 (1st ed. 2012) (it is an "age-old principle" that "words undefined in a statute are to be interpreted and applied according to their common law meanings").

A court's discretion, guided by the law's purpose, to reallocate fees or costs is exercised subsequent to a litigant's *legal* status as a prevailing party. *See CRST*, 578 U.S. at 422 (noting that the Court had not "articulated a precise test for when a defendant is a prevailing party" as a threshold matter, and observing "*how* [a prevailing party] should be treated" is then determined

30

through the lens of the underlying statute at the second step) (emphasis supplied). In *CRST*'s holding, the Court made no reference to any statute, which is consistent with its observation that the term "prevailing party" is one of art—that is, it is not one susceptible to different meanings simply because it appears in different substantive statutes. Then, in rejecting the EEOC's crabbed reading of "prevailing party," the Court went on to analyze how its rule for defendants was consistent with the congressional purpose at the second step. *Id.* at 432 (the "congressional policy regarding the exercise of district court" occurs after identifying a prevailing party, which is the court's "discretion in the *ultimate* decision whether to award fees." *Id.* (emphasis supplied).

Properly understood, both as a term of art and in Supreme Court decisions, "prevailing party" is not to be construed pursuant to the statute in which it is found, but rather given its common law meaning, absent the lawgiver's modification of it. *Whether* to award fees to a litigant is analyzed after identifying it as a prevailing party, and only then with reference to the congressional purpose of the discretionary fee- or cost-shifting provision. *See Fox v. Vice*, 563 U.S. 826 (2011) (looking to "congressional policy" in determining what fees to award under 42 U.S.C. § 1988 to a prevailing defendant whose status as prevailing was not at issue); *Fogerty*, 510 U.S. at 526 (same, looking to the "poli-

31

cies served by the Copyright Act"); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) ("what standard should inform a district court's discretion in deciding whether to award attorney's fees [under 42 U. S. C. § 2000e-5(k)] to a successful *defendant*").

### 3. A rule disentitling a defendant to prevailing party status whenever a plaintiff obtains a recovery or settlement from another defendant incentivizes abusive litigation

An "only-if-all-defendants-win" barrier to prevailing party status for a successful co-defendant would discourage them from pursuing a "variety" of defenses in copyright actions, *Fogerty*, 510 U.S. at 527, because each defendant would be inseparably hitched to all others, destroying their individualized judgment and defensive strategies. The congressionally-desired variety is not possible if each defendant's status as prevailing rises and falls with his cohorts. Some may settle. Others may default. Some pay pursue novel and riskier defenses. Those varied and personal decisions of one defendant should not (and historically did not) disentitle another defendant from being a prevailing party if they fully resisted a plaintiff's suit against them.

That is especially true in Schedule A cases, where many defendants simply do not appear, *e.g.*, *Liu v. Monthly*, 170 F.4th 1090 (7th Cir. 2026), and thus a plaintiff can obtain relief against the defaulting defendants. A defendant

should not lose their statutorily-prescribed remedy of being a prevailing party when one (or even most) co-defendants refuse to defend themselves and allow a default judgment to enter against them. Similarly, a defendant should not put their status as a prevailing party at risk simply because they do not maintain a uniform defensive posture among all co-defendants. That is not the purpose of § 505 nor is that consistent with the historical understanding of what a prevailing party is. Such a rule would encourage perverse and abusive litigation strategies.

A plaintiff should not be permitted to sue, without a risk of costs or fees, any number of defendants on dubious theories of liability. *Gray*, 144 F.4th at 1314. A rule disallowing prevailing party status to all defendants where the plaintiff obtains relief from but one would embolden the joining of defendants on meritless claims alongside a singular valid one, with the calculated goal of increasing the likelihood of obtaining improper settlements from defendants who know that their status as prevailing party, and thus recovery of fees or costs, is all but foreclosed. That was likely the precise goal of Food Photos in its joinder of Sharif Jaber on its theory that Jaber was vicariously liable for

33

the alleged infringement of Nofal.[13]

## V.    JABER IS A PREVAILING PARTY-DEFENDANT

The historically-correct and majority rule of the party-vs-party framework for evaluating prevailing party status, when applied here, shows that Sharif Jaber is a prevailing defendant. The facts respecting his complete success against Food Photos are not in dispute. Thus the district court's contrary ruling, predicated on mistaken notion that it had discretion to identify a prevailing party, is error.

### 1. The district court erred as a matter of law when it concluded Jaber was not a prevailing party

The District Court erred when it concluded that Jaber had not prevailed against Food Photos on its singular claim of vicarious copyright infringement against him. While it struggled with the fact that Jaber had prevailed at the same time that Food Photos obtained a $200 verdict, it erred by looking beyond the discrete adversarial posture between Jaber and Food Photos and

---

[13] "The Copyright Act does not expressly render anyone liable for infringement committed by another." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984). And theories of vicarious liability "must rest on the fact that" the accused had "knowledge" of the infringement. *Id.* at 439. Food Photos knew early in the suit that Jaber had no knowledge of the Facebook page, let alone the subject post. Its decision to proceed to trial against Jaber was borderline frivolous because "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability." *Meyer v. Holley*, 537 U.S. 280 (2003).

further in relying on inapposite cases.

The consensus among the circuits that have addressed a multiparty several judgment have almost universally concluded that where one defendant wins completely against a plaintiff, the existence of other defendants in the case and the plaintiff's success against them is irrelevant. *Gray*, 144 F.4th at 1314 ("our sister circuits also distinguish between cases involving one plaintiff and one defendant and cases with multiple parties on either side"). That was also the historical understanding of when a defendant prevails. PARSONS, A TREATISE ON THE LAW OF COSTS §§ 7 and 9 (1876) (collecting cases in which one defendant prevails even if the plaintiff secures relief from other defendants); BRIGHTLY, LAW OF COSTS, Ch. II § 4 at 93-99 (same). There is no disputing that Jaber fully rebuffed, *CRST*, 578 U.S. at 431, Food Photos' singular claim against him, App. 38. Food Photos' $200 recovery from Nofal does not change that fact. Nor does the Copyright Act prevent Jaber from being a prevailing party because, even if Food Photos recovered some relief from Nofal, the proper construction of "prevailing party" in view of the pluralizing language of 1 U.S.C. § 1, shows that a court is not statutorily-bound to hunt for a singular winner (or none) in a multiparty case.

Rather than relying on the Eleventh Circuit's more recent decision in *Gray*,

35

the district court relied in part on *Royal Palm*. App. 7. But *Gray* expressly distinguished *Royal Palm*, noting it was a one-vs-one procedural posture with claims and counterclaims that effectively offset both. *Gray*, 144 F.4th at 1314.[14]

The record plainly discloses that Jaber prevailed when he obtained a jury verdict finding him not liable for infringement, App. 30, followed by a judgment of dismissal. App. 38. Even the district court acknowledged that Food Photos conceded that Jaber was a prevailing party. App. 4. To conclude otherwise was legal error.

### 2.    *Narkiewicz-Laine* is inapt

The district court was apparently troubled by the lack of controlling precedent in the Seventh Circuit, but found *Narkiewicz-Laine* to be the closest case. App. 5-6, 11 ("*Narkiewicz-Laine* [is the] most relevant and instructive in the present situation"). *Narkiewicz-Laine*, however, is inapt as to Jaber and his status as a prevailing party.[15]

There, the jury returned a verdict entirely for the plaintiff, but not to the extent the plaintiff sought. *See* Verdict, ECF No. 270 Oct. 3, 2017, *Narkiewicz-Laine v. Doyle*, No. 11-cv-1826 (N.D. Ill.) (finding for plaintiff on Counts I, III,

---

[14] The outcome in *Royal Palm* is, however, ahistorical. *Supra*, Section II.2.

[15] Nofal, however, reserves its right to argue that *Narkiewicz-Laine* may be persuasive with respect to Food Photos's status as a prevailing plaintiff.

IV and V, against all defendants (plural), and rejecting their affirmative defense, and awarding $420,000 in total damages, collectively, against all defendants jointly).[16] No singular defendant prevailed entirely against the plaintiff. *Id.*

Consequently, *Narkiewicz-Laine* is factually distinct from the posture here, where the jury returned a special verdict fully in Jaber's favor on all claims. *Compare id.* (partial verdict for plaintiff on four out of 1,457 works) *with* App. 29-31 (full defense verdict for Jaber). *Narkiewicz-Laine* is thus best understood not as a multidefendant case resulting in a several judgment, but rather as a joint judgment where the plaintiff prevailed on some, but not all, of its claims collectively against the defendants, and denying the *plaintiff's* request for attorney's fees.[17] The district court erred in focusing on *Narkiewicz-Laine* in its analysis of Jaber's success to the exclusion of more persuasive and factually similar decisions like *Gray* and in failing to construe "prevailing party" according to its common law historical meaning.

---

[16] The district court thereafter reduced the plaintiff's damages award to $300,000. *Narkiewicz-Laine*, 930 F.3d at 906.

[17] Historically, this result would have been characterized as a "joint" judgment running against all defendants. 1 FREEMAN, A TREATISE ON THE LAW OF JUDGMENTS § 104 at 183.

### 3. The district court erred in analyzing the prevailing party issue under an abuse of discretion standard

There is another reason the Fees Order must be reversed. Construction of a statute's words and its application to the facts is not discretion, but rather legal analysis. The district court misapprehended that it had discretion in reaching its conclusion that Jaber had not prevailed. App. 12.

Here, there is no dispute about the underlying verdict or judgment respecting Jaber. He fully resisted Food Photos' singular claim against him, permanently. Consequently, "the question of prevailing party status involves [only] elements of a legal analysis." *Southworth v. Bd. of Regents of Univ. of Wisc. Sys.*, 376 F.3d 757, 767 (7th Cir. 2004). Yet the district court incorrectly believed that it had "discretion" to conclude "that there is no prevailing party." App. 12.

In contrast to answering legal questions, "discretion means that persons exercising [it] may reach different results from exact duplicates." *McCleskey v. Kemp*, 481 U.S. 279, 289 (1987) (quoting the decision on review, 753 F.2d 877, 898 (11th Cir. 1985) (en banc)). Identifying a prevailing party in the first instance was never open to a court's discretion respecting one-vs-one cases at law, *Kansas City So. R. Co. v. Guardian Trust Co.*, 281 U.S. 1, 9 (1930) ("costs follow the result as of course"), but courts were slow to recognize problems

38

associated with joinder of multiple defendants as more complicated and multi-party cases were brought, and which defendants could obtain a judgment different from his co-defendants, 1 FREEMAN, A TREATISE ON THE LAW OF JUDGMENTS § 105 at 185-88 (discussing early statutes that changed the common law requiring all-or-nothing judgments against multiple defendants). Nevertheless, the status as a "prevailing party" for a defendant was not one of discretion, only the decision on whether to award costs to them. History and commonsense supply the invariable recipe for identifying a prevailing defendant. What a court chooses to do with the resulting judgment is where discretion lies.

That understanding is reinforced by reference to statutes in which fees or costs are mandatorily-awarded to the prevailing party. *Christianburg Garment*, 434 U.S. at 415 n.5 (identifying various statutes); *see also Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 22 F.3d 1150, 1153 (D.C. Cir. 1994) (the word "shall" in a statute "generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive"). Reading-in a discretionary standard at step one (whether a party prevailed) would entirely eviscerate the congressional mandate that fees or costs be awarded to the prevailing party. In such statutes, congress directed

39

judges with an affirmative, non-discretionary duty to make such awards. On the other hand, where congress adds permissive language into such statutes, it has expressly provided that discretion. But where mandatory, it has withheld that discretion. Consequently, the threshold issue of prevailing party status is not a discretionary exercise.

## VI. THIS COURT SHOULD RENDER JUDGMENT OF ENTITLEMENT

Finally, the record here respecting Jaber's entitlement to fees and costs under the Copyright Act is complete. The Court should, in addition to reversing the fees award, render judgment that Jaber is entitled to his reasonable attorney's fees and costs.

This Court has a long history of awarding copyright defendants their attorney's fees itself. *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 632 (7th Cir. 2023) ("we ... even award [fees] ourselves" and collecting cases). Additionally, consistent with the directive of *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), "in many cases in this and other circuits the court of appeals has made the adjustment in the fee award that it thought necessary, without bothering to remand the case." *Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988). And so this Court will also occasionally "determine those fees ourselves; we need not require the district court to make the determination."

40

*Id.* at 990. The Court ought to do so here, and render judgment of entitlement for Jaber pursuant to § 505 of the Copyright Act based on the record. Doing so would be consistent with *Hensley*'s instruction that fees litigation should not result in extensive litigation, as well as the Supreme Court's own occasional mandate that it too can render judgment on an appropriate record. *Levin v. Miss. River Fuel Corp.*, 386 U.S. 162, 170 (1967) (finding the issue before it was "so clear" that it did not remand to the circuit court, even though that lower court's opinion did not decide the issue because "[e]ffective judicial administration require[d]" that it directly "dispose of the matter").

Other circuits have similarly concluded that they may "resolve, instead of remand, fee determination issues" because doing so "is consistent with the Supreme Court's directive in *Hensley*." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999) (quoting *Hensley*, 461 U.S. at 434); *accord Divane v. Krull Elec. Co.*, 319 F.3d 307 (7th Cir. 2003) (disposing of appellate fees dispute directly, without remand); *see also Softball Country Club-Atlanta v. Decatur Fed. Sav. and Loan Ass'n*, 121 F.3d 649 (11th Cir. 1997) (extensively reviewing the trial court proceedings, reversing the trial court's denial of attorney's fees, and "render[ing] judgment for Plaintiffs" on the fees issue); *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315 (11th Cir. 2002) (reversing district

41

court's denial of fees entitlement under 42 U.S.C. § 12205 and remanding for determination of amount); *United States v. Gilbert*, 198 F.3d 1293, 1296 (11th Cir. 1999) (reversing denial of fees entitlement under the Hyde Amendment, 18 U.S.C. § 3006A (1997)); *Williams v. City of Fairburn, Ga.*, 640 F.2d 635, 636 (5th Cir. 1981) (reversing denial of fees entitlement under 42 U.S.C. § 1988 and remanding only for "a determination of the proper amount").

Appellate courts also render judgment in other contexts where the record supplies the requisite facts on questions of law. *E.g.*, *Vela v. City of Houston*, 276 F,3d 659, 671 n.17 (5th Cir. 2001) ("this court regularly reverses grants of summary judgment and enters judgment for the opposite party"); *Singer v. Dungan*, 45 F.3d 823, 830 (4th Cir. 1995) (rendering judgment for appellants based on statute of limitations defense); *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir. 1989) (rendering judgment "on a sufficiently developed record" and citing 28 U.S.C. § 2106); *In re Hronek*, 563 F.2d 296, 298 (6th Cir. 1977) (although "the normal procedure is to remand a case where the lower court has not considered a pertinent issue, considerations such as judicial economy dictate otherwise where the correct resolution of the issue is clear" and citing *Levin*).

There has already been sufficient litigation on the issue of entitlement in

the district court, with a fully-developed record on a question of law, *Equitable Life Assurance Soc'y of U.S. v. MacGill*, 551 F.2d 978, 983 (5th Cir. 1977) ("entitlement to attorney's fees is a question of law"), including initial briefing on step two under the Copyright Act, and now the present appellate briefing respecting prevailing party status at step one. Jaber should not face renewed briefing on the question, and this Court should render judgment of his entitlement.

## CONCLUSION

"Prevailing party" is a term of art. Just as courts do not alter that term based on the substantive statute in which it appears, so too do courts not alter it based on the presence or absence of other parties nor pursuant to their discretion. A defendant prevails against a plaintiff whenever they fully resist that plaintiff's claims against them. That understanding is historically correct, the prevailing majority rule among the circuit courts, and consistent with the Copyright Act's text. Jaber fully succeeded on the singular claim Food Photos brought against him and thus prevailed.

Jaber respectfully requests the Court reverse the Fees Order, hold that he is a prevailing defendant as a matter of law on the undisputed facts of the jury's verdict and the subsequent judgment of dismissal, and remand for the

43

district court to set an amount for his reasonable attorney's fees and costs.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.
Fla. Bar No. 100279
**Klema Law, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606
PO Box 172381
Tampa, FL 33672
(202) 713-5292
Griffin@KlemaLaw.com
*Counsel for Appellant Sharif Jaber*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of 7th Cir. R. 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,402 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Expanded BT font.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.
*Counsel for Appellant Sharif Jaber*

## CERTIFICATE OF FILING AND SERVICE

I certify that, pursuant to and in compliance with Fed. R. App. P. 25 and 7th Cir. R. 25, this Initial Brief was filed with the Clerk of the United States Court of Appeals for the Seventh Circuit via the Case Management, Electronic Case Filing (CM/ECF) system and e-mailed (unless other service means are indicated) on July 22, 2026, to all counsel of record.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.
*Counsel for Appellant Sharif Jaber*

Dated: July 22, 2026

# SHORT APPENDIX

**Short Appendix** (bound herewith)

| Document Description | Dist. Ct. ECF No. | App. Page No. |
|---|---|---|
| Order Denying Jaber's Motion for Attorney's Fees and Bill of Costs | 89 | A1 |

A1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PREPARED FOOD PHOTOS, INC.,

       Plaintiff,

v.

SHARIF JABER and NOFAL, LLC,
*doing business as* FOOD TOWN
MART,

       Defendants.

Case No. 22-CV-642-JPS

**ORDER**

## 1.     INTRODUCTION

In this case, Plaintiff Prepared Food Photos, Inc. ("Plaintiff") accused Defendants Sharif Jaber ("Jaber") and NOFAL, LLC doing business as Food Town Mart ("NOFAL") (together, "Defendants") of infringing its copyright on a single photo of raw pork chops. *See generally* ECF No. 19. Plaintiff specifically alleged that the infringement occurred when NOFAL posted the subject photo on its business Facebook page, and that Jaber was vicariously liable for that infringement because Jaber, "[a]s the manager and sole member of NOFAL," could control its infringing acts, failed to do so, and ultimately profited from the infringement. *Id.* at 6, 8–9.

The case proceeded to a jury trial on October 28 and 29, 2024. ECF No. 48. The jury found, in relevant part, that:

- NOFAL infringed upon the copyrighted material of Plaintiff, but its infringement was not willful;
- Jaber did not vicariously infringe upon the copyrighted material of Plaintiff; and

- The sum of $200.00 fairly and reasonably compensates Plaintiff for its actual damages.

ECF No. 50; ECF No. 54 (final judgment). The Court upheld the jury's verdict in full over a post-trial motion from Plaintiff. ECF No. 61.

Now before the Court are two motions for attorney's fees: Plaintiff seeks its attorney's fees for its victory against NOFAL, ECF No. 64, and Jaber seeks his attorney's fees for his victory against Plaintiff, ECF No. 83.[1] Plaintiff moves for $69,255 in fees under the Copyright Act or, in the alternative, under Federal Rule of Civil Procedure 37. *See generally* ECF No. 64. Jaber moves for $50,250 in fees under the Copyright Act only. *See generally* ECF No. 83. Both motions are fully briefed. ECF Nos. 80 (NOFAL's opposition to Plaintiff's motion), 87, 88 (briefing on Jaber's motion). Plaintiff and Jaber also filed bills of costs. ECF Nos. 62, 84. For the reasons stated herein, both motions for fees will be denied and no fees or costs will be awarded to either party.

For the sake of brevity, the Court incorporates by reference its previous recitation of the facts as developed at trial. ECF No. 61 at 2–12. The Court will reference additional facts from the parties' motions as necessary throughout this Order, omitting underlying citations to the record, which at this point is well-established.

---

[1]After Defendants failed to pay their first attorney, that attorney was permitted to withdraw, and pro bono counsel later appeared for Defendants. ECF Nos. 65, 68, 72, 73. Jaber, through pro bono counsel, sought additional time to file his motion for attorney's fees, which Plaintiff opposed but the Court granted. ECF Nos. 76–78.

## 2.    LEGAL STANDARD

### 2.1    Fees Under the Copyright Act

In a copyright action, the Court may, "in its discretion," allow "the recovery of full costs" and "a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. "If a party successfully demonstrates that it is a prevailing party, the reviewing court next considers the nonexclusive factors endorsed by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, . . . (1994): (1) the frivolousness of the claims or defenses asserted by the non-prevailing party; (2) that party's motivations in pursuing its claims or defenses; (3) the objective unreasonableness (both in the factual and in the legal components of the case) of those claims or defenses; and (4) the need for compensation or deterrence." *GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 857 (N.D. Ill. 2019) (citing *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 387 (7th Cir. 2011)).

### 2.2    Fees Under Federal Rule of Civil Procedure 37

A party may move to recover its attorney's fees and expenses if it requests admissions under Federal Rule of Civil Procedure 36 and the responding party "fails to admit" the matter as requested and "the requesting party later proves . . . the matter true." FED. R. CIV. P. 37(c)(2). The Court must grant such a motion unless "the request was held objectionable under Rule 36(a)," "the admission sought was of no substantial importance," "the party failing to admit had a reasonable ground to believe that it might prevail on the matter," or "there was another good reason for the failure to admit." *Id.* at 37(c)(2)(A)–(D). If the motion is granted, the party may recover its attorney's fees "incurred in making that proof." *Id.* at 37(c)(2).

A3

### 3.    ANALYSIS

#### 3.1    Prevailing Party for Fees Under the Copyright Act

Only prevailing parties are eligible to recover their attorney's fees from the opposing party. *See GC2 Inc.*, 391 F. Supp. 3d at 858 ("At the threshold, a party seeking recovery of attorney's fees must demonstrate that it is the 'prevailing party.'"). Plaintiff concedes that Jaber is the prevailing party on Plaintiff's vicarious infringement claim. ECF No. 87 at 1 ("While Jaber did prevail at trial . . . ."). NOFAL does not make any explicit argument that Plaintiff is not the prevailing party on its direct infringement claim. *See* ECF No. 80 at 12–13 (outlining legal standard and proceeding directly to *Fogerty* factors).

"[A] litigant 'prevails' (for the purpose of fee-shifting statutes) when it obtains 'a material alteration of the legal relationship between the parties[.]'" *Riviera Distribs., Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)). "A judgment in a party's favor has such an effect . . . ." *Id.*

Under this definition—and as discussed further below—both Plaintiff and Jaber theoretically could be considered prevailing parties. Plaintiff won a money judgment against NOFAL, and Jaber won a dismissal with prejudice of Plaintiff's claim against him. ECF No. 54. They each obtained, as a result of the jury's verdict, material alterations of the legal relationships amongst themselves (and NOFAL), and the judgment embodies findings in each party's favor. Jaber's victory cannot "be characterized as purely technical or *de minimis*," *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (collecting cases); his success changed his legal relationship with Plaintiff from one of potential

liability to one of no liability. *See GC2 Inc.*, 391 F. Supp. 3d at 859 (finding no meaningful alteration of the parties' legal relationship where overall potential liability remain unchanged).

Unfortunately, the parties' briefing focuses much more on "should" rather than "can": they exclusively analyze whether the *Fogerty* factors favor awarding any fees, bypassing threshold questions on whether they can both be considered prevailing parties (and if so, why the Court should grant two fee motions that would largely cancel one another out) or whether the Court is required to find a prevailing party, and award fees, at all.[2]

Beginning with the latter point: neither party acknowledges Seventh Circuit precedent finding that a district court acts within its discretion when it declines to award fees under the Copyright Act because "the jury's verdict points in two directions as to who prevailed." *Narkiewicz-Laine v. Doyle*, 930 F.3d 897, 906 (7th Cir. 2019), *cert. denied*, 589 U.S. 1138 (2020). In that case, the plaintiff claimed damages under the Visual Artist Rights Act of 1990 ("VARA"), an amendment to the Copyright Act, for destruction of 1,457 pieces of his artwork, others' artwork, and his personal property that he had stored in the defendants' facility. *Id.* at 900–01. A jury "found that

---

[2]The Court did not address these legal issues in previous orders in this case because they go to the merits of any § 505 fee motion and were not ripe for adjudication at that time. For example, when Jaber moved to file his fee motion after he failed to do so by the original deadline, the question at that time was not whether he was a prevailing party, but whether he had established excusable neglect to receive an extension of the deadline under Federal Rule of Civil Procedure 6. *See generally* ECF No. 81. Although the Court permitted "Jaber [to] seek[] to vindicate his right to seek fees, as a prevailing party in this matter," *id.* at 6, the Court did not hold that Jaber was in fact a prevailing party. And Plaintiff's status as a prevailing party has always been open for debate, as it acknowledged by arguing this point in its opening brief. ECF No. 64 at 13–14.

the defendants had destroyed four pieces of artwork protected under [VARA] and awarded \$120,000 in damages." *Id.* at 900. However, the jury "did not award him damages on the remainder of the works for which he had claimed damages under [VARA] . . . ." *Id.* Based on this outcome, the district court later denied Narkiewicz-Laine's motion for attorneys' fees under 17 U.S.C. § 505, reasoning that "while [Narkiewicz-Laine] had won a damages award covering some of the works, he also lost the majority of the claims he brought." *Id.* at 901. "In the [district] court's view, then, there was no clear prevailing party and Narkiewicz-Laine was not entitled to attorneys' fees." *Id.*

The Seventh Circuit affirmed, noting that Narkiewicz-Laine did not "prevail[] across the board at trial." *Id.* at 906. It upheld the district court's use of discretion to deny Narkiewicz-Laine's fee motion on this basis, reasoning that "plaintiffs and defendants are on equal footing for purposes of fee awards under § 505" and therefore that the court need not "treat[] successful plaintiffs more favorably than successful defendants in terms of the award of attorney's fees." *Id.* (quoting *Fogerty*, 510 U.S. at 524). Likewise, in an earlier case, the Seventh Circuit "agree[d] with the district court's finding that neither [the plaintiff], who prevailed on but two of its seven [copyright] infringement claims, nor [the defendant], who wound up on the wrong end of a \$10,000 judgment, can be deemed the 'prevailing' party." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1022 (7th Cir. 1991), *abrogated on other grounds by Fogerty*, 510 U.S. 517.

One district court has criticized *Video Views* as inconsistent with the Supreme Court's holdings in other fee cases that "'the amount of damages awarded' is generally irrelevant to deciding whether a party has prevailed and that prevailing-party status 'only requires success on the merits of at

least some of [the fee movant's] claims.'" *Tempest Publ'g, Inc. v. Hacienda Recs. & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 721 (S.D. Tex. 2015) (citing *Farrar v. Hobby*, 506 U.S. 103 (1992) and quoting *Buckhannon*, 532 U.S. at 603–04). This criticism, while insightful, does not help resolve the question here: who is the prevailing party in this case, Plaintiff, Jaber, neither, or both?

On the other hand, in a different context—a Lanham Act trademark case in which both plaintiff and defendant "ultimately lost on their claims" and moved for costs under Federal Rule of Civil Procedure 54—the Eleventh Circuit rejected the proposition that Rule 54 means that "the district court *must* name a prevailing party in every case." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1373–74, 1378–80 (11th Cir. 2022); *id.* at 1375 (noting district court's findings that "[Royal Palm] . . . maintained the Trademark" and also that "it was found that [Pink Palm's] prior conduct did not infringe that Trademark," so that "each Party prevailed and lost on one of two central issues in this case—leaving no clear winner"). It first found that "the meaning of 'prevailing party' is the same in either context—fees or costs." *Id.* at 1377. It went on to hold that "[a]dopting a rule that allows room for scenarios where neither party satisfies the 'minimum' alternation-of-the-legal-relationship requirement for prevailing party status makes sense[,] . . . [and n]othing in Rule 54, nor in Supreme Court precedent requires the district court to arbitrarily name a winner in such instances where neither party crosses the threshold to prevailing party status." *Id.* at 1380 (citing *Garland*, 489 U.S. at 792). The appellate court noted that the Federal Circuit has opined "that [Rule 54 means that] the court must declare a prevailing party" but the Eighth, Fifth, and Second Circuits all have found "instances where neither party prevails." *Id.* at 1378–79 (citing *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed.

Cir. 2010); *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 907 (8th Cir. 2016); *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 584 (5th Cir. 1986); and *Srybnik v. Epstein*, 230 F.2d 683, 686 (2d Cir. 1956)).

Seventh Circuit precedent and persuasive authority, then, would permit the Court to—at a minimum—deny Plaintiff's fee motion because Plaintiff's trial victory was only partial and was offset by Jaber's success. The Ninth Circuit cases that Plaintiff cites in support of its argument that it is the (or a) prevailing party because it proved NOFAL's liability and was awarded some measure of damages are irrelevant in light of this precedent. ECF No. 64 at 13–14 (collecting cases). The Court could deny Jaber's fee motion on the same logic.

The Court moves to the other threshold question of whether Plaintiff and Jaber can both be considered prevailing parties. Jaber did not address this possibility when he moved to file his fee motion past the original deadline, and the Court did not address it at that juncture. *See generally* ECF No. 76 and *supra notes* 1 and 2. Jaber did not address this issue in briefing the instant motion, nor did Plaintiff argue the point. *See generally* ECF Nos. 83, 87. But the parties' dual motions, by their very existence, presuppose such a possibility.

The Court has not located any binding Seventh Circuit authority addressing this point. One district judge in the Northern District of Illinois has entertained both a fee motion by a defendant, IGT PLC, who "successfully sought a motion to dismiss" for lack of personal jurisdiction, and a fee motion by a plaintiff who prevailed on its copyright infringement claims and won damages at a jury trial, and found that both parties were prevailing parties under § 505. *GC2, Inc.*, 391 F. Supp. 3d at 837–38, 857–60. The district court found that IGT PLC was a prevailing party by virtue of

its successful motion to dismiss, but did not explain its reasoning for considering that two adverse parties could both be considered prevailing parties. *Id.* at 858–59. And ultimately, the court denied any fees for IGT PLC on the *Fogerty* factors. *Id.* at 859–60.[3]

Other federal courts have rejected the notion that there can be more than one prevailing party for purposes of attorney's fees under the Copyright Act. For example, one district court was faced with competing fee motions from (1) one of two plaintiffs, who prevailed on the merits of its claim against the defendant, and (2) the defendant, who secured dismissal without prejudice of the other plaintiff's claim for lack of standing. *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 783 (E.D. Va. 2017), *rev'd in part and fee award vacated on other grounds*, 881 F.3d 293 (4th Cir. 2018).[4] The district court acknowledged the possibilities that "a defendant [could] prevail against one party, but . . . lose against another" and that there may be multiple prevailing parties when "those parties appear on the same side of a single cause of action," but "read[] § 505 to mean that only one *side* of a cause of action may prevail." *Id.* at 784 (citing *Modick v. Carvel Stores of N.Y., Inc.*, 209 F. Supp. 361, 363 (S.D.N.Y. 1962) and *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 227 (4th Cir. 1993)). To reach this conclusion, it reasoned that "a plain reading of the statute . . . contemplates a single prevailing party" and that "this

---

[3]Despite finding that the plaintiff was a prevailing party because of its trial victory, the court also denied the plaintiff's fee motion on the *Fogerty* factors. *GS Inc.*, 391 F. Supp. 3d at 857–58.

[4]The Fourth Circuit noted that its "holding as to the jury instructions require[d] [it] to vacate [the district court's] award of fees," and explicitly "did not address the merits of those awards." *BMG Rts. Mgmt (US) LLC*, 881 F.3d at 301 n.1.

understanding fits neatly into our adversarial judicial system, which requires a 'case or controversy' so that courts may pick a clear winner from one side of the 'v.'" *Id.* at 783–84 (citing 17 U.S.C. § 505 and U.S. CONST., art. III, § 2, cl. 1). It therefore found that the defendant who secured dismissal without prejudice of one plaintiff's claims could not be considered a prevailing party and accordingly denied the defendant's fee motion. *Id.* at 785.

Another district court addressed whether § 505 permits both sides to recover their costs when each is a partial victor (attorney's fees were not at issue). *Tempest Publ'g*, 141 F. Supp. 3d 712. The plaintiff sued the defendant for copyright infringement on four songs. *Id.* at 716. The defendant won dismissal at summary judgment of the plaintiff's infringement claims as to two songs, and the plaintiff succeeded at a bench trial on its infringement claims as to the other two songs, winning $5,000 in damages. *Id.* Both moved post-trial for their costs, but the court awarded partial costs only to the plaintiff. *Id.* Despite § 505's language that "*any* party" may recover costs, the court reasoned that the statute's provision that "*the* prevailing party" may recover attorney's fees also precluded more than one party from recovering costs. *Id.* at 719–20. In other words, the district court adopted a presumption that there can be only one prevailing party for purposes of § 505 attorney's fees.

*BMG* and *Tempest* explicitly addressed the issue of whether there can be more than one prevailing party in cases like the present one, and both suggest that the Court could deny one of the fee motions in this case for the simple reason that § 505 does not contemplate fee awards to more than one prevailing party when those parties are on opposite sides of the dispute— i.e., both motions cannot coexist. Meanwhile, *GC2, Inc.*, suggests that the

Court could find both Plaintiff and Jaber to be prevailing parties, and contemplate (and theoretically grant) each one's fee motion, but did not set forth legal reasoning explaining how this outcome would be consistent with § 505.[5]

The unique circumstances of this case put the Court in a challenging position of attempting to answer questions that the parties did not brief, but which are essential to the appropriate resolution of their motions. Ultimately it appears that the Court can validly determine under Seventh Circuit precedent that there is no prevailing party, and persuasive precedent points in both directions on whether the Court can or cannot find that there is more than one prevailing party.

The Court finds *Narkiewicz-Laine* most relevant and instructive in the present situation and will follow its reasoning to deny both Plaintiff's and Jaber's fee motions. As the district judge in *Narkiewicz-Laine* explained in initially ruling on the fee motions:

> The reality of this case is that both parties prevailed in some significant aspects, and both parties lost in some significant aspects, such that it is difficult to declare one clear winner. [The p]laintiff prevailed by receiving a judgment in his favor,

---

[5]If the Court were to decide which party in this case is the sole prevailing party, the methodology for doing so is unclear. The Court likely could not declare either Plaintiff or Jaber the prevailing party based solely on the relief that each achieved. In cases of mixed judgments or split verdicts, courts have rejected an "overall prevailing party" methodology, as well as arguments that fees should be apportioned according to a party's degree of success. *See, e.g.*, *Tempest Publ'g*, 141 F. Supp. 3d at 721 ("Section 505 does not speak of an 'overall' prevailing party."); *Balsley v. LFP, Inc.*, 691 F.3d 747, 772 (6th Cir. 2012) (rejecting arguments that one party was the "'overall' prevailing party—and thus . . . the only party entitled to fees simply based on the number of claims that it successfully defended" or that the defendant "should receive at least 'four sevenths (57.1%)' of the fees for the entire action because it was successful on four of [the p]laintiffs' original seven claims" (citing *Farrar*, 506 U.S. at 114)).

whereas [the] defendants prevailed by successfully defending against most of [the] plaintiff's VARA claims and the enormous amount of damages he sought. Under these circumstances, the court has determined, in its discretion, that there is no prevailing party entitled to attorney's fees and costs under § 505.

No. 11 C 1826, 2018 WL 11276807, at *6 (N.D. Ill. June 14, 2018) (footnotes omitted), *aff'd*, 930 F.3d 897. For the same reasoning, the Court finds in its discretion that there is no prevailing party in this case, and therefore neither Plaintiff nor Jaber is entitled to their attorneys' fees. Because neither party prevailed, the Court will bypass analyzing the *Fogerty* factors for either motion. The Court also need not determine whether Jaber's requested attorney's fees are reasonable; Plaintiff's arguments as to the reasonableness of its counsel's fees are briefly addressed and dismissed in the next section.

### 3.2    Plaintiff's Motion for Fees Under Rule 37

The Court separately analyzes Plaintiff's alternative Rule 37 fee request, which comprises a single paragraph in its brief. ECF No. 64 at 18.[6] Plaintiff argues that it is entitled to its attorney's fees "for [NOFAL's] failure to admit a multitude of Plaintiff's requests for admissions" relating to facts Plaintiff later proved at trial. *Id.* Jaber initially denied, and NOFAL denied in its answer, any affiliation with the Facebook page on which Plaintiff's photo was posted in violation of Plaintiff's copyright. *Id.* at 3. NOFAL also denied affiliation with the Facebook page in its August 2023 responses to Plaintiff's requests for admissions. *Id.* at 5–6. In his September 2023 deposition as NOFAL's corporate representative, Jaber likewise denied that

---

[6]Jaber's opposition to this argument is just two sentences, ECF No. 80 at 18, and does not engage at all with the Rule 37 standard.

NOFAL has a Facebook page or controlled the Facebook page on which the infringing photo appeared. *Id.* at 6–7. On the other hand, Jaber's son, Amjad Hamed ("Amjad"), who served as floor manager of the store NOFAL owned (Food Town Mart), testified in his December 2023 deposition that the Facebook page was affiliated with Food Town Mart and that he himself posted Plaintiff's photo there. *Id.* at 9. Amjad testified at trial that Jaber did not know, at the time of infringement in September 2020, about the Facebook page. ECF No. 61 at 6.

Jaber testified at trial that he "became aware of the Facebook page and its affiliation with NOFAL after he and NOFAL were named as Defendants in the operative complaint in February 2023"—several months prior to his denials in discovery and deposition of that fact. ECF No. 61 at 6. Post-trial, the Court dismissed Plaintiff's argument "that the Court's decision to exclude evidence of Defendants' statements in discovery that were inconsistent with Jaber's testimony at trial resulted in an unfair trial." *Id.* at 31. "[W]hile it is true that Jaber made incorrect statements in discovery," the Court observed, "he corrected the mistakes and testified truthfully to the jury even though doing so was not to his benefit . . . ." *Id.*

The Court also noted that "[t]o the extent the jury questioned whether Jaber, by virtue of his asserted lack of knowledge of the Facebook page and post prior to February 2024, had the right and ability to control the infringing activity, it appears that as a legal matter he did." *Id.* at 23–24 n.7 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005), which explains that the theory of "vicarious liability allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer,

even if the defendant initially lacks knowledge of the infringement" (citations omitted)).

Based on these facts, the Court finds that Plaintiff is not entitled to its attorney's fees under Rule 37(c) because "the admission sought was of no substantial importance." FED. R. CIV. P. 37(c)(2)(A)–(D). Plaintiff makes much of the fact that Defendants took inconsistent positions during the lawsuit, while ignoring that the Court has already held that failure to admit evidence of this inconsistency at trial was proper. Plaintiff also does not account for the Court's finding that, even if such evidence had been admitted, it could not have made a difference to the jury's verdict because Jaber's knowledge of the Facebook page where the infringing content appeared was legally irrelevant to his right and ability to supervise NOFAL, the direct infringer. *Metro-Goldwyn-Mayer Studios*, 545 U.S. at 931 n.9.

Accordingly, Plaintiff's motion must be denied to the extent it seeks attorney's fees under Rule 37. The Court also briefly notes that it finds Plaintiff's fee request excessive for the Rule 37 context. Plaintiff faults Defendants for not earlier amending the answer or their discovery responses "[d]espite [Amjad's] testimony/admissions." ECF No. 64 at 10. Plaintiff argues that it should receive its attorney's fees for this failure to admit "in the full amount . . . [it] was forced to incur from the date of service of [Defendant's] responses [to discovery] through trial." *Id.* at 18. Plaintiff's billing records include numerous entries during that time frame that have an extremely tenuous or no relationship to Defendants' failure to admit— for example, drafting an interim settlement report and motions to modify the scheduling order, and corresponding regarding settlement demands and trial preparations—as well as thousands spent for trial preparations

and nearly $10,000 in billing for entire trial days, only a small portion of which was realistically spent preparing for and eliciting the above-referenced admission from Jaber. ECF No. 64-2 at 10–11. Even if the Court had approved Plaintiff's Rule 37 fee request, the claimed fees would be far in excess of the "fees incurred in making [the] proof" of matters Jaber failed to admit, and the request would be subject to a significant reduction. FED. R. CIV. P. 37(c)(2).

## 4.    CONCLUSION

For all these reasons, the Court will deny both Plaintiff's and Jaber's motions for their attorneys' fees.

Because there is no prevailing party in this matter, the Court further finds that neither party is entitled to its costs. It is not clear whether the parties are moving for costs under the Copyright Act or Rule 54, but either way, the Court's finding would be the same. *See* 17 U.S.C. § 505 (permitting the Court "in its discretion" to award costs); FED. R. CIV. P. 54(d)(1) (providing that costs "should be allowed to the prevailing party" "[u]nless . . . a court order provides otherwise"); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946) ("Th[e] allowance [of costs] to the prevailing party is not . . . a rigid rule. Under the Rules of Civil Procedure the court can direct otherwise." (citing FED. R. CIV. P. 54(d))); *see also, e.g., Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F. Supp. 3d 76, 113–14 (D.D.C. 2017) (requiring each party to bear its own costs due to "the mixed nature of the judgment"); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 412 F. Supp. 2d 571, 574–76 (E.D. Va. 2006) (declining to award either party their costs under Rule 54 because "th[e] case produced a mixed outcome and there is no prevailing party").

Accordingly, each party shall bear its own costs in this action, and no costs shall be awarded pursuant to the parties' bills of costs, ECF Nos. 62, 84.

Accordingly,

**IT IS ORDERED** that Plaintiff Prepared Food Photos, Inc.'s motion for attorney's fees, ECF No. 64, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Sharif Jaber's motion for attorney's fees, ECF No. 83, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that each party shall bear its own costs in this action, and no costs shall be awarded to either party pursuant to their bills of costs, ECF Nos. 62 and 84.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge