## No. 26-1757

# In the United States Court of Appeals
# For the Seventh Circuit

PREPARED FOOD PHOTOS, INC.,
f/k/a Adlife Marketing & Communications Co., Inc.

    *Plaintiff-Appellee,*

v.

SHARIF JABER,

    *Defendant-Appellant.*

An Appeal from a final order of the
    United States District Court for the Eastern District of Wisconsin
    No. 2:22-cv-000642-JPS

### APPENDIX OF APPELLANT SHARIF JABER

Griffin C. Klema, Esq.
Fla. Bar No. 100279
**Klema Law, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606
PO Box 172381
Tampa, FL 33672
(202) 713-5292
Griffin@KlemaLaw.com
*Counsel for Defendant-Appellant*

## CIRCUIT RULE 30(d) CERTIFICATION

All of the materials required by Seventh Circuit Rule 30(a) are included in the appendix bound with the appellant's brief. All of the materials required by Seventh Circuit Rule 30(b) are included in this separately bound appendix.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.

## CERTIFICATE OF FILING AND SERVICE

I certify that, pursuant to and in compliance with 7th Cir. R. 25(d), this Appendix was filed with the Clerk of the United States Court of Appeals for the Seventh Circuit via the Case Management, Electronic Case Filing (CM/ECF) system and e-mailed (unless other service means are indicated) on July 22, 2026, to all counsel of record.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.

## INDEX TO THE APPENDIX

**Short Appendix**
(bound with Appellant's brief)

| Document Description | Dist. Ct. DE No. | App'x Page No. |
|---|---|---|
| Order Denying Jaber's Motion for Attorney's Fees | 89 | A1 |

**Appendix**

| Document Description | Dist. Ct. DE No. | App'x Page No. |
|---|---|---|
| Complaint, Second Amended | 19 | A18 |
| Jury Verdict | 50 | A29 |
| Order Following Jury Verdict | 53 | A33 |
| Final Judgment | 54 | A37 |
| Order Denying Plaintiff's Motion to Alter Judgment and for New Trial | 61 | A40 |
| Nofal, LLC's Opposition to Plaintiff's Motion for Attorney's Fees | 80-0 | A73 |
| Opposition exhibit 5 – Plaintiff's $30,000 settlement demand | 80-5 | A95 |
| Opposition exhibit 6 – Plaintiff's $22,000 settlement demand | 80-6 | A109 |

**INDEX, cont'd**

| Document Description | Dist. Ct. DE No. | App'x Page No. |
|---|---|---|
| Opposition exhibit 7 – Plaintiff's $90,000 settlement demand | 80-7 | A111 |
| Jaber's Motion for Attorney's Fees | 83 | A113 |
| Plaintiff's Opposition to Jaber's Motion for Attorney's Fees | 87 | A140 |
| Jaber's Reply in Support of his Motion for Attorney's Fees | 88 | A159 |
| Jaber's Bill of Costs | 84 | A173 |
| Plaintiff's Non-Objection to Jaber's Bill of Costs | 86 | A177 |

# Docket No. 19

**Docket No. 19**

A17

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

      Defendants.

## SECOND AMENDED COMPLAINT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.

("Plaintiff") sues defendants NOFAL LLC d/b/a Food Town Mart ("NOFAL LLC") and Sharif

Jaber ("Jaber") (collectively, the "Defendants"), and alleges as follows:

### THE PARTIES

1.     Plaintiff is a corporation organized and existing under the laws of the State of

Florida with its principal place of business located in Broward County, Florida.

2.     NOFAL LLC is a limited liability company organized and existing under the laws

of the State of Wisconsin with its principal place of business located at 2041 E. Drexel Avenue,

Oak Creek, WI 53154.

3.     Jaber is an individual who is a citizen of the State of Wisconsin residing at 2041 E.

Drexel Avenue, Oak Creek, WI 53154.

### JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendants because they have maintained sufficient minimum contacts with Wisconsin such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

6.       Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this district.  "A defendant in a copyright action 'may be found' in a district where he is subject to the district court's personal jurisdiction." Martino v. Orchard Enters., No. 20 C 2267, 2020 U.S. Dist. LEXIS 199687, at *18 (N.D. Ill. Oct. 27, 2020); see also Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd., 767 F. Supp. 181, 185 (N.D. Ill. 1991) ("Thus, if a court has personal jurisdiction over the defendants in a copyright infringement action, venue in that court's district is proper.").

## FACTS

### I.      Plaintiff's Business

7.      Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

8.      Through its commercial website (www.preparedfoodphotos.com), Plaintiff offers a monthly subscription service which provides access to/license of tens of thousands of professional images.

9.      Plaintiff charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a minimum monthly fee of $999.00 for access to its library of professional photographs.

10.      Plaintiff does not license individual photographs or otherwise make individual photographs available for purchase.  Plaintiff's business model relies on its recurring monthly

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

subscription service such that Plaintiff can continue to maintain its impressive portfolio.

11.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

12.     In 1997, a professional photographer created a photograph titled "RawPorkChopCCBnls005_ADL.jpg" (the "Work").  A copy of the Work is exhibited below:



13.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 20, 2017 and was assigned Registration No. VA 2-027-172. A true and

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

correct copy of the Certification of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

14.     Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

### III.     Defendant's Unlawful Activities

15.     NOFAL LLC owns and operates a full-line grocery store located in Milwaukee, WI under the trade name "Food Town Mart" and/or "Foodtown Mart."

16.     Jaber is the manager and, upon information and belief, sole member of NOFAL LLC.  Jaber has exclusive control over the business activities of Little Pine, including but not limited to the infringing activities that are the subject of this lawsuit.

17.     NOFAL LLC advertises/markets its products primarily through its website (https://villard-food-town.business.site/https://iliria-foods.business.site/), social media (e.g. https://www.facebook.com/villardfoodtown), and other forms of advertising.

18.     On September 28, 2020 (after Plaintiff's above-referenced copyright registration of the Work), NOFAL LLC published the Work on its business Facebook page (at https://www.facebook.com/villardfoodtown/photos/pcb.2818903505099367/2818895218433529 /https://iliria-foods.business.site/ - testimonials) in connection with the marketing of its business:



19.    A true and correct copy of screenshots of the website, displaying the copyrighted Work, is attached hereto as **Exhibit "B."**

20.    Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with the foregoing Facebook page or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendants on notice that the Work was not intended for public use.

21.    Defendants utilized the Work for commercial use – namely, in connection with the marketing of NOFAL LLC's business.

22.    Upon information and belief, NOFAL LLC located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

23.    Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered NOFAL LLC's unauthorized use/display of the Work in November 2021. Following Plaintiff's discovery, Plaintiff notified Defendants in writing of such unauthorized use. To date, however, Plaintiff has been unable to negotiate a reasonable license for the past infringement of its Work.

24.    All conditions precedent to this action have been performed or have been waived.

## COUNT I – COPYRIGHT INFRINGEMENT
### (NOFAL LLC)

25.    Plaintiff re-alleges and incorporates paragraphs 1 through 24 as set forth above.

26.    The Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

27.    Plaintiff owns a valid copyright in the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

28.    As a result of Plaintiff's reproduction, distribution, and public display of the Work, NOFAL LLC had access to the Work prior to its own reproduction, distribution, and public display of the Work on NOFAL LLC's business Facebook page.

29.    NOFAL LLC reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

30.    By his actions, NOFAL LLC infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

31.    Defendant's infringement was willful as it acted with actual knowledge or reckless

6

disregard for whether its conduct infringed upon Plaintiff's copyright. NOFAL LLC clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

32.    NOFAL LLC's willfulness is further demonstrated by Defendants' conduct upon receiving notice of its infringement. Rather than acknowledge the infringement and attempt to negotiate a reasonable license for its use of the Work, Defendants instead lied and denied that the Work was ever published on Food Town Mart's Facebook page (notwithstanding that screenshots of the infringement were included in Plaintiff's initial infringement notice) and went so far as to change the name of the business on Food Town Mart's Facebook page – all in an effort to cover up the infringement.

33.    Plaintiff has been damaged as a direct and proximate result of NOFAL LLC's infringement.

34.     Plaintiff is entitled to recover its actual damages resulting from NOFAL LLC's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover damages based on a disgorgement of NOFAL LLC's profits from infringement of the Work, which amounts shall be proven at trial.

35.    Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

36.    Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover its costs and attorneys' fees as a result of NOFAL LLC's conduct.

37.    NOFAL LLC's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against NOFAL LLC as follows:

a.  A declaration that NOFAL LLC has infringed Plaintiff's copyrights in the Work;

b.  A declaration that such infringement is willful;

c.  An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each infringement of the Work;

d.  Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e.  Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f.  Permanently enjoining NOFAL LLC, his employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with NOFAL LLC, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g.  For such other relief as the Court deems just and proper.

## COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT
### (Jaber)

38.    Plaintiff re-alleges and incorporates paragraphs 1 through 24 as set forth above.

39.    As evidenced above, NOFAL LLC infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

40.    As the manager and sole member of NOFAL LLC, Jaber has the right and ability to control the infringing acts of NOFAL LLC, yet declined or failed to stop NOFAL LLC from engaging in its infringing activity.

8

41.    Further, the business license for NOFAL LLC's d/b/a (Food Town Mart) is registered in Jaber's name individually.

42.    Jaber obtained a direct financial benefit from NOFAL LLC's infringing activities. As the manager and sole member of NOFAL LLC, Jaber receives profit distributions therefrom and, upon information and belief, pays himself a salary therefrom.

43.    As a direct and proximate result of Jaber's vicarious copyright infringement, Plaintiff has been damaged. See, e.g. Broad. Music, Inc. v. Evie's Tavern Ellention, Inc., No. 8:11-cv-2056-T-17TBM, 2011 U.S. Dist. LEXIS 137720, at *5-8 (M.D. Fla. Nov. 30, 2011) ("Because Defendants, Evie's and Evanoff, benefited from the performances and admitted they owned, controlled, managed, and operated Evie's, they are vicariously liable for the infringement.").

**WHEREFORE**, Plaintiff demands judgment against Jaber as follows:

a.    An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each infringement of the Work;

b.    Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5);

c.    Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

d.    Permanently enjoining Jaber, his employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Jaber, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with its copyright management information removed; and

h.    For such other relief as the Court deems just and proper.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

**Demand For Jury Trial**

Plaintiff demands a trial by jury on all issued so triable.

Dated: February __, 2023.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza
     Daniel DeSouza, Esq.

**CERTIFICATE OF SERVICE**

    I hereby certify that on February __, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza___

Daniel DeSouza, Esq.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

# Docket No.

# 50

**Docket No. 50**

A28

A29

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PREPARED FOOD PHOTOS, INC.,

                Plaintiff,

v.

SHARIF JABER and NOFAL, LLC
*doing business as* FOOD TOWN
MART,

                Defendants.

Case No. 22-CV-642-JPS

## SPECIAL
## VERDICT

We, the jury, duly impaneled and sworn, for our special verdict in the above-entitled action, find as follows:

### DIRECT COPYRIGHT INFRINGEMENT
### AGAINST NOFAL, LLC DOING BUSINESS AS FOOD TOWN MART

*You must answer this question.*

**Question No. 1:**     (See Part II, Section 1 of the Jury Instructions)

Did NOFAL, LLC doing business as Food Town Mart infringe upon the copyrighted material of Prepared Food Photos, Inc.?

                Answer:       __Yes__

                              (Yes or No)

*If you answered "Yes" to Question No. 1, then you must answer Question No. 2. If you answered "No" to Question No. 1, then do not answer any other questions on this form; instead, proceed to sign and date this form.*

## FAIR USE

**Question No. 2:** (See Part II, Section 2 of the Jury Instructions)

Did NOFAL, LLC doing business as Food Town Mart make fair use of Prepared Food Photos, Inc.'s work?

Answer: _____*No*_____

(Yes or No)

*If you answered "No" to Question No. 2, then you must answer Question No. 3. If you answered "Yes" to Question No. 2, then do not answer any other questions on this form; instead, proceed to sign and date this form, even if you answered "Yes" to Question No. 1.*

## VICARIOUS COPYRIGHT INFRINGEMENT
## AGAINST SHARIF JABER

**Question No. 3:**     (See Part II, Section 3 of the Jury Instructions)

Did Sharif Jaber vicariously infringe upon the copyrighted material of Prepared Food Photos?

Answer: _____*No*_____

(Yes or No)

*If you answered "Yes" to Question No. 3, then you must answer Question No. 4. If you answered "Yes" to Question No. 1 but "No" to Question No. 3, then you should still proceed to answer Question No. 4.*

## DAMAGES

*If you answered "Yes" to Question No. 1 or "Yes" to Question Nos. 1 and 3, **and** you answered "No" to Question No. 2, then and only then answer each of Questions Nos. 4, 5, and 6.*

**Question No. 4:** (See Part II, Section 4.1 of the Jury Instructions)

What amount of money fairly and reasonably compensates Prepared Food Photos, Inc. for its actual damages?

$ __200__

**Question No. 5:** (See Part II, Section 4.2 of the Jury Instructions)

What amount of money fairly and reasonably compensates Prepared Food Photos, Inc. for its statutory damages?

$ __1,000__

**Question No. 6:** (See Part II, Section 4.2 of the Jury Instructions)

Was NOFAL, LLC doing business as Food Town Mart's infringement of Prepared Food Photos, Inc.'s copyrighted material willful?

Answer: ___No___
(Yes or No)

Dated at Milwaukee, Wisconsin, this 29th day of October, 2024.

_____
Foreperson Signature

Joshua Gunn
Foreperson Printed Name

Page 3 of 3

# Docket No. 53

Docket No. 53

A32

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PREPARED FOOD PHOTOS, INC.,

Plaintiff,

v.

SHARIF JABER and NOFAL, LLC,
*doing business as* FOOD TOWN
MART,

Defendants.

Case No. 22-CV-642-JPS

**ORDER**

This case came before the Court for a jury trial on October 28, 2024. ECF No. 48. The jury was instructed on October, 29, 2024 as to the law relevant to the claims and defense at issue. *Id.* at 8–9; ECF No. 49 at 11–18. With respect to damages, the jury was instructed that, if they found either Defendant NOFAL, LLC doing business as Food Town Mart ("NOFAL") or NOFAL and Defendant Sharif Jaber ("Jaber") liable for infringing Plaintiff Prepared Food Photos, Inc.'s ("Plaintiff") copyright, they should determine both the actual damages that Plaintiff sustained, and Plaintiff's statutory damages, including a finding of whether any infringement was willful. ECF No. 49 at 16–18; *see* 17 U.S.C. § 504(b) (permitting "the copyright owner [to] elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages").

The jury rendered its verdict the same day, finding that:

- NOFAL did infringe upon the copyrighted material of Plaintiff

- NOFAL did not make fair use of Plaintiff's work;

- Jaber did not vicariously infringe upon the copyrighted material of Plaintiff;

- The sum of $200.00 fairly and reasonably compensates Plaintiff for its actual damages;

- The sum of $1,000.00 fairly and reasonably compensates Plaintiff for its statutory damages; and

- NOFAL's infringement of Plaintiff's copyrighted material was not willful.

ECF No. 50. After the verdict was published, the Court directed Plaintiff to file a notice electing the measure of damages that it wished to receive. ECF No. 48 at 9; 17 U.S.C. § 504(b). Plaintiff elected an award of actual damages, in the amount of $200.00 as determined by the jury. ECF No. 52.

Based on the jury's findings, the Court will dismiss with prejudice Plaintiff's claim of vicarious liability against Jaber. ECF No. 19 at 8–9. Further, the Court dismisses any claim by Plaintiff that either named Defendant willfully infringed Plaintiff's copyrighted material. *See id.* at 6–9. The Court will adopt Plaintiff's election of damages and order NOFAL to pay $200.00 in actual damages to Plaintiff. Having disposed of all claims and the defense in this matter, the Court will order that this case be dismissed.

Accordingly,

**IT IS ORDERED** that Plaintiff Prepared Food Photos, Inc.'s claim of vicarious liability for copyright infringement against Defendant Sharif Jaber, ECF No. 19 at 8–9, be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff Prepared Food Photos, Inc. shall have and recover from Defendant NOFAL, LLC doing business as Food Town Mart $200.00 in actual damages; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of November, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

# Docket No.

# 54

**Docket No. 54**

A36

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PREPARED FOOD PHOTOS, INC.,

                Plaintiff,

v.

SHARIF JABER and NOFAL, LLC,
*doing business as* FOOD TOWN
MART,

                Defendants.

Case No. 22-CV-642-JPS

**JUDGMENT**

**Jury Verdict**. This action came before the Court, presided over by the Honorable J.P. Stadtmueller, for a trial by jury. The issues having been tried and the jury having rendered a special verdict (ECF No. 50) on October 29, 2024; and the Court having considered Plaintiff Prepared Food Photo's Inc. notice of election of damages (ECF Nos. 52, 53):

      **IT IS ORDERED AND ADJUDGED** that the jury found the following in its special verdict (ECF No. 50):

- that Defendant NOFAL, LLC doing business as Food Town Mart did infringe upon the copyrighted material of Plaintiff Prepared Food Photos, Inc.;

- that Defendant NOFAL, LLC doing business as Food Town Mart did not make fair use of Plaintiff's Prepared Food Photos, Inc.'s work;

- that Defendant Sharif Jaber did not vicariously infringe upon the copyrighted material of Plaintiff Prepared Food Photos, Inc.;

- that the sum of $200.00 fairly and reasonably compensates Plaintiff Prepared Food Photos, Inc. for its actual damages;

- that the sum of $1,000.00 fairly and reasonably compensates Plaintiff Prepared Food Photos, Inc. for its statutory damages;

- that Defendant NOFAL, LLC doing business as Food Town Mart's infringement of Plaintiff Prepared Food Photos, Inc.'s copyrighted material was not willful;

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff Prepared Food Photos, Inc.'s claim of vicarious liability for copyright infringement against Defendant Sharif Jaber (ECF No. 19 at 8–9) be and the same is hereby **DISMISSED with prejudice** (ECF No. 53);

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff Prepared Food Photos, Inc. shall have and recover from Defendant NOFAL, LLC doing business as Food Town Mart $200.00 in actual damages (ECF No. 53); and

**IT IS FURTHER ORDERED AND ADJUDGED** that this action be and the same is hereby **TERMINATED** (ECF No. 53).

APPROVED:

J.P. Stadtmueller
U.S. District Judge

GINA M. COLLETTI
Clerk of Court
s/ Jodi L. Malek

November 7, 2024
Date

By: Deputy Clerk

# Docket No. 61

**Docket No. 61**

A39

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PREPARED FOOD PHOTOS, INC.,

    Plaintiff,

v.

SHARIF JABER and NOFAL, LLC,
*doing business as* FOOD TOWN
MART,

    Defendants.

Case No. 22-CV-642-JPS

**ORDER**

### 1.    INTRODUCTION

In this case, Plaintiff Prepared Food Photos, Inc. ("Plaintiff") accused Defendants Sharif Jaber ("Jaber") and NOFAL, LLC doing business as Food Town Mart ("NOFAL") (together, "Defendants") of infringing its copyright on a single photo of raw pork chops. *See generally* ECF No. 19. Plaintiff specifically alleged that the infringement occurred when NOFAL posted the subject photo on its business Facebook page, and that Jaber was vicariously liable for that infringement because Jaber, "[a]s the manager and sole member of NOFAL," could control its infringing acts, failed to do so, and ultimately profited from the infringement. *Id.* at 6, 8–9.

The case came before the Court for a jury trial on October 28 and 29, 2024. ECF No. 48. The jury found, in relevant part, that:

- NOFAL infringed upon the copyrighted material of Plaintiff;

- Jaber did not vicariously infringe upon the copyrighted material of Plaintiff;

- The sum of $200.00 fairly and reasonably compensates Plaintiff for its actual damages;

- The sum of $1,000.00 fairly and reasonably compensates Plaintiff for its statutory damages;[1] and

- NOFAL's infringement of Plaintiff's copyrighted material was not willful.

ECF No. 50. Plaintiff elected an award of $200.00 in actual damages, ECF No. 52 at 1, which the Court incorporated into its final judgment, ECF Nos. 53 at 3 and 54. The Court also dismissed with prejudice Plaintiff's claim of vicarious liability against Jaber. ECF No. 54 at 2.

Plaintiff now moves the Court to amend or alter its judgment with respect to both the jury's award of actual damages and the jury's finding that Jaber was not vicariously liable for NOFAL's infringement, or, in the alternative, for a new trial. ECF No. 56. The motion is fully briefed. ECF Nos. 59, 60. For the reasons stated herein, the motion will be denied in all respects.

## 2.    FACTUAL BACKGROUND

The Court has compiled the following recitation of facts primarily from the evidence presented and testimony elicited at trial.[2] Where

---

[1]The jury was instructed to find both actual and statutory damages amounts, subject to Plaintiff's later election. *See* ECF No. 49 at 16–18; 17 U.S.C. § 504(a) ("[A]n infringer . . . is liable for either . . . the copyright owner's actual damages . . . or . . . statutory damages . . . .").

[2]As explained below, the legal standards for the relief that Plaintiff seeks require close examination of *what occurred at trial* and what evidence the jury considered in arriving at its verdict. But the parties, inexplicably, did not bother to cite to the trial transcripts at all in preparing and briefing Plaintiff's post-trial motion. *See, e.g.,* ECF No. 56 at 6 (Plaintiff's brief summarizing the trial in a single paragraph with no citations to the transcripts). This sent the Court on an archaeological dig through the record—thankfully a short one, given the brevity of trial—to pinpoint what the parties presumably believe are the most relevant

additional context is needed and the facts are undisputed, the Court cites to other materials in the record.

### 2.1    Background

Plaintiff owns a valid copyright in a photo of raw pork chops. ECF No. 46 at 1 (stipulation as to ownership). The photo was taken in 1997, but the copyright was not registered until 2017. ECF No. 57 at 51, 56.

On September 28, 2020, the photo was posted to a Facebook page with the name of "Villard Foodtown." ECF No. 57 at 59, 111–12; ECF No. 19 at 5 (screenshot of post); ECF No. 51 (post admitted as exhibit at trial). Plaintiff alleged, and the jury found, that this photo was posted there without Plaintiff's permission and in infringement of its copyright. *See generally* ECF No. 19; ECF No. 50 at 1.

The Facebook page is affiliated with a small, family-owned neighborhood grocery store. At the time that Plaintiff's photo was posted to the Facebook page, Jaber owned NOFAL, the business entity that owned and operated the grocery store. ECF No. 57 at 123; ECF No. 56-2 at 2. As explained immediately below, the evidence presented at trial showed no factual dispute as to Jaber's ownership of NOFAL, nor was there a genuine dispute that the Facebook page was operated on behalf of NOFAL and the grocery store. As detailed *infra* Section 2.2, however, the jury heard differing testimony and evidence as to whether Jaber himself knew about the Facebook page, or knew what NOFAL employees (who are Jaber's sons) were doing with the Facebook page, at the time of the infringement.

---

portions. This is an inefficient use of the Court's time and resources, and a highly questionable choice by counsel.

NOFAL, a limited liability company, owns and operates the store located at 3217 Villard Avenue in Milwaukee, Wisconsin. ECF No. 57 at 123; ECF No. 19 at 4. Jaber has owned NOFAL since 2017, when he bought the business from his brother, Faraj Jaber ("Faraj"). ECF No. 57 at 124, 167–69; ECF No. 36-2 at 12. Jaber testified that he is "the only person that has control over [its] business activities." ECF No. 57 at 123; ECF No. 36-2 at 17 (Jaber stating at deposition that he has "exclusive control over the business activities of NOFAL LLC"). Jaber's sons Nofal and Amjad Hamed ("Nofal" and "Amjad") were employees of NOFAL and worked at the grocery store; both worked there before and at the time of the infringement. ECF No. 57 at 101–03, 138–39. Nofal stopped working there in 2021, *id.* at 136, 138, while Amjad was still working there as of the time of trial, *id.* at 103.

The grocery store was formerly known as Villard Food Town. *Id.* at 169. When Jaber bought NOFAL in 2017, he changed the legal, doing-business-as name of the grocery store to Food Town Mart. *Id.* However, some signage with the former name Villard Food Town remained outside the store even after the legal name change. *Id.*

Nofal ran a Facebook page with the name "Villard Foodtown" beginning in 2010, and Amjad was added as a registered user for this page in 2013. *Id.* at 107–08; *see also* ECF No. 36-5. Amjad took primary control of the Facebook page when Nofal stopped working at the grocery store in 2021. ECF No. 57 at 108, 136. Amjad represented that Nofal still made some posts on the Facebook page after he stopped working at the grocery store, though. *Id.* at 108.

As noted above, the subject photo was posted to this Facebook page—with the name "Villard Foodtown"—in September 2020; Amjad

testified that he created the post. *Id.* at 112.[3] Defendants' counsel objected to the introduction of the screenshot of the Facebook page on the basis that that "Villard Food Town is not on trial here," but the Court overruled the objection. *Id.* at 60. Indeed, Jaber appeared to concede that, at the time of the infringement, the Facebook page was functionally Food Town Mart's page, despite still being named "Villard Foodtown." *Id.* at 129 ("Q [by Plaintiff's counsel]: And you heard [Amjad] say that this is the Facebook page that he was running on behalf of Food Town Mart; correct? A [by Jaber]: Yes. Q: And do you agree, as you sit here today, this is the Facebook page that was being run by Food Town Mart? A: Yes."). Therefore, it does not appear that Defendants genuinely disputed that the page was affiliated with NOFAL.

Plaintiff discovered the infringing post in October 2021. ECF No. 57 at 58–59. At some point thereafter, the name of the Facebook page was changed to Food Town Mart. *Id.* at 71, 121. Additionally, the post with Plaintiff's photo was taken off the Facebook page at some point after this lawsuit commenced. *Id.* at 71, 120.

### 2.2 Testimony Related to Jaber's Knowledge of the Facebook Page, the Lawsuit, and Store Activities

Jaber acknowledged before the jury that, as of the time of trial, he knew about the Facebook page and that it was affiliated with Food Town

---

[3]Amjad testified that the post would have reached about 1,000 Facebook followers. ECF No. 57 at 191. Amjad walked the jury through a demonstration of how he found Plaintiff's photo on Google and used it in making the post. *Id.* at 186–89, 192–200. This demonstration showed that there was no "trademark," "copyright identification," or "watermarking" on the photograph as a Google result. *Id.* at 189. The Google result included a notice that "[i]mages may be subject to copyright" and linked to Plaintiff's website, which included pricing and subscription information. *Id.* at 194–98.

Mart (and therefore NOFAL). *See id.* at 129. However, he testified that he only became aware of the Facebook page and its affiliation with NOFAL after he and NOFAL were named as Defendants in the operative complaint in February 2023. *Id.* at 132; *id.* at 144–45 (restating Jaber's deposition testimony that "in February, 2023, [his] sons disclosed to [him] for the first time that this Facebook page belonged to [his] store"); *id.* at 171–72 ("Q [by Defendants' counsel]: Were you ever made aware that there was . . . any Facebook page for Villard Food Town? A [Jaber]: No. . . . Q: At any point in time . . . up until the time that you were sued, did you . . . ever physically see the Facebook page? A: No, sir."). Jaber further denied having created or directed anyone else to create the Facebook page, having "done anything as it relates to [NOFAL], LLC . . . on the internet," or having "done anything as it relates to any social media or Facebook pages as it relates to Food Town." *Id.*

Amjad—whom Plaintiff called to testify prior to calling Jaber—similarly stated that Jaber "didn't know" that the page existed or that Amjad and/or Nofal were making posts on the page until February 2023, "after he got a lawsuit for a Facebook page." *Id.* at 115–16 ("I never told him that I was posting on Facebook."). Amjad also stated that Jaber never gave him "any instructions with respect to how to run this Facebook page" or "what to post or what not to post." *Id.* at 114, 116. The infringing post included information about pricing; Amjad testified that he would have gotten price information either from Jaber or the grocery store's butcher, but that he did not recall who gave him the pricing information included in the post. *Id.* at 112–13; *see also id.* at 172 (Jaber testifying that he would be able to tell Amjad product pricing information "on any particular day" but would not ask why Amjad was asking that question).

Plaintiff questioned witnesses about Jaber's responses to discovery requests and prior deposition testimony from August to October 2023. On these occasions, Jaber denied—on his own behalf and as NOFAL's corporate representative—knowing about the Facebook page or the infringing post. *Id.* at 125–27; 145–51. Plaintiff emphasized that these positions during discovery were inconsistent with Jaber's position at trial that he knew about the Facebook page as of February 2023. *See id.* at 163 (Plaintiff's counsel arguing that "[i]t's a factual dispute issue as to whether he knew or not and when he knew it. At one point [Jaber] testified I knew in February, 2023. Yet in October of 2023, in August of 2023, he's saying, no, I didn't.").

Plaintiff's intellectual property director, Rebecca Jones ("Jones") testified that, after discovering the infringing Facebook post, Plaintiff, through counsel, sent an "infringement letter" ostensibly to Defendants, dated November 22, 2021. *Id.* at 62–63. However, the letter was sent to "Villard Food Town, LLC, . . . Attention Faraj Jaber," which are "not the defendants in this case"[4] and which were no longer the owner of the LLC or the doing-business-as designation of the store at that time. *Id.* at 63; *see also id.* at 89–90 (Jones confirming that no notice was sent to Jaber, either personally or as president of NOFAL). Further, the letter was sent to "3127 West Villard Avenue," which is not the correct address for the grocery store, *id.* at 91; Jones stated that she pulled this incorrect address from the Facebook page. *Id.* at 63–64, 70–71, 91. Jones indicated that she believed that the letter was delivered and received based on "the actions of the defendant

---

[4]Villard Food Town was the original defendant but was removed from subsequent amended complaints. ECF Nos. 1, 9, 19.

after the letter was sent"—taking the photo down and changing the name of the page, *see id.* at 121—but admitted that she did not have proof of delivery. *Id.* at 73–74.

Jaber testified that he did not receive the November 2021 infringement letter or any "letter like that at any point in time prior . . . to being sued." *Id.* at 173–74. He stated that he does not know how the Facebook post was removed and the page name changed, and that he never told Amjad or Nofal to remove the post. *Id.* at 176–78. Amjad denied removing the post or changing the name of the page. *Id.* at 120–21. He further stated that the post with Plaintiff's photo pertained to a time-limited sale but that it was not his typical practice to take a post down after the sale that it advertised had expired. *Id.* at 204.

Plaintiff attempted to impeach Jaber by referencing his deposition testimony and contrasting it with Amjad's deposition and trial testimony, *see id.* at 31–32 (Plaintiff's opening statement discussing intention to impeach Jaber), but the Court sustained objections to these lines of questioning and excluded from evidence the photographs that Plaintiff offered to support its questioning. For example, Plaintiff attempted to elicit testimony from Amjad that hookahs were sold in the grocery store, a fact that Jaber denied earlier in the discovery phase, and that his father was "familiar with the products that are sold at the store." *Id.* at 117–18; ECF No. 36-2 at 30–31. Similarly, Plaintiff unsuccessfully attempted to get Amjad to testify about the layout of the store since Jaber denied in the discovery phase that some photographs of the store on the Facebook page in fact depicted the store. ECF No. 57 at 118–19; ECF No. 36-2 at 34–35.

Jaber said that he sells pork chops in his store "every week," and confirmed that when "NOFAL . . . makes money, that's profit that goes to

[him]" and that there are "no other partners that get distributed the money." ECF No. 57 at 124, 181.

### 2.3    Testimony Related to Damages

Jones offered testimony relevant to Plaintiff's damages. Plaintiff maintains a library of about 18,000 stock photos of food; it employs food stylists and photographers to create the images and engages attorneys to copyright the images. *Id.* at 39–40. Plaintiff then licenses these photographs to customers—grocery stores and food delivery services as well as marketing and advertising agencies—on a subscription model. *Id.* at 42–46. The cost of a subscription starts at $999 a month for a minimum subscription term of twelve months; a subscriber who pays these fees may access Plaintiff's entire library of 18,000 images. *Id.* at 44–45.

It is not possible to license a single photo from Plaintiff; in order to access one photo, a customer must enter into at least a twelve-month subscription. *Id.* at 45. The purpose of this twelve-month subscription requirement is to prevent a user from "download[ing] the entire library and tak[ing] all 18,000 images" and then "cancel[ing] tomorrow." *Id.* at 44–45. Jones testified that the advantage Plaintiff offers is "brand identity" and "semi-exclusivity[,] . . . because as part of the terms of use . . . , [customers] have to provide [Plaintiff] with a list of clients," which Plaintiff "monitor[s]" to ensure that customers in the same area are not using the same photographs. *Id.* at 45 (also discussing Plaintiff's efforts to prevent "market saturation").

In the November 2021 infringement letter, Plaintiff demanded that Defendants pay Plaintiff $30,000 in compensation for unauthorized use of the photo and immediately cease use of its photo on the Facebook page. *Id.* at 66, 68. Plaintiff's rationale for asking for $30,000 was based on (1) the cost

of its subscription, (2) the length of time that Plaintiff's photo was on the Facebook page, and (3) an additional penalty for unauthorized use. *Id.* at 68. Under Plaintiff's subscription model—$999 a month for a minimum of 12 months—Defendants owed $11,988 for each year in which the infringing photo appeared on its Facebook page. *Id.* at 68–70. The photo appeared on the page from September 2020 through at least November 2021—i.e., over the span of two years—which under Plaintiff's subscription model would have required two twelve-month subscriptions, totaling roughly $24,000. *Id.* Plaintiff asked for $30,000, "more than what [Defendants] would have had to pay legally" if they used Plaintiff's photo with authorization, because Plaintiff "do[esn't] believe that somebody who steals an image should pay the same as somebody who licenses it properly." *Id.* at 68, 70 ("You're punished by having to pay more.").

When asked on cross-examination to explain her statement in a declaration that the unauthorized use of a single one of Plaintiff's photographs "greatly reduce[s] the value of the library," Jones testified that

> an unauthorized use goes against what we are telling our licensed paying subscribers they are receiving, which is the enforcement of ensuring that only our subscribers are using our photos, we have control over who and where those photos are being used.

*Id.* at 94–95. Jones disagreed that "[t]he value of the library is only reduced if someone is aware that . . . that photograph is a copyrighted photo." *Id.* at 95. Jones further disagreed that Defendants' counsel's calculation—that the photo in the post represented about ".0005 percent"[5] of the value of Plaintiff's photo library—reflected the actual value of the photo. *Id.* at 94.

---

[5]Actually, one photo out of 18,000 is about .005 percent of the library.

Defendants attempted to impeach Jones by pointing out inaccurate statements in her declaration as to who sent the infringement letter, to whom it was sent, and whether any follow-up emails were sent to Defendants. *Id.* at 89–90.

### 2.4    Jury Instructions and Verdict

The Court instructed the jury that, in order to find that "Jaber is [vicariously] liable for NOFAL['s] . . . infringement of [Plaintiff's] copyright," Plaintiff had to "prove, by a preponderance of the evidence," that

> 1.   NOFAL . . . infringed [Plaintiff's] copyright, . . . ;
>
> 2.   . . . Jaber profited from [NOFAL's] infringement . . . ; and
>
> 3.   . . . Jaber had the right and ability to stop or limit the infringement by NOFAL . . . .

ECF No. 49 at 15. With respect to actual damages, the Court instructed the jury that actual damages represent "[a]ctual losses from copyright infringement" and might include, for example:

> • A decrease in the market value of [Plaintiff's] copyrighted work caused by the infringement;
>
> • Profits that [Plaintiff] proves that it would have made without the infringement. Profits are the revenue that [Plaintiff] would have made on sales [it] would have made without the infringement, less any additional expenses [it] would have incurred in making the sales;
>
> • What a willing buyer would reasonably have paid [Plaintiff] to obtain a license to display its copyrighted work.

*Id.* at 16–17. The Court instructed the jury as follows with respect to statutory damages:

> In determining the appropriate amount [of statutory damages] to award, you may consider the following factors:

- The expenses that NOFAL . . . saved and the profits that it earned because of the infringement;

- The revenues that [Plaintiff] lost because of the infringement;

- The difficulty of proving [Plaintiff's] actual damages;

- The circumstances of the infringement;

- Whether NOFAL . . . intentionally infringed [Plaintiff's] copyright; and

- Deterrence of future infringement.

With respect to the factor of intentional infringement: if [Plaintiff] proves that NOFAL . . . willfully infringed [Plaintiff's] copyright, then you may, but are not required to, increase the statutory damage award as high as $150,000.00. Infringement is considered willful if [Plaintiff] proves that NOFAL . . . knew that its actions constituted infringement . . . or acted with reckless disregard of [Plaintiff's] copyright. On the other hand, if NOFAL . . . proves that it innocently infringed [Plaintiff's] copyright, then you may, but are not required to, reduce the statutory damage award to a sum as low as $200.00. Infringement is considered innocent if NOFAL . . . proves that it did not know, and had no reason to know, that its acts constituted infringement.

*Id.* at 17–18.

After hearing all the foregoing evidence, the jury found that NOFAL, the business entity, was responsible for infringing Plaintiff's copyright by posting the photo on the Facebook page, but that Jaber was not vicariously liable for NOFAL's infringement. ECF No. 50 at 1–2. The jury awarded $200 in actual damages and $1,000 in statutory damages. *Id.* at 3. The jury found that NOFAL's infringement was not willful. *Id.*

### 3.    MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff moves under Federal Rule of Civil Procedure 59(e) for the Court to amend its judgment "to conform with the damages evidence

presented at trial"—that is, to replace the jury's $200.00 actual damages award with an award of $23,976.00—and to reverse the jury's determination that Jaber was not vicariously liable for NOFAL's infringement. ECF No. 56 at 6–13. This request fails right out of the gate for legal reasons independent of the trial record, so the Court will address it as a threshold matter.

Rule 59(e) is not an appropriate vehicle to displace the jury's factual findings in the manner Plaintiff seeks. "A motion to alter or amend a judgment is only proper when 'the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 252–53 (7th Cir. 2015) (quoting *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996)).

Plaintiff relies on the latter basis for relief, arguing that "the jury's award of $200.00 in actual damages is the result of a manifest error of law or fact" because it was unsupported by evidence adduced at trial, ECF No. 56 at 7–9, and is inconsistent with damages awards that other district courts have issued in other cases in which Plaintiff recovered damages, *id.* at 9–12 (collecting cases). Plaintiff further argues that "[t]he jury's verdict with respect to [its] vicarious infringement claim against Jaber was . . . unsupported" by the evidence elicited at trial. *Id.* at 12–13.

But as Plaintiff's motion acknowledges, Rule 59(e) "enables a district court to correct *its own* errors." *Id.* at 7 (quoting *Russel v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)) (emphasis added by the Court). The purported errors that Plaintiff identifies are with the jury's verdict, not the Court's judgment, which only memorialized that verdict. Plaintiff has not pointed to any authority, binding or otherwise, that permits the Court under Rule 59(e) to override the jury's findings as to

actual damages and vicarious liability. To the contrary, "a court generally may not increase a jury's determination of damages by additur," *Hibma v. Odegaard*, 769 F.2d 1147, 1154 (7th Cir. 1985) (collecting cases and secondary sources), which is squarely what Plaintiff asks the Court to do. Moreover, overriding the jury's factual findings by way of altering the Court's judgment under Rule 59(e) risks "undermin[ing] the jury's fact-finding role and trampl[ing] on the defendant's [S]eventh [A]mendment right to a jury trial." *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 742 (1st Cir. 1982) (citing *Branson v. Prins Ins., Inc.*, 79 F.R.D. 662, 664 (D.S.D. 1978) and 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2817 at 111 (1973)); *see also* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2024) ("The court may not, however, give relief under Rule 59(e) if this would defeat a party's right to jury trial on an issue.").

Some district courts have entertained motions to alter a jury's factual findings as to liability under Rule 59(e). *See, e.g., Black & Decker, Inc. v. Robert Bosch Tool Corp.*, No. 04 C 7955, 2007 WL 108412, at *5 (N.D. Ill. Jan. 12, 2007) (considering but ultimately denying motion to alter judgment under Rule 59(e), which argued "that the jury committed . . . . manifest errors of fact" in deciding patent infringement claims); *Orlowski v. Eriksen*, No. 07 C 4015, 2009 WL 5183226, at *7 (N.D. Ill. Dec. 30, 2009) (considering but declining under Rule 59(e) to amend jury finding that defendant was liable for excessive force where jury also found that plaintiff's damages were $0); *but see Genesys Cloud Servs., Inc. v. Talkdesk, Inc.*, No. 1:19-CV-00695-TWP-MKK, 2024 WL 4289737, at *13 (S.D. Ind. Sept. 25, 2024) (discussing case law and noting that "amendment of the judgment is not a proper remedy for an

inconsistent verdict"). But Plaintiff has not demonstrated that doing so is proper.

It is also true that federal courts may increase or reduce a jury's damages award where the amount of damages is clear as a matter of law. 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 2815 and 2816 (3d ed. 2024). But Plaintiff has not argued or established that its damages are clear as a matter of law. First, as explained further in the balance of this Order, the Court does not agree with Plaintiff's statement that it "proffered unrebutted testimony/evidence of its damages that the jury completely ignored." ECF No. 56 at 12. Jones testified as to the value offered by Plaintiff's subscription model, and then Defendants' counsel cross-examined her about these statements, her assessment of the value of one photo from the library, and her credibility. *See supra* Section 2.3. This gave the jury more to consider than just Jones's direct testimony.

Second, Plaintiff argues that the damages award should be in line with awards in similar cases to which Plaintiff cites, but Plaintiff fails to acknowledge that all of its cited cases were decided on default judgment relying only on Plaintiff's declarations (and well over half of which awarded statutory, not actual, damages). ECF No. 56 at 9–12 (citing *Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC*, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022) (awarding $23,976.00 in statutory damages); *Prepared Food Photos, Inc. v. 193 Corp.*, No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690, at *15 (N.D. Ill. Sept. 21, 2022) (awarding $35,964.00 in actual damages); *Prepared Food Photos, Inc. v. Miami Beach 411 Corp.*, No. 22-23197-CIVALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003, at *10 (S.D. Fla. Nov. 28, 2022) (awarding $35,964.00 in actual damages); *Prepared Food Photos, Inc. v. Fat Daddy Co.*, No. 22-61671-CIV, 2022

U.S. Dist. LEXIS 216004, at *24 (S.D. Fla. Nov. 29, 2022) (awarding $23,976.00 in statutory damages); *Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.*, No. 22-CV-61883-RAR, 2022 WL 22885965, at *8 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages); *Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc.*, No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037, at *19 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages); *Prepared Food Photos, Inc. v. Chi.-Mkt.-Distribs., Inc.*, No. 1:22-CV-03299-CNS-MEH, 2023 WL 3568164, at *1 (D. Colo. May 19, 2023) (awarding $35,964.00 in actual damages); *Prepared Food Photos, Inc. v. Exec. Dining Club, Inc.*, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages); *Prepared Food Photos, Inc. v. Shadowbrook Farm LLC*, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171, at *15 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages); *Prepared Food Photos, Inc. v. WaDaYaNeed, LLC*, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993, at *15 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages); *Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp.*, No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222, at *13 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages); and *Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc.*, No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023, at *4–5 (D. Md. Mar. 25, 2024) (awarding $47,952.00 in actual damages)).

Even if any of these cases were binding authority, which they are not, Plaintiff does not explain what relevance default judgment decisions have in scrutinizing a jury's award of damages or why they make Plaintiff's actual damages ascertainable as a matter of law. Plaintiff also conveniently omits reference to another case it had before this Court in which the Court

granted default judgment but declined to adopt Plaintiff's proposed damage award because it "ha[d] not explained why its own business model, which is structured to disallow licensing of individual photos and short-term licenses, is the single most accurate measure of its damages." *Prepared Food Photos, Inc. v. Hometown Publ'ns II Inc.*, No. 22-CV-652-JPS, 2023 WL 3439535, at *4 (E.D. Wis. May 12, 2023), *default judgment vacated due to Plaintiff's voluntary dismissal of the case*, No. 22-CV-652-JPS, 2023 WL 11931194 (E.D. Wis. May 31, 2023).

To conclude: Plaintiff has not provided, and the Court is unable to locate, any authority that would allow the Court to amend the judgment and directly displace the jury's findings in the manner Plaintiff suggests. It actually appears that granting Plaintiff's request would offend the Seventh Amendment. In any event, Plaintiff's arguments are, at bottom, challenges to the sufficiency and weight of the evidence and the jury's assessment thereof. The motion admits this by its own terms. ECF No. 56 at 9 ("There is simply no rational basis for the jury's award of $200.00 in actual damages . . . .") and 13 ("[T]hus the jury's verdict [as to vicarious liability] was against the weight of [the] evidence."). These arguments are properly addressed through a motion for a new trial, and the Court construes and addresses them as such *infra* Section 4. *See* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2807 (3d ed. 2024) (noting that a court "may grant a new trial if the size of the verdict is against the weight of the evidence").[6] By invoking Rule 59(e), Plaintiff attempts to

---

[6]If Plaintiff wanted to argue that the jury did not have a legally sufficient evidentiary basis to find that Jaber was not vicariously liable or to find any other amount of damages besides that which Jones testified to—which is essentially what Plaintiff is trying to achieve by asking the Court to amend the jury's verdict in this respect under Rule 59(e)—then Plaintiff could have moved for judgment as

shoehorn its desired result into the Court's judgment, bypassing the jury entirely. This is inappropriate. Plaintiff's request to alter or amend the judgment is not well taken and is therefore denied.

## 4.    MOTION FOR A NEW TRIAL

Federal Rule of Civil Procedure 59(a)(1)(A) provides that the Court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." This is generally accepted to mean that the Court "may only order a new trial if the jury's verdict is against the manifest weight of the evidence, . . . or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (quoting *Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011) (internal quotation marks omitted)).

"In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County*, 650 F.3d 631, 633 (7th Cir. 2011) (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958); *United States v. Washington*, 184 F.3d 653, 658 (7th Cir. 1999); and *Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 798 (7th Cir. 1989)). The Court does not view the evidence in the light most favorable to either party; it instead makes "its own assessment of the evidence presented." *Id.* at 634 (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000)). "While a court

---

a matter of law on these issues under Federal Rule of Civil Procedure 50(a) at the close of evidence. He did not do so, despite invoking Rule 50(a) for a different purpose. *See* ECF No. 57 at 209 (Plaintiff's oral Rule 50(a) motion on fair use defense). This fact further persuades the Court that Rule 59(e) is not the proper basis for Plaintiff's motion.

adjudicating a motion for a new trial may gauge the weight of the evidence and assess witness credibility, a jury verdict should only be overturned if 'no rational jury' could have rendered it." *Hakim v. Safariland, LLC*, 79 F.4th 861, 868 (7th Cir. 2023) (quoting *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012)).

Plaintiff explicitly references only the "manifest weight of the evidence" standard in its motion, ECF No. 56 at 13, but appears to argue that a new trial is warranted as a matter of fairness as well. The Court understands Plaintiff to be arguing for a new trial as follows.

Plaintiff says that it was "severely prejudiced by the Court's evidentiary rulings excluding" evidence of Defendants' statements in discovery that were inconsistent with Jaber's testimony at trial, and that this evidence, if admitted, would have impacted the jury's assessment of vicarious liability, willfulness, and statutory damages. *See id.* at 13–14.

Relatedly, Plaintiff argues that the jury's finding that Jaber was not vicariously liable for NOFAL's infringement was against the manifest weight of the evidence, at least in part because the Court excluded evidence that might have persuaded the jury otherwise. *Id.* at 12–13 (arguing that "the jury's verdict with respect to Plaintiff's vicarious infringement claim against Jaber was . . . unsupported").

Plaintiff further challenges the jury's award of $200 in actual damages as "arbitrary" and without "rational basis," i.e., against the weight of the evidence. *Id.* at 9, 12. As noted *supra* Section 3, although Plaintiff raised them under Rule 59(e), the Court construes the arguments that the jury's finding no vicarious liability and awarding $200 in actual damages were against the weight of the evidence under the standard for granting a new trial.

Finally, Plaintiff briefly suggests that the jury's allegedly improper determination of actual damages, combined with the exclusion of Plaintiff's proffered evidence, led the jury to calculate an improper statutory damages award, and that a new trial is warranted as a matter of fairness for this reason. *See id.* at 14.

Because Plaintiff's arguments about fairness and exclusion of evidence are in many ways intertwined with its argument that the verdict went against the weight of the evidence (and because Plaintiff's motion, frankly, is disorganized), the Court addresses these arguments as appropriate with respect to each substantive verdict question.

### 4.1     Vicarious Liability

"[A] defendant is vicariously liable for copyright infringement if it has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs.*, 983 F. Supp. 1167, 1179 (N.D. Ill. 1997) (quoting *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (internal quotation marks omitted)); *see also* ECF No. 49 at 15. The second element requires "evidence of a direct financial gain or that the 'availability of infringing material acts as a draw for customers.'" *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 825 (N.D. Ill. 2017) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps . . . ." *Ellison*, 357 F.3d at 1079.

The parties' arguments for and against a new trial focus specifically on the second element of vicarious liability: direct financial interest or gain to Jaber from the infringement. ECF No. 56 at 12–14; ECF No. 59 at 5–6.

Page 20 of 32

Plaintiff contends that the jury should have found Jaber vicariously liable for NOFAL's infringement because the evidence at trial showed that Jaber had a financial interest in and "profited generally" from NOFAL's infringing use of the photo on the grocery store's Facebook page. ECF No. 56 at 12–13. It blames the failure of its vicarious liability claim on Defendants' counsel "confus[ing] the issue by arguing (in closing) that there was no evidence of a specific dollar amount of profit received by Jaber with respect to the sale of pork chops." *Id.* at 13; *see also* ECF No. 58 at 71 (relevant portion of Defendants' closing argument). Plaintiff additionally argues that, had the jury been able to consider evidence that the Court excluded, such as "photographs on the Facebook [p]age other than [Plaintiff's photo]," it would have decided differently on this issue. ECF No. 56 at 13–14. The Court disagrees on all fronts. The evidence adduced at trial amply supports the jury's conclusion that Jaber was not vicariously liable for NOFAL's infringement, and the admission of the evidence to which Plaintiff refers would not have changed this result.

First of all, if Plaintiff's counsel had concerns about Defendants' counsel confusing the issue or misstating the applicable legal standard, this post-trial motion should not be the first time that the Court is hearing that concern. Plaintiff's counsel could have provided the jury clarity on the legal standard for vicarious liability by requesting additional jury instructions, *see* ECF No. 48 at 7–8; objecting during the relevant portion of Defendants' closing argument, ECF No. 58 at 71; and/or responding to this portion during his own rebuttal, ECF No. 58 at 76–85. He did none of these things. In any event, the jury was also explicitly instructed that "opening statements and closing arguments by the lawyers for the parties are not evidence," ECF No. 58 at 21, so it is questionable how much stock the jury

put into Defendants' counsel's statement. *See Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 702 (7th Cir. 2007) (noting that there is a "strong presumption that juries follow instructions" (citing *3M v. Pribyl*, 259 F.3d 587, 600 (7th Cir. 2001)).

Moreover, the evidence presented to the jury could have supported a finding that Jaber accrued no direct financial gain from the infringement or that the infringement did not draw customers to the grocery store, just as the evidence equally could have supported a finding to the contrary. Jaber testified that the grocery store sells pork chops every week and that he profits from those sales. ECF No. 57 at 181. Hearing this testimony, the jury could have concluded that Jaber profited generally from the sale of pork chops before, during, *and* after the infringing post—i.e., that the infringing use of Plaintiff's photo had no measurable effect on pork chop sales at the grocery store, and that Plaintiff's assertion that the infringing use of the photo did generate profits for NOFAL and Jaber was mere speculation. The jury could have reasonably concluded that Plaintiff failed to establish that the infringing use of its photo had any specific effect on Defendants' sales that would not have materialized otherwise.

Amjad testified that the post would have reached the grocery store's approximately 1,000 Facebook followers, *id.* at 191, but Plaintiff's counsel made no attempt to determine whether Amjad—who admitted he managed the Facebook page—knew if any of those followers were in fact converted to store shoppers because of the post or if followers generally came into the store because of Facebook posts. *See Ellison*, 357 F.3d at 1079 (noting as relevant to the direct financial benefit element that "there is no evidence that indicates that . . . customers either subscribed because of the available infringing material or canceled subscriptions because it was no longer

available"). Similarly, Plaintiff's counsel presented no evidence that Defendants' sales—of pork chops, specifically, or of merchandise, generally—increased following the Facebook post. This further undermines a conclusion that the infringing use of Plaintiff's photo directly financially benefited NOFAL and Jaber. It is immaterial that Defendants' counsel argued that Plaintiff had not shown that Jaber attained a specific dollar amount of profits, because there was ample evidence from which the jury could reject Plaintiff's own argument that Jaber "profited generally" from the infringement. ECF No. 56 at 13.

In light of the equally reasonable inferences that can be drawn from the trial record, the Court cannot conclude that the jury's verdict on vicarious liability went against the manifest weight of the evidence. Indeed, the Court is inclined to agree that simply because Plaintiff showed that Jaber profited from sales at the grocery store as a general matter does not mean that Plaintiff showed that grocery store sales or Jaber's profits, in fact, increased *because of* the infringement. Without a clear evidentiary consensus as to one element of vicarious liability, the jury was obligated not to find such liability. ECF No. 49 at 15 (requiring proof of all elements to sustain a claim).[7]

---

[7]The parties do not dispute that Jaber had the "right and ability to supervise the infringing activity." *Marobie-FL*, 983 F. Supp. at 1179 (citation omitted). Although the parties elicited much evidence about whether and when Jaber knew about the Facebook page and the extent to which he knew about and controlled NOFAL employees' activities, neither party asked for, and the Court did not provide, further instruction to the jury about what it meant for Jaber to have the "right and ability to stop or limit the infringement by NOFAL." ECF No. 49 at 15.

To the extent the jury questioned whether Jaber, by virtue of his asserted lack of knowledge of the Facebook page and post prior to February 2023, had the right and ability to control the infringing activity, it appears that as a legal matter

The Court next addresses Plaintiffs' contention that the Court improperly excluded evidence. ECF No. 56 at 14. Plaintiff has not adequately explained how it was prejudiced by the exclusion of other photographs from the Facebook page and related testimony, or how the admission of this evidence and testimony might have impacted the jury's analysis as to vicarious liability. The Court agrees that Jaber took inconsistent positions throughout this lawsuit with respect to when he knew about the Facebook page and its affiliation with NOFAL. But, importantly, at trial in front of the jury, he admitted that as of February 2023 he knew of the Facebook page and the infringing post . So even if the Court had permitted the jury to consider evidence contradicting Jaber's earlier denial of familiarity with the Facebook page, the post, or the store and its products, the jury would have been entitled to credit his live testimony—which did him no favors—more than that evidence. It appears that crediting Jaber's trial testimony is exactly what the jury did here, and the Court finds no fault in that decision. Accordingly, the Court finds no merit in Plaintiff's argument that the Court's evidentiary rulings require a new trial.

### 4.2    Damages

Plaintiff's challenge to the jury's award of $200 in actual damages as against the weight of the evidence also fails. "The court is required to give

---

he did. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005) (explaining that the theory of "vicarious liability . . . allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement" (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963) and *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354, 355 (7th Cir. 1929))).

significant deference to the jury's verdict and to limit its inquiry to whether the award is 'monstrously excessive,' whether there is any rational connection between the award and the evidence, and whether the award is roughly comparable to those made in similar cases." *Golden v. City of Chicago*, No. 07 C 6928, 2009 WL 3152359, at *4 (N.D. Ill. Sept. 28, 2009) (quoting *Farfaras v. Citizens Bank and Tr. of Chi.*, 433 F.3d 558, 566 (7th. Cir. 2006)); *see also Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015) (noting that a court may grant a new trial on the basis of a jury's inappropriate damages award when it finds that "there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas" (quoting *G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011))).[8]

"In the context of a plaintiff's contention that a jury verdict is too low, the issue is essentially whether 'the record is capable of supporting the jury's verdict, even if some would interpret that evidence differently.'" *Golden*, 2009 WL 3152359, at *4 (quoting *Blumenfeld v. Stuppi,* 921 F.2d 116, 118 (7th Cir. 1990)). "Typically, a reviewing court will not order a new trial

---

[8]Plaintiff cites the *Adams* standard for the first time in its reply brief. ECF No. 60 at 3 (citing 798 F.3d at 543). Because the Court is construing Plaintiff's Rule 59(e) motion as one for a new trial under Rule 59(a), it will look past the error.

Additionally, Plaintiff cites *Entertainment USA, Inc. v. Moorehead Communications, Inc.* for the proposition that "'[a]n award of damages must be within the scope of the evidence that was presented at trial' and cannot stray beyond that scope." *Id.* (quoting 897 F.3d 786, 793 (7th Cir. 2018)). Plaintiff fails to indicate that *Entertainment USA* was analyzing damages in a breach of contract action under Indiana law and quoting Indiana case law. *Ent. USA*, 897 F.3d at 793 (quoting *Indianapolis City Market Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1026 (Ind. Ct. App. 2009)). Assuming that Plaintiff's counsel actually read the case he cites, he offers no explanation for why Indiana contract law—or an Indiana state court's pronouncement of how a jury may determine damages—should govern the jury's determination of damages in this copyright case under federal law.

on damages 'merely because [it believes] the jury's award was too low. The assessment of damages is particularly within the province of the jury as the trier of fact.'" *Id.* (quoting *Blumenfeld*, 921 F.2d at 118 and *Fenolio v. Smith*, 802 F.2d 256, 259 (7th Cir. 1986)).

Plaintiff emphasizes that "[t]he jury was not free to disregard the only testimony/evidence" it heard with respect to damages: Jones's statement that NOFAL's use of the photo over a period spanning two years would have been subject to Plaintiff's usual licensing fee and structure, totaling $23,976 in subscription fees, and that Plaintiff's other customers pay such fees to use its services. ECF No. 56 at 7–8. Plaintiff insists that this means that it established as an undisputed fact that $23,976 is "[w]hat a willing buyer would reasonably have paid [it] to obtain a license to display its copyrighted work." *Id.* at 8 (citing ECF No. 49 at 17).

In response, Defendant notes that the jury was "entitled to reject [Jones's] testimony" after considering that the copyright for the photo was not registered until 20 years after it was taken, inconsistencies between her declaration and testimony at trial, and Jones's testimony on cross-examination about the relative value of a single photo in Plaintiff's photo library. ECF No. 59 at 4 (noting that Jones "admitted" that the photo represented .005 percent of Plaintiff's total library). Plaintiff contends that "[e]ven if Defendants' counsel's division question amounted to evidence (it did not), that would have resulted in a $.60 verdict for Plaintiff," so the jury's $200 damages award could not have been calculated to reflect the value of a single photo. ECF No. 56 at 9. Plaintiff also argues that any issues on which Jones was "discredited" by her testimony are irrelevant to the issue of damages. ECF No. 60 at 4.

The Court takes strong exception to counsel's suggestion that Plaintiff established as an undisputed fact that a willing buyer would have paid $23,976 to use the single photo at issue in this case. A case that Plaintiff cites, ECF No. 56 at 8, *Epic Systems Corp. v. Attachmate Corp.*, provides helpful guidance on the issue of damages in a copyright case:

> Calculating damages based on 'fair market value' is the preferred approach taken in cases involving the unauthorized use of copyrights . . . . *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) . . . ; *Deltak, Inc. v. Advanced System, Inc.*, 767 F.2d 357, 364 (7th Cir. 1985). . . . In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante "hypothetical negotiation" for the specific type of unlicensed use at issue. *McRoberts Software, Inc.*, 329 F.3d at 566. . . . Some of the factors commonly considered [in this analysis] include "past arms-length licensing practices by the copyright owner or the infringer for similar uses and 'benchmark' licenses by others in the industry may be useful." *Gaylord* [*v. United States*], 777 F.3d [1363,] 1368 [(Fed. Cir. 2015)]. Moreover, "the court is not constrained to accept particular practices of the parties on either side—either to allow owners to charge what they would like to have charged if unconstrained by reality or to shield infringers from paying fair market value for what they took." *Id.* (internal citations and quotations omitted).

No. 15-CV-179-BBC, 2016 WL 3703084, at *2 (W.D. Wis. July 8, 2016). The Court instructed the jury in this case that it could use this fair market value approach in determining actual damages. ECF No. 49 at 16–17.[9]

---

[9]The jury was also permitted to consider "[a] decrease in the market value" of the photo because of the infringement and profits that Plaintiff would have made without the infringement as measures of actual damages. ECF No. 49 at 17.

So the focus is not just whether Jones's testimony about licensing fees is or is not dispositive, but more broadly whether $200 reflects the fair market value of Plaintiff's photo (or some other measure of Plaintiff's damages) based on all the evidence adduced at trial and all reasonable inferences that can be drawn from it.

First, the Court finds that Jones's testimony was *not* entirely dispositive on the matter of actual damages, because accepting it would require the jury to assume facts not in evidence. As one of the cases Plaintiff relies on states, Plaintiff's annual licensing fees are only a "useful proxy" of its actual damages. ECF No. 56 at 9 (quoting *Patriot Fine Foods LLC*, 2022 U.S. Dist. LEXIS 205649, at *10). That district court specifically noted that Plaintiff had not established "whether any licensor ha[d] paid that amount to utilize a single photograph in the library." *Id.* Similarly, here, Plaintiff established that its current customers have agreed to pay its annual licensing fees, but it did not establish that any customer/licensor had paid or would pay that amount to utilize a single photo. Adopting Plaintiff's position would require the jury and the Court to assume a fact that was not established and that, frankly, goes against all reason: that a would-be licensor (in this case, a single family-owned neighborhood grocery store) would pay about $12,000 a year to utilize a single photo.

Second, and more importantly, the jury also could reasonably infer from the evidence that $200 reflects the fair market value of Plaintiff's photo or otherwise is an accurate measure of Plaintiff's damages. As the authorities above suggest, determining the price to which a buyer and seller would have agreed for a one-time use of a single photo is not driven solely by the price that the seller (here, Plaintiff) names, and the jury was not required to make the unreasonable assumption that a licensor in NOFAL's

Page 28 of 32

position would have agreed to Plaintiff's licensing fee. *Epic Sys.*, 2016 WL 3703084, at *2 (noting that the analysis focuses on "the specific type of unlicensed use at issue" (citing *McRoberts Software, Inc.*, 329 F.3d at 566 and *Gaylord*, 777 F.3d at 1368)). Further, just because Plaintiff's licensing model does not permit licensing of single photos does not mean that the cost of a single photo should be discounted as a measure of actual damages. *Id.* ("[T]he court is not constrained to . . . allow owners to charge what they would like to have charged if unconstrained by reality . . . ." (quoting *Gaylord*, 777 F.3d at 1368)).

Plaintiff raises the fair point that the jury did not award the cost of a single photo as its actual damages and instead settled on an amount somewhere between the cost of a single photo and the cost of two twelve-month subscriptions to Plaintiff's library. But the Court finds no basis to suggest that this requires reversal of the jury's damages award and a new trial. It seems likely that the jury was attempting to award Plaintiff more than the cost of a single photo while also penalizing Defendants and recognizing that no willing buyer would have agreed to pay Plaintiff's twelve-month subscription fees for a one-time use of a single photo. This is, after all, essentially what Plaintiff asked for in its November 2021 demand letter: that Defendants pay some amount in excess of what a lawful licensor would have paid, to reflect the unlawful infringement. *See* ECF No. 57 at 70 (Jones testimony regarding the demand letter) ("You're punished by having to pay more."). Or perhaps the jury was attempting to award the value of a single photo, accounting not only for the raw mathematical value of a single photo out of a library of 18,000, but also the time and effort that went into creating, copyrighting, and maintaining the single photo—facts to which Jones testified. These are both appropriate ways of protecting the

interests of the copyright owner while not "shield[ing] infringers from paying fair market value for what they took." *Epic Sys.*, 2016 WL 3703084, at *2 (quoting *Gaylord*, 777 F.3d at 1368).

Alternatively, perhaps the jury found that $200 fairly accounted for the decrease in the market value of Plaintiff's copyrighted work. Jones testified that the use of a single one of Plaintiff's photographs "greatly reduce[s] the value of the library." ECF No. 57 at 94. Perhaps the jury credited this and—although Jones refused to speculate on the degree of reduction in the value of the library—concluded that, despite a single photo having only nominal value when viewed as part of a library of 18,000, the infringing use lowered the value of Plaintiff's library by $200. All of the above-stated conclusions were reasonable ones to draw in light of the evidence and were "within the province of the jury[,] as the trier of fact," to draw. *Blumenfeld*, 921 F.2d at 118 (citation omitted).

It is true, as Plaintiff points out, that "Defendants did not offer any expert testimony concerning the value of a single photograph or the entirety of Plaintiff's library." ECF No. 56 at 7. But Plaintiff does not suggest, let alone demonstrate, that the introduction of such evidence would have changed the jury's assessment of actual damages.[10]

---

[10]To the contrary, it appears that such evidence would, in all likelihood, have supported the jury's damages award rather than undermine it. *See, e.g.*, *Pricing & Subscriptions*, GALLERY STOCK, https://www.gallerystock.com/pricing [https://perma.cc/K6KY-96LH] (last visited Apr. 7, 2025) (providing a one-time use of stock photo in social media starting at $65 "based on factors such as . . . exclusivity[] and geographic distribution"); *Pricing*, SHUTTERSTOCK, https://www.shutterstock.com/pricing (last visited Apr. 7, 2025) (providing a two-pack of stock photos with "enhanced" licensing at $159, an annual subscription starting at $29 per month, or a month-to-month subscription starting at $49 per month); *Plans and Pricing*, GETTY IMAGES, https://www.gettyimages.com/plans-

For all these reasons, the Court finds that the jury's actual damages award was supported by the record and all reasonable inferences to be drawn therefrom. Accordingly, the size of the actual damages award is not a basis to order a new trial.

### 4.3     Statutory Damages and Willfulness

Having concluded that the jury's conclusion that Jaber was not vicariously liable and its award of actual damages were not against the weight of the evidence, the Court can make quick work of Plaintiff's remaining arguments. As a threshold matter, these arguments are brief and therefore likely waived as completely underdeveloped. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006))). But they also have no merit.

Plaintiff says that the Court's decision to exclude evidence of Defendants' statements in discovery that were inconsistent with Jaber's testimony at trial resulted in an unfair trial because it prevented the jury from accurately assessing whether Defendants' conduct was willful and accordingly impacted its $1,000 statutory damages award. ECF No. 56 at 14. The Court disagrees, for reasons already explained: while it is true that Jaber made incorrect statements in discovery, he corrected the mistakes and testified truthfully to the jury even though doing so was not to his benefit, and the jury was entitled to credit that trial testimony. This would be true even if the Court had admitted the evidence to which Plaintiff refers.

---

and-pricing [https://perma.cc/8MWD-N6LF] (last visited Apr. 7, 2025) (providing for download of a single image starting at $199).

Plaintiff's argument that the trial was unfair because the jury's allegedly improper determination of actual damages infected its determination of statutory damages, *id.*, also fails. As already explained, the jury's actual damages award was not improper. Plaintiff says that the actual damages award affected consideration of "the revenues that Plaintiff lost because of the infringement," *id.*, one of several factors guiding the jury's discretion in determining statutory damages. ECF No. 49 at 17. For the same reasons explained above, it is not reasonable to conclude that Plaintiff lost over $24,000 in revenue (licensing fees) from the infringing use of a single photo, because Plaintiff did not establish that $24,000 was the fair market value of this use.

The Court therefore cannot conclude that the trial was unfair to Plaintiff for either of these reasons.

## 5.    CONCLUSION

For all the reasons stated above, Plaintiff's motion for a new trial or to alter or amend the judgment will be denied.

Accordingly,

**IT IS ORDERED** that Plaintiff Prepared Food Photos, Inc.'s motion for a new trial and/or to amend judgment, ECF No. 56, be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 7th day of April, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

# Docket No.

# 80-0

Docket No. 80-0

A72

**UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF WISCONSIN**

**Case No. 22-cv-642-JPS**

PREPARED FOOD PHOTOS, INC.,

      Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a Food Town Mart,

      Defendants.

---

### DEFENDANT NOFAL, LLC'S OPPOSITION TO PLAINTIFF PREPARED FOOD PHOTOS, INC.'S MOTION FOR ATTORNEY'S FEES, DE 64

Defendant Nofal, LLC, pursuant to Civil L. R. 7(b), files this, its memorandum in opposition to plaintiff Prepared Food Photos, Inc.'s motion for attorney's fees, DE 64.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION.................................................................................................. 3
II. FACTS AND PROCEDURAL HISTORY ........................................................... 4
    A. The true value of stock photographs........................................................ 4
    B. Plaintiff's copyright enforcement business............................................. 7
    C. Plaintiff's threats to defendants and their counsel who do not accede
        to its extortionate demands ................................................................. 10
    D. Plaintiff's unreasonable settlement demands to Nofal ................................... 11
    E. Plaintiff's abusive discovery and trial tactics...................................................... 11
III. ARGUMENT....................................................................................................... 12
    A. Framework for fees under the Copyright Act..................................................... 12
    B. The *Fogerty* factors ........................................................................................ 12
        *1. PFP's degree of success was marginal .............................................. 13*
        *2. PFP's approach to copyright litigation is extortionate.................................. 14*
        *3. PFP and its counsel have improper motives, and does not seek relief*
            *for harm it actually suffers................................................................. 15*
        *4. PFP's claim against Jaber was objectively unreasonable ............................ 18*
    C. Plaintiff's alternative basis for fees as discovery sanctions should also
        be rejected........................................................................................... 18
    D. Plaintiff's claimed fees should be reduced......................................................... 19
IV. CONCLUSION ................................................................................................... 20

## I.    **INTRODUCTION**

Nofal, LLC is a small community store. Through the owner's son, Amjad Hamed, it made an honest mistake when he included a photo of pork chops in a Facebook post on an account that co-defendant Sharif Jaber never knew existed until this lawsuit. It generated a mere two likes and no comments. Mr. Hamed testified at his deposition that the Facebook account "wasn't making an impact on [Nofal's] sales." Despite that, Prepared Food Photos sought $30,000 and then filed suit when its demand was not met.

Seeking damages for willful infringement, it prayed for up to $150,000 in damages for its 1990's vintage stock photo. It recovered only $200 from one defendant where the jury did not find the infringement willful. Crucially, this was Prepared Food Photos' first jury verdict, despite having filed at least 285 copyright infringement suits since 2016, together with an untold number of pre-suit settlements.[1] The result it obtained is consistent with what the public (i.e. a jury) understands is the value of stock photography.

It now seeks $69,255 in attorney's fees under the Copyright Act, 17 U.S.C. § 505, as the party prevailing against defendant Nofal, LLC. This Court, however, ought to exercise its discretion and deny PFP its attorney's fees, just as a number of other courts have done where the plaintiff recovered a small sum for infringement of a single photograph on a website. The Copyright Act is not furthered by such an award, including because Prepared Food Photos abuses the law in furtherance of its pecuniary gain rather than recompense for actual harm it suffers.

---

[1] PFP, under its current and former name. <u>See</u> Affirmation of Paul A. Levy, DE 21-1 at ¶ 5 and Ex. C thereto,[1] <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 2:23-cv-160 (E.D. Wash. Nov. 5, 2023), together with a untold number of pre-suit settlements from accused persons and businesses. Some of those demand letters are attached in support hereof. It appears to have morphed once again, now filing suits as "Rockefeller Photos, LLC" in which that entity claims that PFP is a "customer" that it "represent[s]." <u>E.g.</u>, Compl. at ¶ 7, <u>Rockefeller Photos, LLC v. Sussex Meat Packing Inc.</u>, no. 25-cv-188 (D.N.J. Jan. 8, 2025).[1]

## II.     <u>FACTS AND PROCEDURAL HISTORY</u>

Prepared Food Photos filed this lawsuit on May 31, 2022, DE 1, after its demand for $30,000 went unanswered, Exhibit 1. It had discovered that one of three photos on a single Facebook post was its own. <u>Id.</u>, <u>see also</u> Am. Compl., DE 19 at ¶ 18. Its demand letter is consistent with many other demands made by PFP to alleged infringers, nearly all of which seek the same amount, payable within days. It previously licensed its images through iStock Photo, but nine years ago it pivoted to its current business model of revenue-through-enforcement. It uses the risk of a defendant's potential liability for PFP's attorney's fees together with the cost of defense to support its outlandish settlement demands, supported by default judgments predicated on false representations that it only licenses 20,000 photos on a per month basis for $999 and twelve-month minimum subscription. But in all likelihood, Prepared Food Photos doesn't actually license its content on that basis. Instead, it is what many courts have recognized as copyright trolling.

### A.  The true value of stock photographs

Contrary to Prepared Food Photos' incredible assertions about its "licensing" model, the reality is that few, if any, businesses would see value in paying $12,000 per year for 1990's vintage images when newer, better, and less expensive alternatives exist. The actual market value of stock images for online use is well-established. Most businesses seeking marketing collateral to visually enhance their digital presence as well as print materials can acquire perpetual, worldwide, fully paid up, royalty-free, nonexclusive licenses to myriad images for nominal sums.

For example, one of the leading vendors of stock images, iStock Photo, offers "[m]illions of project-ready photos and illustrations" for $2.90 per download when users pay on a periodic basis. See https://www.istockphoto.com/plans-and-pricing (providing ten downloads per month

for $29). Alternatively, for users who do not need ongoing downloads, a 3-credit plan can be had

for $33, which provides users with "3 images or 1 Signature image." Id.



These images are licensed pursuant to iStock's "standard license" that allows customers to "use the file for any personal, business or commercial purposes that aren't otherwise restricted by the license." See https://www.istockphoto.com/help/licenses. It makes clear that such use includes, like the Facebook post here, "in advertising, marketing, apps, websites, social media, TV and film, presentations, newspapers, magazines and books, and product packaging, among hundreds of other uses." Id.

The Court may take judicial notice of these facts. Federal Rule of Evidence 201 provides that a court "must" take judicial notice "if a party requests it and the court is supplied with the necessary information" of facts that are "not subject to reasonable dispute because" it is a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (c)(2). The Court may take judicial notice of the fact of the market for stock photographs as reflected in public offers of licenses to content and pricing for same. LaBella Winnetka, Inc. v. Village of Winnetka, 628 F.3d 937, 944 n.3 (7th Cir. 2010) (taking "judicial notice of the contents of the [defendant's] website"); see also Chesapeake Life Ins. Co. v. Parker, no. 18-cv-643, 2018 WL 4188469, at *3 (E.D. Wis. Aug. 31, 2018) (taking judicial notice of Indian tribe's website). Merely because the merits phase has ended does not preclude the Court from taking judicial notice in these post-judgment proceedings. Fed. R. Evid. 201(d) (a "court may take judicial notice at any stage of the proceeding"). The facts respecting the competitive market for stock images cannot reasonably be disputed.

Important to the Court's analysis now, Prepared Food Photos has actual knowledge of this market because it previously licensed its images through iStock. See Affirmation of Paul A. Levy,

DE 21-1 at ¶ 7,[2] <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 2:23-cv-160 (E.D. Wash. Nov. 5, 2023). Yet in 2016, it removed its images from iStock, and began suing for alleged infringement wherever its photos were found online. PFP's "$999 per month" scheme then materialized at the same moment that it began seeking to enforce its copyrights. That is not a coincidence.

## B. Plaintiff's copyright enforcement business

After concluding that what it was earning from licensing its content in the open marketplace was unsatisfactory, it then began to embark on its current revenue model: litigation. It engaged copyright trolling attorney, Richard Liebowitz, who, after filing hundreds of copyright infringement suits was eventually disbarred. <u>Adlife Marketing & Communications Co., Inc. v. Karns Prime and Fancy Food, Ltd.</u>, no. 21-2074, 2023 WL 179840 (3d Cir. Jan. 13, 2023).

PFP claims its "business model **relies on** its recurring monthly subscription service" Decl. of Rebecca Jones, DE 10-1 at ¶ 6, <u>Prepared Food Photos, Inc. v. 193 Corp.</u>, no. 22-cv-3832 (N.D. Ill. Sept. 14, 2022) (emphasis supplied), yet testified that it "did not begin its subscription model until early 2017," Decl. of Douglas Fleurant, DE 71-1 at ¶ 6, <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 23-cv-160 (E.D. Wash. Mar. 11, 2025).[3] And even then what it produced in <u>Pool World</u> showed that it had only one subscriber in most of the months from 2017 to 2020, no subscribers in 2021 and 2022, and "several" subscribers in 2023 and 2024. Fifth Affirmation of Paul Alan Levy, DE 69-1 at ¶ 17, <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 23-cv-160

---

[2] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.21.1.pdf.
[3] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.71.1.pdf

(E.D. Wash. Feb. 25, 2025).[4] and even from among those subscribers, the amounts arranged from $99 to $750. Id. Based on the information Pool World obtained from PFP (after the defendant obtained an order requiring PFP to disclose the documents), the affidavits submitted by PFP in support of various of its default judgments appear to have been false. Id. at ¶ 19.

The reality is that PFP simply elected to stop competing in the open market in favor of revenue derived through enforcement. Its CEO, Joel Albrizio, admitted that his company had previously "done very well licensing images" but "with the advent of desktop publishing" and the "copy and paste environment" PFP's "subscription licensing was dissipating." Exhibit 1, Joel Albrizio, Public Citizen Toxic Behavior, AttorneyRunAmuck.blog, June 13, 2024.[5] While he attributes his company's declining revenue to "theft" rather than competitive market forces and proliferation of digital photography, he later admitted that PFP was "forced to bid for creative work against competitors" and that "[w]ithout a shift in our business model we would have been forced to close the food image business entirely." Id.

And so, PFP was "advised to put all of [its] images under copyright, then defend our intellectual property rights." Id. That timing coincided with Richard Liebowitz, PFP's former counsel, starting to file thousands of infringement suits in 2016.[6] Stated differently, Prepared Food Photos chose to pursue a business model by which it would earn money from litigation and settlements rather than continuing to compete in a market facing downward pricing pressure. It

---

[4] Available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.69.1.pdf

[5] This website appears to have been created by Mr. Albrizio as a direct consequence of the defensive efforts of Public Citizen and Paul Alan Levy, and included a number of posts attacking him before being taken down.

[6] The earliest known copyright infringement case by Liebowitz was filed on January 23, 2016. Chevrestt v. CBS Broadcasting Inc., no. 16-cv-522 (S.D.N.Y.).

has difficulty understanding how anyone could tell PFP "what to charge or that [its] intellectual property is essentially worthless." Id. But that is the nature of the market: Willing buyers decide the value of a good or service, not the proprietor.

With a view that its works command premium licensing according to its unilateral pricing model, it repeatedly rejects efforts by others to offer "between $200 to $750," based on the open market, and instead pressures accused infringers to pay $20,000. E.g., Affirmation of Justin Nygard, DE 55-12 at 20-20, ¶¶ 2-7, Prepared Food Photos, Inc. v. Pool World, Inc., no. 23-cv-160 (E.D. Wash. Aug. 30, 2024).[7]

PFP seems to fully understand the cost of defense, with Mr. Albrizio attacking a non-profit, Public Citizen, and its attorney, Paul Levy, as a result of their efforts to investigate and expose PFP. Exhibit 1, Joel Albrizio, Paul Alan Levy… His Personal Vendettas Financed by Public Citizen? AttorneyRunAmuck.blog, Jul. 9, 2024 ("[h]ow likely is it they will be willing to pay for [our] attorney fees and costs when they lose"). So too do its attorneys. Exhibit 2 ("If your client wants to spend the resources to see how a judge/jury would rule, my client has no issue.").

Mr. Albrizio also admits that his other company, Bad-Adz digital "could not survive without Prepared Food Photos," id., because it seems that entity too does not make sufficient money in the open market competing against others for digital media creation, see Decl. of Douglas Fleurant, DE 71-1 at ¶¶ 13-15, Prepared Food Photos, Inc. v. Pool World, Inc., no. 23-cv-160 (E.D. Wash. Mar. 11, 2025) (explaining redactions of records produced in discovery, including "monies

---

[7] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.55.12.pdf

from copyright infringement settlements" and "intracompany transfers" between PFP and Bad-Adz).[8]

Plainly, Prepared Food Photos is in the business of litigation—and not just any litigation, *abusive* litigation seeking settlements far beyond what it would normally obtain either in the open market or upon a jury verdict, as this case shows.

## C. Plaintiff's threats to defendants and their counsel who do not accede to its extortionate demands

Consistent with its new post-2016 litigation business model, Prepared Food Photos has likely sent thousands of demand letters over the years. Attached hereto as Composite Exhibit 3 are fourteen demand letters sent by Prepared Food Photos' counsel, constituting just a smattering of what it has sent. Previously, PFP sent demands itself, seeking $8,000 for alleged infringement. Composite Exhibit 4. Through CopyCat Legal, its first settlement demands have consistently been $30,000. Mr. Albrizio fully understands the risk that an accused faces while simultaneously recognizing the true value of its works: "If in the end the judge were to say in an imaginary world the image was worth $1.00, you would still be responsible for tens of thousands in costs and attorney's fees." Ex. 1, Joel Albrizio, <u>Prepared Food Photos To Unsuspecting Paul Alan Levy Clients</u>, AttorneyRunAmuck.blog, January 1, 2024. He also urges recipients of his company's demand letters to "review … the awards given by so many federal courts to Prepared Food photos." <u>Id.</u> What is clear from Mr. Albrizio's public comments is that he feels no restraint to belittle and intimidate anyone that has actually fought PFP's trolling scheme, including cartoon caricatures of Mr. Levy in addition to his personal attacks of defense counsel.

---

[8] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.71.1.pdf

### D. Plaintiff's unreasonable settlement demands to Nofal

Through its boilerplate letter, Prepared Food Photos demanded $30,000 for the presence of a photograph of pork chops on a single Facebook post. Ex. 5. Upon filing suit, it demanded the statutory maximum for willful infringement. Compl., DE 1 at 7. It maintained that demand throughout its pleadings, seeking it from each of the two defendants. Second Am. Compl., DE 19 at 8-9. On November 30, 2023, it then demanded $22,000 in settlement. Ex. 6. After the close of discovery and just prior to trial it demanded $90,000. Ex. 7.

### E. Plaintiff's abusive discovery and trial tactics

As part of its efforts to put the defendants to considerable effort and expense, Prepared Food Photos sought discovery of myriad irrelevant documents and information. It asked Nofal (and Jaber separately) to document each and every license to any "photograph published and/or displayed on any page of" its website, Facebook page, or any other social media, including identifying each licensor, and the amount of each license. DE 77-2 at 19 (Interrogatory No. 6). So too with any media that was removed. Id. at 20 (Interrogatory No. 7). It also sought inadmissible evidence of subsequent remedial measures. Id. at 33 (seeking production of documents after its demand letter was sent regarding "whether any of the photographs published or displayed on the Website, the Facebook Page, and/or any other social media page controlled by Defendants were properly licensed and/or purchased"). But that information was entirely irrelevant and inadmissible under Rule 407. At trial, the Court repeatedly sustained objections to PFP's effort to elicit such irrelevant information. E.g., Trial Tr. at 101-102, 119.

### III.    ARGUMENT

#### A.  Framework for fees under the Copyright Act

A number of non-exclusive factors "inform a court's fee-shifting decisions" in copyright cases, including 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). Each of those factors is "relevant but none determinative." Assessment Techs. of WI, LLC v. Wiredata, Inc., 361 F.3d 434, 436 (7th Cir. 2004). In the Seventh Circuit, "[t]he two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." Id.

In the end, the Court has discretion to deny plaintiff its attorney's fees, as the statute's language is permissive. 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the prevailing party").

The Court's decision on plaintiff's application for attorney's fees is reviewed for abuse of discretion. DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 625 (7th Cir. 2013). Here, the court would not abuse its discretion in denying Prepared Food Photos its fees from defendant Nofal, LLC. But if it does award such fees, they should be reduced.

#### B.  The Fogerty factors

Plaintiff's motion reads more as a discovery dispute than it does a hard-fought win vindicating its case valuation supported by the Fogerty factors. A review of them shows that Prepared Food Photos should not be awarded any attorney's fees because its approach to copyright enforcement does not further the purposes of the Copyright Act. Plaintiffs like PFP do not need

attorney's fees when their expectations about the harm they allegedly suffered are unrealistic and wholly disconnected from the objective market for stock photography. In fact, awarding fees to a copyright troll that recovers a minimal damages award after a full trial would *dis*serve the Copyright Act for the same reasons that a prevailing defendant should be awarded its fees: it is "a disreputable business practice—a form of extortion." Live Face on Web v. Cremation Soc'y of Ill., 77 F.4th 630, 634 (7th Cir. 2023).

### 1. PFP's degree of success was marginal

In this lawsuit, Prepared Food Photos recovered the small sum of $200 from only one of two defendants (Nofal, LLC). Despite demanding an injunction, DE 19 at 8-9, it obtained no equitable relief whatsoever. And it lost a full half of its case, failing on its claim of vicarious copyright infringement against co-defendant Sharif Jaber.

On better facts, courts have denied successful copyright infringement plaintiffs their attorney's fees. See McDermott v. Kalita Mukul Creative Inc., 757 F.Supp.3d 301, 322-27 (E.D.N.Y. 2024) (denying both costs and attorney's fees to the plaintiff after it obtained a $970 statutory damages judgment); Golden v. Michael Grecco Prods., Inc., 524 F. Supp. 3d 52, 59, 67 (E.D.N.Y. 2021) (denying costs because "a statutory damages award in [the plaintiff's] favor [of $750] is more than sufficient to advance the purposes of the Copyright Act" where the plaintiff had demanded $25,000 in settlement pre-suit even though the court found the defendant was "not an innocent infringer").

Where a copyright owner pushes a case through to a jury verdict, dislikes the 3-figure award, and requests a do-over—all the while demanding a settlement more than 450 times (times!) what it actually obtained in the end—denying the litigant its attorney's fees is more than equitable.

Plaintiff seeks to skirt the diminutive amount of its judgment, citing the Ninth Circuit's decision in Glacier Films (USA), Inc. v. Turchin, 896 F.3d 1033, 1038 (9th Cir. 2018), and claiming that the amount of its award is "not relevant." Mot. at 13. That is directly contrary to instructions from the Seventh Circuit: one of the two "most important" factors in deciding whether a prevailing party should be awarded fees under the Copyright Act is "the amount of damages" that party obtained. Assessment Techs., 361 F.3d at 436. Plaintiff's lack of citing controlling law and citing an out of circuit to the contrary should give the Court pause.

While Gonzales v. Transfer Technologies, Inc., 301 F.3d at 610 (7th Cir. 2002) suggests a presumptive entitlement to attorney's fees when the monetary stakes are small, here, that presumption is rebutted by the facts of Prepared Food Photos' conduct and motivations, as well as its frivolous claim against defendant Jaber. PFP does not need to recover fees it never paid to its contingency fee lawyers in order "to enable [it] … to press it[s claim] to a successful conclusion." Assessment Techs., 361 F.3d at 437. Plaintiff copyright firms abound, ready to offer their services on pure contingency to copyright owners, including its lead counsel here. Rarely, if ever, are defendants in the same position. Even where a plaintiff's claim is not frivolous (just "marginal") "us[ing] an infringement suit" and "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively could be a form of copyright misuse." Id. Here, it is "an appropriate sanction" to deny fees to PFP despite its status as a successful copyright plaintiff because it engages in misuse. Cf. id.

## 2. PFP's approach to copyright litigation is extortionate

Plaintiff's approach to enforcing its copyrights is more than unfair, it's extortionate. Plaintiff's CEO, Joel Albrizio, fully understands not only the real-world costs on defendants to oppose claims of copyright infringement, he uses the defendant's risk of having to pay PFP's

attorney's fees in order to demand sums far in excess of the fair market value of the copyrighted works. In no uncertain terms, PFP pursues litigation that may only yield a $1.00 damages judgment with the full expectation that a court will award the attorneys fees for doing so, irrespective of PFP's tactics or settlement demands.

Here, PFP demanded $30,000 based on little more than it knew a Facebook page named "Villard Food Town" had a single post with one of its photos on it. Unlike a pirated movie, the image wasn't being sold, but rather there merely to provide marginal visual enhancement to the accompanying text. It pressed its claim, urging the Court to award it $71,928 in statutory damages by motion, and privately demanded $90,000 in settlement before trial. To Nofal's knowledge, in no contested dispute has a jury or court awarded anything remotely close on similar facts.

It also does not settle its cases by separating its damages from its attorney's fees.[9] By doing so, PFP directly profits from the risk of the defendant's attorney's fee exposure, rather than being made whole for a few dollars' worth of digital media. Declining to award it attorney's fees would further the goals of the Copyright Act by ensuring copyright owners fairly value their cases at the front end of the dispute. If "[t]he primary objective of the Copyright Act is to encourage the production of original" works "for the good of the public," Fogerty, 510 U.S. at 524, then economic incentives for creation should outweigh those for litigation. Every day, stock food photographs are created, licensed, and used. Both authors and the public benefit. But not Prepared Food Photos. It long ago abandoned creating new works in favor of its current business model of litigation.[10]

3. **PFP and its counsel have improper motives, and does not seek relief for harm it actually suffers**

---

[9] At least to Nofal's and its counsel's knowledge.

[10] It has not registered any copyrights with the U.S. Copyright Office since 2017, shortly after it embarked on its current litigation business model.

PFP claims the Court cannot "question Plaintiff's motivation." Mot. at 16. But the evidence of its conduct is unmistakable and readily apparent. The various blog posts from Joel Albrizio well-illustrate the motives underlying this case and the hundreds of others Prepared Food / Bad-Adz / Rockefeller has filed. So too do the attacks against defense counsel, here and elsewhere. Not only are PFP's allegations unprofessional, they're simply untrue. They only serve to highlight its improper motives.

PFP also improperly ascribed excessive weight to default judgments it had obtained in order to bootstrap its unrealistic licensing scheme. The Court recognized as much when it denied plaintiff's Rule 59 motion to alter the judgment. Order, DE 61 at 15-16 (rejecting PFP's argument "that the damages award should be in line with awards in similar cases" because "Plaintiff fails to acknowledge that all of its cited cases were decided on default judgment" which were outcomes in which the courts had "rel[ied] only on Plaintiff's declarations"). It also faulted plaintiff for "conveniently omit[ting] reference to another case it had in this Court" where its proposed damage award was rejected because it hadn't explained why its business was "structured to disallow licensing of individual photographs" which the Court noted was "the single most accurate measure of its damages." Id. (citing Prepared Food Photos, Inc. v. Hometown Publ'ns II Inc., no. 22-cv-652, 2023 WL 3439535, at *4 (E.D. Wis. May 12, 2023)). Similarly, Judge Pepper rejected plaintiff's same $999 per month argument, finding that if the non-appearing defendant had engaged in the hypothetical arms-length negotiation, it would not "have settled on $11,988 as the price for that use." Prepared Food Photos, Inc. v. Currie & Sons LLC, no. 22-cv-1141 (E.D. Wis. Mar. 31, 2024).[11] In more direct terms, that "court [was] not persuaded that $11,988 accurately

---

[11] The decision is unreported, but available at
https://storage.courtlistener.com/recap/gov.uscourts.wied.100746/gov.uscourts.wied.100746.8.0.pdf.

captures the plaintiff's actual damages or should be the starting point for calculating the plaintiff's statutory damages." Id. PFP also omitted any mention of Currie & Sons from its Rule 59 memorandum as well as its motion for summary judgment. Plf.'s Mot. for Final Summary J., DE 36 at 16-18 (seeking $35,964 in actual damages and string-citing its default judgments). It sought even more on a statutory award. Id. at 20 (proffering that $71,928 "is appropriate to compensate the plaintiff for the damages suffered").

Prepared Food Photos should not be rewarded with fast and loose citations to decisions of which it and its counsel are aware that cut against its repeated arguments it is entitled to a five-figure award for a single stock image on a website or social media.

Further illustrating the improper motives is PFP's focus on possible insurance coverage. As a consequence of large default judgments, copyright plaintiffs have become accustomed to very substantial settlement offers from insurance carriers, given their risk aversion. Albrizio, AttorneyRunAmuck.blog, Jul. 9, 2024 (defendants "are profitable corporations that are likely fully insured for these events"); Joel Albrizio, Hakeem Jeffries VS. Paul Alan Levy… Public Citizen? AttorneyRunAmuck.blog, Jul. 22, 2024 (complaining that a defense attorney would spend time and effort "represent[ing] a client rather than have the client report his or her error to their insurer and potentially allow the claim to be settled"); see also Tr. of Proceedings, DE 28 at 9:21-10:4, McDermott v. Kalita Mukul Creative Inc., no. 23-cv-01274 (E.D.N.Y. Sept. 1, 2023) (plaintiff rejected an offer of $2,500 because "insurance is at play in this matter that would be liable for any judgment").[12]

---

[12] Available at
https://storage.courtlistener.com/recap/gov.uscourts.nyed.492904/gov.uscourts.nyed.492904.28.0.pdf

The second <u>Fogerty</u> factor, motivation, weighs against awarding Prepared Food Photos its attorney's fees.

### 4. PFP's claim against Jaber was objectively unreasonable

Next, PFP's claim against co-defendant Sharif Jaber was objectively unreasonable. The Supreme Court has stated that "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability." <u>Meyer v. Holley</u>, 537 U.S. 280, 286 (2003). While Jaber agreed to jury instructions that allowed the jurors to determine whether he "profited from the infringement" that may have been an erroneous jury instruction under Meyer. Nevertheless, the jury found in Jaber's favor on PFP's claim. The testimony by his son, Amjad Hamed, also showed that Jaber was unaware of the existence of the Facebook account when the infringement occurred. Trial Tr., DE 57 at 136-138 ("My father doesn't even know that we have – well, he didn't know that he – we had this Facebook page."). Nevertheless Amjad Hamed testified that he did make the posts for Nofal. <u>Id.</u> at 150. And so the jury's verdict was consistent with that evidence: Nofal was liable for non-willful direct infringement, while Sharif Jaber was not vicariously liable for his son's Facebook activity.

Given the objective unreasonableness of PFP pursuing a claim of vicarious liability against Nofal's sole owner, it should not be awarded its fees in pursuing its action against Nofal. Or at a minimum, its fee award should be considerably reduced.

### C. Plaintiff's alternative basis for fees as discovery sanctions should also be rejected

Apart from seeking fees under the Copyright Act, plaintiff's effort to seek fees under Rule 37 is similarly misplaced. There is good reason not to award fees to a copyright troll where it engaged in abusive discovery irrelevant to what it repeatedly refers to as a "simple" lawsuit.

**D. Plaintiff's claimed fees should be reduced**

Finally, Prepared Food Photos' claimed attorney time should be reduced if not altogether disallowed. The time entries provided by its counsel do not adequately describe the nature or extent of the work performed. Each line on Exhibit 1 represents what plaintiff calls "an aggregate of the contemporaneous daily time records." Mot., DE 64 at 22. These entries, however, include time not reasonably expended in this action.

For example, its counsel spent time fishing "for other photographs" on the Facebook account (0.3), and its boilerplate pleading, nearly identical in all material respects to myriad other lawsuits by PFP and its counsel, billed at 2.6 hours. Even then, its boilerplate shows that it merely replaces a few key facts from one document to the next, occasionally leading to an oversight, as here, where it inadvertently included another (perhaps not actually sued) accused infringer: Little Pine. Second Am. Compl., DE 19 at ¶ 16.

As is typical of discovery requests by copyright plaintiffs represented by CopyCat Legal, PFP sought extensive irrelevant information. It sought to have Nofal (and Jaber separately) catalog each and every license to any "photograph published and/or displayed on any page of" its website, Facebook page, or any other social media, including identifying each licensor, and the amount of each license. DE 77-2 at 19 (Interrogatory No. 6). So too with any media that was removed. <u>Id.</u> at 20 (Interrogatory No. 7). It also sought inadmissible evidence of subsequent remedial measures. <u>Id.</u> at 33 (seeking production of documents after its demand letter was sent regarding "whether any of the photographs published or displayed on the Website, the Facebook Page, and/or any other social media page controlled by Defendants were properly licensed and/or purchased"). Such information is not admissible. Fed. R. Evid. 407. The Court properly and repeatedly sustained objections by defense counsel respecting PFP's efforts to elicit such irrelevant information at the trial. <u>E.g.</u>, Trial Tr. at 101-102, 119. And so the time spent (5.5 hours) supposedly preparing the

boilerplate discovery requests, which its counsel utilizes in its other copyright cases, is not reasonable. So too with respect to the time spent at trial for the same irrelevant questioning.

Other time expended by plaintiff's counsel did not yield anything in this matter. It spent time preparing (and block billing for) subpoenas to Meta Platforms and Associated Wholesale Grocers totaling 2.5 hours. While the Meta subpoena may have identified Amjad Hamed as the owner of the Facebook account, its frolic and detour to Associated Wholesale Grocers went nowhere.

Separately, its motion for summary judgment, totaling 15.9 hours was not reasonable when it relied on cut-and-paste arguments from other of CopyCat Legal's court filings predicating a damages award on default judgments.

That said, PFP commendably eliminated its costs for local counsel, but its request for $69,225 in this case remains excessive based on the limited discovery, limited pre-trial motion practice, and recycled, boilerplate filings. The Court should correspondingly reduce PFP's attorney time.

As concerns PFP's counsel's hourly rates, this Court has knowledge of the prevailing market for plaintiff's civil litigation. PFP admits that its lawyers charge rates corresponding to the South Florida market. Mot. at 20. That may not be the same rates in Southeast Wisconsin.

In the end, any lodestar award should account for boilerplate documents and the local prevailing market rate for plaintiff attorneys.

## IV.    CONCLUSION

Plaintiff prepared Food photos is a quintessential copyright troll. It should not enjoy a presumption that it is entitled to its attorneys fees for pursuing a local small business that would not give into its outrageous settlement demands. It obtained very little from its effort, and it will

stand to gain substantially in the form of a large fees judgment to further perpetuate its *in terrorem* citation to court outcomes on low value stock photography. The Copyright Act is not furthered by such an award, and the court would not abuse its discretion in outright denying plaintiff's attorney's fees. But if it does award them, those fees should be reduced.

　　/s/ Griffin Klema　　　　
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Attorney for Defendants
**KLEMA LAW, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
E-mail: Griffin@KlemaLaw.com

# Docket No.

# 80-5



Copycat Legal PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065

T    877-HERO-CAT (877-437-6228)
E    help@copycatlegal.com

FRE 408 SETTLEMENT COMMUNICATION

November 22, 2021

**VIA FEDERAL EXPRESS**

Villard Foodtown, LLC
Attn: Faraj Jaber
3127 W Villard Avenue
Milwaukee, WI 53209

*RE:    Prepared Food Photos, Inc. v. Villard Foodtown, LLC*

Dear Mr. Jaber:

This law firm represents Prepared Food Photos, Inc. Our client is in the business of licensing high-end, professional photographs for the food industry. Through its website (www.preparedfoodphotos.com), our client offers a monthly subscription service which provides access to/license of tens of thousands of professional images. The rights associated with these images are exclusively owned by our client, and it has spent countless hours and substantial monies in building a business that relies on such exclusive subscription service. The unauthorized use of our client's work deprives our client of much-needed income and forces our client to incur substantial costs (monetary and time) in identifying violators and enforcing its rights.

In 1997, our client created a photograph titled "RawPorkChopCCBnls005_ADL.jpg" (the "Work"). A copy of the Work is exhibited below:

1 | P a g e



The Work was registered by our client with the Register of Copyrights on January 20, 2017 and was assigned Registration No. VA 2-027-172. A copy of the registration certificate is included herewith for your reference.

Our client has identified the foregoing photograph being used by Villard Foodtown, LLC for commercial purposes (at https://www.facebook.com/villardfoodtown/photos/pcb.2818903505099367/2818895218433529 /):



2 | P a g e

To our knowledge, our client ***did not*** authorize Villard Foodtown, LLC to use and/or display the above-referenced photograph. If this is incorrect, or if you believe the photograph was previously licensed through our client or some other party, please contact us immediately with evidence of the prior licensing. If we do not hear from you ***within twenty-one (21) days from the date of this letter***, we will be forced to assume that the photograph was ***not*** properly licensed and will take appropriate legal action to enforce our client's rights.

If the above-described use of our client's photograph was not properly licensed, please understand that such unauthorized use may constitute federal copyright infringement under 17 U.S.C. § 501. In such event, I encourage you to discuss the foregoing with your attorney and/or your insurance carrier as copyright infringement is a serious matter that potentially exposes you to substantial damages/attorneys' fees if we are forced to file a lawsuit on behalf of our client. Keep in mind that attorneys' fees include those you will be forced to incur to mount a defense (if any) ***and*** potentially the attorneys' fees/costs we will incur to pursue the matter (which may be awarded) if our client prevails in court. It is important that you are cognizant of that exposure in deciding how to respond to this letter. Assuming our client prevails in court, 17 U.S.C. § 504(c)(1) provides our client the right to recover statutory damages (for ***each work*** that was infringed) "in a sum of not less than $750 or more than $30,000 as the court considers just." Further, if the infringement was committed "willfully," the court may increase the award of statutory damages (for ***each work*** that was infringed) "to a sum of not more than $150,000."

Courts in the Eleventh Circuit (which covers Florida,[1] Georgia, and Alabama) have not hesitated (where appropriate) to impose substantial statutory damages against copyright infringers. See, e.g. Reiffer v. World Views LLC, No. 6:20-cv-786-RBD-GJK, 2021 U.S. Dist. LEXIS 38860, at *11 (M.D. Fla. Mar. 1, 2021) (awarding $45,000.00 where ***single*** photograph of Dubai's cityscape was infringed); Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *14 (S.D. Fla. Aug. 7, 2020) (awarding $57,600.00 where ***single*** photograph was infringed); CCA & B, LLC v. Toy, No. 1:19-CV-01851-JPB, 2020 U.S. Dist. LEXIS 248303, at *17 (N.D. Ga. Dec. 14, 2020) (awarding $30,000 for sale of counterfeit goods that infringed plaintiff's copyright). Please keep in mind both that the facts of these cases may be different than those here (thus militating in favor of a higher or lower award here) and that the above amounts do not account for attorneys' fees which are also recoverable under the Copyright Act.

Please note that Section 504 of the Copyright Act provides for the recovery of statutory damages (as explained above) or (at our client's election) actual damages plus "any additional

---

[1] Our client is a Florida corporation with its principal place of business in Florida. Our client viewed the subject photograph(s) in Florida and, if forced to file a lawsuit, would proceed by filing in the United States District Court for the Southern District of Florida. See, e.g. Vallejo v. Narcos Prods., LLC, No. 1:18-cv-23462-KMM, 2019 U.S. Dist. LEXIS 198109, at *5 (S.D. Fla. June 14, 2019 ("Copyright infringement is a tortious act, and the Florida long-arm statute confers jurisdiction if the effects of the infringement were felt in the state. Here, it is undisputed that Plaintiff is a resident of Florida, and as such the effects of any alleged copyright infringement would be felt in Florida."); Venus Fashion, Inc. v. Changchun Chengji Tech. Co., No. 16-61752-CIV-DIMITROULEAS/S, 2016 U.S. Dist. LEXIS 194263, at *6-7 (S.D. Fla. Nov. 2, 2016) ("In cases involving online intellectual property infringement, the posting of an infringing item on a website may cause injury and occur in Florida by virtue of the website's accessibility in Florida, regardless of where the offensive material was posted.") (collecting cases).

3 | P a g e

profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Of course, if forced to litigate this matter, we will fully explore the damages issue and make an election that is most beneficial to our client.

While this is a serious matter, it is not particularly complex. The subject photograph was either properly licensed or it was not. If it was, you should notify us immediately of such licensing so that we may inform our client of such. If it was not properly licensed, then the utilization of our client's work(s) without proper authorization constitutes copyright infringement. In that case, we will either resolve this issue in court (allowing a court to decide the matter) or privately between the parties. If the subject use was not authorized, our client hereby makes the following demand:

> ***You shall pay Thirty Thousand Dollars ($30,000.00) within twenty-one (21) days of the date first written above and shall immediately cease and desist from any further use of our client's work(s).***

Please contact us within the above-stated period to arrange for payment. If payment is received as described above, we will forego the filing of a lawsuit. Otherwise, please be aware that our client does not shy away from enforcing its rights in court.

_Corson v. Gregory Charles Interiors, LLC_, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) is instructive with respect to your evaluation of the foregoing settlement demand. I encourage you to read the below-quoted text from that case:

> Corson believes that the scarcity of this work should also be considered in this Court's evaluation. Corson employed several techniques that she perfected over her career including: "professional strobe lighting to give the photos a polished, yet natural look. Most images were shot on a tripod with custom lighting setups that [Corson's] years of experience shooting homes and interiors has allowed [her] to execute with precision and speed. Selecting the proper lenses and aligning the camera properly is crucial to high-end architectural photography." ECF No. [12-2] at 3. Corson "then spent 2 working days processing the approximately 400 photographs using [her] proprietary adjustments to color, contract, levels, etc.; selected [her] favorites; made individual adjustments to those 92 files; then submitted them along with dozens of video clips to [her] editor." _Id._ ***The Court finds Corson's request for a scarcity multiplier of four is appropriate to reflect the fair market value of Corson's Work. See Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc., No. 17-CV-81306-BB, 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at *2 (S.D. Fla. April 23, 2018) (J. Bloom) (applying a scarcity multiplier of six to an infringed work of photography)***; _Leonard v. Stemtech Int'l, Inc._, 834 F.3d 376, 394 (3d Cir. 2016) (affirming a jury verdict of $1.6 million where the sum included a multiplier of three to five times

4 | P a g e

the benchmark because of the scarcity factor of a stem cell image). Therefore, Corson's actual damages are $19,200.00 (the licensing fee over two years times a scarcity multiplier of four).

Corson seeks statutory damages as a result of GCI's willful infringement upon the Work. Willful infringement occurs when the Defendant acts "with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 464 (E.D.Pa.1987)). Here, Corson sent GCI two notices of its infringement prior to the date this suit was filed. Corson's notice letters, dated April 29, 2019 and June 14, 2019, received no response from GCI. Further, GCI received notice of its infringement when it was served the Complaint in this action. [*7] ECF No. [1]. *Notwithstanding prior instances of notice, "this Court may infer that Defendant willfully infringed Plaintiffs' copyrights because of Defendants' default."* *Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (internal citations omitted). I find that GCI's infringing conduct was willful. *Accordingly, Corson is entitled to a tripling of her actual damages of $19,200.00. See Affordable Aerial Photography, Inc., 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at \*2 (finding Defendant's willful infringement entitled the Plaintiff to a trebling of its actual damages)*; *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994) (plaintiffs' request of statutory damages of an amount approximately three times what the defendant would have paid to be licensed "is a modest, just and appropriate award under section 504(c)(1)"). *I thus recommended awarding Corson $57,600.00 in statutory damages.*

As stated above, the facts and circumstances of each case are different. However, using <u>Corson</u> as an example, please keep in mind that our client exclusively operates on a subscription basis. This means that access to one (1) photograph costs the same as access to the entire library of photographs. Our client makes its library available for $999.00 per month (https://preparedfoodphotos.com/featured-subscriptions/) with a minimum subscription of twelve (12) months https://preparedfoodphotos.com/terms.of.use.php. Thus, irrespective of how long you utilized the subject photograph, the ***minimum*** license fee that would have been owed is $11,988.00 ($999.00 x 12 months).

Because courts generally require an infringer to pay a multiple (anywhere from 3x – 6x) of the license fee (as a disincentive and warning to future infringers), actual damages here (***for each photograph***) could range from $35,964.00 - $71,928.00. If the infringement is found to be willful, those actual damages (for each photograph) could then be trebled (in formulating a statutory damages award) to $107,892.00 - $150,000.00 (the maximum allowed for willful statutory damages) (without taking into account any award of costs or prevailing party attorneys' fees).

5 | P a g e

Keep in mind the aforementioned calculations assume use during one (1) annualized licensing period.   Here, it appears that Villard Foodtown, LLC published the subject photograph in September 2020 which would result in two (2) annual licensing periods and increase the potential damages commensurately.

Further, you should provide a copy of this letter to your general liability insurance carrier (if one exists), notify them of our client's demand, disclose the identity of such insurer to us, and provide a copy of the subject insurance policy to us. If you believe we are mistaken as to the allegations of copyright infringement made herein, then we encourage you to provide us with copies of any license or other evidence supporting your authorized use of the subject work(s).

Finally, while removing the unlicensed photograph(s) from commercial display is required, please understand that *removal alone is insufficient to end this matter*.  If your use of the subject photograph is unauthorized, you must contact us to arrange and/or negotiate a payment for your past use.  Otherwise, a lawsuit *will* be filed and our client *will* pursue the above-described damages against you.

You should give this matter your immediate attention.

Very truly yours,

Daniel DeSouza, Esq.
Shareholder – For the Firm

Very truly yours,

James D'Loughy, Esq.
Shareholder – For the Firm

Encl.

6 | P a g e

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kayn Teyle Clayett*

Acting United States Register of Copyrights and Director

**Registration Number**

**VA 2-027-172**

**Effective Date of Registration:**
January 20, 2017

## Title _____

| | |
|---|---|
| **Title of Work:** | ADLIFE-COLLECTION-011717 |
| **Previous or Alternate Title:** | Group registration of photos published 01-04-1997 through 12-05-1997; about 250 photos total. |
| **Content Title:** | ChickenThighs3FSHC1306, 02-05-1997; ClamChowder3FSHC1301, 10-05-1997; CoconutCreamPieFSHC1306, 02-05-1997; EggBacon007_ADL, 01-15-1997; |

EggSteak001_ADL, 03-22-1997;
GranolaYogurtBowl003_ADL, 07-13-1997;
HoagieSandwich3FSHC1305, 01-14-1997;
Omelette003_ADL, 04-09-1997;
PorkChopsGrilled3FSHC1305, 02-05-1997;

RoundRoast3FSHC1303, 11-16-1997;
HamBoiledDinner001_ADL, 04-08-1997;
HamDinner001_ADL, 11-05-1997;
HamDinner002_ADL, 08-18-1997;
HamDinner003_ADL, 08-18-1997;

HamDinner004_ADL, 08-18-1997;
HamDinner005_ADL, 02-08-1997;
HamDinner006_ADL, 05-05-1997;
HamSlicedDinner001_ADL, 11-10-1997;
HamSpiralDinner001_ADL, 08-18-1997;

HamSpiralDinner002_ADL, 08-18-1997;
HamSpiralDinner003_ADL, 01-18-1997;
HamSpiralDinner004_ADL, 08-18-1997;
HamSpiralDinner005_ADL, 08-18-1997;
HamSpiralDinner006_ADL, 10-21-1997;

HamSpiralDinner007_ADL, 11-15-1997;
PorkChopDinner001_ADL, 04-08-1997;
PorkChopDinner002_ADL, 04-08-1997;
PorkChopDinner003_ADL, 09-25-1997;

PorkMilaneseDinner001_ADL, 02-10-1997;
PorkMilaneseDinner002_ADL, 04-25-1997;
PorkMilaneseDinner003_ADL, 04-25-1997;

Case 2:22-cv-00642-JPS     Filed 06/30/25     Page 7 of 13     Document 80-5     A101

PorkMilaneseDinner004_ADL, 04-24-1997;
PorkMilaneseDinner005_ADL, 04-25-1997;

PorkSausageItalianSweet005_ADL, 08-18-1997;
PorkSausageItalianSweet006_ADL, 08-18-1997;
PorkSausageItalianSweet007_ADL, 08-18-1997;
PorkSausageItalianSweet008_ADL, 08-18-1997;
PorkSausageItalianSweet009_ADL, 08-05-1997;

PorkSausageItalianSweet010_ADL, 06-18-1997;
PorkSausageItalianSweet011_ADL, 04-09-1997;
PorkSausageItalianSweet012_ADL, 08-05-1997;
PorkSausageItalianSweet013_ADL, 07-18-1997;
PorkSausageItalianSweet014_ADL, 06-10-1997;

PorkSausageItalianSweet015_ADL, 05-05-1997;
PorkSausageItalianSweet016_ADL, 09-17-1997;
PorkSausageItalianSweet017_ADL, 09-20-1997;
PorkSausageItalianSweet018_ADL, 04-08-1997;

PorkSausageItalianSweet019_ADL, 11-23-1997;
PorkSausageItalianSweet020_ADL, 05-16-1997;
PorkSausageItalianSweet021_ADL, 05-05-1997;
PorkSausageItalianSweet022_ADL, 11-15-1997;
PorkSausageItalianSweet023_ADL, 08-24-1997;

PorkSausageItalianSweet024_ADL, 08-24-1997;
PorkSausageItalianSweet025_ADL, 09-17-1997;
PorkSausageKeilbasa001_ADL, 08-18-1997;
PorkSausageKielbasa002_ADL, 09-05-1997;
PorkSausageKielbasa003_ADL, 08-18-1997;

PorkSausageKielbasa004_ADL, 10-05-1997;
PorkSausageKielbasa005_ADL, 07-12-1997;
PorkSausageKielbasa006_ADL, 05-20-1997;
PorkSausageKielbasa007_ADL, 07-12-1997;
PorkSausageKielbasa008_ADL, 04-25-1997;

PorkSausageKielbasa009_ADL, 11-17-1997;
PorkSausageKielbasa010_ADL, 03-05-1997;
PorkSausageKielbasa011_ADL, 10-05-1997;
PorkSausageKielbasa012_ADL, 11-15-1997;
PorkSausageKielbasa013_ADL, 03-05-1997;

PorkSausageKielbasa014_ADL, 05-12-1997;
PorkSausageKielbasa015_ADL, 05-12-1997;
PorkSausageKielbasa016_ADL, 05-12-1997;
PorkSausageKielbasa017_ADL, 11-19-1997;

PorkSausageKielbasa018_ADL, 11-19-1997;
PorkSausageKielbasa019_ADL, 11-19-1997;
PorkSausageKielbasa020_ADL, 11-19-1997;
PorkSausageKielbasa021_ADL, 03-12-1997;
PorkSausageKielbasa022_ADL, 04-05-1997;

PorkSausageKielbasa023_ADL, 10-05-1997;
PorkSausageKielbasa024eps_ADL, 05-12-1997;
PorkSausageKnockwurst001_ADL, 08-18-1997;

PorkSausageLinguica001_ADL, 03-27-1997;
PorkSausageLink001_ADL, 04-26-1997;

PorkSausageLink002_ADL, 04-26-1997;
PorkSausageLoop001_ADL, 06-05-1997;
PorkSausagePatty001_ADL, 08-18-1997;
PorkSausagePatty002_ADL, 05-09-1997;
PorkSausagePatty003_ADL, 05-09-1997;

PorkSteak001_ADL, 11-16-1997;
PorkSteak002_ADL, 11-16-1997;
PorkStirFry001_ADL, 03-11-1997;
PorkTriTip001_ADL, 11-21-1997;

PorkTriTip002_ADL, 11-21-1997;
RawBacon001_ADL, 01-11-1997;
RawBacon002_ADL, 01-11-1997;
RawHamShoulder001_ADL, 08-16-1997;
RawHamShoulder002_ADL, 09-27-1997;

RawHamShoulderWhole001_ADL, 01-22-1997;
RawHamShoulderWhole002_ADL, 08-16-1997;
RawHamSmokedShoulder001_ADL, 08-16-1997;
RawHamSmokedShoulder002_ADL, 08-16-1997;
RawHamSteak001_ADL, 08-16-1997;

RawHamSteak002_ADL, 11-23-1997;
RawPigEar001_ADL, 11-15-1997;
RawPigKnuckle001_ADL, 03-05-1997;
RawPorkAsst001_ADL, 02-05-1997;
RawPorkBladeMeat001_ADL, 05-11-1997;

RawPorkChitterling001_ADL, 08-16-1997;
RawPorkChopAsst001_ADL, 03-05-1997;
RawPorkChopBnIn001_ADL, 08-16-1997;
RawPorkChopBnIn002_ADL, 08-16-1997;
RawPorkChopBnIn003_ADL, 08-16-1997;

RawPorkChopBnIn004_ADL, 08-16-1997;
RawPorkChopBnIn005_ADL, 01-22-1997;
RawPorkChopBnIn006_ADL, 04-12-1997;
RawPorkChopBnIn007_ADL, 11-16-1997;
RawPorkChopBnInAsst001_ADL, 08-16-1997;
RawPorkChopBnInAsst002_ADL, 08-16-1997;
RawPorkChopBnInAsst003_ADL, 08-16-1997;
RawPorkChopBnInAsst004_ADL, 08-16-1997;
RawPorkChopBnInAsst005_ADL, 08-16-1997;

RawPorkChopBnInGrill001_ADL, 08-16-1997;
RawPorkChopBnlsAsst001_ADL, 08-16-1997;
RawPorkChopBnlsAsst002_ADL, 08-09-1997;
RawPorkChopCCBnIn001_ADL, 04-05-1997;
RawPorkChopCCBnIn002_ADL, 08-16-1997;

RawPorkChopCCBnIn003_ADL, 08-16-1997;
RawPorkChopCCBnIn004_ADL, 08-16-1997;
RawPorkChopCCBnIn005_ADL, 11-19-1997;
RawPorkChopCCBnls001_ADL, 11-05-1997;

Page 3 of 7

RawPorkChopCCBnls002_ADL, 08-16-1997;

RawPorkChopCCBnls003_ADL, 07-15-1997;
RawPorkChopCCBnls004_ADL, 08-16-1997;
RawPorkChopCCBnls005_ADL, 10-05-1997;
RawPorkChopCCBnls006_ADL, 01-11-1997;

RawPorkChopCCBnls007_ADL, 06-16-1997;
RawPorkChopCCBnls008_ADL, 06-16-1997;
RawPorkChopCCBnls009_ADL, 06-16-1997;
RawPorkChopCCBnls010_ADL, 06-05-1997;
RawPorkChopPorterhouse001_ADL, 02-24-1997;

RawPorkChopStuffed002_ADL, 08-16-1997;
RawPorkChopStuffed003_ADL, 08-16-1997;
RawPorkChopStuffed004_ADL, 01-12-1997;
RawPorkCutlet001_ADL, 11-05-1997;
RawPorkCutletSirloin001_ADL, 08-16-1997;

RawPorkCutletSirloin002_ADL, 05-26-1997;
RawPorkCutletSirloin003_ADL, 08-16-1997;
RawPorkCutletSirloin004_ADL, 08-16-1997;
RawPorkCutletSirloin005_ADL, 05-05-1997;
RawPorkGround001_ADL, 08-16-1997;
RawPorkGround002_ADL, 08-16-1997;

RawPorkHamHock001_ADL, 01-27-1997;
RawPorkHamHock002_ADL, 09-23-1997;
RawPorkKabob001_ADL, 08-16-1997;
RawPorkKabob002_ADL, 08-16-1997;

RawPorkLoin001_ADL, 11-05-1997;
RawPorkLoin002_ADL, 08-16-1997;
RawPorkLoin003_ADL, 08-16-1997;
RawPorkLoin004_ADL, 11-05-1997;
RawPorkLoinBnls001_ADL, 08-16-1997;

RawPorkLoinBnls002_ADL, 08-05-1997;
RawPorkLoinBnls003_ADL, 11-17-1997;
RawPorkLoinBnls004_ADL, 11-16-1997;
RawPorkLoinBnlsRoast001_ADL, 11-17-1997;

RawPorkLoinBnlsRoast002_ADL, 05-15-1997;
RawPorkLoinCC001_ADL, 11-05-1997;
RawPorkLoinCCHalf001_ADL, 11-05-1997;
RawPorkLoinCCStuffed001_ADL, 03-05-1997;
RawPorkLoinStuffedRoast001_ADL, 11-05-1997;

RawPorkLoinStuffedRoast002_ADL, 11-05-1997;
RawPorkLoinWhole001_ADL, 11-10-1997;
RawPorkNeckBone001_ADL, 02-08-1997;
RawPorkNeckBone002_ADL, 02-08-1997;
RawPorkNeckBone003_ADL, 02-08-0997;

RawPorkPancetta001_ADL, 08-25-1997;
RawPorkPancetta002_ADL, 08-25-1997;
RawPorkPigFeet001_ADL, 05-19-1997;
RawPorkPigFeet002_ADL, 01-27-1997;

RawPorkRibBabyBack001_ADL, 08-16-1997;
RawPorkRibBellie001_ADL, 08-16-1997;
RawPorkRibBnlsSpare001_ADL, 08-16-1997;
RawPorkRibBtchrBlkRed001_ADL, 08-26-1997;
RawPorkRibButtBnls001_ADL, 08-16-1997;

RawPorkRibButtCntyStl001_ADL, 08-26-1997;
RawPorkRibCntyStl001_ADL, 08-16-1997;
RawPorkRibCntyStl002_ADL, 11-23-1997;
RawPorkRibCntyStl003_ADL, 11-23-1997;
RawPorkRibCntyStl004_ADL, 08-24-1997;

RawPorkRibCntyStl005_ADL, 08-24-1997;
RawPorkRibCntyStl006_ADL, 08-24-1997;
RawPorkRibCntyStlBnIn001_ADL, 08-16-1997;
RawPorkRibCntyStlBnIn002_ADL, 05-05-1997;
RawPorkRibCntyStlBnIn003_ADL, 08-16-1997;

RawPorkRibCntyStlBnls001_ADL, 08-16-1997;
RawPorkRibCntyStlBnls002_ADL, 08-05-1997;
RawPorkRibCntyStlBnls003_ADL, 03-05-1997;
RawPorkRibCntyStlBnls004_ADL, 08-16-1997;
RawPorkRibCntyStlLoin001_ADL, 08-16-1997;

RawPorkRibPorketta001_ADL, 08-16-1997;
RawPorkRibSpare001_ADL, 08-16-1997;
RawPorkRibSpare002_ADL, 08-16-1997;
RawPorkRibSpare003_ADL, 08-16-1997;

RawPorkRibSpare004_ADL, 11-24-1997;
RawPorkRibSpare006_ADL, 08-16-1997;
RawPorkRibSpare007_ADL, 12-05-1997;
RawPorkRibSpare008_ADL, 08-16-1997;
RawPorkRibSpare009_ADL, 08-16-1997;

RawPorkRoastBnls001_ADL, 08-16-1997;
RawPorkRoastBnls002_ADL, 05-05-1997;
RawPorkRoastButt001_ADL, 08-16-1997;
RawPorkRoastButt002_ADL, 01-12-1997;
RawPorkRoastButt003_ADL, 04-24-1997;

RawPorkRoastButtWhole001_ADL, 02-16-1997;
RawPorkRoastCCBnIn001_ADL, 08-16-1997;
RawPorkRoastCCBnIn002_ADL, 08-16-1997;
RawPorkRoastCCBnIn003_ADL, 08-16-1997;
RawPorkRoastCCBnIn004_ADL, 08-16-1997;

RawPorkRoastCCBnIn005_ADL, 08-16-1997;
RawPorkRoastCCBnls001_ADL, 08-16-1997;
RawPorkRoastCrown001_ADL, 08-16-1997;
RawPorkRoastCrown002_ADL, 12-05-1997;

RawPorkRoastCrown003_ADL, 12-05-1997;
RawPorkRoastCrown004_ADL, 01-20-1997;
RawPorkRoastCrown005_ADL, 10-05-1997;
RawPorkRoastLoinBnIn001_ADL, 05-20-1997;
RawPorkRoastLoinBnIn002_ADL, 08-16-1997;

RawPorkRoastStuffed001_ADL, 02-05-1997;
RawPorkRoastStuffed002_ADL, 03-05-1997;
RawPorkRoastWholeBnIn001_ADL, 08-16-1997;
RawPorkRollup001_ADL, 08-16-1997;
RawPorkSausageBrats001_ADL, 07-23-1997;

RawPorkSausageBreakfast001_ADL, 08-16-1997;
RawPorkSausageItalianHot001_ADL, 07-20-1997;
RawPorkSausageItalianHot002_ADL, 12-05-1997;
RawPorkSausageItalianHot003_ADL, 08-21-1997;
RawPorkSausageItalianHot004_ADL, 11-05-1997;

RawPorkSausageItalianSweet001_ADL, 08-16-1997;
RawPorkSausageItalianSweet002_ADL, 03-05-1997;
RawPorkShreddedBBQ001_ADL, 07-27-1997;
RawPorkStewMeat001_ADL, 11-25-1997;
RawPorkStewMeat002_ADL, 01-12-1997;

RawPorkStewMeat003_ADL, 01-12-1997;
RawPorkStewMeatCubeSteak001_ADL, 08-16-1997;
RawPorkStripStirFry001_ADL, 08-16-1997;
RawPorkTenderloin001_ADL, 08-16-1997;

RawRibStLouisBnIn001_ADL, 11-27-1997;
RawRibStLouisBnIn002_ADL, 11-27-1997;
RawRibStLouisBnIn003_ADL, 11-27-1997;
RawRibStLouisBnIn004_ADL, 11-27-1997;
RawRibStLouisBnIn005_ADL, 11-27-1997;

RawRibStLouisBnIn006_ADL, 11-27-1997;
RawRibStLouisBnIn007_ADL, 11-27-1997.



## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 1997 |
| **Date of 1st Publication:** | January 04, 1997 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| **Author:** | ADLIFE Marketing & Communications Co., Inc., Employer-for-Hire of Joel Albrizio |
| **Author Created:** | photograph |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Adlife Marketing & Communications Co. Inc. |
| | 38 CHURCH ST, PAWTUCKET, RI, 02860-3906, United States |

Page 6 of 7

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | SHORES & OLIVER PC |
| **Name:** | Milton M. Oliver. Esq. |
| **Email:** | milton.oliver@shoresoliver.com |
| **Telephone:** | (774)521-3058 |
| **Alt. Telephone:** | (781)910-9664 |
| **Address:** | PO BOX 790 |
| | COTUIT, MA 02635-0790 United States |

## Certification

| | |
|---|---|
| **Name:** | MILTON M. OLIVER, Esq. |
| **Date:** | January 20, 2017 |
| **Applicant's Tracking Number:** | 873-057-344 |

| | |
|---|---|
| **Correspondence:** | Yes |
| **Copyright Office notes:** | Regarding publication: range of publication dates is 1/04/1997 to 12/05/1997 |

# Docket No.

# 80-6



**From:** Daniel DeSouza <dan@copycatlegal.com>
**Sent:** Monday, November 20, 2023 5:01 PM
**To:** Timothy Steinle <timothy.steinle@tshglaw.com>
**Cc:** Efrosini Cruz <efrosini@copycatlegal.com>; Christine Zaffarano <christine@copycatlegal.com>
**Subject:** RE: Prepared Foods 22CV642 Eastern District of Wisconsin

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Tim,

Spoke with PFP. Given the extra work that has been done, including the costs for deposition of your client and the various subpoenas that have been served, I'm told <mark>their settlement number is $22,000.</mark>

*e*

# Docket No.

# 80-7

**Docket No. 80-7**

**Timothy Steinle**

| | |
|---|---|
| **From:** | Daniel DeSouza <dan@copycatlegal.com> |
| **Sent:** | Monday, October 21, 2024 3:40 PM |
| **To:** | Timothy Steinle |
| **Cc:** | Jeff Leavell; Efrosini Cruz |
| **Subject:** | Prepared Food v Nofal and Jaber - for settlement purposes only |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Tim,

Did what I could, but PFP seems to prefer the trial path at this point. Best I could do from them was $90,000 and that is only because I said they needed to give me a number to convey (they didn't want to demand anything at this point).

- Dan

1

Case: 26-1757    Document: 17    Filed: 07/22/2026    Pages: 166

# Docket No.

# 83

Docket No. 83

A112

A113

**UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF WISCONSIN**

**Case No. 22-cv-642-JPS**

PREPARED FOOD PHOTOS, INC.,

    Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a FoodTownMart,

    Defendants.

---

## <u>DEFENDANT SHARIF JABER'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT</u>

Defendant Sharif Jaber, pursuant to Fed. R. Civ. P. 54, 17 U.S.C. § 505, and the Court's

order extending the time for filing this motion, DE 81, files this motion for attorney's fees together

with supporting memorandum of law. He separately files his bill of costs.

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 3

FACTS & PROCEDURAL HISTORY ....................................................................... 3

ARGUMENT ............................................................................................................... 7

I.     THE COPYRIGHT ACT, 17 U.S.C. § 505 PROVIDES FOR ATTORNEY'S FEES TO THE JABER AS A PREVAILING PARTY ........................................... 7

    A.    Standard for attorney's fees under the Copyright Act to a prevailing defendant ........................................................................................................ 7

        1.    *Entitlement to fees under the Copyright Act* ...................................... 8

        2.    *Standard of review in an appellate court* ............................................ 8

    B.    Jaber is a prevailing party ................................................................... 9

        1.    *The Supreme Court has drawn a distinction between its prevailing plaintiff cases and prevailing defendant cases* ................................... 9

        2.    *Jaber prevailed against plaintiff's claim against him* ...................... 10

    C.    The Copyright Act's purposes are served by awarding Jaber his attorney's fees ...................................................................................... 11

        1.    *Frivolousness* ................................................................................... 12

        2.    *Motivation* ....................................................................................... 14

        3.    *Objective unreasonableness* ............................................................ 16

        4.    *Compensation and deterrence* ......................................................... 17

        5.    *Degree of success / Strength of Jaber's case* ................................... 19

        6.    *Amount of Damages* ......................................................................... 19

        7.    *Settlement offers* .............................................................................. 20

        8.    *Balancing the factors* ...................................................................... 20

II.    JABER'S FEES ARE REASONABLE ............................................................ 21

    A.    The lodestar calculation ...................................................................... 21

    B.    Jaber's fees & taxable costs ................................................................ 22

        1.    *Reasonable hourly rates* .................................................................. 23

        2.    *The timekeepers' requested hours, and each task undertaken by the timekeeper during those hours* ........................................................ 24

        3.    *The lodestar amount* ....................................................................... 24

        4.    *Taxable costs* ................................................................................... 25

CONCLUSION .......................................................................................................... 25

## INTRODUCTION

Nofal, LLC is a small community grocery store owned by Sharif Jaber, and known as "FoodTown." The store became liable for copyright infringement when Amjad Hamed, an employee of FoodTown, made an honest mistake when he included a photo of pork chops in a Facebook post on an account that Jaber never knew existed until this lawsuit. But that post, and no other Facebook posts had any discernable effect on sales at FoodTown. Still, Prepared Food Photos pressed a theory of vicarious liability against Jaber. It did so in order to apply immense pressure for both Jaber and his business to jointly pay an unapportioned settlement far in excess of the harm actually caused by the fleeting use of the pork chops photo.

Discovery revealed that its claim against Jaber was unsustainable, where there was no evidence of a causal relationship between the one Facebook post and the earnings Jaber drew from operating his business. PFP maintained an unreasonable claim, using unreasonable litigation tactics, motivated by pecuniary gain rather than using the courts to see justice done. It obtained a nominal sum of $200 from FoodTown, and lost its claim against Jaber.

Jaber, as a prevailing defendant, now enjoys a strong presumption of entitlement to his attorney's fees, while Prepared Food Photos faces a steep uphill battle to overcome that presumption. On the facts of this case, and PFP's broader conduct as a serial copyright enforcer, it cannot. It would not be an abuse of discretion to award him his "full costs," as the Copyright Act provides.

## FACTS & PROCEDURAL HISTORY

This suit began like hundreds of other Prepared Food Photos suits: a settlement demand for $30,000 payable within 21 days. DE 80-5. The basis? A single Facebook post with a 1990's era stock photograph of fresh pork chops. Believing that FoodTown had obtained tens of thousands of dollars of value in that onetime use, it sued, seeking $150,000, the maximum statutory award under

the Copyright Act. Compl., DE 1 at 7. According to PFP, all "professional stock photography" is "not intended for public use" such that anyone using such an image should be "on notice" that they must have a license. Id. at ¶ 18; ¶ 28 (alleging everyone "clearly understands that professional photography … cannot simply be copied from the internet"). PFP subsequently learned Sharif Jaber was the owner of FoodTown, and filed an amended complaint against him individually on a theory that he was personally liable for direct infringement. Am. Compl., DE 9. Upon learning that FoodTown is the trade name of Nofal, LLC, it then named that entity as a defendant while changing its claim against Jaber from direct to indirect infringement. Second Am. Compl., DE 19. What was its theory? That Jaber is the sole owner of Nofal, and therefore had "the right and ability to control the infringing acts of NOFAL LLC." Id. at ¶ 40. Prepared Food Photos further alleged Jaber was liable because he "obtained a direct financial benefit from NOFAL LLC's infringing activities," but without any factual support other than its further allegation that Jaber "receives profit distributions" from FoodTown. Id. at ¶ 42. Despite its pleading, it never pursued evidence of that "direct financial benefit." Instead, its entire case against Jaber hinged exclusively on his status as the owner of Nofal, and little more.

Rather than carefully pursue evidence probative of a direct causal nexus between the one Facebook post and money Jaber received, it spent considerable effort seeking to discredit Jaber. See generally Dep. Tr. of Amjad Hamed, DE 64-9 at 16-18, 30-45 (extensive questioning on hookahs).

After learning that the Facebook account was operated by Amjad Hamed, PFP deposed him. He testified that it was his "older brother" who "was the one in charge of" the Facebook page before him. Id. at 15:8. Indicative of Jaber's lack of knowledge, Hamed also testified that Jaber did not give him any instructions on how to "run[] the Facebook page." Id. at 23:14. Nor did Jaber

give his son "any instructions about how to find photographs for the Facebook page." Id. at 25:18. And no one else had access or control over the Facebook account other than Hamed and his brother. Id. at 26:3. Despite getting basic information about a sale that might be going on, Hamed took it upon himself to create the Facebook posts. Id. at 45:11.

Where Prepared Food Photos hung its hat was on a vague question about whether Jaber was "aware" that Hamed was "running the Facebook account for the store." Id. at 45:18. Notably absent from the question was any temporal component about *when* Jaber may have been aware of the Facebook account. Despite answering the generic question affirmatively, Hamed nevertheless said his father did not ask him to put any content on Facebook. Id. at 45:21. Nor did Hamed show his father any posts after they were made. Id. at 45:24 -46:2. And most critically, Hamed testified that the Facebook posts "wasn't making an impact while I was posting or advertising for people to see. It wasn't making an impact on our sales."

Despite his testimony, Prepared Food Photos continued to maintain its claim of vicarious liability against Jaber. It never sought discovery from either Nofal or Jaber to link the Facebook post to revenue earned. Instead, it improperly premised its entire case on the generic relationship that Jaber owned Nofal, LLC, and consequently that he had control over the store's operations. But its prima facie case of vicarious liability required it to also show that Jaber had a "direct" financial interest in the singular Facebook post itself. See VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 746 (9th Cir. 2019) (to prevail on a vicarious liability claim, a plaintiff must prove that the defendant "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity"); EMI Christian Music Grp., Inc. v. MP3Tunes, LLC, 844 F.3d 79, 99 (2d Cir. 2016) ("Vicarious liability for copyright infringement may arise only when the defendant had the 'right and ability to supervise [that] ); CoStar Group, Inc. v. LoopNet, Inc., 373

F.3d 544, 549 (4th Cir. 2004) (explaining in dicta that "extensions of liability" for copyright infringement "such as contributory or vicarious liability" "require a showing of additional elements such as knowledge coupled with inducement or **supervision coupled with a financial interest in the illegal copying**") (emphasis supplied).[1]

Notably absent from Hamed's deposition questions is anything relating to whether Jaber received money based on the sales generated from the one infringing post. Nor was any such question asked directly of Jaber during his deposition. PFP's claim failed just like the plaintiff in Softel v. Dragon Medical & Scientific Communications, Inc., where the Second Circuit affirmed dismissal of the claims against the company's president. 118 F.3d 955, 971-72. "The only evidence that [the plaintiff] adduced … was that Hoge was the president of Dragon and a shareholder. The evidence is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials." Id. So too here. Prepared Food Photos' claim against Jaber became frivolous when it failed to pursue evidence of a direct nexus between the singular Facebook post and money received by Jaber through Nofal. And there was direct evidence from Hamed that the Facebook posts—all of them—"wasn't making an impact." Dep. Tr. of Hamed, DE 64-9 at 26:21.

Despite the lack of evidence, PFP proceeded to trial against Jaber as well as Nofal. At trial, Mr. Hamed clarified his testimony about the Facebook account, that Jaber "didn't know that he – we had this Facebook page. Tr., DE 57 at 136:1. PFP sought to impeach Hamed, but he made clear what was missing from the deposition question: "At that time [of the deposition], he did know." Id. at 137:6. It "was after he got a lawsuit for a Facebook page." Id. at 137:8.

---

[1] The Supreme Court has not ever addressed whether the Copyright Act provides for contributory or vicarious liability apart from liability for direct infringement. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 434 (1984) ("[t]he Copyright Act does not expressly render anyone liable for infringement committed by another" and "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn").

In questioning Jaber at trial, PFP's questions remained at a high level of abstraction, generally asking whether he owned FoodTown, and the profit from Nofal's sales went to him. Id. at 145:8-145:16. Not once did PFP attempt to probe whether Jaber received profits that resulted from the Facebook post in particular, let alone whether he profited generally from the sales of pork chops.

Ultimately, it obtained a $200 judgment against FoodTown for non-willful infringement, and Jaber was found not liable for vicarious infringement. Despite that verdict, Prepared Food Photos still sought to hold Jaber liable, seeking modification of the judgment by arguing generally that Jaber "receives a profit from Food Town Mark's sale of its products." Mot. to Alter J., DE 56 at 12-13.

Jaber incorporates by reference the facts and evidence set forth in Nofal, LLC's memorandum in opposition to Prepared Food Photos' motion for attorney's fees, DE 80, including that the Court take judicial notice of the market for stock photography, PFP's copyright enforcement business, Joel Albrizio's statements respecting PFP's litigation and enforcement activities, PFP's settlement demands in this action, as well as the various cases and declarations by PFP personnel in other suits and those by Paul Alan Levy respecting documents and information produced by PFP in those cases.

## ARGUMENT

### I.     THE COPYRIGHT ACT, 17 U.S.C. § 505 PROVIDES FOR ATTORNEY'S FEES TO THE JABER AS A PREVAILING PARTY

#### A. Standard for attorney's fees under the Copyright Act to a prevailing defendant

A legal basis for an award must exist, such as by statute or contract that would vary the American rule that each party bear its own attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Here, Prepared Food Photos pursued claims under

the Copyright Act, which allows for "the recovery of full costs" as well as "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

### 1. *Entitlement to fees under the Copyright Act*

The threshold determination is whether a defendant is considered "prevailing" in "the first part of the fee-shifting inquiry." CRST Van Expedited, Inc. v. EEOC, 578 U.S. 419 (2016).

At the second step, a number of non-exclusive factors "inform a court's fee-shifting decisions" under 17 U.S.C. § 505, including 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). Each of those factors is "relevant but none determinative." Assessment Techs. of WI, LLC v. Wiredata, Inc., 361 F.3d 434, 436 (7th Cir. 2004). In the Seventh Circuit, "[t]he two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." Id.

As concerns "prevailing defendants in copyright cases [they] are presumptively entitled (and strongly so) to recover attorney fees" because there is an "asymmetric recover[y]" between plaintiffs and defendants. Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630, 632 (7th Cir. 2023); see also UIRC-GSA Holdings, LLC v. William Blair & Co., 90 F.4th 908, 918 (7th Cir. 2024) (quoting Live Face). In contrast to a plaintiff that stands to gain compensation for alleged infringement (in addition to its attorney fees), "[t]he best [a defendant] can hope for is to break even—to recover his attorney's fees" as sunk costs of a lawsuit that it did not choose to initiate. Id.

### 2. *Standard of review in an appellate court*

A district court's decision on an application for attorney's fees is reviewed for abuse of discretion, <u>DeliverMed Holdings, LLC v. Schaltenbrand</u>, 734 F.3d 616, 625 (7th Cir. 2013), which receives "significan[t] deference" and "wide latitude." <u>Siddiqui v. Nat'l Ass'n of Broad. Emp. & Technicians-Commc'ns Workers of Am.</u>, 132 F.4th 530, 533 (7th Cir. 2025) (quoting <u>Pickett v. Sheridan Health Care Center</u>, 664 F.3d 632, 639 (7th Cir. 2011)). That is "because (1) the district court possesses superior understanding of the litigation and there exists a desirability of avoiding frequent appellate review of what essentially are factual matters; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding a second major litigation strictly over attorneys' fees is high." <u>Id.</u> (cleaned up). However, if a court denies "a prevailing copyright defendant his attorney's fees, a district court's discretion is very narrow." <u>Live Face</u>, 77 F.4th at 632.

## B.  Jaber is a prevailing party

*1.  The Supreme Court has drawn a distinction between its prevailing plaintiff cases and prevailing defendant cases*

As a threshold matter, the Supreme Court's recent decision in <u>Lackey v. Stinnie</u>, 145 S. Ct. 659 (2025) delineates what decisions guide a district court's analysis of whether a defendant has prevailed.[2] It clarified that a "different body of caselaw" exists which "addresses when a *defendant*

---

[2] After the Court had granted certiorari in <u>Lackey</u> and while it was pending on the merits, the undersigned was counsel of record in a separate petition for writ of certiorari that raised the question of whether a copyright infringement defendant was considered the prevailing party where the plaintiff had obtained a Rule 41(a)(2) dismissal *without* prejudice. <u>See</u> <u>Abdelsayed v. Affordable Aerial Photography, Inc.</u>, no. 24-267, available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24-267.html. In that petition, the defendants repeatedly warned the Court that <u>Lackey</u> had a significant potential to be misunderstood, as the Court's <u>Buckhannon</u> decision has been, and urged the Court to provide litigants with "[m]ore precise guidance" to reduce "the drift away from historic, commonsense understanding of what it means for a defendant to prevail." Pet. at 2-3 (citing <u>CRST</u>). Petitioners also cautioned that "a decision in <u>Lackey</u> could easily be misread and misapplied by courts if not thoughtfully counterbalanced by an explicitly defendant-framed

is a 'prevailing party' for the purposes of  [] fee-shifting statutes." Id. at 669, n.* (emphasis in original). That footnote instructs lower courts that the Supreme Court's prevailing *plaintiff* jurisprudence is separate from its prevailing *defendant* jurisprudence—particularly given the emphasis it placed on the distinction between the parties. Cf. id. In support, it cited one case: CRST. Id. CRST is the only decision in which the high Court addressed what it means for a defendant to prevail in  the first part of the analysis. The Court signaled that CRST stood apart from the Court's prevailing plaintiff jurisprudence when it said it "has not articulated a precise test for when a defendant is a prevailing party" and implying that lower courts should not conflate the two. CRST, 578 U.S. at 422. The recent footnote in Lackey now makes that point explicitly: CRST is a "different body of caselaw." Lackey, 145 S.Ct. at 669.

As it had done in CRST, it re-emphasized in Lackey that "[p]laintiffs and defendants come to court with different objectives," id. (quoting CRST), as the Seventh Circuit acknowledges respecting fee awards, e.g., Live Face, 77 F.4th at 632 (plaintiffs and defendants have "asymmetric recoveries"). "A *plaintiff* prevails … when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Lefemine v. Wideman, 568 U.S. 1, 4 (2012) (emphasis added). In contrast, "[a] defendant seeks to prevent this alteration." CRST, 578 U.S. at 431.

Here, Jaber is a prevailing defendant under CRST.

2. *Jaber prevailed against plaintiff's claim against him*

Sharif Jaber succeeded in this lawsuit by "rebuff[ing] the plaintiff's claim" of vicarious liability on the merits when the jury returned a verdict in his favor, DE 50, and which the Court

---

decision on preclusive judgments." Pet. at 30. The Lackey footnote is a direct product of the arguments advanced in the Abdelsayed petition, although the Court denied certiorari.

upheld against Prepared Food Photos' post-judgment attack, DE 61. See CRST, 578 U.S. at 431. That was the only claim between Prepared Food Photos and Jaber. Second Am. Compl., DE 19.

PFP, in its opposition to Jaber's motion for extension of time *nunc pro tunc*, conceded that Jaber is a prevailing party, even though it prevailed against co-defendant Nofal, LLC: "the Court's November 7, 2024 Order, the Judgment, and the proceedings on Plaintiff's Motion for New Trial were all unequivocally clear that Jaber had prevailed on Plaintiff's claim for vicarious liability." Plf.'s Opp'n, DE 77 at 8 (docket citations omitted). There is no doubt Jaber is a prevailing party at step one of the fee-shifting inquiry.

An analysis of the factors at step two reveals that he should be awarded his attorney's fees.

### C. The Copyright Act's purposes are served by awarding Jaber his attorney's fees

The Seventh Circuit "strongly" favors awards to prevailing copyright defendants. E.g., Live Face, 77 F.4th at 632. It has repeatedly instructed district courts that there is a presumption of a fee award to a prevailing defendant due to the "asymmetric recoveries" between defendants and plaintiffs. Id.; see also CRST, 578 U.S. at 431 ("Plaintiffs and defendants come to court with different objectives."). Thus, where "the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling." Assessment Techs., 361 F.3d at 436-37. Consistent with the observation of the Seventh Circuit that some copyright plaintiffs engage in "[i]ntellectual [p]roperty [s]hakedown[s]," Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1096 (7th Cir. 2017), and employ "settlement-extraction scheme[s]," Design Basics, LLC v. Kerstiens Homes and Designs Inc., 1 F.4th 502, 503 (7th Cir. 2021), other district courts outside the Seventh Circuit have similarly concluded "[d]enying a fee" award to a successful copyright defendant "might encourage plaintiffs … to impose costs [on] defendants or to try to force them to pay settlement fees." Eclipse Sportswire v. The Sports Mall, LLC, no. 8:22-cv-1433, 2025 WL 341711

at *2 (M.D. Fla. Jan. 30, 2025) (quoting the magistrate judge's R&R).[3] Doing so "would be an improper use of the court system." Id.; see also Assessment Techs., 361 F.3d at 437 (it can "be a form of copyright misuse" to use an infringement suit "hoping to force a settlement" on "an opponent that may lack the resources" to fight back). Simultaneously, if a plaintiff is "forced to risk paying a defendant's attorney's fee, future plaintiffs will scrutinize their [case] before brining suit." Id.

Here, there is no doubt that Prepared Food Photos is a copyright troll. Its CEO's blog posts attacking defendants and their counsel for resisting its scheme makes that explicit, in addition to the facts of its litigiousness and lack of arms-length licensing. It has admitted that it "sent presuit demand letters to each of" "approximately 1,800 different alleged infringers of [PFP's] photographs." Plf.'s Opp'n to Def.'s Mot. to Compel, DE 24 at 5, Prepared Food Photos, Inc. v. Pool World, Inc., no. 2:23-cv-160 (E.D. Wash. Apr. 12, 2024). That aggressive enforcement seeking sums far in excess of market-supported damages plays a role in all four of the Fogerty factors. The additional factors the Seventh Circuit relies on also show that an award to Jaber of the fees he incurred in his defense is appropriate.

*1. Frivolousness*

Prepared Food Photos' initial claim against Sharif Jaber for direct infringement, Am. Compl., DE 9, was frivolous because Jaber did not operate a sole proprietorship under a d/b/a, nor was he the individual that copied the pork chop photograph. PFP quickly realized that truth, and commendably eliminated its theory of direct infringement against Jaber, instead naming Nofal,

---

[3] In that action, plaintiff's counsel was accused of malpractice by its (now former) client after the plaintiff was found liable for the defendant's attorney's fees. See Mot. to Withdraw, DE 85 at ¶ 14-15, available at https://storage.courtlistener.com/recap/gov.uscourts.flmd.402934/gov.uscourts.flmd.402934.85.0.pdf

LLC as the party liable for direct infringement. But PFP also kept Jaber as a party-defendant, under a new theory of vicarious liability. That was not reasonable because it predicated its claim on the sole fact that Jaber owned Nofal. Second Am. Compl., DE 19. It also understood that it needed to prove Jaber had "a direct financial benefit" from the infringing activity, not just generally from his ownership of Nofal. Id. at ¶ 42.

During discovery, it obtained evidence that *refuted* its vicarious theory, including the deposition testimony of Amjad Hamed. Irrespective of whether Jaber had the right and ability to supervise his son in the broad sense as Nofal's owner, or specifically concerning a Facebook account about which he was totally unaware, PFP's claim by that time, December 18, 2023, was undeniably frivolous. That was because the Facebook posts weren't "making an impact on [Nofal's] sales." Dep. Tr. of Hamed, DE 64-9 at 26:21.

It also had no evidence showing Nofal's sales of pork chops apart from its general revenue. Def.'s Responses to Plf.'s Request for Production, DE 77-2 at 41 (question 10 to Jaber); at 59 (question 10 to Nofal). Without citing any authority, it claimed in its post-trial motion it should have prevailed by showing "that Jaber profited generally." Id. at 13. The Second Circuit concluded otherwise on essentially the same evidence. Softel, 118 F.3d at 971 ("that Hodge was the president of [the co-defendant company] and a shareholder" was "too attenuated to establish a sufficiently 'direct' financial interest"). Even the "purpose" of vicarious liability is not satisfied here, where Nofal is not an "undercapitalized 'dummy' operation[]." See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992) (discussing vicarious liability in the context of copyright and trademark).

Despite the lack of evidence and testimony directly refuting its vicarious liability claim, it pressed that claim against Jaber through a jury trial to an unsurprising verdict. It never questioned

any witnesses to make any connection between the Facebook post and money received by Jaber flowing from it. It adamantly argued that Jaber was liable based on the evidence of only the first prong of vicarious liability while wholly ignoring that there was no evidence of the "direct financial benefit" of the singular Facebook post flowing to Jaber personally. Plf.'s Mot. to Alter J., DE 56 at 12-13 (arguing that because "Food Town sold pork chops every week" and Jaber generally "receives a profit from Food Town Mart" "[t]here is no question that [Jaber] had a direct financial interest in the infringement"). But "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a **causal relationship** between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004) (emphasis supplied). Here, the infringement did not cause a financial benefit to accrue because, as Hamed testified at his deposition, and which subsequently was heard by the jury at trial, is that the Facebook posts had no impact on sales. Dep. Tr. of Hamed, DE 64-9 at 26:21; Trial Tr. DE 57 at 212:4-213:9.

Awarding fees can "serve as a deterrent against maintaining litigation after a party's position has become untenable." Design Basics, LLC v. Kerstiens Homes and Designs, Inc., no. 1:16-cv-726, 2021 WL 4749916, at *6 (S.D. Ind. Sept. 30, 2019), aff'd, Design Basics, 1 F.4th 502. And the losing party's "conduct need not be 'sanctionable' for the winner to be entitled to fees under § 505." Mostly Memories, Inc. v. For Your Ease Only, Inc., 526 F.3d 1093, 1099 (7th Cir. 2008) (citing Riviera Distribs., Inc. v. Jones, 517 F.3d 926, 928 (7th Cir. 2008)). Here, PFP's claim might have originally been non-frivolous at the outset, but discovery revealed it should have been withdrawn. It didn't, and doubled down on Jaber having personal liability through trial and afterwards. The first Fogerty factor (frivolousness) favors fees for Jaber.

*2. Motivation*

As was more fully articulated in Nofal's opposition to plaintiff's motion for fees and costs, Prepared Food Photos' motivation in this case (and others) was purely financial, seeking wildly disproportionate settlements in comparison to the damage it suffered, as reflected by the undeniable market value for dated stock photography. Despite that market, PFP asserts that it licenses its whole library on a $999 per month fee. Its targets for infringement claims generally are one-off (single photograph) cases, as here, where the accused would never pay the fee demanded by PFP for its dated stock photographs when next best non-infringing alternatives abound for nominal sums of less than $50.

It also spent considerable time on irrelevant matters attempting to attack the credibility of Jaber, question witnesses about other Facebook posts and photos, and improperly tried to introduce subsequent remedial measures as evidence of misconduct. Both PFP's written discovery, deposition question, as well as is trial tactics show how it lost sight of the elements of its claims, taking Jaber, the Court, and the jury on sidetracks not necessary to adjudicate whether a photo was improperly used on social media and the resulting harm that caused it.

PFP's representations to this Court are also worthy of close scrutiny. Ms. Rebecca Jones declared that Prepared Food Photos' 'primary business is the creation of new photo/video content and licensing such content." Decl. of Rebecca Jones, DE 36-1 at ¶ 19. Yet PFP has never applied for any copyright registrations, and under its former name it ceased applying for certificates of registration in 2017—the same timeframe when it embarked on its current litigation business model. Douglas Fleurant, PFP's Executive Vice President and Chief Financial Officer, has testified that PFP's "library is in place" such that the costs associated with its licensing are "minimal," Dep. Tr. of Fleurant, at 8:24-25:2 Prepared Food Photos, Inc. v. WeNeedAVacation.com, LLC, (D.

Mass. Feb. 21, 2024),[4] thus suggesting that PFP has not created new content for its library, which is consistent with the lack of any registrations since 2017.

More transparently, Mr. Fleurant has testified that "the rest of [PFP's] employees … primarily run the IP enforcement section." Id. at 8:24-25:2. PFP acknowledges that its enforcement results in "a financial benefit," id. at 9:3-9:6, while he also admitted it has never been "too expensive to pursue infringers," id. at 9:10-9:12. Enforcement, he further admitted, "is a large" contributing factor that sustains its business. Id. at 11:13-11:18.

Prepared Food Photos' motivations in general, and in this case in particular, are not commensurate with the purposes of the Copyright Act, where it doesn't appear to engage in any new content creation, and refuses licenses to one-off photos. Dep. Tr. of Jones, Jan. 4, 2024, at 58:20-61:18, Prepared Food Photos, Inc. v. WeNeedAVacation, no. 1:23-cv-11085 (D. Mass.) ("We don't entertain" a party's request for a license to one photo).[5] Its conduct constitutes misuse. Assessment Techs., 361 F.3d at 437. This factor too favors a fee award to Jaber.

3. *Objective unreasonableness*

On the third factor, Prepared Food Photos' vicarious claim against Jaber was objectively unreasonable, even if it were initially reasonable. Design Basics, 2021 WL 4749916 at *6 (awarding the defendant's fees because even more than "a cursory investigation into the facts is warranted before subjecting an opponent to the time and expense of a costly copyright infringement lawsuit"). This Court, having "ruled on the merits of a copyright case can easily

---

[4] The relevant portion of which is available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.55.15.pdf
[5] Available at
https://storage.courtlistener.com/recap/gov.uscourts.lawd.204715/gov.uscourts.lawd.204715.15.21.pdf, DE 15-2 at 33.

assess whether [Prepared Food Photos] advanced an unreasonable claim." <u>Kirtsaeng</u>, 579 U.S. at 207. While a claim for copyright infringement of an outdated stock photograph is a legitimate theory of recovery (putting aside the value of such a case), pursuing such a claim against an individual predicated solely on that person's ownership of the business in which an employee made a mistake unbeknownst to that defendant is not, and objectively so. PFP's investigation into Jaber's potential personal liability was superficial, never having looked closely at whether the Facebook page caused Jaber to personally obtain a benefit. It turned a blind eye to Amjad Hamed's testimony that the Facebook posts just didn't do anything for Food Town. That was objectively unreasonable.

### 4. Compensation and deterrence

Under the fourth <u>Fogerty</u> factor, the Copyright Act is furthered by an award of fees to defendant Jaber to deter plaintiffs, like Prepared Food Photos, from pursuing individuals on dubious theories seeking the maximum possible damages without factual support, and engaging in unreasonable litigation tactics. "If [a] district court purports to deter others from behaving [as the losing party] did, then it must explain what [that party] did that led to its award of attorney's fees." <u>Susan Wakeen Doll Co. v. Ashton Drake Galleries</u>, 272 F.3d 441, 457 (7th Cir. 2001).

Here, the Court should explain that PFP (and others like it) ought to be deterred from attempting to pressure a business owner to settle on behalf of his company by making unrealistic settlement demands unapportioned between proprietor and entity. Stated differently, it should be deterred from continuing its "Intellectual Property Shakedown." <u>Design Basics, LLC v. Lexington Homes, Inc.</u>, 858 F.3d 1093 (7th Cir. 2017) (describing the "unsavory" practice of copyright holders "trawling the Internet for intellectual property" violations "in the hope of arranging prompt settlements with defendants who" all too often prefer the painful and significant cost of an unfair settlement "rather than be tied up in expensive litigation"). It is the very "costs and risks of

litigation" that PFP has used to prop up its racket, under the guise of an illegitimate licensing scheme that the market simply does not bear. It well knows what it is doing, and it does so deliberately, as the multiple online blog rants of Mr. Albrizio make plain, and deposition testimony of Douglas Fleurant and Rebecca Jones reinforces.

Also, continuing to pursue a legal theory without factual support should not be encouraged, but rather *dis*couraged, so that only reasonable claims and factual disputes are tried. Plaintiffs should be deterred from viewing copyright litigation as a risk-free endeavor (which apparently PFP does, as Mr. Fleurant testified), because ensuring that defendants are awarded their fees "injects risk into the [troll's] business model." Live Face, 77 F.3d at 634 (quoting Klinger v. Conan Doyle Est., Ltd., 761 F.3d 789, 792 (7th Cir. 2014)). An award to the defendants would signal to plaintiffs that if they bring an unreasonable claim, are unreasonable in their litigation tactics, are motivated not for redress of harm but rather financial gain, and are ultimately unsuccessful against a chosen target, then they will bear a risk of paying that defendant's attorney's fees. That outcome strikes the proper balance while also ensuring the risk analysis is suitably timed for a plaintiff: prior to bringing a defendant into court. "[F]ees are proper for the defendant who rebels against" an unreasonable copyright claim, because they are, in effect, "a private attorney general, combating a disreputable business practice—a form of extortion—and" the defendant seeks fees "not to obtain a reward but merely to avoid a loss." Live Face, 77 F.4th at 634. The proper allocation of a defendant's efforts is upon the unsuccessful plaintiff to pay the defendant's attorney's fees when they incautiously or carelessly invoke the judicial machinery for financial *gain* as opposed to redress for actual *harm*.

Prepared Food Photos also does not apparently pay, on an hourly basis, for any legal fees in its infringement suits, having engaged its counsel on a 60-40 split contingency fee basis. See

Decl. of Fleurant. But Jaber has not been so lucky. His successful and complete defense in this action came at considerable cost to him, which PFP should instead bear. The Copyright Act's purpose "of enriching the general public through access to creative works" is fulfilled by awarding a defendant, like Jaber, his fees because doing so "promote[s] the Copyright Act's purposes, by enhancing the probably that … defendants[] will enjoy the substantive rights the statute provides." Kirtsaeng, 579 U.S. at 205. Disallowing fees to prevailing defendants discourages them from "stand[ing] on their rights" in resistance to improper infringement claims. Id. Allowing risk-free litigation for a plaintiff like Prepared Food Photos disserves the Copyright Act's purposes.

### 5. *Degree of success / Strength of Jaber's case*

Jaber's success against Prepared Food Photos was total and enduring. The strength of his defense respecting Count II on PFP's theory of tagging him personally with liability for the infringement of an employee of his company is reflected in PFP's failure to adequately understand the elements of proof, and its corresponding failure to adduce sufficient evidence prior to and during trial. The evidence was actually against PFP's claim, and so entering trial Jaber's case was very strong.

### 6. *Amount of Damages*

"When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." Assessment Techs., 361 F.3d at 437. Here, Jaber, as the defendant, received no award. His relief was being found not liable on Prepared Food Photos' claim of vicarious liability. Consequently, this factor weighs "very strong[ly]" for an award to him. Even accounting for PFP's $200 judgment against co-defendant Nofal, LLC, it still favors an award to him when the jury found the infringement not willful. Verdict, DE 50 at 3.

### 7. Settlement offers

Besides the Fogerty factors, in determining an award of reasonable attorney's fees, "settlement offers should be considered as a factor." Moriarty v. Svec, 233 F.3d 955, 967 (7th Cir. 2000). Jaber made no settlement offer to PFP, and did not accept any of PFP's various unapportioned demands for tens of thousands of dollars in "damages" made jointly to both him and Nofal, LLC. His negotiating position was effectively offering PFP $0—an amount equal to the complete defense judgment he obtained. His refusal to settle, therefore, was a "substantial" settlement position that the "district court should evaluate in making an attorney's fee award." Id.[6]

Furthermore, that Jaber did not make any settlement offer reinforces the validity of his position when he prevailed completely. "[A]ny litigant is entitled to insist that its case be adjudicated" and that is not a reason to "penalize" a defendant, like Jaber, from "abandoning an attempt at mediation." Riviera Distribs., Inc. v. Jones, 517 F.3d 926, 929 (7th Cir. 2008).[7]

In contrast, PFP's settlement demands were aggregate sums, not apportioned between Jaber and Nofal, and which did not distinguish between damages and attorney's fees. DE 80-7 (demanding $90,000 just prior to trial, *after* when PFP's claim against Jaber became frivolous). That Prepared Food Photos routinely seeks round figures without any basis for them reinforces the improper motivations it has in these suits, seeking to capitalize on a defendant's potential fees liability, not on the harm it suffered.

### 8. Balancing the factors

In the end, the Fogerty factors and the additional factors identified by the Seventh Circuit weigh in favor of awarding Sharif Jaber his attorney's fees. Prepared Food Photos cannot surmount

---

[6] So too with respect to the disparity between PFP's recovery of $200 against co-defendant Nofal, which it articulated in its opposition to PFP's motion for fees.

[7] The same rationale applies to Nofal, LLC's opposition to plaintiff's motion for fees.

the "steep, uphill battle to rebut our very strong presumption in favor of awarding [Jaber his] fees." Live Face, 77 F.4th at 633. The Court would not abuse its discretion to find entitlement, nor would it abuse its discretion to award fees approaching the same amount requested by Prepared Food Photos.

## II.    JABER'S FEES ARE REASONABLE

### A. The lodestar calculation

Once a party is entitled to attorney's fees, a district court uses the lodestar method to calculate the fee award. "When a prevailing party is entitled to 'a reasonable attorney's fee … the district court must make that assessment, at least initially, based on a calculation of the 'lodestar'— the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else." See Johnson v. GDF, Inc., 668 F.3d 927, 929 (7th Cir. 2012) (citing 42 U.S.C. § 1988 as an example of when a party may be entitled to a fee award, and applying that principle under 29 U.S.C. § 216(b)); see also Pickett 664 F.3d at 642 (a "court is to consult the [] market when determining a reasonable hourly rate for contingent fee cases and non-contingent fee cases" when calculating the lodestar) (citing City of Burlington v. Dague, 505 U.S. 557, 564 (1992)); but see Assessment Techs., 361 F.3d at 438-39 (following the Third Circuit and concluding the "best evidence of the value of the lawyer's services is what the client agreed to pay him" and "the negotiated fees should be the ceiling"). The lodestar fee amount is presumed reasonable, but a court may adjust the amount "to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Cooper v. Retrieval-Masters Creditors Bureau, Inc., 42 F.4th 675, 682 (7th Cir. 2022) (quotation marks and citation omitted).

Further, Assessment Technologies did not hold that a district court is strictly limited to the

fees contracted between lawyer and client, only that in the usual circumstance that those fees "should be" the limit, and that the negotiated rate is the "best evidence of the **value** of the lawyer's services." Assessment Techs., 361 F.3d at 439 (emphasis supplied). This is not a typical case, where Steinle's firm had a longstanding relationship with Jaber and his family, and, but for that fact, would have otherwise charged the prevailing market rates. Decl. of Steinle, ¶ 9. Where the negotiated fees charged were below the market rate, a district court does not abuse its discretion in using a prevailing market rate. See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1337 (11th Cir. 2001). As the Tenth Circuit has observed, the purpose behind a fee-shifting provision may be "thwarted if a party could escape" the consequences intended by the law. Centennial Archaeology, Inc. v. AECOM, Inc., 688 F.3d 673, 680-82 (10th Cir. 2012) (characterizing Assessment Techs. as an "unusual case" and instructing "courts should look to their statutory purpose rather than focusing on" what fees a party actually "incurred"). Section 505 of the Copyright Act considers "deterrence" in a fee award, Kirtsaeng, 579 U.S. at 202, and that purpose would be undermined where, as here, Jaber's former defense counsel provided discounted rates to a loyal client, only for a serial copyright enforcer like Prepared Food Photos to escape from a fees judgment that would otherwise have a more significant deterrent effect. The prevailing market rate is appropriate in the lodestar calculation, not limited by what Jaber agreed to pay his attorneys. The Copyright Act expressly provides that a party, like Jaber, may recover his "full costs" which includes a reasonable attorney's fee. 17 U.S.C. § 505.

### B.  Jaber's fees & taxable costs

Jaber engaged his original counsel on an hourly fee basis at a discounted rate of $250 per hour, based on his prior engagement of the Terschan, Steinle, Hodan & Ganzer, Ltd. firm, as well as Attorney Steinle's willingness to discount his fee from a normal hourly rate of $400. Decl. of

W. Timothy Steinle, Exhibit 1.

When a plaintiff's claims "involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, … the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation.'" Divane v. Krull Elec. Co., 319 F.3d 307, 315 (7th Cir. 2003) (quoting Ustrak v. Fairman, 851 F.2d 983, 988 (7th Cir. 1988), in turn quoting Hensley v. Eckerhart, 461 U.S. 424, 437 & n.12 (1983)). Here, the defense of Nofal, LLC was essentially the same as the defense of Jaber individually, and therefore defense counsel's time defending Jaber's was inextricably intertwined with the time defending Nofal. Indeed, PFP likewise seeks all of its fees in prosecution of its case against Nofal, irrespective of its failed claim against Jaber.

The declaration of Steinle shows that the time he and one other partner and a single paralegal spent on this case was eminently reasonable, and less than the time claimed by plaintiff's counsel. The time spent by Jaber's new counsel in pursuing this motion is also reasonable.

### 1. Reasonable hourly rates

While on the high side for intellectual property counsel in the Midwest, and Milwaukee in particular, Prepared Food Photos' counsel, with less experience than Attorney Steinle, seeks a rate of "between $450 - $500 per hour." Decl. of DeSouza, DE 64-2 at ¶ 25. It thus necessarily concedes that defense counsel's rates are reasonable when its own rate for comparably less experienced attorneys exceeds defense counsel's normal rate. Decl. of Steinle, Exhibit 1 at ¶ 9. Steinle's and Ms. Herda's normal rates of $400 are within the range reflected in the 2023 American Intellectual Property Law Association (AIPLA) Report of the Economic Survey for "Central Other" equity

partners, $341 to $513 (representing the 25th and 75th quartiles), and less than the average of $441. Decl. of Steinle, ¶ 25. Therefore, the reasonable hourly rate for Jaber's prior counsel of $400 per hour and paralegal time at $100 per hour is reasonable.

2. *The timekeepers' requested hours, and each task undertaken by the timekeeper during those hours*

Attorneys Steinle and Herda billed their time in one-tenth hour (6-minute) increments, consistent with industry practice. So too with respect to Ms. Kranz. The total hours billed, for which a fee award is requested, are reflected in the invoices attached to the Steinle declaration. The specific work undertaken during those hours is also reflected in the invoices attached thereto.

In comparison to Prepared Food Photos' claim for attorney's fees, Jaber's is nearly the same. It is not surprising that Jaber's counsel expended roughly the same amount of time (128.7) as plaintiff's counsel (142.25), Plf.'s Mot., DE 64-0 at 22, as one further benchmark of the reasonableness of Jaber's lodestar calculation.

3. *The lodestar amount*

The following table summarizes the Jaber's attorneys' rates and hours:

| Timekeeper | Hourly Rate | Hours worked | Lodestar |
| --- | --- | --- | --- |
| W. Timothy Steinle | $400 | 119.6 | $47,840.00 |
| Amber Herda | $400 | 5.0 | $2,000.00 |
| Sue Kranz | $100 | 4.1 | $410.00 |

The total lodestar award requested by Jaber is therefore $50,250.00, as supported by the declaration of Steinle.

Not reflected in these hours is time that might be spent respecting any subsequent fees litigation, such as a reply memorandum, or hearing. The defendants would be entitled to further

fees respecting the fees litigation. <u>Ustrak v. Fairman</u>, 851 F.2d 983, 990 (7th Cir. 1988) (the prevailing party "is entitled to reimbursement of fees reasonably … incurred in proving those fees"); <u>accord</u> <u>Norelus v. Denny's Inc.</u>, 628 F.3d 1270, 1301 (11th Cir. 2010) (a party may "recover the cost of establishing their right to, and the amount of attorneys' fees—the right to fees-on-fees"); <u>Trimper v. City of Norfolk, Va.</u>, 58 F.3d 68, 77 (4th Cir. 1995) ("it is well settled that the time spent defending entitlement to attorney's fees is properly compensable").

### 4. Taxable costs

Finally, Jaber incurred $416.25 in taxable costs in the form of deposition transcripts for both himself and Amjad Hamed. The invoices are attached to the Declaration of Steinle, and a separate bill of costs on the Court's form is submitted separately.

### CONCLUSION

The Copyright Act is furthered by awarding fees to a successful defendant who completely resists a plaintiff's efforts to obtain any relief, notwithstanding the plaintiff's marginal success against a co-defendant. Jaber succeeded, is a prevailing party, and the strong presumption of an award of his attorney's fees cannot be overcome by plaintiff. The amount of his fees is also reasonable.

**WHEREFORE**, defendant Sharif Jaber respectfully request the Court:

a) grant this motion;

b) conclude he is a prevailing party for having fully resisted plaintiff's efforts to obtain any relief whatsoever from him;

c) conclude that awarding him his attorney's fees furthers the goals of the Copyright Act;

d) hold that he is entitled to a reasonable attorney's fee pursuant to § 505 of the Copyright

A138

Act calculated according to the lodestar method and prevailing market rates;

e)  find that the amount of their attorney's fees is reasonable;

f)  enter an order awarding Jaber his attorney's fees in the amount of $50,250.00;

g)  enter a fees judgment awarding Jaber the above fees, plus a supplemental amount to be determined respecting the time spent on the instant motion and post-judgment fees proceedings; and

h)  for such further relief as the Court deems just and proper.

    /s/ Griffin Klema
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Attorney for Defendants
**KLEMA LAW, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
E-mail: Griffin@KlemaLaw.com

# Docket No.

# 87

**Docket No. 87**

A139

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

        Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

        Defendants.

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JABER'S MOTION
FOR ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT**

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.

("Plaintiff") hereby files this memorandum in opposition to defendant Sharif Jaber's ("Jaber")

Motion for Attorney's Fees and Costs Under the Copyright Act (the "Motion f") [D.E. 83].

**INTRODUCTION**

The Motion asserts that Jaber is entitled to recover $50,250.00 in attorneys' fees/costs as

the prevailing party on Plaintiff's claim for vicarious liability. While Jaber did prevail at trial, the

Court should exercise its discretion to deny any recovery of fees by Jaber. Alternatively, for the

reasons set forth herein, the Court should substantially reduce any fees awarded to Jaber as he

attempts to recover fees far beyond those actually incurred by his counsel and fails to allocate fees

between himself and co-defendant Nofal LLC (who lost on Plaintiff's copyright infringement

claim).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

The Motion goes to great lengths to criticize Plaintiff for bringing this lawsuit (and others) and assumes (without reference to a scintilla of evidence) that Plaintiff's motivations in doing so were somehow suspect/evil. They were not. As the owner of an image library spanning approximately 18,000 photographs, Plaintiff has been confronted with mass infringement by grocery stores such as that owned by Nofal LLC and an abundance of others.[1] Although Plaintiff generally attempts to resolve such matters without court intervention, it will file lawsuits when, as happened here, infringers refuse to acknowledge liability or remove the subject image(s) from display.

This case is somewhat unique in that it took approximately two (2) years – until Jaber testified *at trial* – for Defendants to acknowledge their control of the subject Facebook page and/or that the dozens if not hundreds of photos depicted thereon were for their "Food Town Mart" store. For years, Defendants denied their display of the photograph (in their Answer, sworn interrogatory responses, responses to requests for admissions, and in their sworn deposition testimony). They even denied that photographs on the subject Facebook page depicting their store, its signs, its products, etc. absolutely did not depict the store. Jaber's testimony was, in a word, absurd. Even when confronted with a news interview where Jaber was clearly standing in front of the same sign depicted in one of the Facebook photographs, Jaber still denied that the Facebook photo was from his store. This ongoing refusal to acknowledge the Facebook page (even in the face of 30(b)(6) obligations to adequately prepare a witness) stymied Plaintiff from obtaining any evidence of profits associated with the Facebook post. Rather, Plaintiff was left to prepare for trial on the belief that Defendants were sticking to their nonsensical position (contrary to Jaber's own son's

---

[1]    See Exhibit "A," a true and correct copy of the July 30, 2025 Declaration of Rebecca Jones.

2

testimony) that the Facebook page was not under their control and did not depict their store. Defendants then ambushed Plaintiff at trial, acknowledging for the first time that the Facebook page was controlled by Nofal LLC and that all the photographs thereon (including the subject infringement) were posted by Nofal LLC and depicted the store.

Having refused to amend any of his discovery responses and/or earlier denials (in his pleading and discovery), Jaber now boldly asserts that Plaintiff's vicarious liability claim was frivolous because Plaintiff did not adduce evidence of specific profits made by Jaber. But it was Jaber himself – through his perjurious testimony and denials – that stymied Plaintiff's efforts to obtain such discovery. Plaintiff was limited to the evidence available to it – evidence which Plaintiff believed conformed to the law of the Seventh Circuit that a direct financial interest is shown when the infringement acts as a draw to customers (which Amjad Hamed acknowledged in his deposition).

The Court should not reward a defendant who, through his own conduct, caused this lawsuit to be drawn out rather than resolved early on. Had Defendants simply acknowledged Nofal LLC's unauthorized display of the photograph and liability for infringement, this matter could have been resolved pre-suit and/or extraordinarily early in this lawsuit. Rather, they either lied throughout the lawsuit or failed to perform a modicum of diligence in asking either of Jaber's sons (the assistant managers of the store) whether the Facebook page was controlled by Nofal LLC.

## ARGUMENT

### I.    Legal Standard

Under § 505, a court has discretion to award costs and attorneys' fees to the prevailing party in a copyright case. 17 U.S.C. § 505. "Four nonexclusive factors guide a district court's

decision whether to award a prevailing party its fees: (1) the frivolousness of the suit; (2) the losing party's motivation for bringing or defending against a suit; (3) the objective reasonableness of the claims advanced by the losing party; and (4) the need to advance considerations of compensation and deterrence." Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc., 77 F.4th 630, 631 (7th Cir. 2023) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). The Seventh Circuit has explained that this list of factors is not exclusive, nor is any one factor determinative. See Timothy B. O'Brien LLC v. Knott, 962 F.3d 348, 350-51 (7th Cir. 2020). Rather what matters is that the court be "sensitive to the facts before it," and the court may "consider any factor that advances the Copyright Act's purposes," as long as it applies those factors equally to plaintiffs and defendants alike. See Live Face, 77 F.4th at 631."

## II.    The Fogerty Factors Do Not Support an Award of Fees

### A.    Frivolousness or Objective Unreasonableness

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." Viva Video, Inc. v. Cabrera, 9 F. App'x. 77, 80 (2d Cir. 2001) (per curiam). "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001). There is a difference between a suit that is "without merit" and one that is "patently frivolous." See Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 382 n.23 (5th Cir. 2004), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). In Creations Unlimited, Inc. v. McCain, 112 F.3d 814 (5th Cir. 1997), for example, the Fifth Circuit upheld the district court's refusal to award attorneys' fees to the defendant despite

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

finding on summary judgment that the works in question "differed… in too many respects for a layman to conclude that the works were substantially similar." Id. at 816. The district court had concluded that the legal claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding." Creations Unlimited, Inc. v. McCain, 889 F. Supp. 952, 954 (S.D. Miss. 1995).

Here, Plaintiff's claim for vicarious liability was neither frivolous nor objectively unreasonable.[2]  On this point, the Motion argues that Plaintiff had no evidence to impose vicarious liability on Jaber.  "To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." GC2 Inc. v. Int'l Game Tech. PLC, 255 F. Supp. 3d 812, 824 (N.D. Ill. 2017).  "For purposes of a vicarious copyright infringement claim, a financial benefit exists where there is evidence of a direct financial gain or that the availability of infringing material acts as a draw for customers."  Bell v. Chi. Cubs Baseball Club, LLC, No. 19-cv-2386, 2020 U.S. Dist. LEXIS 17527, at *15-16 (N.D. Ill. Feb. 4, 2020).

The Motion principally focuses on the second element of a vicarious liability claim (a direct financial interest), arguing that Plaintiff did not adduce direct evidence of Jaber profiting from Nofal LLC's infringement of the photograph at issue.  But courts in the Seventh Circuit have

---

[2]    The Motion asserts that Plaintiff's initial claim against Jaber (in the First Amended Complaint) was frivolous because Jaber "did not operate a sole proprietorship under a d/b/a, nor was he the individual that copied the pork chop photograph."  See Motion, at p. 12.  The Motion ignores, however, that the original Complaint was filed against Villard Foodtown LLC whose attorney (David Bangert, Esq.) specifically contacted undersigned counsel and informed him that Jaber was the owner/operator of the "Food Town Mart" business at issue and forwarded a printout from the City of Milwaukee showing Jaber (individually) as the licensee for the business.  Mr. Bangert represented that Jaber was the proper party defendant, which is why the First Amended Complaint (against Jaber) was filed. See, e.g., D.E. 18.  The First Amended Complaint was then amended to add Nofal LLC as a defendant upon the appearance of Mr. Steinle who further represented that it was Nofal LLC (not Jaber individually) who owned the "Food Town Mart" business.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

not required direct evidence of specific dollar amounts of profit flowing from an alleged infringement.  Jaber testified at trial that Food Town Mart sold pork chops every week, including the week(s) that the Work was displayed on the Facebook Page.  He likewise testified that he receives a profit from Food Town Mart's sale of its products, including pork chops.  From this testimony, it was not unreasonable for Plaintiff to argue that Jaber had a direct financial interest in the infringement.  Plaintiff did not need to prove a specific profit amount (as Plaintiff was not seeking disgorgement of profits) – only that Jaber profited generally.  See, e.g. Major Bob Music v. Heiman, No. 09-cv-341-bbc, 2010 U.S. Dist. LEXIS 46125 (W.D. Wis. May 10, 2010) (finding owner of dance hall liable for vicarious infringement and stating "defendant encouraged infringement of plaintiffs' copyrighted songs by allowing karaoke at Gene'os, presumably to attract customers. Thus, it is appropriate to hold defendant vicariously liable because he is the owner and operator of Gene'os and derives financial benefit from it."); Broad. Music, Inc. v. Hartmarx Corp., No. 88 C 2856, 1988 U.S. Dist. LEXIS 13298 (N.D. Ill. Nov. 17, 1988) ("The subsidiaries undoubtedly play music in their stores in order to create a more attractive environment for customers. The more customers a store attracts, the greater its profit are likely to be. Hartmarx owns 100% of the stock of Jaymar-Ruby, and 92% of that of Country Miss. The more profitable are it subsidiaries (the store owners), the greater is the value of Hartmarx. Thus, we find as a matter of law that Hartmarx has an obvious and direct interest in the alleged exploitation of copyrighted materials.").

Notably, Amjad Hamed (Jaber's son) testified that the Facebook advertisement was designed to act as a draw for customers, while Jaber testified that every pork chop, chicken leg, speaker, etc. sold at the store ultimately benefits him as the sole owner of the store.  Again, it was

6

not unreasonable for Plaintiff to argue that this evidence was sufficient to establish vicarious liability under the Copyright Act.  See, e.g. In re Aimster Copyright Litig., 252 F. Supp. 2d 634 (N.D. Ill. 2002) ("The financial benefit element is also satisfied where; as here, the existence of infringing activities act as a draw for potential customers."); Dish Network LLC v. Datacamp Ltd., No. 22-cv-00993, 2023 U.S. Dist. LEXIS 121363 (N.D. Ill. July 14, 2023) ("The financial benefit requirement is satisfied where there is evidence of a direct financial gain or that the 'availability of infringing material acts as a draw for customers.") (internal quotation marks omitted).

That Plaintiff did not ultimately succeed on its claim for vicarious liability or establish specific profits tied to the infringing Facebook post can likewise be traced to Defendants' position throughout the *entirety* of this lawsuit that the Facebook page in question, and all content thereon, was not their "Food Town Mart" store.  Plaintiff's efforts to prove its case were stymied by what can only be deemed perjury by Defendants in their deposition testimony (including a 30(b)(6) deposition that required Nofal LLC to educate itself on the issues) and written discovery responses. It was not until trial – two years after this case was filed – that Jaber finally admitted Nofal LLC controlled the Facebook page and the content thereon.  Prior to such, Defendants denied the page was controlled by Nofal LLC, denied the photograph was used to promote the sale of pork chops by Nofal LLC, and scoffed at written discovery requests seeking the production of documents showing specific profits/sales generated from the infringing post.

In his deposition, Jaber testified that Nofal LLC does business as Food Town Mart, that he is the sole owner of Food Town Mart, and that the address for Food Town Mart is 3217 W. Villard

7

Avenue, Milwaukee, WI 53209.[3]   Despite being the owner of Nofal LLC since 2017,[4] Jaber repeatedly testified in his deposition that Nofal LLC/Food Town Mart *does not* have a Facebook page, that the Facebook Page is *not* controlled by Nofal LLC, that the photographs thereon depicting the store were apparently some other location he was not familiar with, and that the assortment of products displayed thereon (such as hookahs and speakers) were *never* sold in the store.[5]   Jaber testified that he is at the Food Town Mart store at least 5 days per week consistently since 2017 and knows what is happening at and inside the store.[6]

Following the deposition, Plaintiff sent a Subpoena to Produce Documents, Information, or Objects (the "Subpoena") to Meta Platforms, Inc. (Facebook) for production of documents identifying the subscriber information/owner of the Facebook Page.   On November 13, 2023, Meta Platforms, Inc. responded to the Subpoena by producing thirteen (13) pages of documents that identify "Amjad Hamed" as the owner of the Facebook Page.

Plaintiff took Amjad Hamed's deposition on December 18, 2023.   Hamed lives with his parents, one of which is Jaber.[7]   Hamed had worked for Food Town Mart for the last 3 years.[8]   He is employed as Food Town Mart's "floor manager," meaning that he is in charge of ordering, in charge of opening the store, closing the store, and making sure everything is in order.[9]

---

[3]     See Deposition Transcript of Sharif Jaber (the "Jaber Tr."), a true and correct copy of which is attached hereto as Exhibit "B," at 7:22 – 8:21.

[4]     Id. at 11:8 – 11:10.

[5]     Id. at 14:19 – 14:21; 15:1 – 15:2; 19:20 – 19:25; 22:20 – 23:4; 25:24 – 26:19; 30:14 – 31:2; 31:18 – 31:22; 31:23 – 32:8; 32:21 – 32:3; 33:22 – 34:7; 34:19 – 34:25.

[6]     Id. at 45:21 – 46:7.

[7]     See Deposition Transcript of Amjad Hamed (the "Hamed Tr."), a true and correct copy of which is attached hereto as Exhibit "C," at 6:13 – 6:14.

[8]     Id. at 7:22 – 8:11.

[9]     Id. at 9:24 – 10:4.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Interestingly, Jaber was asked during his deposition to identify each of the employees of Food Town Mart[10] and whether he could think of any person who could be running the Facebook Page.[11] Although Jaber listed himself and others as the employees of Food Town Mart, he neglected to mention that his son, Hamed, was also an employee of the store.

Contrary to his father's testimony, Hamed testified that Food Town Mart *does* have a Facebook page and that he is the person in charge thereof, with his brother (Nofal) running the Facebook Page prior to Hamed taking over.[12] Hamed testified that he was the person who created the subject September 28, 2020 posting on the Facebook Page which utilized the Work to advertise the sale of pork chops.[13] Hamed likewise testified (again contrary to Jaber's testimony) that Food Town Mart does sell hookahs and that the photographs of such on the Facebook Page were hookahs being sold in the store.[14] Hamed likewise testified that (again contrary to Jaber's testimony) that Food Town Mart does sell speakers and that the photographs of such on the Facebook Page were speakers being sold in the store.[15] Indeed, Hamed confirmed that *all* of the postings on the Facebook Page depict or relate to items for sale at the Food Town Mart store or were otherwise promoting the store.[16] Perhaps most importantly, Hamed testified that Jaber was aware that Hamed was running Food Town Mart's Facebook Page:

> Q. Was your father aware that you were running the Facebook account for the store?

[10]     Id. at 26:20 – 28:18.

[11]     Id. at 33:4 – 33:7.

[12]     Id. at 10:23 – 11:23; 15:1 – 15:16; 19:10 – 19:20.

[13]     Id. at 21: 19 – 22:21.

[14]     Id. at 31:19 – 32:8; 34:2 – 34:13; 36:23 – 38:1; 38:4 – 38:18.

[15]     Id. at 41:16 – 42:4.

[16]     Id. at 42:19 – 45:4.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

A. Yes, sir.[17]

As noted above, Defendants pushed their 'we don't control the Facebook page' position in their responses to Plaintiff's written discovery as well. All of their responses to Plaintiff's document requests, interrogatories, and requests for admissions denied the existence of any documents or information due to Defendants purportedly not controlling the Facebook page. Indeed, even though both Jaber and Amjad Hamed testified at trial that pork chops were sold each week by Food Town Mart, Defendants claimed no documents existed in response to a request for production seeking documents showing revenue/income from the sale of pork chops at the time the photograph was displayed on the Facebook page:

> 10. Documents sufficient to identify all revenue and/or income generated from NOFAL LLC's sale of pork chops for all times that the Work was published on its website.
>
> RESPONSE NO. 10: There are no documents in the custody and control of these defendants which satisfy Request No. 10.

At best, Defendants stonewalled Plaintiff throughout the course of this lawsuit by refusing to acknowledge control of the Facebook page until trial had commenced. That Defendants refused to participate in discovery and repeatedly perjured themselves in their testimony/discovery responses does not somehow make Plaintiff's vicarious liability claim untenable/frivolous. The jury decided this matter based on the evidence before it, yet Defendants were directly responsible for hiding material evidence (i.e., their sales numbers) from Plaintiff by maintaining the lie that they did not control the Facebook page.

---

[17]    Id. at 45:18 – 45:20.

10

### B.     Motivation

Here, the Motion speculates that Plaintiff is not in the business of creating photographs but rather "purely financial" and/or "seeking wildly disproportionate settlements."  As a threshold matter, there is zero evidence before the Court supporting Jaber's assertions.  It is certainly true that Plaintiff has filed a large number of lawsuits with respect to protecting its library of > 18,000 photographs.  But, as adeptly discussed in Malibu Media, LLC v. Doe, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *6–8 (N.D. Ill. June 9, 2014) (internal quotation marks and citation omitted):

> ***It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement.*** Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants. And a search of this district's index for suits naming "The Partnerships and Unincorporated Associations Identified on Schedule A," a term commonly used by trademark holders to sue multiple websites selling counterfeit products, reveals over 75 such lawsuits in the past year alone by various trademark holders.
>
> As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense.

<div align="center">

11

</div>

> The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films.

That Plaintiff has pursued many claims for infringement is not somehow evidence of improper motivation. Indeed, with respect to Defendants in particular, it is difficult to imagine a better motive for pursuit of this lawsuit than Jaber's recalcitrance in refusing to discuss the matter pre-suit, refusing to remove the Work from the Facebook page notwithstanding multiple demands for such, and continued denials throughout this lawsuit that the Facebook page was controlled by Food Town Mart. Plaintiff has the exclusive right under the Copyright Act to display the Work, and Plaintiff was left with little choice but to pursue this lawsuit to effectuate Defendants' removal of such from the Facebook page and obtain some acknowledgment (at trial) that infringement occurred.

As discussed above, Plaintiff did not spend "considerable time on irrelevant matters" as asserted by the Motion. Plaintiff was *forced* to spend time/energy proving that the Facebook page was controlled by Defendants as they denied such in their Answer, denied such in their sworn responses to Plaintiff's interrogatories, denied such in their responses to Plaintiff's requests for admissions, and denied such in their sworn 30(b)(6) deposition. As noted in Plaintiff's Motion for Attorneys' Fees [D.E. 64], Defendants' attorney (Mr. Steinle) himself acknowledged the absurdity and perjurious nature of Defendants' deposition testimony, yet Defendants never amended any of their discovery responses or testimony until they showed up for trial and suddenly acknowledged control of the Facebook page. Even following Amjad Hamed's deposition testimony, Defendants never backed away from their denials. As such, Plaintiff had to spend a considerable amount of

12

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

time preparing for trial on the basis of proving a connection between Defendants and the Facebook page.

"To evaluate a plaintiff's motivation, courts consider the manner in which the plaintiff conducted the litigation." Harrington v. Dugar, No. 2:22-cv-08230-HDV-E, 2024 U.S. Dist. LEXIS 155470, at *8 (C.D. Cal. Aug. 27, 2024). Here, Jaber has not pointed to any litigation conduct by Plaintiff that would somehow infer an improper motive. Plaintiff timely amended its pleadings each and every time a new counsel appeared to identify the 'proper' defendant to sue, sought relevant discovery, and took depositions of only those persons who were reasonably required to prove Plaintiff's claims. Plaintiff did not file unnecessary motions or otherwise act in a way to unnecessarily increase Defendants' costs in defending this action. Had Defendants acknowledged their control of the Facebook page (at *any* time prior to trial), this case never would have proceeded to trial. See, e.g., Acosta v. Mega Media Holdings, Inc., No. 15-21837-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 30472, at *28–29 (S.D. Fla. Mar. 2, 2017) ("After considering the parties' arguments, the Court concludes that Plaintiff's suit was motivated, at least in part, by a sincere belief that Defendants committed copyright infringement and that Defendants were liable as a result of their conduct. While Defendants argue that Plaintiff's claims always lacked a legitimate basis, this was clearly not the case as evidenced at the summary judgment stage. And although Defendants focus heavily on Plaintiff's refusal to accept their settlement demand, there are no facts in the record to suggest that Plaintiff did not have a good faith reason for doing so.").

Awarding a party attorney's fees must advance the purposes of the Copyright Act, primarily to "encourage the production of original literary, artistic, and musical expression for the

good of the public." <u>Fogerty</u>, 510 U.S. at 524. This purpose is not promoted by awarding attorney's fees to a prevailing defendant "when the plaintiff has advanced a reasonable, yet unsuccessful claim." <u>Bridgeport Music, Inc. v. Rhyme Syndicate Music</u>, 376 F.3d 615, 628 (6th Cir. 2004) (citing <u>Matthew Bender & Co.</u>, 240 F.3d at 122). Awarding Jaber fees here does not advance the purposes of the Copyright Act.

### C.      *Compensation and Deterrence*

Considerations of compensation and deterrence do not weigh in favor of a fee award here. None of the other <u>Fogerty</u> factors weighs in favor of awarding fees, and Plaintiff brought this lawsuit with the good faith belief that its copyright rights had been violated and were ongoing. <u>See, e.g.</u> <u>Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.</u>, 2017 U.S. Dist. LEXIS 124082, at *5 (S.D.N.Y. Aug. 4, 2017) ("[A]s already noted, Plaintiff's conduct in this litigation was not objectively unreasonable, frivolous, or driven by an improper motive, and thus does not warrant the deterrent effect of fees."). Here, neither Plaintiff nor those similarly situated should be 'deterred' from pursuing claims against infringers who thumb their noses against a copyright owner's rights (i.e., refuse to remove a copyrighted work from display despite repeated demands for such). Here, Jaber seeks to punish Plaintiff for filing copyright lawsuits, yet Jaber does ***nothing*** to analyze the facts of those cases, the legitimacy of Plaintiff's claims, or the reason(s) for the filing of any such claim (including this one). It is far easier for Jaber to take a simplistic approach of blaming Plaintiff (the victim of copyright theft) for filing lawsuits than for Jaber to acknowledge his own conduct in ignoring Plaintiff's pre-suit correspondence and either lying about the Facebook page or failing for 2 years to ask his sons (the managers of the store) about such.

14

### III.  Unreasonableness of Jaber's Fees and Costs

Finally, *if* the Court chooses to award fees, there are several issues mandating a significant reduction in the fees sought and a distinct lack of evidence that Jaber incurred and/or paid for *any* of such fees.

#### A.  Reasonable Hourly Rates

As a threshold matter, the Motion acknowledges that Jaber's original counsel (Mr. Jaber) agreed to represent Defendants in this matter at a discounted rate of $250 per hour, yet the Motion seeks to recover fees at a rate of $400 per hour.  Here, the Motion acknowledges that the Seventh Circuit itself has held that "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him."  See Assessment Techs. of WI, LLC v. Wire Data, Inc., 361 F.3d 434, 438 (7th Cir. 2004).  But the Motion goes on to argue (without any case supporting such) that a district court is not limited to the fees contracted between lawyer and client and can instead award *more* than the lawyer billed on an hourly basis.  Jaber seemingly seizes upon language in Assessment Techs. of WI, LLC that the contracted fees "should be" the ceiling, arguing that the Seventh Circuit did not use the word "must."  Id. at 439 (7th Cir. 2004) ("[T]he negotiated fees should be the ceiling.).  Jaber ignores, of course, that the Seventh Circuit re-visited the same issue in 2016, plainly holding (ironically in a case where the lawyer contracted to provide services at $250 per hour yet sought reimbursement at approximately $400 per hour as Jaber does here):

> In Assessment Techs. of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 438-39 (7th Cir. 2004), we held that in a copyright case "the best value of the lawyer's services is what the client agrees to pay him," and therefore agreed with the Third Circuit in Lieb v. Topstone Industries, 788 F.2d 151, 156 (3d Cir.1986), that the contract between a party and his lawyer *places a ceiling* on what a court can award the lawyer in such cases.

15

Bell v. Lantz, 825 F.3d 849, 854 (7th Cir. 2016) (emphasis added).  That Mr. Steinle had a longstanding relationship with the Jaber family and agreed to a discounted rate does not somehow give the Court discretion to award a higher rate and therefore a windfall to Jaber.  The Motion does not cite a *single* case from within the Seventh Circuit that would allow an award of fees higher than what was contracted for between a lawyer and his client.  As a result, *at most* the Court can award $31,150.00 in fees to Jaber with respect to Mr. Steinle and Ms. Herda's 124.6 hours of time.

### B.　The Motion Does Not Apportion Fees Between Jaber and Nofal LLC

The Motion argues that Jaber is entitled to recover the *entirety* of the amounts billed by Mr. Steinle's firm in defending this lawsuit on behalf of *both* Jaber *and* Nofal LLC.   There are two (2) problems with the Motion's logic here.  First, Jaber has not presented any evidence that he (rather than Nofal LLC) paid any of Mr. Steinle's fees or is obligated to do so.  To the extent Nofal LLC paid any of the fees, Jaber is not entitled to reimbursement for such as those fees were paid by a non-prevailing party that is clearly not entitled to recover its fees.  Second, and derived from the first point, is that the Motion does not identify any fees incurred that would not otherwise have been incurred in defending Nofal LLC against Plaintiff's claim for copyright infringement.  Only Jaber prevailed against Plaintiff.  Nofal LLC did not.

"Only prevailing plaintiffs are entitled to recover their fees. Thus, where an attorney represents multiple parties and not all prevail, the court should exercise discretion to reduce the fee to reflect a reasonable amount of time spent on the prevailing party's case."  Dong Yuan v. Hair Lounge Inc., No. 18-CV-11905 (AT) (BCM), 2023 U.S. Dist. LEXIS 111963, at *8-9 (S.D.N.Y. June 28, 2023); see also Ottaway v. Rev Rec. Grp., Inc., No. 1:16cv162, 2020 U.S. Dist. LEXIS 266797, at *11 (N.D. Ind. Oct. 16, 2020) ("Where there are multiple defendants in a

litigation, it is within the discretion of the trial court to apportion an award of attorneys' fees amongst them."). Substantially all of Mr. Steinle's fees – whether for attending trial, attending depositions, and/or responding to written discovery requests – would have been incurred regardless of whether Jaber was a defendant in this lawsuit or not. Indeed, the only time conceivably incurred on behalf of Jaber alone would be time spent responding to Plaintiff's discovery requests which were served on each of Jaber and Nofal LLC on the same date. But Mr. Steinle's time records make no effort to separate out time spent in reviewing or responding to such discovery requests, describing such as review of "discovery requests" or response to "discovery requests" generally.

| Date | | Description | Rate | HOURS |
|---|---|---|---|---|
| 06/28/2023 | WTS | Review Plaintiff's First Discovery Requests . Draft correspondence to Mr. Jaber. | 250.00 | 0.80 |
| 08/16/2023 | WTS | Conference with Mr. Jaber regarding Request to Admit. Draft responses to Request to Admit. Draft correspondence to Attorney Cruz with responses. | 250.00 | 1.20 |
| 08/17/2023 | WTS | Conference with Mr. Jaber. Draft responses to Interrogatories and Request for Production of Documents. Review correspondence from plaintiff's counsel regarding deposition dates. | 250.00 | 2.10 |
| | | LEGAL SERVICES | | 4.10 |

Thus, if the Court does award fees, and assuming the Court agrees that Jaber is limited to the $250 per hour he contracted for, then he should be entitled to no more than 50% of the fees billed by Mr. Steinle's firm, i.e., no more than $15,575.00. But given that substantially all of the fees by Mr. Steinle's firm would have been incurred regardless of Jaber's involvement, and because Jaber has not produced any evidence of his payment of $1.00 in fees, Plaintiff's position is that fees should be apportioned (if at all) 90% to Nofal LLC and 10% to Jaber. This would result in, at most, an award of fees in the amount of $3,115.00 to Jaber. While Plaintiff does not believe any

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

fees should be awarded (as described above), the Court should (if awarding fees) reduce it accordingly by apportioning between Jaber and Nofal LLC.[18]

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion; (b) alternatively, if granting the Motion, reducing the fees awarded in accordance with the arguments proffered herein; and (c) for such further relief as the Court deems proper.

Respectfully submitted,

Dated: July 30, 2025.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza____
    Daniel DeSouza, Esq.
    Florida Bar No. 19291

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza____
    Daniel DeSouza, Esq.

---

[18]     Plaintiff does not otherwise object to the reasonableness of the amount of time spent by Mr. Steinle's firm or challenge individual billing entries as excessive.

# Docket No. 88

# 88

A158

UNITED STATES DISTRICT COURT
EASTER DISTRICT OF WISCONSIN

Case No. 22-cv-642-JPS

PREPARED FOOD PHOTOS, INC.,

     Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a Food Town Mart,

     Defendants.

---

**<u>DEFENDANT SHARIF JABER'S REPLY IN SUPPORT OF HIS MOTION FOR
ATTORNEY'S FEES [DE 83]</u>**

Defendant Sharif Jaber, pursuant to Civil L. R. 7(c) responds to plaintiff Prepared Food

Photos, Inc.'s ("PFP") opposition memorandum, [DE 87], and the supporting declaration of

Rebecca Jones [DE 87-1].

**TABLE OF CONTENTS**

<div align="right">Page</div>

**REPLY** ........................................................................................................................ 2

   1.    **PFP still does not justify its unreasonable settlement positions here and
elsewhere, and its opposition reveals a further motivation of personal animus ... 2**

   2.    **PFP's arguments respecting the evidence of Jaber's fees is a non-starter ............ 5**

   3.    ***Bell v. Lantz* does not limit the Court's discretion to award a prevailing market
rate in the lodestar calculation................................................................... 6**

   4.    **The Court need not apportion fees between Jaber and Nofal, just as Prepared
Food Photos seeks its full, unapportioned fees....................................... 10**

**CONCLUSION** .......................................................................................................... 12

**REPLY**

Prepared Food Photos' opposition to defendant Jaber's motion for attorney's fees advances a number of illogical arguments, and is entirely silent with respect to its pattern of abusive copyright enforcement. Contrary to its assertion, it absolutely did have a choice in selecting what claims to pursue, against what defendants, and how. Those choices, however, were unreasonable. Jaber, like many other defendants are not "thumb[ing] their noses against the copyright owner's rights" Opp'n [DE 87 at 14], but rather doing what the Copyright Act encourages them to do: "stand on their rights" when faced with grossly excessive settlement demands like those sought by PFP and opposing claims without merit.

Jaber makes four points in reply to Prepared Food Photos' opposition: (1) PFP admits that it was motivated by personal animus in against Jaber and it cannot justify its various unreasonable settlement demands here and elsewhere; (2) Jaber has met his evidentiary burden and need not show he personally paid the invoices, while PFP has not rebutted the evidence of either time spent or a reasonable hourly rate; (3) PFP misreads <u>Bell v. Lantz</u>, and the Court has discretion to employ a market rate in the lodestar calculation; and (4) PFP's apportionment argument is illogical, but the Court should be consistent in disposing of PFP's fee motion, if it awards PFP any fees.

1.  **PFP still does not justify its unreasonable settlement positions here and elsewhere, and its opposition reveals a further motivation of personal animus**

Entirely absent from Prepared Food Photos' opposition is any justification for its unreasonable settlement position throughout this case, as well as how it approaches resolving its claims in other cases. It is a pattern of conduct not isolated to this case because it has not been deterred by a significant award of fees to a prevailing defendant. It also says it was left with "little choice" to pursue Jaber personally as a consequence of what it viewed as Jaber's "misrepresentation" regarding the Facebook post. That perceived sleight does not justify suing

Jaber personally.

Not once does PFP lay out a reasoned position for why $90,000 was an appropriate measure of damages resulting from a singular social media post. Glaringly absent from PFP's opposition is the fact that the *amount* demanded by a plaintiff like PFP is what drives cases like this. E.g., Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630, 632-33 (7th Cir. 2023) (plaintiff had licensed its software for $328 but "sued the defendants for copyright infringement and sought at least $483,000 in damages [in what is] just one of Live Face's roughly 200 copyright suits"); Budget Cinema, Inc. v. Watertower Assoc., 81 F.3d 729, 733 (7th Cir. 1996) (finding the plaintiff's copyright infringement suit "objectively unreasonable" where it demanded remedies unavailable to it, including punitive damages and statutory remedies under 17 U.S.C. § 412); Harris Custom Builders, Inc. v. Hoffmeyer, 140 F.3d 728, 730-31 (7th Cir. 1998) ("the district judge … [may] determine whether [the prevailing party's] rejection of the [non-prevailing party's] offer was reasonable and whether that rejection should play into the analysis of the fee issue").

The declaration of Rebecca Jones continues the seemingly[1] false narrative that PFP is "in the business of licensing" old stock images and that they are "high-end." Decl. [DE 87-1 at ¶ 3]. While she mentions PFP's "pre-suit demand letter [that it sent] to the store," id. at ¶ 6, she entirely glosses over the *amount* PFP sought ($30,000). Its demand was not based on any objective market value of the lone image—which it knows based on its prior licensing of images one-off through iStock Photo—but rather bottomed on default judgments. [DE 80-5 at 3-5]. The letter also threatened that "courts generally require an infringer to pay a multiple (anywhere from 3x – 6x) of [a plaintiff's purported] license fee." Id. at 5. Similarly, Ms. Jones omits any discussion of why PFP demanded an arbitrary $90,000 just prior to trial, and that it actually "didn't want to demand

---

[1] See Mot. [DE at 83 at 15-16].

anything" because it "prefer[ed] the trial path at [that] point." [DE 80-7]. Nor does PFP explain now how that figure was determined, or why that amount was not (or could not be) apportioned between Jaber and Nofal.

Prepared Food Photos also sued Jaber and Nofal because it bristled at what it believed was a "misrepresentation by Mr. Jaber." [DE 87-1 at ¶ 7]. But personal animus is not a good faith basis to file a lawsuit. Ms. Jones's declaration *supports* rather than undermines the second Fogerty factor (motivation).

PFP argues that had Jaber simply "acknowledged their control of the Facebook page [then] this case never would have proceeded to trial." Opp'n [DE 87 at 13 ]. It strains credulity to think that merely admitting the Facebook page was Nofal's would have in any way led PFP to drop its case entirely, let alone its claim for vicarious infringement against Jaber, as its outsized settlement demands illustrate. Again, nowhere is there any disclosure about PFP's efforts to avoid litigation by finding possible common ground on an objective, market-based measure of its harm. Because there wasn't. That approach was unreasonable, even when it may have had a legitimate claim of infringement.

In contrast to Ms. Jones's statement that Prepared Food Photos "was left with little choice but to pursue this lawsuit or drop the matter altogether," [DE 87-1 at ¶ 9], she ignores that PFP had the means to potentially avoid litigation by being reasonable in its pre-suit settlement discussions. Yet it wasn't reasonable. Instead, it simply viewed Jaber and Nofal as a singular target, not caring which of them paid the demanded tens of thousands of dollars. It could have pursued only Nofal, but it chose to pursue Jaber additionally for reasons Ms. Jones does not explain.

To paint itself as a reasonable litigant, PFP continues to claim in the face of mounting evidence to the contrary that its entire business depends on licensing 18,000 photographs on a

monthly basis, ostensibly in order to protect some undisclosed number of "paying customers" from having the same images appear in advertisements by competing grocers in the same geographic market. But Ms. Jones's assertions about what PFP's supposed customers might believe is rank hearsay and entirely unsupported.[2]

Ms. Jones also asserts that PFP "is motivated by the need to protect its intellectual property" but again offers no explanation for why licensing a singular image after 2016 suddenly became inconsistent with that goal. Nor does she explain how settling a dispute over a social media post with a view towards market realities would in any way affect the scope of protection provided by its copyrights. It might rightly enforce them, but when it does so disconnected from an objective measure of harm, that crosses the line from reasonable to unreasonable. It is impossible to reconcile the fact that PFP previously licensed singular images through iStock Photo, but after 2016, claims it cannot do so. The truth is self-evident: it behaves as copyright trolls do.

Prepared Food Photos wrongly maintains that it can demand any arbitrary sum in a copyright infringement dispute without risk and force a successful defendant like Jaber to incur the whole of his expense in fully resisting an unreasonable claim.

## 2. PFP's arguments respecting the evidence of Jaber's fees is a non-starter

Next, Prepared Food Photos takes issue with the evidence supporting a fee award to Jaber.

It argues that Jaber should recover no fees at all because there is "a distinct lack of evidence that Jaber incurred and/or paid for *any* of such fees," Opp'n, [DE 87 at 15], even when, for its part, Prepared Food Photos did not pay any attorney fees itself.[3] Regardless, Attorney Steinle's invoices

---

[2] To Jaber's knowledge, PFP has never identified any customer in particular that has expressed such a concern. For the reasons articulated by Pool World, Jaber has reason to believe there are either no such customers, or they don't actually hold the asserted competitive concern as PFP claims.

[3] With the exception of local counsel, which PFP apparently forfeited in its own fees motion.

clearly identify Sharif Jaber as the recipient and list his personal address. Composite Ex. A to Decl. of Steinle, [DE 83-1 at 8-27]. The invoices do not identify Nofal, LLC, nor do they identify the business's address. It is bordering on frivolous in the face of that evidence for Prepared Food Photos to argue that Jaber not be awarded *any* fees without evidence that they were actually paid (or paid by him and him alone) because the legal framework for a prevailing party fee award does not depend on such evidence. See Section 3, *infra*. To the extent it argues separately that there is no evidence that Jaber *personally* paid those fees or even incurred the obligation to do so apart from Nofal is of no moment; the Copyright Act provides successful defendants like him with a fee award, just as a successful plaintiff need not show that it paid its attorneys anything for their contingency fee representation. The core of the analysis is whether the fee award is "faithful to the purposes of the Copyright Act," Fogerty, 510 U.S. at 534 n.19, not a penny-for-penny direct reimbursement of the successful party's actual fees paid.

3. **Bell v. Lantz does not limit the Court's discretion to award a prevailing market rate in the lodestar calculation**

Prepared Food Photos also argues that Assessment Technologies and Bell v. Lantz eliminate any court discretion respecting a reasonable hourly rate in the lodestar calculation, asserting that the actual rate charged is conclusive. Opp'n [DE 87 at 15]. It is wrong. This Court has discretion to determine what a reasonable hourly rate is, including discretion to employ a market rate. It is not inflexibly bound by the contracted rate between Jaber and Attorney Steinle because the Copyright Act is the polestar of the fees analysis, not the terms of engagement between lawyer and client.

Prepared Food Photos wrongly claims that Jaber did not cite any cases supporting his argument that the *market* rate should be used in the lodestar calculation. Id. He did, and even alerted the Court to some tension in Seventh Circuit decisions, citing both Pickett v. Sheridan

Health Care Center, 664 F.3d 632, 639 (7th Cir. 2011) and Assessment Technologies, while arguing Pickett, as the earlier decision controls over the permissive language ("should") in Assessment Technologies. Mot. [DE 83 at 21]. It is also disingenuous for PFP to argue *it* is entitled to a market rate of $450 in its own lodestar calculation, but not Jaber, fortuitously benefitting from his special preexisting relationship with Steinle. The Copyright Act, however, requires that plaintiffs and defendants be treated evenhandedly, Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 207 (2016), and using a market rate to determine Jaber's fees does just that—especially when plaintiffs like PFP are often represented on contingency while defendants routinely must "shop" for the most cost-effective out-of-pocket (cash) representation.

To the extent there were any tension between the Copyright Act's plain text under § 505 ("recovery of full costs" but an "award" of a reasonable attorney's fees) and Assessment Technologies, the statute controls. In no uncertain terms, Jaber argued in his fees motion the rationale employed by the Supreme Court concerning Section 505's purpose governs: "deterrence" *in addition to* "compensation." Fees Mot., [DE 83 at 21]; see also Design Basics, LLC v. Kerstiens Homes and Designs, Inc., no. 1:16-cv-726, 2021 WL 4749916, at *6 (S.D. Ind. Sept. 30, 2019) (fees can "serve as a deterrent against maintaining litigation"). Consistent with fulfilling the Copyright Act's deterrent goals, Hensley instructs not that "the" hourly rate (definite article) be used in the lodestar calculation but rather "*a* reasonable hourly rate" (indefinite article). Id. at 433 (emphasis supplied). In contrast to the indefinite article "a" is the Court's description of "*the* number of hours" (definite article) reasonably expended in the other half of the lodestar. Id. (emphasis supplied). Further showing the market rate prevails is the Court's holding that the prevailing party must provide evidence not only of the "hours worked" but also the "rates **claimed**." Id. (emphasis supplied). "Claiming" a rate is not equivalent to simply proving an

"agreed" rate. Cf. id. And the statute's contrasting choice of words—"recovery" of full costs, but an "award" of fees—further drives home the flexibility courts have in their equitable discretion.

The Seventh Circuit provides district courts with discretion on both halves of the lodestar calculation, not only with respect to the time spent. It has "defined a reasonable hourly rate as one that is 'derived from the market rate for the services rendered.'" Pickett v. Sheridan Heath Care Ctr., 664 F. 3d 632, 640 (7th Cir. 2010) (quoting Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003)). Consistent with that definition, the overwhelming authority is that a district court has discretion to determine what the reasonable (including market) rate is. Id. ("If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate."); accord Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 554-57 (7th Cir. 1999) ("The determination of an attorney's 'reasonably hourly rate' is to be based on the 'market rate' for the services rendered."); Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1999) ("when calculating attorney's fees, a district court will determine a 'lodestar amount by multiplying the reasonable number of hours worked by the market rate'") (quoting Bankston v. Illinois, 60 F.3d 1249, 1255 (7th Cir. 1995)); Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014) ("A reasonable hourly rate is based on the local market rate for the attorney's services….. [t]he judge did not abuse her discretion by giving little weight to [the fee applicants' agreements] as evidence of market hourly rates for the attorney's services."); Moriarty v. Svec, 233 F.3d 955, 966 (7th Cir. 2000) ("discretion in determining what is a reasonable attorney's fee applies to its determination of what constitutes a market").[4] And so while an "attorney's actual billing rate for comparable

---

[4] There is no principled reason to provide a different definition of or limit to "reasonable attorney's fee" under § 505 of the Copyright Act from identical text existing in other fee-shifting statutes, such as Title VII actions ("a reasonable attorney's fee" 42 U.S.C. § 200e-5(k)) or civil rights actions ("a reasonable attorney's fee, 42 U.S.C. § 1988(b)).

work is 'presumptively appropriate' to use as the market rate," Denius, 330 F.3d at 930, this Court is not limited, as PFP urges, to use *only* the rate actually charged to Jaber to the exclusion of all other evidence or reasons why that rate might not be a reasonable one under the circumstances. There are very good reasons why the special, below market rate here should not limit the lodestar award to Jaber, including that the rate was not the one normally charged, is far below the market rates reflected in the AIPLA economic survey, and because the Copyright Act's purposes would be disserved by allowing Prepared Food Photos to evade the Act's intended deterrent consequences of failed litigation. Unlike PFP, Jaber cannot use a damages multiplier as a "disincentive," like PFP threatens, [DE 80-5 at 5], but must urge the Court to award *full* fees under Section 505 for a similar purpose.

Prepared Food Photos also does not present any counter-evidence that the market rate for federal intellectual property litigation is less than Jaber's proposed $400 per hour. It has therefore not rebutted Jaber's evidence of Attorney Steinle's usual rate, nor the AIPLA evidence supporting rates even higher than that. Its opposition is entirely a legal argument, relying on a flawed reading of Bell v. Lantz and urging that case limits the Court's discretion. It doesn't. Bell did not overrule Assessment Technologies' permissive language nor did it extend that decision to a rigid rule—or suggest that the Seventh Circuit's many other cases providing a district court with discretion in both halves of the lodestar calculation. Instead, Bell boils down to an evidentiary error by the district court: The Bell court observed that the district "court was mistaken" in its "belief that Bell failed to present any exhibits supporting his claim that [defense counsel's] hourly rate was $250" and that the "district court never properly analyzed [the] evidence" regarding the $410 rate. Bell v. Lantz, 825 F.3d 849, 854 (7th Cir. 2016). It did not reverse and simply enter judgment for Bell (as it often does in appeals of fee awards), but rather remanded to the district court for it to continue

to exercise its discretion with the benefit of all the evidence. Id.

In another copyright case, post-Bell, this District has applied the market rate analysis of Pickett to prevailing defendants, see Design Basics LLC v. Lexington Homes Inc., no. 14-cv-1102, 2017 WL 1901453 (E.D. Wis. May 8, 2017) ("A reasonable hourly rate is 'derived from the market rate for the services rendered.'"), showing that Bell does not handcuff this Court's discretion.

Regardless, Jaber has advanced arguments for why Bell is wrong if the Court were to read it as PFP urges, because Section 505's purpose of deterrence would be disserved by permitting a losing plaintiff to avoid the consequences of its failed litigation and would further treat a prevailing contingency-fee plaintiff like PFP differently from a prevailing hourly-fee defendant like Jaber. What fee "award" is "reasonable," 17 U.S.C. § 505, is not controlled exclusively by the terms of engagement between lawyer and client. As the Seventh Circuit has instructed in Pickett, a district "court is to **consult [] the market** when determining a reasonable hourly rate for contingent fee cases and **non-contingent fee cases**." Pickett, 664 F.3d at 642 (emphasis supplied). A "market" is not defined by the singular engagement between the prevailing party and its attorney, just as the market is not defined by what a plaintiff, like PFP, unilaterally claims is its licensing model.

Limiting a fee award to those actually incurred and paid by a successful defendant would work at cross-purposes to the Copyright Act's goal of "deterrence" in fee determinations.

4. **The Court need not apportion fees between Jaber and Nofal, just as Prepared Food Photos seeks its full, unapportioned fees**

Finally, Prepared Food Photos also argues that if "Nofal paid any of the fees, Jaber is not entitled to reimbursement for [them]." Opp'n [DE 87 at 16]. It essentially argues that Jaber be awarded no fees because PFP succeeded to the extent of $200 against Nofal. While citing out of district decisions, id., they nevertheless support the notion that the Court has discretion in determining the amount of Jaber's fees. Prepared Food Photos' logic, however, is fatally flawed.

It asserts that because defense counsel also represented Nofal, those fees "would have been incurred regardless of whether Jaber was a defendant in this lawsuit or not. Id. at 17. Reversing the order of parties illustrates PFP's logic problem: Fees in defense of Jaber "would have been incurred regardless of whether [Nofal] was a defendant in this lawsuit or not." In fact, PFP's argument counsels against any apportionment when the facts were so closely interrelated between two claims. Illustrating that fact is that Mrs. Jones herself still referred to Nofal and Jaber jointly in her most recent declaration. [DE 87-1 at ¶ 9] ("Defendants' denial"). So too in the legal memorandum authored by PFP's attorneys, which is replete with references to the defendants jointly on key issues. Opp'n, [DE 83 at 2] ("Defendants to acknowledge **their control** of the subject Facebook page" and "Defendants denied **their display** of the photograph" and "Defendants were sticking to **their** nonsensical **position**); id. at 10 ("Defendants [plural] purportedly not controlling the Facebook page"); id. at 12 ("Plaintiff was left with little choice but to pursue this lawsuit to effectuate Defendants' [plural] removal of such from the Facebook page"); id. at 13 ("sincere belief that Defendants [plural] committed copyright infringement and that Defendants [plural] were liable as a result of **their** conduct") (emphasis supplied). That Prepared Food Photos itself is unable to keep the two co-defendants distinct in its legal arguments shows that apportionment is difficult, if not impossible on this record—and PFP makes no effort to parse what fees would be wholly attributable to Nofal only. Its argument that there should be no fee award to Jaber whatsoever simply falls flat.

Contrary to Prepared Food Photos' all-or-nothing argument, the law allows recovery of full fees to a prevailing defendant even where other defendants were found liable. Where "the plaintiff's claims of relief ... involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole,

making it difficult to divide the hours expended on a claim-by-claim basis, ... the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation." Ustrack v. Fairman, 851 F.2d 983, 988 (7th Cir. 1988). When the claims are so related, then "'[n]o exact calculation of the time' reasonably required to prepare and litigate a case if that case had been confined to its meritorious issues is possible." Divane v. Krull Ele. Co., 319 F.3d 307, 315 (7th Cir. 2003) (quoting Ustrack).

However the Court ultimately resolves the competing fees claims, it should be consistent with regard to apportionment as between the parties: Either (A) Prepared Food Photos' fee award should be reduced (apportioned) to account for time spent prosecuting its failed claim against Jaber, and be awarded its fees only with regard to Nofal (if at all[5]), while Jaber's fees should be similarly apportioned, or (B) no apportionment in either fee claim. The Court ought, for the reasons articulated throughout the post-judgment proceedings, deny PFP's fees and award Jaber fees on a market-based lodestar calculation.

## CONCLUSION

Prepared Food Photos' opposition to Jaber's motion for attorney's fees is unavailing, advancing a number of false assertions about what Jaber argued in his motion and what the case law stands for. It is entirely silent on its settlement demands as the real reason this action was pursued, and they show that its position was unreasonable.

<div style="margin-left: 50%;">

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Attorney for Defendants
**KLEMA LAW, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606

</div>

---

[5] To be clear: Nofal argues there are good reasons why the Court should outright deny any fees to Prepared Food Photos as a copyright troll given its conduct in this action as analyzed under the Fogerty factors.

A171

Telephone: 202-713-5292
E-mail: Griffin@KlemaLaw.com

# Docket No.

# 84

**Docket No. 84**

A172

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin ▼

| | |
|---|---|
| PREPARED FOOD PHOTOS, INC. )<br>v. )<br>SHARIF JABER and NOFAL, LLC ) | Case No.:    22-cv-642-JPS |

## BILL OF COSTS

Judgment having been entered in the above entitled action on    Nov. 7, 2024    against    Prepared Food Photos, Inc.    ,
                                                                 *Date*

the Clerk is requested to tax the following as costs:

| | |
|---|---|
| Fees of the Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ |
| Fees for service of summons and subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . . . . | 416.25 |
| Fees and disbursements for printing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Fees for witnesses *(itemize on page two)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Docket fees under 28 U.S.C. § 1923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Costs as shown on Mandate of Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. § 1828 . . . . | |
| Other costs *(please itemize)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| TOTAL    $ | 416.25 |

*SPECIAL NOTE:* Attach to your bill an itemization and documentation for requested costs in all categories.

### Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

[✓] Electronic service          [ ] First class mail, postage prepaid
[ ] Other:

s/ Attorney:    W. Timothy Steinle

Name of Attorney:    W. Timothy Steinle

For:  Sharif Jaber                                              Date:  July 9, 2025
          *Name of Claiming Party*

### Taxation of Costs

Costs are taxed in the amount of _____ and included in the judgment.

 

# Daughters
### Reporting. Inc.
101 NE 3rd Avenue, Suite 1500 - Fort Lauderdale, FL 33301
Office 954.755.6401 - Fax 954.827.7778
daughtersreporting@gmail.com - daughtersreporting.com

## INVOICE

TERSCHAN, STEINLE, HODAN & GANZER LTD
ATTN: W. Timothy Steinle, Esq.
309 North Water Street, Suite 215
Milwaukee, WI  53202

**Invoice Number:     315384**
Invoice Date:   09/28/2023

In Re:   PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC. vs. NOFAL LLC
d/b/a FOOD TOWN MART and SHARIF JABER
Case Number: 2:22-cv-00642-JPS
Witness(s): Sharif Jaber, Corporate Representative
Attendance Date: 09/26/2023, 1:00 p.m.
Reporter: Jamie Mackrell
Location: VIDEOCONFERENCE - via Zoom

| Description | Amount |
|---|---|
| **Deposition of Sharif Jaber** | |
| Certified Copy - 60 pgs | 225.00 |
| **Mini/Condensed transcript, no charge** | |
| **Transcript(s) emailed upon payment** | |
| Invoice Total: | 225.00 |

---

**DAUGHTERS** HAS GONE **GREEN**!

Daughters Reporting works remotely and we are always available.
Email us for all your court reporter needs!!!

Thank you!

---

INVOICE DUE WITHIN 30 DAYS.
Tax ID: 46-4642885

*Please detach bottom portion and return with payment*

| | | | |
|---|---|---|---|
| Invoice Number: | 315384 | Cardholder's Name: | |
| Invoice Date: | 09/28/2023 | Card Number: | |
| Amount Due: | **$225.00** | Exp. Date: | Phone: |
| Amount Enclosed: | $_____ | Billing Address: | |
| **CREDIT CARDS ACCEPTED** | | Zip: | Security Code: |
|    | | Signature: | |





101 NE 3rd Avenue, Suite 1500 - Fort Lauderdale, FL 33301
Office 954.755.6401 - Fax 954.827.7778
daughtersreporting@gmail.com - daughtersreporting.com

# INVOICE

TERSCHAN, STEINLE, HODAN & GANZER LTD
ATTN: W. Timothy Steinle, Esq.
309 North Water Street, Suite 215
Milwaukee, WI 53202

**Invoice Number:** 315998
Invoice Date: 01/08/2024

In Re: PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC. vs. NOFAL LLC
d/b/a FOOD TOWN MART and SHARIF JABER
Case Number: 2:22-cv-00642-JPS
Witness(s): Amjad S. Hamed
Attendance Date: 12/18/2023, 11:00 a.m.
Reporter: Jamie Mackrell
Location: VIDEOCONFERENCE - via Zoom

#7111.001
Jaber, Sharif

| Description | Amount |
|---|---|
| **Deposition of Amjad S. Hamed**<br>Certified Copy - 51 pgs | 191.25 |
| **Mini/Condensed transcript, no charge**<br>**Transcript(s) emailed upon payment** | |
| Invoice Total: | 191.25 |

---

**DAUGHTERS** HAS GONE **GREEN!**

Daughters Reporting works remotely and we are always available.
Email us for all your court reporter needs!!!

Thank you!

---

INVOICE DUE WITHIN 30 DAYS.
Tax ID: 46-4642885

*Please detach bottom portion and return with payment*

| Invoice Number: | 315998 |
|---|---|
| Invoice Date: | 01/08/2024 |
| Amount Due: | $191.25 |
| Amount Enclosed: | $ 191.25 |

**CREDIT CARDS ACCEPTED**

  

| Cardholder's Name: | TSHG |
|---|---|
| Card Number: | ▉▉▉ |
| Exp. Date: | Phone: |
| Billing Address: | |
| Zip: | Security Code: |
| Signature: | |

# Docket No.

# 86

**Docket No. 86**

A176

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

      Defendants.

## PLAINTIFF'S RESPONSE TO JABER'S BILL OF COSTS

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this response to defendant Sharif Jaber's ("Jaber") Bill of Costs [D.E. 84].

1.     As the Bill of Costs seeks only the cost of deposition transcripts necessarily obtained for use in this litigation, Plaintiff does not object to the taxation, in Jaber's favor, of the $416.25 that the Bill of Costs seeks.

                   Respectfully submitted,

Dated: July 25, 2025.         COPYCAT LEGAL PLLC
                             3111 N. University Drive
                             Suite 301
                             Coral Springs, FL 33065
                             Telephone: (877) 437-6228
                             dan@copycatlegal.com

                   By: /s/ Daniel DeSouza___
                      Daniel DeSouza, Esq.

1

Florida Bar No. 19291

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza____
Daniel DeSouza, Esq.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228