UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

Nos. 26-1757 & 26-1859
District Court No. 2:22-cv-00642-JPS

---

PREPARED FOOD PHOTOS INC., f/k/a Adlife
Marketing & Communications Co. Inc.,

Plaintiff – Appellee / Cross – Appellant

v.

NOFAL, LLC d/b/a FOOD TOWN MART
Defendant – Appellant / Cross - Appellee

and

SHARIF JABER,

Defendant –  Cross - Appellee

### MOTION OF POOL WORLD, INC. and NATIONAL LAW FORUM LLC D/B/A NATIONAL LAW REVIEW FOR LEAVE TO FILE AS AMICI CURIAE

Pool World, Inc., and National Law Forum, LLC, d/b/a The National Law Review more the Court to grant them leave to file the accompanying brief as amici curiae, supporting in part appellant Nofal LLC and cross-appellees Nofal LLC and Jaber, for the following reasons:

1.  This appeal arises from judicial determinations and a jury verdict in a copyright infringement action filed by Prepared Food Photos, Inc. ("PFP"), a repeat copyright litigant against a small grocery store, Nofal LLC, and its owner, Jaber.  PFP sent a demand letter threatening to file suit in a federal court in Florida for more than

a hundred thousand dollars in damages, unless the store promptly agreed to a settlement payment of $30,000, based on the infringing use on the store's Facebook page of a stock photograph of raw pork chops. PFP represented that its photos are only licensed based on contracts for access to its entire database of thousands of stock photos, available for a minimum of $999 per month, and hence that appropriate measure of statutory damages for two years of use would be nearly $60,000. When the grocery store refused this demand, PFP filed suit against Nofal LLC and personally against its owner. Despite the sworn testimony of a PFP officer about the supposed minimum license fee arrangement, the jury found that the individual owner was not liable for the infringement and awarded only $200 in actual damages or $1000 in statutory damages against the store.

After the trial judge rejected PFP's motion for a new trial based on the damages testimony it had presented, the parties cross-moved for awards of attorney fees (specifically, the individual owner moved for fees against PFP, and PFP moved for fees against Nofal LLC). The district court, despite having previously stated that Jaber was the prevailing party on PFP's suit against him, then rejected both motions for fees, based on an issue that neither side had presented for rejecting the other side's motion: the court held that it had discretion to determine that neither Jaber nor PFP was a prevailing party. The district court thus did not have to reach the issue of how the so-called *Fogerty* factors, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), would apply in deciding whether fees should be awarded to either side. *See also Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197 (2016).

-2-

2. The proposed amici are two companies that have had experience addressing demand letters and litigation brought on behalf of PFP and based on the same claims about actual damages. Both amici had insurance coverage but decided not to invoke that coverage because they feared that insurance companies would choose the cheaper way out of paying a large ransom instead of paying even more in fees for experienced copyright counsel, and they did not want to have an illegitimate ransom paid in their name. Both amici felt they were providing a service to the broader small business community by not surrendering to what they regarded as illegitimate threats. And both amici were able to achieve success in opposing PFP's extortionate demands because they were fortunate to have the help of pro-bono counsel.

a. Proposed amicus Pool World, Inc., is a company based in Spokane, Washington, that installs swimming pools in Idaho and eastern Washington and sells both pool equipment and grills at retail establishments in both states. In 2022, Pool World received a demand letter from PFP alleging that its use in 2010 of a stock photograph of vegetables on a grill on a website had caused PFP to suffer actual damages of $11,988 for each year that the infringing photo had appeared on its website. The demand letter was similar to the 2021 demand letter sent in this case, but it also included citations to five default judgments awarding damages based on its claimed monthly minimum subscription fee. PFP's initial disclosures cited such default judgments to support its claim for about $150,000 in actual damages, $11,988 per year since 2010.

Although the staff who had obtained the photo were no longer working for Pool

World, and Pool World could not locate evidence of licensing, Pool World refused to pay the $30,000 demanded.  Instead, Pool World litigated its defenses to infringement, arguing that the discovery rule should be limited to equitable limitations; it was able to retain the pro bono services of lawyers from Public Citizen, of students and faculty from the intellectual property clinic at Stanford Law School, and of a Spokane lawyer with a background in computer technology.  Pool World used discovery to explore the veracity of PFP's actual damages claim,  and refused to agree to PFP's insistence that each side be allowed to unilaterally designate any discovery production as confidential. As a result, the judicial records in that case, available on the public record at https://www.courtlistener.com/docket/67466658/prepared-food-photos-inc-v-pool -world-inc/, contain (1) expert reports explaining the actual market value of licenses for PFP's stock photos and laying out in detail the way in which PFP"s demand letters distort the facts and the law to intimidate unsophisticated small businesses into paying huge settlements; (2) records of PFP's actual subscription agreements, showing that the monthly fees  were as low as $99 per months, and records of periodic payments as low as $95 per month; (3) records showing that most of the agreements were achieved after PFP threatened to sue for infringement, and were apparently entered in lieu of paying large sums of damages;  (4) records showing that default judgments cited in PFP's demand letter to Pool World and its Initial Disclosures had been obtained based on affidavits  falsely averring that its minimum subscription fees were $999 per month; (5) correspondence showing that, after Pool World served a Rule 11 motion challenging allegations in the complaint about the supposed $999 per month

-4-

fee, PFP amended its complaint to withdraw that allegation and (6) financial records showing that PFP's income from infringement settlements vastly exceeded, by as much as 40 to 1 in the year 2023, its income from licensing agreements allowing access to PFP's database of photos.  PFP represented over the course of several months, as the close of discovery approached, that Rebecca Jones, the officer who testified in this case on its damages claims (and who swore out the default judgment affidavits) had a family issue that prevented her from being deposed.  Pool World warned PFP that it would be seeking a six-figure attorney fee if judgment were entered in its favor.  After Pool World moved for summary judgment, PFP finally agreed to a settlement that required dismissal of its claims with prejudice and a payment to Pool World in a confidential amount.  Throughout this ligation, PFP lived up to its substantial online reputation as a copyright troll.  Citations to the public record supporting these facts are provided in the amicus brief.   Although the brief cites to the evidence in the record of the Pool World case, as shown by the Reply Statement of Undisputed Material Facts in that case, Docklet Entry No. 112-2,available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.112.2.pdf, those facts were largely undisputed, and hence are appropriate for judicial notice on this appeal.

b. National Law Forum LLC owns a popular website, *The National Law Review.* *The National Law Review* is a leading source for information about the law and legal news.  In 2024, PFP sent *The National Law Review* a demand letter similar to the demand letter sent to Pool World, based on the publication of a photo of a slice of pizza accompanying a 2019 article discussing a ruling about the rights of pizza drivers.

Although *The National Law Review* had licensed this image in 2014, and used it several times for different articles, it could not find records of the licensing.  Still, *The National Law Review* refused to pay the ransom demand, and decided not to invoke its insurance policy for the same reason as Pool World.  Suit was filed, not by PFP, but by Rockefeller Photos, a new company created by the individual owner of PFP for the sole purpose of bringing copyright infringement claims based on alleged infringements of PFP's copyrights, with the same officers as PFP and represented by CopyCat Legal, the same law firm as PFP has used here.

However, the principal owner and publisher of *The National Law Review* happens to be a prominent attorney who is a partner with the Chicago-based law firm of Much Shelist PC.  He was able to secure representation by (a) one of his colleagues, (b) a second paid outside litigator with experience against PFP and CopyCat Legal, (c) Public Citizen Litigation Group, (d) the Stanford IP clinic, and (e) an IP litigation partner at the Florida law firm of Stearns Weaver who had previously represented pro bono a small business in Massachusetts in defending a PFP law suit (in which she obtained discovery that Pool World was able use in its defense.

*The National Law Review* explained to CopyCat Legal why *The National Law Review* was likely to prevail on its defenses to copyright infringement, but also made a small offer of judgment.  As the discussion continued, it was apparent that Rockfeller Photos was open to a settlement in a different amount so long as the amount it was accepting could be kept confidential.  Rockefeller Photos requested successive

extensions of its time to respond to offers of judgment and ultimately confessed that further litigation was "not worth the squeeze"; it agreed to enter a settlement agreement so long as the amount it had agreed to accept was kept confidential.[1]

3.  Amici seek to file this brief for the same reason they chose to defend against litigation by the same copyright troll that pursued the defendants in this case – they hope to make it easier for other small businesses, who do not have the luxury of pro bono counsel, to refuse to make substantial payments that cannot be justified by the facts or the law of copyright infringement, but only by the huge costs of defending a copyright lawsuit on the merits.  Amici believe that their insights, and the public records to which they point, will assist the Court in resolving the issues presented in this appeal.  As explained in the proposed amicus brief, this Court's precedents make clear that furtherance of the principles and policies of the copyright laws supports awards of attorney fees to defendants who successfully fend off large damages claims by copyright plaintiffs, in that they supply a necessary incentive for defendants to stand up against unjustified claims.  Moreover, the Court's cases express particular concern about the litigation practices of copyright trolls, *Live Face on Web v. Cremation*

---

[1]  Documentation supporting the account in the text, apart from the Complaint and Answer, are not in the judicial records in the case, *see* https://www.courtlistener .com/docket/70805924/rockefeller-photos-llc-v-national-law-forum-llc-dba-national-law/, but are linked from an article about the litigation that can be found on Public Citizen's Consumer Law and Policy Blog. *Rockefeller Photos: Prepared Foods Photos' Abusive Copyright Enforcement Continues Under a New Name* (Apr. 30. 2026), available at https://clpblog.citizen.org/ rockefeller -photos-prepared-foods-photos-abusive-copyright-enforcement-continues-under-a-new-name/. Undersigned counsel Mr. Levy, who was counsel on both matters, was an attorney at Public Citizen Litigation Group from December 1977 until his retirement in June of this year.

*Socy. of Ill.*, 77 F.4th 630, 634 (7th Cir. 2023); *Klinger v. Conan Doyle Est.*, 761 F.3d 789, 791-92 (7th Cir. 2014), reversing for abuse of discretion when district courts fail to take into account the harm that such trolls wreak on the policies of the copyright laws.

The district court held below that it had discretion to refuse to recognize the status of defendant Jaber, the individual owner of Nofal, as a prevailing defendant because plaintiff PFP had achieved very modest success against Nofal, the corporate defendant in this case—an award of $200 in actual damages. Jaber's blue brief argues that the district court did not have such discretion; the proposed amicus brief argues that if the Court rejects that argument, the district court's ruling based on discretion should nevertheless be vacated and remanded for the district court to exercise its discretion in light of Circuit law about copyright trolls. Moreover, PFP's cross-appeal raises a raft of issues that implicate the district court's discretion, including whether the trial court wrongly extended Jaber's time for seeking attorney fees, and whether the trial court wrongly denied PFP's motion for an award of attorney fees. Additionally, because PFP's argument below in opposition to Jaber's motion to extend the time for his attorney fee motion was based in significant part on the fact that PFP had decided not to appeal from the denial of its motion for a new trial, the trial court's exercise of discretion in that ruling might well become a part of PFP's appeal. The amicus brief argues that these exercises of discretion can be supported by the publicly available evidence in open court records revealing that PFP is a copyright troll. Amici depart from Jaber's position, however, in that it urges that, assuming that the Court

-8-

agrees that the district court's prevailing party ruling should be vacated, the issue whether the *Fogerty / Kirtsaeng* factors support an award of fees against PFP should be reconsidered on remand in light of the principles enunciated by the Court on this appeal, and not decided in this appeal in the first instance.

The amicus brief argues that the Court's discussion of these issues of discretion should take into account Circuit law about the incentives needed with respect to awards of attorney fees, and that on remand the district court should be instructed to address those concerns in the course of exercising any discretion that remains to be exercised. Amici's arguments will be helpful to the Court's consideration of the issues on both the appeal and the cross-appeal.

4. Defendants-appellant/cross-appellees have consented to the filing of the proposed amicus brief; plaintiff-appellee/cross appellant does not. No party's counsel has authored the brief or this motion in whole or in part, or has seen drafts of the papers before filing; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief or this motion; and no person—other than the amici curiae, their owners or their counsel—contributed money that was intended to fund preparing or submitting the brief or this motion.

## CONCLUSION

The motion for leave to file as amici curiae should be granted.

Respectfully submitted,

/s/ Paul Alan Levy
Paul Alan Levy

-9-

DC Bar No. 946400

1698 Lanier Place, NW
Washington, D.C. 20009
(202) 688-5005
plevy@paullevylaw.org

/s/ Phillip R. Malone
Phillip R. Malone
Juelsgaard Intellectual Property
 and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott
 Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu


Attorneys for Amici Curiae

July 29, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this date I am filing this motion via ECF, which will effect service on all parties to the appeal.

/s/ Paul Alan Levy
Paul Alan Levy

1698 Lanier Place, N.W.
Washington, D.C. 20009
(202) 688-5005
plevy@paullevylaw.org

Attorney for amici curiae

July 29, 2026