UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

Nos. 26-1757 & 26-1859
District Court No. 2:22-cv-00642-JPS

———————————————

PREPARED FOOD PHOTOS INC., f/k/a Adlife
Marketing & Communications Co. Inc.,

Plaintiff – Appellee / Cross – Appellant,

v.

NOFAL, LLC d/b/a FOOD TOWN MART,
Defendant – Appellant / Cross - Appellee,

and

SHARIF JABER,

Defendant –  Cross - Appellee.

**BRIEF OF POOL WORLD, INC. and
NATIONAL LAW FORUM LLC D/B/A NATIONAL LAW REVIEW
AS AMICI CURIAE URGING REVERSAL OF THE
DENIAL OF JABER'S MOTION FOR ATTORNEY FEES**

Phillip R. Malone

Juelsgaard Intellectual Property
  and Innovation Clinic
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
(650) 724-1900
pmalone@stanford.edu

Paul Alan Levy

 1698 Lanier Place, N.W.
 Washington, D.C. 20009
 (202) 688-5005
  plevy@paullevylaw.org

Attorneys for Amici Curiae

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Amici Pool World, Inc. and National Law Forum LLC hereby disclose that they have no corporate parents and no subsidiaries.

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Glossary of Abbreviations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Interest of Amicus Curiae . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Certification Pursuant to Rule 29(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Prepared Food Photos ("PFP") Is a Classic Copyright Troll.. . . . . . . . . . . . . 5

II.     The Trial Court Abused Its Discretion by Resolving the Cross-Motions
        for Awards of Attorney Fees Without Addressing the Significance of
        Defendants' Well-Founded Argument That PFP is Copyright Troll. . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certification of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**CASES**

*Adlife Mktg. & Communs. Co. v. Buckingham Bros.*,
  2020 U.S. Dist. LEXIS 148755 (N.D.N.Y. Aug. 18, 2020) . . . . . . . . . . .  14, 20

*Assessment Technologies of Wisconsin v. Wire Data,*
  361 F.3d 434 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 22

*Bell v. Oakland Cmty. Pools Project*,
  2020 U.S. Dist. LEXIS 269646 (N.D. Cal. Oct. 14, 2020) . . . . . . . . . . . . . 15, 20

*CRST Van Expedited v. EEOC*,
  578 US 419, 136 S.Ct. 1642 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Design Basics v. Kerstiens Homes and Designs*,
  1 F.4th 502  (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

*Design Basics v. Lexington Homes*,
  858 F.3d 1093 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18, 19, 20

*Gonzales v. Transfer Technologies*,
  301 F.3d 608 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Kirtsaeng v. John Wiley & Sons*,
  579 U.S. 197 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Klinger v. Conan Doyle Estate*,
  761 F.3d 789 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Live Face on the Web*,
  77 F.4th 630  (7th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Malibu Media v. Does*,
  950 F. Supp. 2d 779 (E.D. Pa. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Oracle v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Prepared Food Photos v. Hometown Publications II*,
 2023 U.S. Dist. LEXIS 83527 (E.D. Wis. May 12, 2023),
 *vacated*, 2023 U.S. Dist. LEXIS 242166  (E.D. Wis. May 31, 2023) . . . . . . .  14

*Righthaven LLC v. Hoehn*,
 716 F.3d 1166 (9th Cir. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*T.D. v. LaGrange School Dist. No. 102*,
 349 F. 3d 469 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*United States v. Carter*,
 408 F.3d 852 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **18**

**STATUTES AND RULES**

17 U.S.C. § 504(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
17 U.S.C. § 505. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
Federal Rules of Appellate Procedure, Rule 29(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**MISCELLANEOUS**

*AdLife Marketing & Communications v. Fareway Foods*,
 No. 4:17-cv-04254 (C.D. Ill.), DN 44-7, available at
 https://storage.courtlistener.com/recap/gov.uscourts.
 ilcd.70663/gov.uscourts.ilcd.70663.44.7.pdf . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*MyWebGrocer.com v. AdLife Marketing & Communications*,
 No. 5:16-cv-00310 (D. Vt.), DN 93-47, available at
 https://storage.courtlistener.com/recap/gov.uscourts.
 vtd.27347/gov.uscourts.vtd.27347.93.4 7_1.pdf . . . . . . . . . . . . . . . . . . . . . . . .  21

*Prepared Food Photos v. Pool World*,
 No. 2:23-cv-00160  (E.D. Wash.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

 DN 21-1 Record of PACER Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 DN 21-12 AIPLA Biennial Survey of the Cost of IP Litigation. . . . . . . . . . . . . . . . 14, 15
 DN 25 PFP Brief Opposing Motion to Compel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 DN 55 Opposition to PFP Motion to Dismiss Without Prejudice . . . . . . . . . . . . . . . . . . 11
 DN 55-1 Affidavit in Opposition to Motion to Dismiss. . . . . . . . . . . . . 6, 7, 8, 11, 12, 13
 DN 55-3 Record of License Fees Paid to iStock for Individual PFP Photo . . . . . . . . . . . 13
 DN 55-8 Blog Post by Joel Albrizio, PFP's owner  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 DN 55-15 Transcript of Douglas Fleurant Deposition . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 DN 69-3 Ledger of Monthly Subscription Fees Received by PFP . . . . . . . . . . . . . . . . . 10

DN 84, Stipulated Motion for Extension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
DN 90 Pool World Summary Judgment Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
DN 90-3 Affirmation Supporting Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . 11
DN 90-18 Expert Report of Jessica Teal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
DN 90-19 Expert Report of Aaron Arce Stark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15
DN 90-20 Affidavit of PFP Target Justin Nygard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
DN 90-22 Affidavit of Richard Rimer, attorney for a PFP Target . . . . . . . . . . . . . . . . 15
DN 90-25 Affidavit of PFP Target Debbie Lingerfeld. . . . . . . . . . . . . . . . . . . . . . . . . . 21
DN 90-30 Affidavit of AdLife Target Curt Archambault. . . . . . . . . . . . . . . . . . . . . . . . 21
DN 94 Stipulated Motion for Extension. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
DN 105-3 Chart of PFP Subscribers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
DN 106-1 Redacted Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
DN 122-1 Reply Statement of Material Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*PFP v. WeNeedaVacation.com*, No. 1:23-cv-11085 (D. Mass.)
Deposition of Douglas Fleurant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sag, *Copyright Trolling, An Empirical Study*,
100 Iowa L. Rev. 1105  (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Strike 3 Holdings v Doe*, No. 1:23-cv-04359 (S.D.N.Y.)
Affidavit of Dave Williamson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## GLOSSARY OF ABBREVIATIONS

DE          Docket Entry Number on ECF

JA           Jaber Appendix

JSA         Jaber Short Appendix

PFP         Prepared Food Photos

**INTEREST OF AMICI CURIAE**

As set forth in more detail in the motion for leave to file as amici curiae, amici are two small businesses that received demand letters, similar to the demand letter received by defendants in this case, from plaintiff Prepared Food Photos ("PFP"), demanding immediate payment of $30,000 from each to avoid being sued for having used a single stock photograph of food on each of their respective websites. Like defendants here, amici were sued when they refused to make such a settlement payment, and each retained counsel to resist the litigation.

Amicus Pool World, a small business based in Spokane Washington, installs pools and sells pool and grilling equipment. It was sued in 2023 because, back in 2010, it included a single photo of shrimp on a grill on a website advertising its grills for sale; PFP claimed that this use had cost it nearly $150,000 in lost license fees. Instead of paying a settlement or referring the matter to its insurance company, Pool World actively defended itself, hoping to provide a model for other recipients of PFP's bullying. Retaining a team of pro bono lawyers, Pool World took extensive discovery, which has been filed on the public record, establishing that the nature of PFP's business was that of a copyright troll: PFP earns the vast majority of its income by sending demand letters that grossly misrepresent the nature of its copyright licensing income, and shaking down small businesses for four and five figure settlements by threatening to impose the very substantial cost of defending a copyright infringement lawsuit. After amicus Pool World moved for summary judgment on statute of limitations grounds, threatening to seek an award of attorney fees for the hundreds of attorney hours spent on the case, PFP agreed to dismiss its claim with prejudice and

pay a confidential amount to Pool World.

Amicus National Law Forum is a small business based in Chicago, Illinois, that publishes the online National Law Review. After receiving a demand letter from PFP over its use in 2019 of a photo of a slice of pizza, and refusing to pay damages, National Law Review was sued by "Rockefeller Photos," a new company created by the owner of PFP for the purpose of filing suits for alleged infringement of PFP's copyrights. National Law Review retained the same team of pro bono lawyers who had represented Pool World; it also had paid counsel from two Chicago law firms, one of whom had been among the trial counsel in this case. National Law Review made a modest offer of judgment but warned that it would make the same sort of defense arguments that had succeeded for Pool World, as well as contesting Rockefeller's standing on *Righthaven* grounds, *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013), and would then seek an award of attorney fees, invoking this Court's precedents disfavoring copyright trolls. Like Pool World, National Law Review undertook a potentially expensive defense so that it could model for other PFP targets how to stand up to PFP's bullying. Rather than accept the offer of judgment, which would have made public how little it was willing to accept, plaintiff agreed to accept a different amount offered by National Law Review so long as the actual amount remained confidential.

Both amici have been targeted by PFP, and both have endeavored to encourage other companies to refuse to surrender to PFP's bullying. Their interest in this case is to help the individual defendant business owner and the incorporated business in

-2-

this case secure a just reward for their bravery in refusing to pay nuisance settlement in the four or five figures, both by helping the individual defendant secure an award of attorney fees, and by helping the incorporated business stave off PFP's claim for fees based on having recovered a tiny fraction of the damages that it sued to obtain. Amici believe that their brief will assist the court in resolving the issues raised, producing an appellate result that will encourage other potential targets to take a stand against copyright trolling, and will encourage PFP to seek a more realistic level of damages when it finds allegedly infringing uses of its stock photos.

**CERTIFICATION PURSUANT TO RULE 29(a)(4)**

No party's counsel has authored the brief or this motion in whole or in part, or has seen drafts of the papers before filing; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief or this motion; and no person—other than the amici curiae, their owners or their counsel—contributed money that was intended to fund preparing or submitting the brief or this motion.

**STATEMENT**

In this action, plaintiff PFP demanded a payment of $30,000 in damages based on its discovery that a small grocery store had used a stock photograph of minimal licensing value on its Facebook page. Jaber Appendix ("JA") 98. As the litigation proceeded, PFP upped its settlement demand to $90,000, with its lawyer asserting that his client really did not want to settle but preferred to force the case to trial on the damages issue. JA111. The jury, however, rejected the copyright infringement claim brought personally against Jaber, the owner of the grocery store, and awarded $200

in actual damages against Nofal, Inc., the corporation through which Jaber held the store. The jury apparently did not credit testimony from PFP that it had lost hundreds of thousands of dollars in license fees from the infringement.

In resolving posttrial motions, the district court referred to the individual owner as a prevailing defendant, Docket Entry Number ("DN") 81 at page 6; indeed, the court said that it was "obvious" that Jaber had prevailed. *Id.* at 5. Thus, when the individual defendant moved for an award of attorney fees, and PFP moved for an award of fees against the corporate defendant, each citing the Supreme Court's *Fogerty* factors, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), to support their motions, each side assumed that the court below recognized that they each were "prevailing" parties. The district court, however, addressing an issue that neither party had addressed in its papers, and without advising the parties that it considered it an open question whether either was the "prevailing party" issue to be open, so that they could brief that issue, determined that neither the individual owner nor PFP had qualified for consideration of an attorney fee award because, contrary to the court's earlier ruling, neither Jaber nor PFP had prevailed. Jaber Short Appendix ("JSA") 11. The court below reasoned that, with nominal damages having been awarded against a different defendant, the corporation, a district court had discretion to decide that neither Jaber nor PFP had prevailed. JSA 12. Without any further explanation of why it was exercising its discretion in this case to find that no party had "prevailed," the court held that neither PFP nor Jaber had prevailed. *Id.*

**SUMMARY OF ARGUMENT**

The individual owner has appealed the denial of his motion for attorney fees, and argues that the district court lacked discretion to declare him not a prevailing party. This amicus brief does not address that legal issue but argues that, even assuming that the district court had discretion in deciding whether the successful individual defendant was a prevailing party, the district court abused its discretion by failing to consider the relevant policies of the copyright laws. Amici show that undisputed facts in the public record reveal that PFP meets this Court's definition of a copyright troll, and the district court failed to address this Court's teachings that establish a strong presumption favoring attorney fee awards against copyright trolls. Moreover, PFP's cross-appeal also raises issues about the trial court's adverse rulings on Jaber's motion to allow a late motion for attorney fees and PFP's own motion for an award of attorney fees and costs; PFP's status as a copyright troll bears on those exercises of discretion. On remand, the trial court should be instructed to take that status into account in addressing any remaining issues.

**ARGUMENT**

**I. Prepared Food Photos Is a Classic Copyright Troll.**

In a series of decisions, this Court has defined the term "copyright troll." For example, in *Design Basics v. Lexington Homes,* 858 F.3d 1093, 1097 (7th Cir. 2017), the Court defined the practice of trolling as

> bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay

modest or nuisance settlements rather than be tied up in expensive litigation. Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation.

* * *

"The essence of trolling is that the plaintiff is more focused on the business of litigation than on selling a product or service or licensing their IP to third parties to sell a product or a service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." (quoting Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015) ).

The public record establishes that PFP fits this definition to a T. First, it is a prolific copyright litigant, having brought several hundred infringement claims between 2017 and 2024,[1] and having sent literally thousands of infringement demand letters between 2021 and 2024.[2] PFP's principal source of revenue is making infringement claims. During the period from 2018 to 2024 (PFP destroyed its financial records from 2017), PFP's financial records showed that it earned $527,119 from its

---

[1] An Advanced Party Search on the PACER Case Locator was attached to one of the motions in *PFP v. Pool World* as Document DN 21-5, available at https://storage.courtlistener.com/recap/gov.uscourts .waed.103244/gov.uscourts. waed.103244.21.5.pdf. A recent PACER search for copyright infringement claims filed by AdLife from 2017 to 2024 produced a list of 283 cases, https://pcl.uscourts. gov/ pcl/pages/search/results/parties.jsf?sid= 19e588c29fb841df9f2cd6f494d70c81. A search for copyright infringement actions filed by Rockefeller Photos since January 1, 2025 produced a list of 130 such suits.

[2] In a brief filed in November 2023, PFP's counsel Daniel DeSouza Esquire, stated that he had sent 1800 such demand letters since he began representing PFP in late 2021. DN 25, at 5, available at https://storage.courtlistener.com/recap/gov. uscourts.waed. 103244/gov.uscourts.waed.103244.24.0.pdf. Mr. DeSouza continued to send such letters throughout 2024, *e.g.*, Affirmation in Opposition to PFP Motion to Dismiss Pool World Complaint Without Prejudice, DN 55-1, ¶ 10, and beginning in 2025, he has sent them on behalf of Rockefeller Photos.

photograph subscription agreements but recovered more than ten times as much, $7,777,017.59, in judgments and settlement payments from its infringement claim business. Reply Statement of Undisputed Material Facts in *Pool World*, DN 112-2, ¶¶ 49, 51, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/ gov. uscourts.waed.103244.112.2.pdf. This disparity between licensing income and enforcement income became even more pronounced once PFP began using CopyCat Legal as its main law firm, sending demand letters and filing complaints and default judgment affidavits falsely asserting (as discussed below) that it charged a minimum $999 per month for subscriptions and hence was entitled to actual damages of $11,988 per year. Thus, during the years 2022, 2023 and 2024, it secured a staggering $5,876,911.79 from infringement claims, nearly 30 times as much as its $206,701.70 in income from subscription agreements. *Id.*

Moreover, the principal activity of PFP's employees had been the operation of its copyright enforcement operation. Deposition Testimony of Douglas Fleurant in *PFP v. WeNeedaVacation.com*, No. 1:23-cv-11085 (D. Mass.), attached to Pool World Opposition to Motion to Dismiss Without Prejudice as DN 55-15, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts. waed.103244.55.15.pdf. At the same time, PFP has not registered the copyright in a single new photograph since 2017. Levy Affidavit ¶4 8, attached to Pool World Opposition to Motion to Dismiss Without Prejudice as DN 55-1, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts

.waed.103244.55.1.pdf.

This data refutes the argument that PFP has used in the past when its litigation history is cited as a basis for denominating it a copyright troll: that there is nothing inherently wrong with a company's filing many lawsuits to enforce its copyrights. *E.g.*, JA 150-151 (PFP Opposition to Jaber's Motion for Attorney Fees). The cases on which PFP typically relies make that statement in the context of a significant condition: that the infringement claimant is currently creating valuable works and that demanding damage payments is not its main business. The data available in judicial records show that PFP is unlike the other well-known copyright litigants whose cases PFP generally cites for this proposition, Malibu Media and Strike 3 Holdings, each of which has an active business making pornographic movies, but also files many infringement actions against Bit Torrent downloaders. Those companies continue to make new creative works and earn more from licensing such works than from infringement claims. *e.g.*, *Malibu Media v. Does*, 950 F. Supp. 2d 779, 787 (E.D. Pa. 2013); Affidavit of Dave Williamson in *Strike 3 Holdings v Doe*, No. 1:23-cv-04359 (S.D.N.Y), DN 81-1, available at https://storage.courtlistener.com/recap/gov.uscourts.nysd.599364/gov.uscourts.nysd .599364.8.1.pdf (showing Strike 3 Holdings' vibrant licensing business). By contrast, PFP has not created or registered the copyright in a single new stock photo since 2017, supra at page 9, the same year that, as admitted in a candid blog post from PFP's owner Joel Albrizio, his company had changed his business model to enable copyright infringement litigation; that blog post was taken down during the Pool World litigation

after Pool World's undersigned counsel asked PFP's counsel about it.  *See* Affidavit of Paul Alan Levy attached to Opposition to Motion to Dismiss Without  Prejudice ¶ 8 and Exhibit R, DN 55-1 and 55-8, available at https://storage.courtlistener.com/recap /gov.uscourts.waed.103244/gov.uscourts.waed.103244.55.7_5.pdf.

Moreover, not only is PFP's main business threatening and filing infringement suits, discovery in the Pool World case showed that the majority of its "subscription agreements" were in fact entered after PFP made a claim of copyright infringement against the subscriber, and many were entered in lieu of paying a lump sum in damages.  Motion for Summary Judgment Exhibit OO, DN 105-3, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov. uscourts.waed.103244.105.3.pdf.

How has PFP achieved these lucrative results?

First, by making inaccurate representations and submitting false allegations and testimony about its subscription fees, and by omitting from its demand letters and ex parte default judgment motions the law governing actual damages in a copyright infringement action, PFP thereby takes advantage of the fact that it targets small businesses that generally lack access to good copyright counsel, and that default judgment motions are ex parte.  PFP's demand letters, including in this case, JA 99, and the complaints filed, again as in this case, Complaint ¶ 9, routinely allege that PFP charges its customers a minimum of $999 per month for access to its entire database of photos; when PFP sues, and the defendant does not answer, a PFP officer

named Rebecca Jones attests to an affidavit that asserts that fact to prove its damages in a default judgment motion (similar to her testimony in this case). PFP also relies on the minimum subscription fee allegation in the complaint in arguing that factual allegations must be taken as admitted in ruling on default judgment motions. The resulting default judgments are then cited in demand letters and in future litigation.

However, discovery in the *Pool World* case revealed that this allegation is false. PFP has **never** insisted on a minimum monthly charge of $999 (although that is the rate advertised on its web site). To the contrary, it has always had at least one agreement under $999 per month, and between 2019 and 2024, PFP had subscription agreements in such amounts as $95 per month, $1188 per year (effectively, $99 per month), $299 per month, $300 per month, $499 per month, and $500 per month, as well as higher amounts).[3] But when Pool World sought to take depositions of PFP officers Rebecca Jones and Douglas Fleurant, planning to confront them with these documents, PFP counsel represented that Jones had a family emergency, and that Fleurant was in the hospital, and hence could not be deposed. Pool World DN 84 and 94, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov. uscourts.waed.103244.84.0.pdf and https://storage.courtlistener.com/recap/gov.

---

[3] The subscription amounts shown in the agreements produced in discovery were summarized in Motion for Summary Judgment Exhibit OO, DN 105-3, cited above. Payment ledgers showing actual monthly payments much lower than $999 were filed as Exhibit KK to one of Pool World's motions to compel compliance with previous discovery orders, DN 69-3, at pages 60-61, available at https://storage. courtlistener.com/ recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244. 69.3.pdf.

uscourts.waed.103244/gov.uscourts.waed.103244.94.0.pdf. The depositions ultimately did not take place because, after Pool World moved for summary judgment, DN 90, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.90.0_1.pdf, having warned that it planned to seek an award of attorney fees for the hundreds of hours that its counsel had expended on the case, Affirmation Opposing PFP Motion to Dismiss Complaint Without Prejudice, DN 55-1, ¶¶ 28, 43-44. PFP agreed to dismiss its claims with prejudice and to pay a confidential amount to Pool World. DN 106-1, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.106.1.pdf.

PFP's counsel represented during the Pool World litigation that, until Pool World's motion papers brought the false allegation to their attention, they were unaware of the discrepancy. Affirmation Supporting Summary Judgment, at ¶ 10, DN 90-3, available at https://storage.court listener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.90.3.pdf. However, PFP provided the subscription agreements containing lower monthly numbers to Pool World in late 2023, and by early 2024 Pool World's counsel warned PFP that it had discovered subscription amounts far lower than $999 per month. Pool World Opposition Affidavit cited above, ¶ 25 ( DN 55-1). Pool World's papers discussed the discrepancy between the claim of a $999 per month minimum and the actual agreements produced in discovery as early as August, 2024. Pool World Opposition Brief, DN 55, at 12, available at https://storage.court listener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.55.0.pdf. But PFP failed to amend its complaint to withdraw that allegation until Pool World served

a Rule 11 motion. Affirmation Supporting Summary Judgment in *Pool World*, DN 90-3, ¶ 29, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.90.3.pdf.

The Court can take notice from these judicial records of the fact that PFP and its counsel were repeatedly warned that Pool World had discovered lower subscription fees long before Rebecca Jones testified at the trial in this case on October 28, 2024 that PFP's monhtly charge was $999 or higher. Yet, despite this knowledge, PFP's counsel deliberately elicited trial testimony from Rebecca Jones that PFP charged a minimum monthly fee of $999 or roughly $1000. Trial Transcript at 64-65, 89, 90. PFP then argued in its November 20, 2024 motion for a new trial, DN 56, and again in its December 18, 2024 reply brief on that motion, that the jury's verdict should be set aside in favor of an actual damages award of $23, 976, resting on default judgments PFP had obtained based on evidence that, at the time those briefs were filed, PFP and its counsel knew was false. On remand, the trial court might well explore the possible consequences of this false testimony elicited by counsel who knew it was false.

Moreover, PFP's has secured its income by misrepresenting in demand letters and default judgment briefs the law of actual damages in a copyright case. It is black-letter law that actual damages are based on the fair market value of the license that the defendant failed to obtain: "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use." *Oracle v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014). *See also* JA66-68

-12-

(noting that it is the fair market value of the work infringed that must be assessed, not what the copyright owner would have preferred to charge unconstrained by reality). As explained by one of Pool World's expert witnesses, who specializes in creating websites for nonprofit groups, stock photos can be obtained for a few dollars, or even for free by using many services, and no rational buyer, needing only a single stock photograph, would pay $999 per month for a minimum period of a year in order to acquire the right to use a single stock photo. Expert Report of Jessica Teal Supporting Pool World Motion for Summary Judgment. DN 90-18, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts .waed.103244.90.18.pdf. Indeed, until PFP switched business models to emphasize enforcement over licensing, PFP was routinely licensing its stock photos for as little as a dollar per user. Levy Affirmation Opposing PFP Motion to Dismiss Complaint Without Prejudice, DN 55-1, ¶ 3 and attached Exhibit N, DN 55-3.

Moreover, as Pool World's other expert witness, a lawyer who represents both photographers and the targets of copyright trolls, explained in his expert report, PFP plays on the ignorance of its target audience of small businesses by misrepresenting its supposed minimum subscription agreements as well as the default judgments it obtained by lying about its subscription agreements. Expert Report of Aaron Arce Stark Supporting Pool World Motion for Summary Judgment, DN 90-19, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts. waed.103244.90.19.pdf.

Indeed, one of PFP's earlier lawyers was sanctioned, in the course of a ruling on

its motion for a default judgment, in part for having made excessive damages demands, insisting, as PFP's counsel did here, on a payment of $30,000 for the infringement of the copyright in a single stock photo. *Adlife Mktg. & Communs. Co. v. Buckingham Bros.*, 2020 U.S. Dist. LEXIS 148755, at *17-22 (N.D.N.Y. Aug. 18, 2020). The actions of the attorney in that case were more egregious than PFP's misconduct here, but *Buckingham Brothers* shows that PFP has a history of causing its lawyers to make excessive damages claims. In the exercise of its discretion, the court below should take that history into account in ruling on the cross-motions for awards of attorney fees.

This case is, indeed, the only case in which PFP litigated an actual damages claim in a contested hearing, and the jury's verdict of $200 in actual damages reflects a common sense determination of the value of the lost license for a stock photo, without even having probative evidence of the actual market value of PFP's stock photos. In one other case, also before Judge Stadtmuller, the Court rejected PFP's damage calculation on a default judgment motion and set a hearing. *PFP v. Hometown Publications II*, 2023 U.S. Dist. LEXIS 83527 at *11-*13 (E.D. Wis. May 12, 2023), *vacated*, 2023 U.S. Dist. LEXIS 242166 (E.D. Wis. May 31, 2023). PFP promptly dismissed that action altogether rather than defend its damage theory even in an ex parte hearing. *Id.*

PFP also achieves its lucrative results by threatening to impose high litigation costs. Copyright litigation is expensive – an biannual study created by the American Intellectual Property Lawyers Association puts the standard cost of litigating even a

-14-

low-value copyright case through summary judgment is $100,000. Exhibit J Supporting Pool World Motion to Compel, DN 21-12, available at https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts. waed.103244.21.12.pdf. PFP's threat to sue in a federal court in Florida, where most small business recipients have no presence or connections and do not know any lawyers, and invoking a questionable theory of personal jurisdiction, makes defending against a possible suit seem particularly daunting.[4] PFP deliberately relies on the high cost of defending a copyright suit in making its threats of litigation, even pointing to the cost of defense as basis for a settlement demand in the amount of the predicted cost. Affidavit of Richard Rimer attached to Pool World Motion for Summary Judgment, DN 90-22, available at https://storage.courtlistener.com/recap/gov.uscourts .waed.103244/gov.uscourts.waed.103244.90.22.pdf. PFP's standard demand letter also points out the easy alternative of referring the claim to the business's insurance carrier, in the expectation that the insurer will take the easy way out of paying a five-figure settlement instead of hiring counsel to defend the case. The routine practice of a different copyright troll, sending excessive demands with a suggestion that the claim be referred to an insurance carrier, was one reason given for awarding attorney fees against that troll in *Bell v. Oakland Cmty. Pools Project*, 2020 U.S. Dist. LEXIS 269646

---

[4] Expert Report of Aaron Arce Stark, cited above, at page 19. The threat to sue in Florida, which appears in footnote 1 of the demand letter in the record of this case, JA97, similarly appeared in Mr. DeSouza's standard demand letter sent to Pool World and to other targets. In each such case, suit was filed in the district where the small business was located.

(N.D. Cal. Oct. 14, 2020).

In all these respects, PFP meets this Court's definition of a copyright troll. Accordingly, as argued in the second section of this brief, the Court below erred by failing to consider how PFP's status as a copyright troll should have affected its claimed exercise of discretion to decided that Jaber was not a prevailing party.

**II.    The Trial Court Abused Its Discretion by Resolving the Cross-Motions for Awards of Attorney Fees Without Addressing the Significance of Defendants' Well-Founded Argument That PFP is Copyright Troll.**

Over the past two dozen years, this Court has developed a jurisprudence about attorney fee awards that creates a strong presumption favoring awards of attorney fees to targets of copyright infringement claims that successfully resist threats and lawsuits from copyright owners.  The Court has displayed a particular concern about the impact of copyright trolls on their targets, even reversing as an abuse of discretion a district court's denial of an application for an award of attorney fees for a successful defense against an infringement claim by a copyright troll.  Because the court below failed to address this line of authority when it sua sponte decided that defendant Jaber had not prevailed when he defeated PFP's claim against him, it abused its discretion and the denial of fees should be vacated; the case should be remanded for reconsideration pursuant to the standards requiredd by Circuit law.

Specifically, in *Assessment Technologies of Wisconsin v. Wire Data,* 361 F.3d 434 (7th Cir. 2003), the Court drew on earlier decisions about attorney fees in copyright cases to declare a "presumption in favor of awarding fees [that ] is very strong" when

a defendant has withstood a claim for copyright infringement, even when "the plaintiff [has] managed to obtain a judgment from the district court." *Id.* at 1244-1245. The Court reasoned that such a defendant "has obtained no affirmative relief from its victory. Unless a party in that situation has a prospect for obtaining attorney fees, it will be under pressure to throw in the towel if the cost is less than his anticipated attorney fees." *Id.* at 1245. The copyright owner, by contrast, may well be using the pressure of litigation "to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively." In *Klinger v. Conan Doyle Estate*, 761 F.3d 789 (7th Cir. 2014), the Court reiterated that "the consequence of the successful defense of an infringement suit [confers on] the defendant a very strong presumption in favor receiving attorney fees, in order to ensure that an infringement defendant does not abandon a meritorious defense in situations in which the cost of vindication exceeds the private benefit to the party." *Id.* at 791 (cleaned up). *See also Live Face on the Web*, 77 F.4th 630, 632 (7th Cir. 2023); *Design Basics v. Kerstiens Homes and Designs*, 1 F.4th 502, 508 (7th Cir. 2021).

In *Design Basics*, *Live Face on the Web*, and *Conan Doyle Estate*, the Court's discussion of the need for incentives for the defense against unjustified infringement claims arose in the context of concerns about copyright trolling: firms that "enforce copyrights not to protect expression but to extract payments through litigation" and thereby "seek to extract rents from market participants who must choose between settlement and the costs and risk of litigation." *Design Basics, supra*, 1 F.4th at 504. Similarly, in *Conan Doyle Estate,* the Court's discussion of the attorney fees issue was

-17-

preceded by a concern that targets of overweening copyright claims "find that it is more cost-effective to simply capitulate than to fight, even when the alleged claim is of dubious merit. Copyright holders . . . have larger potential upsides and smaller downside risks to filing suit, since if they win they obtain damages but if they lose they don't have to pay damages." 761 F.3d at 791. "Unless [the target] is awarded his attorney fees, he will have lost money, . . . a Pyrrhic victory if ever there was one." *Id.* at 791-792. And in *Live Face on the Web*, the Court's discussion of the *Fogerty* factors relied extensively on considerations about the impact of copyright trolling, on data about the plenitude of that plaintiff's copyright litigation, and on findings in other litigation that the plaintiff was a copyright troll to conclude that considerations of compensation to the troll's victim and deterrence against future trolling warranted reversal of the denial of attorney fees as an abuse of discretion. 77 F.4th at 634-635. Although each of these decisions invoked the policies of the Copyright Act in deciding whether a court should award attorney fees to a party already determined to have "prevailed," in other contexts, the Supreme Court has looked to the underlying policies of the statute at issue in determining the meaning of the term "prevailed." *CRST Van Expedited v. EEOC*, 578 US 419, 432-434 (2016). *See also T.D. v. LaGrange School Dist. No. 102*, 349 F. 3d 469, 475-478 (7th Cir. 2003) (text, structure, legislative history and policies of the IDEA influenced construction of the term "prevailing party" in that statute's attorney fee provision). The policies of the Copyright Act, as this Court has previously explicated them in such cases as *Design Basics*, *Live Face on the Web*, and *Conan Doyle Estate*, should likewise influence construction of the term "prevailing

party" in 17 U.S.C. § 505.

The failure to consider appropriate factors is itself an abuse of discretion. *United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005). Because the court below failed to give any consideration to defendant's contention that PFP is a copyright troll in exercising its purported discretion to declare that Jaber was not a prevailing party, the judgment below should be vacated and the case remanded for reconsideration of that issue.

The court below apparently thought that an award of attorney fees in favor of Jaber would be a meaningless exercise because it would likely be offset by the cross-motion by PFP for an award of attorney fees in a similar amount against the corporate defendant, Nofal, Inc. JSA 5. But the fee motions would likely **not** have "cancel[ed] each other out," *id.,* because the *Fogerty* factors, which were elaborated in *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197 (2016), apply differently to Jaber as a prevailing defendant defeating a copyright troll and PFP as a prevailing copyright troll securing a small fraction of its threatened damages. Applying those factors, Jaber is likely to be awarded fees because, against all odds, he is the **only** defendant who has ever succeeded in obtaining a judgment against PFP as opposed to suffering a default judgment or entering a settlement. But, applying those same factors, PFP is not likely to be awarded attorney fees because the main issue in its claims against Nofal was the amount damages to be awarded and PFP obtained less than 1% of the damages that it sought. The minuscule character of the damages award is not enough to deprive PFP of prevailing party status, to be sure, but considerations of compensation and

deterrence suggest that PFP should not be given any benefit for having pursued greatly exaggerated damages claims based on its false testimony about its subscription fees and grave misrepresentations about the law of damages in copyright infringement cases.

Thus, as noted above, the actual market value of a license to use one of PFP's stock photos, as shown by the actual rates charged by the third party that was licensing PFP's images on an individual basis as recently as ten years ago, as well as by the expert witness in the Pool World case, was only a few dollars; the common sense actual damages found by the jury in this case was $200. Considering the rule of thumb consistently cited by PFP in demand letters to its targets, that statutory damages should be awarded at a rate of two to four times the actual damages, *see*, *e.g.*, DN 80-3 from the record below, as well as DN 80-5 (JA 99), generally speaking an award of $750 in statutory damages, the minimum level of statutory damages allowed by Congress in 17 U.S.C. § 504(c)(1), would be an appropriate damages remedy in most of the cases filed by PFP. Here, the jury awarded $1000 in statutory damages but PFP elected to receive the actual damages.

But PFP routinely demands much larger settlement payments to avoid being sued. Just as the Court in the *Buckingham Brothers* case cited earlier imposed a sanction on the PFP's lawyer for demanding thousands of dollars to settle an infringement action a stock photo of food, and just as the district court in *Bell v. Oakland Cmty. Pools Project*, 2020 U.S. Dist. LEXIS 269646 (N.D. Cal. Oct. 14, 2020), awarded attorney fees against a different copyright troll for demanding a payment of

-20-

thousands of dollars to avoid litigation over a stock photo, so considerations of compensation and deterrence would likely warrant exercises of discretion pursuant to the *Fogerty* / *Kirtsaeng* factors to award fees in favor of Jaber for successfully opposing PFP's suit while warranting a denial of fees in favor of PFP. Those issues should be addressed by the district court in the first instance on remand.

Indeed, a number of targets for PFP's copyright bullying have found that if they unilaterally send a check to PFP for $750, the minimum award of statutory damages provided by Congress, PFP will not sue them but also will not deposit the settlement check. See Pool World DN 90-20, 20-25, 90-30 (affidavits of Archambault, Nygard and Lingerfeld), available at https://www.courtlistener.com/docket/67466658/prepared-food-photos-inc-v-pool-world-inc/. In one of those cases, where PFP knew that the target was represented by counsel, PFP expressed an interest in accepting the payment, but only if the target agreed to enter a settlement agreement requiring that the entire agreement be confidential. DN 90-25, *supra*. It is apparent that, for PFP, protecting its ability to bully other targets by keeping confidential its agreement to accept a small payment is more important than receiving a single payment that is a hundred times higher than the actual market value of a single image.

At the same time, if PFP were to take a more measured approach to defending its claimed copyrights in its library of stock photos,[5] seeking a reasonably small

_____

[5] Amici refer to PFP's copyrights as "claimed" because in other cases, former officials at PFP's corporate predecessor, AdLife Marketing and Communications, have made serious allegations that call into question the authorship of PFP's photos and the veracity of the attributions of authorship in PFP's copyright registration

amount of actual and statutory damages, this Court's precedents might well counsel in favor of awarding PFP attorney fees when a defendant refuses to make any payments but mounts only insubstantial defenses against liability. Thus, this Court has said in dicta that a plaintiff that seeks only a small amount of damages, and obtains the small amount of damages that is sought, might well enjoy a presumption in favor of an award of attorney fees. *Assessment Technologies of Wisconsin*, *supra*, 361 F.3d at 436-436, *quoting Gonzales v. Transfer Technologies,* 301 F.3d 608, 610 (7th Cir. 2002). The Court can use its determination of the attorney fees issues in this case to ensure that copyright trolls such as PFP face the right incentives and disincentives pertaining to the making of demands for excessive levels of damages.

If the Court's ruling in this case, both on Jaber's appeal and on PFP's cross-appeal, takes into consideration the consequences for the district court's exercise of discretion of the fact that PFP is a copyright troll, the Court can employ the law of attorney fees in copyright cases to help achieve a proper balance of incentives and disincentives for PFP and its future targets, not to speak of other small businesses that may be targeted in the future by other copyright trolls.

---

applications. *See* Declaration of Sharon Ferretti in *AdLife Marketing and Communications v. Fareway Foods,* No. 4:17-cv-04254 (C.D. Ill.), DN 44-7, available at https://storage.courtlistener.com/recap/gov.uscourts.ilcd.70663/gov.uscourts.ilcd .70663.44.7.pdf; Affidavit of David Ciolfi in *MyWebGrocer v. AdLife Marketing and Communications*, No. 5:16-cv- 00310 (D. Vt.), DN 93-47, available at https://storage .courtlistener.com/recap/gov.uscourts.vtd.27347/ gov.uscourts.vtd.27347.93. 47_1.pdf. To the best of amici's knowledge, neither of these affiants has been cross-examined and no adversary litigation has ever evaluated the serious charges leveled by these former officials. Amici suggest that the Court's opinion not assume that PFP has valid or invalid copyrights.

## CONCLUSION

The judgment below denying Jaber's motion for an award of attorney fees should be vacated and the case remanded for the district court to exercise its discretion in deciding whether to award fees to appellant Jaber in light of the Court's opinion. The Court should also take into consideration the arguments in this amicus brief in addressing the district court's exercise of discretion to the extent that it is implicated by the issues raised by PFP's cross-appeal.

Respectfully submitted,

  /s/ Paul Alan Levy    
Paul Alan Levy

1698 Lanier Place, N.W.
Washington, D.C. 20009
(202) 688-5005
plevy@paullevylaw.org

Attorney for amici curiae

July 29, 2026

**CERTIFICATE OF COMPLIANCE**

This brief was prepared using Word Perfect in 12 point Century Schoolbook. Word Perfect counted 6320 words in this brief, without including the material excluded by Rule 32(a)(7)(F).

/s/ Paul Alan Levy
Paul Alan Levy

1698 Lanier Place, N.W.
Washington, D.C. 20009
(202) 688-5005
plevy@paullevylaw.org

Attorney for amici curiae

July 29, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this date I am filing this brief via ECF, which will effect service on all parties to the appeal.

/s/ Paul Alan Levy
Paul Alan Levy

1698 Lanier Place, N.W.
Washington, D.C. 20009
(202) 688-5005
plevy@paullevylaw.org

Attorney for amici curiae

July 29, 2026