Appellate Court Case No. 26-1757
Appellate Court Case No. 26-1859

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

PREPARED FOOD PHOTOS, INC. f/k/a ADLIFE MARKETING & COMMUNICATIONS CO. INC.,

Plaintiff-Appellee and Cross-Appellant,

v.

SHARIF JABER.,

Defendant-Appellant,

NOFAL, LLC d/b/a FOOD TOWN MART

Defendant-Cross Appellee,

On Appeal from the United States District Court
For the Eastern District of Wisconsin, Case No. 2:22-cv-00642-JPS

**COMBINED RESPONSE BRIEF AND INITIAL BRIEF OF APPELLEE/CROSS-APPELLANT PREPARED FOOD PHOTOS, INC.**

**Daniel DeSouza, Esq.**
CopyCat Legal PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
*Counsel for Appellee*

Dated: August 28, 2026

**STATEMENT OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Appellee and cross-appellant Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co. Inc. ("Prepared Food Photos") certifies that the following persons have an interest in the outcome of this appeal:

1. Prepared Food Photos. There is no parent corporation and no publicly held corporation owns 10% or more of the stock in Prepared Food Photos.

2. Sharif Jaber.

3. Nofal, LLC d/b/a Food Town Mart.

4. The Honorable Joseph P. Stadtmueller.

5. CopyCat Legal PLLC.

6. Daniel DeSouza, Esq.

7. Leavell & Borton, S.C.

8. Jeffrey Leavell, Esq.

9. Austin B. Borton, Esq.

10. Klema Law, PL.

11. Griffin Klema, Esq.

12. Terschan, Steinle, Hodan & Ganzer, Ltd.

13. Timothy Steinle, Esq.

14. Amber L. Herda, Esq.

## STATEMENT REGARDING ORAL ARGUMENT

Prepared Food Photos does not believe oral argument is appropriate and therefore does not request such. The issues on appeal are narrow and do not require oral argument for the Court to determine the propriety of such.

# TABLE OF CONTENTS

STATEMENT OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT……………………………………….…………………………...ii

TABLE OF CONTENTS…………………………………………………...……..…….iv

TABLE OF AUTHORITIES…………………………………………..………...............…vi

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION……………..….1

STATEMENT OF THE ISSUES……………………………………...……...…………..1

STATEMENT OF THE CASE…………………………………...…………………………1

I. Events Leading to the Underlying Lawsuit………………………….……………..1

II. Jaber/Food Town Mart Deny Infringement in Their Answer…………………………2

III. Jaber/Food Town Mart Continue to Deny Infringement in Discovery………………..3

IV. Trial………………………………………………………………………………9

V. Prepared Food Photos Timely Files its Motion for Fees……………………..…….9

VI. The District Court Allows Jaber to File an Untimely Motion for Fees…….……….10

VII. The Fees Order…………………………………………………...……………..10

VIII. Settlement Discussions…………………………………...……………………….10

SUMMARY OF THE ARGUMENT…………………………...……………………...……11

ARGUMENT……………………………………………………...………..…...……..…12

I. Standard of Review…………………………………………………………..12

A. The District Court's Grant of Jaber's Motion to Extend…………...……………12

B. The District Court's Denial of Prepared Food Photos' Fee Motion……………..….13

II. The District Court Abused its Discretion in Granting Jaber's Motion to Extend……………………………………………………………………13

A. Application of the <u>Pioneer</u> Factors……………………………………………14

1. Danger of Prejudice……………………………………………………...14

2. Length of Delay and Impact on the Proceedings…………………..…….18

3. Reason for the Delay / Good Faith……………………..……………..18

B. The Balance of the Pioneer Factors……………………………………..………..22

III. The District Court Abused its Discretion in Not Granting Fees Under Fed. R. Civ. P. 37(c)(2)………………………………..…………………………..23

IV. Prepared Food Photos and Jaber are Both Prevailing Parties………………………..26

V. This Court Should Remand for Consideration of the Fogerty Factors in Determining Entitlement…………………………………………….………….30

VI. This Court Should Reverse on the Refusal to Award Costs…………………………34

CONCLUSION ……………………………………………………………….………...….36

CERTIFICATE OF COMPLIANCE……………………………………….…….……...37

CERTIFICATE OF SERVICE ……………………………………………………………38

## TABLE OF AUTHORITIES

**Cases**

Adams v. Rivera, 13 F. Supp. 2d 550 (S.D.N.Y. 1998)……………………………………...……..17

Afford. Aerial Photography, Inc. v. Reyes, 2024 U.S. App. LEXIS 22296
(11th Cir. Sep. 3, 2024)……………………………………………………………………..13

Alioto v. Town of Lisbon, 651 F.3d 715 (7th Cir. 2011)……………………………………..14

Alloc, Inc. v. Unilin Decor N.V., 2006 U.S. Dist. LEXIS 65889
(E.D. Wis. Aug. 29, 2006)...…………………………………………………………………....6

Baker v. Lindgren, 856 F.3d 498 (7th Cir. 2017)……………………………..…………34

Balsley v. LFP, Inc., 691 F.3d 747 (6th Cir. 2012)……………………………..…………30

Benesowitz v. Metro. Life Ins. Co., 514 F.3d 174 (2d Cir. 2007)…………………….………32

Broad. Music v. 315 W. 44th St. Rest. Corp., 1995 U.S. Dist. LEXIS 9575
(S.D.N.Y. July 10, 1995)……………………………………………………...…………16

Broad. Music, Inc. v. JJ Squared Corp., 2013 U.S. Dist. LEXIS 180516
(E.D.N.Y. Dec. 26, 2013)……………………………………………………………………..16

Brockmann v. Bd. of Cty. Comm'rs of Shawnee, 404 F. App'x 271 (10th Cir. 2010)…...……..13

Cal. Int'l Chem. Co. v. Sister H. Corp., 1999 U.S. App. LEXIS 868
(9th Cir. Jan. 19, 1999)…………………………………………………………..………27

Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.,
646 F.3d 401 (7th Cir. 2011)………………………………………………………………14

Contreras v. City of Chicago, 119 F.3d 1286 (7th Cir. 1997)……………………..…………35

CSU v. Xerox Corp., 202 F.R.D. 275 (D. Kan. 2001)…………………………….………..20

Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., 965 F.3d 365 (5th Cir. 2020)…..……...27; 33

Doc's Dream, LLC v. Dolores Press, Inc., 959 F.3d 357 (9th Cir. 2020)……………...………..33

Easley v. Kirmsee, 382 F.3d 693 (7th Cir. 2004)………………………………………………..20

Equilease Fin. Servs., Inc. v. Fincastle Leasing, Inc., 305 F. App'x 291 (7th Cir. 2008)……….20

Feltner v. Columbia Pictures Tv, 523 U.S. 340 (1998)………………...………………………..15

Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)……………………………..…………………11

Foster Poultry Farms, Inc. v. SunTrust Bank, 377 F. App'x 665 (9th Cir. 2010)…………….…13

Franlogic Scout Dev., LLC v. Scott Holdings, Inc., 2018 U.S. Dist. LEXIS 72751 (E.D. Pa. Apr. 30, 2018)……………………………………………..……..…………..17; 18

Galiano v. Harrah's Operating Co., 416 F.3d 411 (5th Cir. 2005)…………………………...….33

Gibbs v. Gotfredson Chrysler Plymouth, 708 F. Supp. 270 (D. Neb. 1989)………………….....17

Glacier Films (USA), Inc. v. Turchin, 896 F.3d 1033 (9th Cir. 2018)…………....……28; 29; 33

Gonzales v. Transfer Techs., Inc., 301 F.3d 608 (7th Cir. 2002)……………….………………33

Gray v. Koch Foods, Inc., 144 F.4th 1298 (11th Cir. 2025)……………………………………..28

Hall v. Cullinan, 2023 U.S. Dist. LEXIS 195121 (S.D. Ohio Oct. 31, 2023)……………...……25

Harrington v. Dugar, 2024 U.S. Dist. LEXIS 155470 (C.D. Cal. Aug. 27, 2024)………………29

Horne v. City of Hamilton, 1999 U.S. App. LEXIS 8690 (6th Cir. May 3, 1999)………………17

James v. United States Dep't of Hous. & Urban Dev., 783 F.2d 997 (11th Cir. 1986)……….....31

Janik v. Spin Media, Inc., 2017 U.S. Dist. LEXIS 199343 (S.D.N.Y. Dec. 4, 2017)…………...34

Kendall v. Hoover Co., 751 F.2d 171 (6th Cir. 1984)……………………...…………………20

Kovacic v. Oconto Cty., 2026 U.S. Dist. LEXIS 26025 (E.D. Wis. Feb. 9, 2026)…………….…..35

LeMons v. Sven (In re Sven), 2006 U.S. Dist. LEXIS 90166 (C.D. Ill. Dec. 13, 2006)………...22

LHO Chi. River, L.L.C. v. Perillo, 942 F.3d 384 (7th Cir. 2019)………………………………33

Libertarian Party of Ohio v. Husted, 497 F. App'x 581 (6th Cir. 2012)……………………...…31

Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630 (7th Cir. 2023)……..…..32

McCarthy v. Ameritech Publ., Inc., 763 F.3d 488 (6th Cir. 2014)……………………………25

Miller v. Hurst, 2022 U.S. App. LEXIS 2494 (6th Cir. Jan. 26, 2022)……………...…………..13

Mother & Father v. Cassidy, 338 F.3d 704 (7th Cir. 2003)…………………………….………..35

Murphy v. Eddie Murphy Prods., Inc., 611 F.3d 322 (7th Cir. 2010)……………..…..………..13; 14

Narkiewicz-Laine v. Doyle, 930 F.3d 897 (7th Cir. 2019)…………………...…..……….29; 30

Phelps v. Hamilton, 1996 U.S. App. LEXIS 1844 (10th Cir. Feb. 7, 1996)……………..………31

Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380 (1993)…………...….10; 13; 14

Raymond v. Ameritech Corp., 442 F.3d 600 (7th Cir. 2006)…………………...……………14

Richardson v. Kharbouch, 156 F.4th 849 (7th Cir. 2025)…………………….………………26

Robb v. Norfolk & W. Ry. Co., 122 F.3d 354 (7th Cir. 1997)…………………….…………14

Rui Tong v. Henderson Kitchen, Inc., 2020 U.S. Dist. LEXIS 158681
(E.D. Pa. Sep. 1, 2020)…………………………………………………………………..16

Runnebaum v. Magellan Healthcare, Inc., 2019 U.S. Dist. LEXIS 181518
(D. Kan. Oct. 21, 2019)…………………………………………………………….………21

S. Wabash Communs., Ltd. v. Union Cty. Broad. Co., 69 F. App'x 285 (6th Cir. 2003)……….26

Sovereign Mil. Hospitaller Order of St. John v. Fla. Priory of the Knights Hospitallers
of the Sovereign Order of St. John, 2020 U.S. Dist. LEXIS 80322
(S.D. Fla. May 6, 2020)……………………………………………………….……………25

Stross v. NextLuxuryDotCom LLC, 2022 U.S. Dist. LEXIS 40271
(C.D. Cal. Feb. 3, 2022)…………………………………………………...………..29

Thomas v. Bd. of Educ., 177 F.R.D. 488 (D. Kan. 1997)…………………………...……..17

Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352 (6th Cir. 2007)…………..…….33

Tierney v. BNSF Ry. Co., 2024 U.S. Dist. LEXIS 135872 (W.D. Wis. July 31, 2024)…………6

Tschantz v. McCann, 160 F.R.D. 568 (N.D. Ind. 1995)………………………...…………14

United States ex rel. Pileco, Inc. v. Slurry Sys., 804 F.3d 889 (7th Cir. 2015)….……………...…35

Walker v. City of Chi., 513 F. App'x 593 (7th Cir. 2013)……………………………...……..35

White v. N.H. Dep't of Emp't Sec., 455 U.S. 445 (1982)……………………………………..17

Williams v. Gaye, 895 F.3d 1106 (9th Cir. 2018)……………………………………….………27

Zeikos Inc. v. Walgreen Co., 2024 U.S. Dist. LEXIS 210978 (N.D. Ill. Nov. 20, 2024)……...…6

**Rules/Statutes**

17 U.S.C. § 504(c)(1)……………………………………………………………..…………15

1993 Advisory Committee Notes to Fed. R. Civ. P. 54……………………………….………18

Fed. R. Civ. P. 6(b)(1)…………………………………………………………..………..12

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellant/cross-appellee Sharif Jaber's ("Jaber") Statement of Subject-Matter and Appellate Jurisdiction is generally correct/complete.

## STATEMENT OF THE ISSUES

Whether the District Court abused its discretion in granting Jaber's motion for extension of time to file a motion for prevailing party fees when such motion was filed two (2) months after the deadline for doing so and well after the deadline for any of the parties to appeal the District Court's final judgment.

Whether the District Court erred in finding that neither appellee/cross-appellant Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co. Inc. ("Prepared Food Photos") nor Jaber was a prevailing party for purposes of determining entitlement to fees under the Copyright Act.

Whether the District Court erred in finding that Prepared Food Photos was not entitled to an award of fees under Fed. R. Civ. P. 37(c)(2) with respect to Jaber's failures/refusals to admit established facts.

## STATEMENT OF THE CASE

### I. Events Leading to the Underlying Lawsuit

Prepared Food Photos agrees with Jaber that the underlying copyright infringement litigation ***should have been*** straightforward. Unfortunately, it was not. Cross-appellee Nofal LLC d/b/a Food Town Mart ("Food Town Mart") owns and operates a full-line grocery store located at 3217 W. Villard Avenue, Milwaukee, WI 53209 under the trade name "Food Town Mart" and/or "Foodtown

Mart. PFP A10.[1] Jaber is the sole member of Food Town Mart. PFP A10. On November 22, 2021, Prepared Food Photos (through counsel) sent a pre-suit letter to "Villard Foodtown, LLC" (the entity Prepared Food Photos believed at the time to own the grocery store) with respect to the alleged infringement of a photograph of pork chops on a cutting board (the "Work"). PFP A54. On January 20, 2021, Prepared Food Photos' counsel spoke telephonically with Jaber who denied that his store ever used the Work and further denied that his grocery store had any affiliation with/control over the Facebook page at issue. PFP A54.

After the original Complaint was filed, Prepared Food Photos' counsel interacted with an attorney for Villard Foodtown, LLC (which was determined to be the property owner rather than operator of the grocery store) which led to Prepared Food Photos amending the Complaint to name Jaber (individually) as the defendant. PFP A55. After Jaber avoided service for several months (leading to Prepared Food Photos seeking and receiving leave to serve him by publication), Prepared Food Photos' counsel received a call from Timothy Steinle, Esq. (Jaber/Food Town Mart's counsel throughout the underlying lawsuit) who informed that Food Town Mart was the actual owner of the grocery store. PFP A55. Prepared Food Photos then filed its Second Amended Complaint [D.E. 19] (the governing pleading) on February 7, 2023. A18.

## II. Jaber/Food Town Mart Deny Infringement in Their Answer

The Second Amended Complaint contains multiple allegations with respect to Food Town Mart's alleged unauthorized display of the Work. A21 – A22. As set forth below, Jaber/Food Town Mart denied each of these allegations in their Answer [D.E. 21] to the Second Amended Complaint:

[1] References to the record contained within Prepared Food Photos' short and long appendix contain the prefix "PFP A" in the lower-righthand corner. References to Jaber's appendix contain the prefix "A" by itself.

18. On September 28, 2020 (after Plaintiff's above-referenced copyright registration of the Work), NOFAL LLC published the Work on its business Facebook page (at https://www.facebook.com/villardfoodtown/photos/pcb.2818903505099367/2818895218433529 /https://iliria-foods.business.site/ - testimonials) in connection with the marketing of its business:

18. These answering defendants deny the allegations contained within paragraph 18 of the plaintiff's Second Amended Complaint.

29. NOFAL LLC reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

29. These answering defendants deny the allegations contained within paragraph 29 of the plaintiff's Second Amended Complaint.

30. By his actions, NOFAL LLC infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

30. These answering defendants deny the allegations contained within paragraph 30 of the plaintiff's Second Amended Complaint.

PFP A10; PFP A12. Neither Jaber nor Food Town Mart moved to amend their Answer throughout the entirety of the underlying lawsuit.

**III. Jaber/Food Town Mart Continue to Deny Infringement in Discovery**

Given Jaber/Food Town Mart's denials with respect to both the Facebook page and the infringement thereon, Prepared Food Photos served written discovery (requests for production,

interrogatories, and requests for admissions) on both defendants on June 28, 2023. On or about August 17, 2023, Food Town Mart served its responses to Plaintiff's discovery requests. PFP A66; PFP A71. As with its Answer to the Second Amended Complaint, Food Town Mart's responses to the First Set of Interrogatories (which are notarized and signed by Jaber) denied any use of the Work and further denied any affiliation with the Facebook page:

2. Identify each and every commercial use of the Work by you and, if such use involves publishing or displaying the Work on the Website, the Facebook Page, and/or any other social media page controlled by you, identify each sub-page thereof on which the Work was published and/or displayed.

ANSWER NO. 2: NOFAL LLC did not use the Work commercially on any social media page.

3. Identify all websites and/or social media pages controlled by you (including any websites and/or social media pages you have disabled, discontinued, and/or removed from public view).

ANSWER NO. 3: Food Town Mart and/or NOFAL LLC has never had a website and has never had any social media pages.

PFP A66 – PFP A67. Food Town Mart's responses to the First Request for Admissions likewise denied the same matters:

8. Admit that the Facebook Page is controlled by NOFAL LLC.

Response 8: Deny that the Villard Foodtown Facebook page is controlled by NOFAL LLC.

9. Admit that, as of September 28, 2020, the Work was displayed on NOFAL LLC's Facebook Page.

Response 9: Deny that the Work was displayed on NOFAL LLC's Facebook page.

10. Admit that NOFAL LLC caused the Work to be displayed on its Facebook Page.

Response 10: Deny that NOFAL LLC caused the Work to be displayed on Villard Foodtown's Facebook page.

12. Admit that NOFAL LLC published and/or displayed the Work on the Facebook Page.

Response 12: Deny that NOFAL LLC published and/or displayed The Work on Villard Foodtown's Facebook page.

15. Admit that the Facebook Page is utilized to market and/or advertise NOFAL LLC's business.

Response 15: Deny that the Villard Foodtown Facebook page is utilized to market and/or advertise NOFAL LLC's business.

16. Admit that the Work was displayed on the Facebook Page in connection with NOFAL LLC's efforts to market its business.

Response 16: Deny that the Work was displayed on Villard Foodtown's Facebook page in connection with NOFAL LLC's efforts to market its business.

PFP A72 – PFP A73. Given Food Town Mart's continued refusal to acknowledge the Facebook page and/or its infringement, Plaintiff on August 21, 2023 served a Notice of Taking Deposition of the Corporate Representative of Nofal LLC d/b/a Food Town Mart. PFP A89. Included amongst the topics identified therein was:

1. The identity of the person purportedly responsible for uploading the Work to the Facebook Page and/or Website.

2. The relationship (if any) between Defendants and the person purportedly responsible for uploading the Work to the Facebook Page and/or the Website.

7. The factual circumstances by which the Work came to be published on the Facebook Page and/or the Website.

10. The factual basis for Defendants' contention, set forth in their Second Affirmative Defense, that "The acts and/or allegations contained within the Second Amended Complaint were caused by those other than these answering defendants."

PFP A93 – PFP A94. Food Town Mart was then required to prepare witness(es) to testify as to each of the topics (as no objections were served/motion for protective order filed). See, e.g. Tierney v. BNSF Ry. Co., No. 23-cv-477-wmc, 2024 U.S. Dist. LEXIS 135872, at *10 (W.D. Wis. July 31, 2024) ("The responding organization then has an obligation to prepare the designated person on those topics to testify about information known or reasonably available to the organization."); Alloc, Inc. v. Unilin Decor N.V., No. 02-C-1266, 2006 U.S. Dist. LEXIS 65889, at *4 (E.D. Wis. Aug. 29, 2006) ("A party need only designate, with reasonable particularity, the topics for examination. The corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give completely knowledgeable and binding answers on behalf of the corporation.") (internal citation omitted); Zeikos Inc. v. Walgreen Co., No. 23-cv-303, 2024 U.S. Dist. LEXIS 210978, at *8 (N.D. Ill. Nov. 20, 2024) ("[C]ourts have described the degree of preparation required of attorneys in preparing a Rule 30(b)(6) witness as requiring considerable effort, as such a witness must be able to answer fully, completely, and unevasively the questions posed by the deposing party.") (internal quotation marks omitted).

On September 26, 2023, Jaber appeared for a deposition in the underlying lawsuit – both individually and as Food Town Mart's 30(b)(6) designee. PFP A152. During the deposition, Jaber testified ***repeatedly*** that Food Town Mart has never had a Facebook page and that he had no idea

who was responsible for the Facebook Page:[2]

Q. What about social media? Has Villard Food Town or Food Town Mart ever had a Facebook page?
A. No.

***

Q. Okay. So you have no idea who has this Facebook account, correct?
A. No, sir. I don't have.

***

Q. Sir, do you have any idea who owns this Facebook account?
A. No.

PFP A155; PFP A157; PFP A158. Jaber did not only deny knowledge of the Facebook Page – he likewise denied (for hours of the deposition) that the hundreds of photographs posted thereto (which included shelves in the store, signs in the store, and products being sold in the store) were part of the Food Town Mart store or ever sold therein. Jaber's testimony was so absurd that, almost immediately after the deposition on September 26, 2023, Prepared Food Photos' counsel called Mr. Steinle (Jaber/Food Town Mart's counsel) to raise what appeared to be hours of perjury by Mr. Jaber. In response, Mr. Steinle stated: "Dan, I'm an old f***. And even I knew what was happening with his answers." PFP A56.

On December 18, 2023, Prepared Food Photos took the deposition of Amjad Hamed (Jaber's son who is employed by Food Town Mart as its floor manager). PFP A167. During his deposition, Amjad Hamed readily admitted that the Facebook Page is the official Facebook page for Food Town Mart, that he has been running the page for years (with his older brother running the page before

[2] <u>See</u> Jaber Tr., at 14:19 – 14:21; 23:2; 26:17 – 26:19.

him), that the various photos of shelves, signs, products, etc. on the Facebook Page are absolutely of the Food Town Mart store itself, and that his father was at all times aware of the Facebook Page:

Q. What about social media? Things like Facebook or Twitter? Instagram? Any of that?
A. I know we have a Facebook.

Q. It has a Facebook?
A. Yup.
Q. What's the Facebook for Food Town Mart?
A. I believe it's called Food Town Mart.

***

Q. Was your father aware that you were running the Facebook account for the store?
A. Yes, sir.

PFP A169; PFP A178. Contrary to his father's testimony, Mr. Hamed testified that Food Town Mart ***does*** have a Facebook page and that he is the person in charge thereof, with his brother (Nofal) running the Facebook Page prior to Mr. Hamed taking over. Mr. Hamed testified that he was the person who created the subject September 28, 2020 posting on the Facebook Page which utilized the Work to advertise the sale of pork chops. Mr. Hamed testified (contrary to Mr. Jaber's testimony) that Food Town Mart does sell hookahs and that the photographs of such on the Facebook Page were hookahs being sold in the store. Mr. Hamed likewise testified that (again contrary to Jaber's testimony) that Food Town Mart does sell speakers and that the photographs of such on the Facebook Page were speakers being sold in the store. He likewise testified (again contrary to Mr. Jaber's testimony) that the signs/shelves depicted in the photographs/videos on the Facebook page were from within the Food Town Mart store. Indeed, Mr. Hamed confirmed that ***all*** of the postings on the Facebook Page depict or relate to items for sale at the Food Town Mart store or were

otherwise promoting the store. As indicated by Mr. Hamed's deposition transcript, Mr. Steinle (Jaber/Food Town Mart's counsel) attended the deposition. PFP A167.

Despite Amjad Hamed's testimony/admissions, Jaber/Food Town Mart never sought (at any time prior to trial) to amend their Answer, responses to Interrogatories, responses to the Requests for Admissions, or otherwise alter their position that they had nothing to do with the Facebook Page.

## IV. Trial

Trial in the underlying case commenced on October 28, 2024. The District Court heard testimony from Rebecca Jones (Prepared Food Photos' IP Director), Jaber, and Amjad Hamed. The District Court likewise received various of Prepared Food Photos' trial exhibits, but excluded any exhibits pertaining to any photograph on the Facebook Page other than the Work (i.e., any photographs of hookahs/speakers which Jaber testified Food Town Mart had never sold but Amjad Hamed testified were products sold in the store or any photographs of the store itself which Jaber testified was not Food Town Mart but Amjad Hamed testified was the store). During trial – for the first time during the underlying lawsuit – Jaber admitted that the subject Facebook page belonged to Food Town Mart and that the Work was displayed thereon.

On October 29, 2024, the jury returned a verdict in favor of Prepared Food Photos on its infringement claim against Food Town Mart, awarding $200.00 in actual damages or $1,000.00 in statutory damages. A29. On November 1, 2024, Prepared Food Photos filed a notice electing the award of actual damages. [D.E. 52]. On November 7, 2024, the District Court entered Judgment against Food Town Mart. A37.

## V. Prepared Food Photos Timely Files its Motion for Fees

On April 21, 2025 (the deadline following the District Court's denial of Prepared Food Photos' motion for new trial), Prepared Food Photos filed its Motion for Attorneys' Fees. PFP A31. That motion sought an award of fees both as a prevailing party against Food Town Mart under 17

U.S.C. § 505 and due to Food Town Mart's failure to admit several of Prepared Food Photos' requests for admissions.

## VI. The District Court Allows Jaber to File an Untimely Motion for Attorneys' Fees

On June 16, 2025, Jaber (through his new counsel, Mr. Klema) filed his Motion for Extension of Time *Nunc Pro Tunc* to File Motion for Attorney's Fees (the "Motion for Extension"). PFP A97. In reality, the Motion for Extension did not seek an 'extension' but rather permission to file Jaber's fee motion at least 2 months after the deadline for doing so. The Motion for Extension argued that, applying the factors set forth in Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 388 (1993) ("Pioneer"), Jaber's tardiness constituted excusable neglect. Prepared Food Photos opposed the Motion for Extension, arguing that Jaber's neglect was inexcusable and attaching several record documents to demonstrate such. PFP A114. On July 2, 2025, the District Court entered an Order granting the Motion for Extension, finding that on balance Jaber "narrowly demonstrated" excusable neglect. PFP A1. The District Court thus allowed Jaber to file a motion for attorneys' fees, which Jaber did on July 9, 2025. A113.

## VII. The Fees Order

As discussed in Jaber's initial brief, the District Court on March 18, 2026 entered its Order (the "Fees Order") denying both Prepared Food Photos' motion for attorneys' fees and Jaber's motion for attorneys' fees. A1. The Fees Order likewise denied taxable costs to both parties. The District Court's stated reason for the denial of both fees and costs is that it found neither Prepared Food Photos nor Jaber could be considered a 'prevailing party' for purposes of awarding fees or costs. This appeal followed.

## VIII. Settlement Discussions

Notably, Jaber's initial brief discusses Prepared Food Photos' pre-trial and "just prior to

trial" settlement demands.[3] While Prepared Food Photos' increasing demand is easy to explain given the amount of fees/costs that had were incurred in the underlying lawsuit, Jaber's initial brief is silent with respect to Jaber/Food Town Mart's settlement position throughout the lawsuit. To be clear, neither Jaber nor Food Town Mart, any time pre-suit or during the course of the underlying lawsuit, ever offer $.01 to resolve the alleged infringement at issue. PFP A56. Although Prepared Food Photos did attempt to settle multiple times throughout the lawsuit, Mr. Steinle was never given authority by Jaber/Food Town Mart to make ***any*** offer to resolve this matter. PFP A56.

## SUMMARY OF THE ARGUMENT

Prepared Food Photos agrees with the core of Jaber's argument (20+ pages of his initial brief) – the District Court erred by finding that neither Prepared Food Photos nor Jaber could be considered a prevailing party for purposes of awarding fees or costs. By finding that neither party prevailed, the District Court did not then analyze the factors for determining entitlement to fees under Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

But Jaber's status as a prevailing party does not mean the District Court should have considered the Fogerty factors with respect to his entitlement to fees – rather, the District Court should have denied outright Jaber's late-filed motion for attorneys' fees as wholly failing to meet any of the Pioneer factors for determining excusable neglect. By failing to properly apply those factors, the District Court abused its discretion in granting Jaber an extension *nunc pro tunc* to file his motion for attorneys' fees. Thus, while Jaber may technically be a prevailing party who could have filed a timely motion for fees, the inquiry should end there with respect to Jaber.

Regarding Prepared Food Photos' status as a prevailing party, there is no question or dispute. Prepared Food Photos brought a single claim for copyright infringement against Food Town Mart

[3] See initial brief, at pp. 5 – 6.

and prevailed entirely on such claim (albeit for a lower damages award than it sought). Further, Prepared Food Photos was forced to spend an inordinate amount of time in discovery and preparing for trial due to Jaber/Food Town Mart's refusals to admit basic facts – i.e., that the Facebook page at issue belonged to Food Town Mart and that Food Town Mart posted the Work thereon. The District Court again erred when it refused to award fees to Prepared Food Photos under Rule 37 and found Jaber/Food Town Mart's denials to be of no substantial importance (when they actually comprised the entirety of the elements of Prepared Food Photos' infringement claim).

Ultimately, this Court should reverse both the Order granting the Motion for Extension and the Fees Order, hold that Prepared Food Photos is the prevailing party on its infringement claim, and remand to the District Court with instructions to apply the Fogerty factors to determine Prepared Food Photos' entitlement to fees (while simultaneously awarding Prepared Food Photos its taxable costs). Given Jaber's purposeful neglect and failure to file a fee motion within the time constraints, this Court should deny Jaber's requests in their entirety (other than with respect to there being more than one prevailing party here).

## ARGUMENT

### I. Standard of Review

#### *A. The District Court's Grant of Jaber's Motion to Extend*

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time… on motion made after the time has expired if the party failed to act because of excusable neglect." The Supreme Court has held that the determination of what neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include… the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the

movant, and whether the movant acted in good faith." Pioneer, 507 U.S. at 395. Appellate courts review a district court's decision to extend a time period due to excusable neglect for abuse of discretion. See Murphy v. Eddie Murphy Prods., Inc., 611 F.3d 322, 324 (7th Cir. 2010) (affirming a district court's denial of a motion to extend time under Rule 6(b) "using a deferential abuse of discretion standard").

### *B. The District Court's Denial of Prepared Food Photos' Fee Motion*

Prepared Food Photos agrees with Jaber that the determination of who is a prevailing party under the Copyright Act is made de novo. See Afford. Aerial Photography, Inc. v. Reyes, No. 23-12051, 2024 U.S. App. LEXIS 22296, at *3 (11th Cir. Sep. 3, 2024) ("We review *de novo* whether a party is a prevailing party.") (copyright infringement lawsuit); Miller v. Hurst, No. 21-5506, 2022 U.S. App. LEXIS 2494, at *6-7 (6th Cir. Jan. 26, 2022) ("[W]hether a litigant qualifies as a 'prevailing party' constitutes a question of law that we review de novo.") (copyright infringement lawsuit). Separately, with respect to the District Court's decision to not award fees under Fed. R. Civ. P. 37(c)(2), appellate courts review the decision to award fees thereunder for an abuse of discretion. See Brockmann v. Bd. of Cty. Comm'rs of Shawnee, 404 F. App'x 271, 287 (10th Cir. 2010) ("We review the district court's award of attorneys' fees pursuant to Federal Rule of Civil Procedure 37(c)(2) for an abuse of discretion."); Foster Poultry Farms, Inc. v. SunTrust Bank, 377 F. App'x 665, 672 (9th Cir. 2010) ("We review the denial of a motion for fees under Rule 37 for abuse of discretion.").

## II. The District Court Abused its Discretion in Granting Jaber's Motion to Extend

Before the Court can consider whether Jaber was a prevailing party for purposes of awarding fees under the Copyright Act, it must first consider whether the District Court abused its discretion in allowing Jaber to file his fee motion two (2) months after the deadline for doing so.

Jaber's Motion for Extension was filed fifty-seven (57) days after the deadline to file a motion for fees and, as such, was untimely unless he showed both "good cause" and "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B). See Murphy, 611 F.3d at 324 ("A motion filed before the deadline may be granted 'for good cause,' a motion made after the time has expired may be granted only if 'the party failed to act because of excusable neglect.'") (quoting Fed. R. Civ. P. 6(b)(1))). The good cause standard focuses on the diligence of the party seeking the extension. Alioto v. Town of Lisbon, 651 F.3d 715, 715 (7th Cir. 2011). To demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met. See Tschantz v. McCann, 160 F.R.D. 568, 571 (N.D. Ind. 1995).

Along with good cause, Jaber was also required to demonstrate excusable neglect under Rule 6(b)(1)(B). Excusable neglect is "a somewhat elastic concept,"[4] demanding an equitable determination that can "encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Robb v. Norfolk & W. Ry. Co., 122 F.3d 354, 355-56 (7th Cir. 1997) (quoting Pioneer, 507 U.S. at 394); see also Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., 646 F.3d 401, 404-05 (7th Cir. 2011); Raymond v. Ameritech Corp., 442 F.3d 600, 606 (7th Cir. 2006) (explaining that the determination of excusable neglect is "at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission") (quoting Pioneer, 507 U.S. at 395).

### *A. Application of the Pioneer Factors*

#### 1. Danger of Prejudice

In assessing the danger of prejudice, the District Court largely ignored or dismissed Jaber's arguments on this factor. While Jaber argued that Prepared Food Photos was a 'serial litigant,' filed

[4] See Pioneer Inv. Servs. Co., 507 U.S. at 391.

a motion for a new trial, agreed to Mr. Steinle's (Jaber/Food Town Mart's prior attorney) withdrawal, and agreed to an extension for Food Town Mart to oppose Prepared Food Photos' motion for fees, the District Court properly found these arguments unavailing and wholly unconnected to the prejudice issue. The District Court, however, still found that this factor "cuts narrowly in Jaber's favor."

In opposing Jaber's Motion for Extension, Prepared Food Photos argued that it was substantially prejudiced by allowing Jaber to move for fees after the deadline for appeals of the underlying judgment. As recognized by the District Court, the deadline for any party to file a motion for fees was April 21, 2025, and the deadline for any party to file an appeal of the Judgment was May 7, 2025 (30 days after the Court's denial of Prepared Food Photos' Motion for New Trial). With Prepared Food Photos having filed its own Motion for Attorneys' Fees and knowing that Jaber did not, Prepared Food Photos chose to forego an appeal of the judgment in Jaber's favor and instead simply pursue prevailing party fees against Food Town Mart. As set forth in the Declaration of Rebecca Jones that was attached to Prepared Food Photos' opposition memorandum, Prepared Food Photos would have pursued an appeal of the underlying judgment. PFP A127. Indeed, Prepared Food Photos' intention to appeal was obvious by virtue of its election, following a verdict for $200.00 in actual damages or $1,000.00 in statutory damages, to receive the $200.00 actual damages award so that it could preserve a challenge to the amount of statutory damages on appeal.[5] Otherwise, it would be nonsensical for Prepared Food Photos to elect the lesser award.

---

[5] See 17 U.S.C. § 504(c)(1) (allowing the copyright owner to "elect, at any time before final judgment is rendered, to recover" statutory damages rather than actual damages and profits); see also Feltner v. Columbia Pictures Tv, 523 U.S. 340, 347 n.5 (1998) ("The parties agree, and we have found no indication to the contrary, that election may occur even after a jury has returned a verdict on liability and an award of actual damages.").

By allowing Jaber to file his motion for fees well after the deadline for the parties to appeal, the District Court essentially forced Prepared Food Photos to concede the issue of Jaber prevailing on the vicarious infringement claim notwithstanding significant reasons for reversal of such. See, e.g. Broad. Music v. 315 W. 44th St. Rest. Corp., 93 Civ. 8182 (MBM), 1995 U.S. Dist. LEXIS 9575, at *10-11 (S.D.N.Y. July 10, 1995) ("A proprietor is liable under the Copyright Act for the copyright infringement of musicians whom the proprietor allows to perform in his establishment even if the proprietor tells the musicians not to play protected works.") (internal citation omitted); Broad. Music, Inc. v. JJ Squared Corp., No. 11-CV-5140 (JFB)(AKT), 2013 U.S. Dist. LEXIS 180516, at *18 (E.D.N.Y. Dec. 26, 2013) ("Sheehan is individually liable because he is an officer of JJ Squared, has the right and ability to supervise the Establishment's activities, and has a direct financial interest in those activities."). There was no dispute that Jaber owned Food Town Mart, Jaber had a direct financial interest in Food Town Mart's sales/advertising, and that Food Town Mart committed copyright infringement. Prepared Food Photos thus had a viable appeal on the vicarious infringement verdict, but chose to forego such given that Jaber did not himself timely move for fees. Thus, the consequence to Prepared Food Photos of not appealing was simply not prevailing on the vicarious infringement claim – not subjecting itself to a late-filed fee motion and an ensuing years-long battle on the fee issue.

Here, the District Court held that it "cannot conclude that Plaintiff would be prejudiced because the circumstances relative to its decision to forego an appeal have changed." PFP A3 – PFP A4. But that is precisely what the District Court should have concluded. As succinctly stated in Rui Tong v. Henderson Kitchen, Inc., No. 17-1073, 2020 U.S. Dist. LEXIS 158681, at *14 (E.D. Pa. Sep. 1, 2020):

> First, Defendants have suffered prejudice because Plaintiffs filed their Motion for Attorney's Fees long after the time to appeal had lapsed.

> This deprived Defendants of notice of Plaintiffs' claim for attorney's fees, which may have affected Defendants' decision to appeal.

See also White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 454 (1982) ("We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party."); Horne v. City of Hamilton, No. 98-3601, 1999 U.S. App. LEXIS 8690, at *5-6 (6th Cir. May 3, 1999) ("The defendants did not file their motion until after the time for appeal had elapsed. Thus, the Hornes were prejudiced by the length of the delay.") (finding that district court abused its discretion in allowing late-filed motion for fees); Franlogic Scout Dev., LLC v. Scott Holdings, Inc., No. 16-5042, 2018 U.S. Dist. LEXIS 72751, at *9 (E.D. Pa. Apr. 30, 2018) ("Petitioners would suffer prejudice if Respondent was permitted to file its Motion for Attorneys' Fees…. In this case, Respondent filed its Motion for Attorneys' Fees eighty-six days after entry of the Court Order, long after the time for Petitioners to appeal had lapsed. This conduct deprived Petitioners of notice of Respondent's claim for attorneys' fees, which Petitioners allege would have affected their decision to appeal the Order."); Thomas v. Bd. of Educ., 177 F.R.D. 488, 490 (D. Kan. 1997) ("In this case, the plaintiff filed her notice of appeal after the 14-day period elapsed and without information that the defendant would be seeking attorneys' fees. The prejudice would be plain if the plaintiff had decided not to appeal because she faced no potential financial liability from the adverse decision."); Adams v. Rivera, 13 F. Supp. 2d 550, 551 (S.D.N.Y. 1998) ("As to prejudice, defendants aver that, had they known plaintiffs would request fees, they might well have decided to appeal the verdict, since such a contingency would increase their potential liability 26-fold. This is precisely the kind of prejudice the Advisory Committee had in mind when it recommended the amendments to Rule 54(d)(2)(B) imposing the 14-day time limit."); Gibbs v. Gotfredson Chrysler Plymouth, 708 F. Supp. 270, 272 (D. Neb. 1989) ("Although I repeat that I do not suggest that a fee allowance can never be made if first requested after the appeal time has run, or after there is no

practical way of weighing the effect of a motion for fee allowance before the appeal time has run, it seems to me that such a filing carries with it a strong indication of unfair prejudice.”).

Indeed, the 1993 Advisory Committee Notes to Fed. R. Civ. P. 54 specifically state: “Subparagraph (B) provides a deadline for motions for attorneys’ fees—14 days after final judgment unless the court or a statute specifies some other time. One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed.” Given that the very real and tangible prejudice is built into the Advisory Committee Notes themselves, it was error for the District Court to disregard Prepared Food Photos’ unrebutted claim of prejudice. The District Court should have found substantial prejudice resulted from allowing Jaber to file his motion for fees long after the deadline for the parties to appeal the underlying judgment.

**2. Length of Delay and Impact on the Proceedings**

Jaber’s 2-month delay in seeking to file his own motion for attorneys’ fees was, at best, a neutral factor. As set forth above, Jaber’s delay greatly impacted Plaintiff’s decision to appeal the underlying judgment. And while granting the motion for extension of time did not materially extend the underlying proceedings, “there must be finality in litigation, and reopening the case to allow a motion for attorneys’ fees would have some adverse impact on the judicial proceedings.” See Franlogic Scout Dev., LLC, 2018 U.S. Dist. LEXIS 72751, at *13 (finding a 2-month delay to be a neutral factor as compared to a 1-year delay).

**3. Reason for the Delay / Good Faith**

The District Court found the third and fourth Pioneer factors to be neutral. They were not. Here, Jaber’s Motion for Extension argued that Mr. Steinle (Jaber’s former attorney) did not understand there were separate claims against Food Town Mart and Jaber, with Mr. Steinle (per his declaration) viewing Jaber/Food Town Mart “as a singular client when making strategic and tactical decisions.” The District Court itself found this to not be credible, stating that Mr. Steinle’s purported

oversight "falls within the gray area between [inexcusable inattentiveness or] carelessness and excusable neglect." PFP A5.

Nor could the District Court have found Jaber's excuse plausible. Indeed, the Second Amended Complaint [D.E. 19] includes a "COUNT I – COPYRIGHT INFRINGEMENT" claim against "NOFAL LLC" and a "COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT" against "Jaber," the record here is replete with references to the separate nature of these claims. A18. For example, the parties' ***Joint*** Proposed Jury Instructions [D.E. 42] contained a specific instruction (12.6.1) on "DERIVATIVE LIABILITY – VICARIOUS INFRINGEMENT." Jaber/Food Town Mart's ***unilateral*** pre-trial report (filed on April 11, 2024) [D.E. 38] likewise recognized there were two, separate claims:

> **(1)(A) SUMMARY OF FACTS**
>
> The plaintiff, Prepared Food Photos, Inc., alleged in a Second Amended Complaint two (2) counts against the defendants, Nofal, LLC, and Sharif Jaber, individually: Count I-Copyright Infringement as to Nofal, LLC and Count II-Vicarious Copyright Infringement as to Sharif Jaber individually (Document 19). As to the allegations in the complaint, the defendants have denied

The Joint Final Pre-Trial Report [D.E. 41] likewise identified the separate nature of Prepared Food Photos' claims:

> **(1)(A) SUMMARY OF FACTS**
>
> Plaintiff alleges in a Second Amended Complaint two (2) counts against Defendants: Count I-Copyright Infringement as Food Town and Count II-Vicarious Copyright Infringement as to Sharif (Document 19). As to the allegations in the complaint, the defendants have denied any and

Prepared Food Photos likewise served ***individual*** discovery requests (interrogatories, requests for production, and requests for admissions) to ***each of*** Food Town Mart and Jaber – with each defendant ***separately answering*** those requests.

Jaber and his attorney clearly understood there were separate claims and that Prepared Food Photos did not prevail against Jaber. And even if he somehow failed to read the Judgment or understand that Jaber was a prevailing party (he did not), such neglect would not be "excusable" under any interpretation. See, e.g. Easley v. Kirmsee, 382 F.3d 693, 698 (7th Cir. 2004) ("Although attorney carelessness can constitute 'excusable neglect' under Rule 60(b)(1), attorney in-attentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant. Easley's attorney's conduct can only be classified as inexcusable inattentiveness or neglect, rather than excusable carelessness.") (internal citations omitted); CSU v. Xerox Corp., 202 F.R.D. 275, 282 (D. Kan. 2001) ("[C]ounsel's failure to read and follow the plain terms of a court order does not justify a two month delay in responding to the order."); Equilease Fin. Servs., Inc. v. Fincastle Leasing, Inc., 305 F. App'x 291, 292 (7th Cir. 2008) ("[A] mistake of law is not a ground for relief under Rule 60(b)"); Kendall v. Hoover Co., 751 F.2d 171, 175 (6th Cir. 1984) ("The failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is inexcusable neglect.").

The actual, ***non-manufactured*** reason for the delay in Jaber seeking fees was Jaber himself. As made clear in Mr. Steinle's motion to withdraw, Mr. Steinle made substantial efforts to contact Jaber post-trial with respect to both new filings and Mr. Steinle's outstanding invoice(s). The Motion for Extension of Time ***did not*** assert that Jaber did not receive Mr. Steinle's correspondence or was somehow unaware of the outreach. Indeed, the Motion for Extension of Time was entirely silent in explaining Jaber's ambivalence toward his own case, choosing instead to focus on Mr. Steinle's purported understanding of the case/law. The simplest and most obvious explanation is

that Jaber ***deliberately ignored*** Mr. Steinle, any rights Jaber may have had under the Judgment, and any obligations he may have had to either Mr. Steinle or the Court.

The District Court agreed with Prepared Food Photos that Jaber did not offer a good excuse for his delay in filing the motion for extension/failing to communicate with his then-attorney (Mr. Steinle). Indeed, the record is clear that, if Jaber's new attorney had not reached out to Jaber or Mr. Steinle directly to discuss fee motion issues, the motion for extension never would have been filed. Jaber has nobody to blame but himself for his tardiness in seeking fees – he ignored his own attorney for months and never made ***any*** effort to explore entitlement/filing of a fee motion. But while the District Court agreed that Jaber's excuses were lacking, it found that Mr. Steinle's oversight in purportedly not understanding that Jaber prevailed on the vicarious liability claim counter-balanced Jaber's own conduct, thereby rendering the third factor neutral. This, again, was error. Indeed, as referenced by the District Court, Mr. Steinle averred that he could not possibly file a fee motion due to his client's refusal to communicate. But Jaber's breach of Mr. Steinle's fee agreement did not excuse Mr. Steinle from continuing to zealously represent Jaber until such time as withdrawal was permitted. See, e.g. Runnebaum v. Magellan Healthcare, Inc., No. 19-2151-KHV, 2019 U.S. Dist. LEXIS 181518, at *3 (D. Kan. Oct. 21, 2019) ([W]hile breach of a fee arrangement may constitute sufficient grounds for counsel to file a motion to withdraw from a case, counsel must continue to vigorously represent his client unless and until the Court permits him to withdraw."). Further, Mr. Steinle did not move to withdraw until May 1, 2025 – ***after*** the deadline for the parties to file any motions for fees. Ultimately, there was nothing to counterbalance or weigh here – Jaber unequivocally ignored this case post-judgment, Jaber refused to communicate with his attorney notwithstanding multiple outreaches, Mr. Steinle clearly was aware of the separate claims, and Mr. Steinle himself could have sought an extension of time for Jaber to file a fee motion (but did not). ***None*** of this amount to a proper reason for the delay in filing Jaber's fee motion.

Finally, the District Court found that Jaber, ***Attorney Steinle, and Jaber's new pro bono counsel*** have all acted in good faith."[6] PFP A6. It was, however, error to include Mr. Steinle and Jaber's new attorney (Mr. Klema) in such analysis as the Pioneer factors focus on the good faith of the "movant" (i.e., Jaber alone). While counsel may have acted in good faith, the District Court gave short thrift to Jaber's purported good faith, stating only that "Jaber seeks to vindicate his right to seek fees, as a prevailing party in this matter, which he is expressly permitted to do." PFP A6. But that statement says nothing about Jaber's good faith in ignoring both his attorney and the underlying lawsuit. To the contrary, "[t]he Seventh Circuit has found that those who were inattentive to on-going litigation and slept on their rights are not entitled to Rule 60(b) relief for excusable neglect." LeMons v. Sven (In re Sven), No. 06-3117, 2006 U.S. Dist. LEXIS 90166, at *29 (C.D. Ill. Dec. 13, 2006) (citing Robb v. Norfolk & W. Ry., 122 F.3d 354, 359-60 (7th Cir. 1997)). As discussed above, Jaber disappeared on his attorney and only resurfaced when a new attorney (Mr. Klema) contacted either Jaber or Mr. Steinle (as opposed to Jaber taking any interest in the lawsuit) and suggested a course of action. Jaber's conduct is precisely the type of inattentiveness that is not 'excusable' under the Pioneer factors, nor can it support a finding of good faith on his part.

### B. The Balance of the Pioneer Factors

The District Court found that "Jaber has ***narrowly demonstrated*** excusable neglect for his failure to file a fee motion by the original deadline."[7] PFP A6. But such conclusion was based on the notion that the first factor (danger or prejudice) favoring Jaber (it does not), the third factor (reasons for Jaber's delay) being neutral (they were not), and the fourth factor (whether Jaber acted in good faith) favoring Jaber (it does not). When each factor is properly analyzed, ***none*** of the

---

6 Emphasis added.

7 Emphasis added.

factors favor Jaber. As a result, and especially given the significant prejudice suffered by Prepared Food Photos, the District Court abused its discretion in granting the motion for extension and allowing Jaber to not only file a fee motion after the deadline for appeals of the underlying judgment, but also to drag Prepared Food Photos into a years-long battle and an appeal on fee issues that it never would have initiated itself (as evidenced by the fact that Prepared Food Photos did not itself timely appeal the fee Order but only cross-appealed after Jaber forced the issue).

## III. The District Court Abused its Discretion in Not Granting Fees Under Fed. R. Civ. P. 37(c)(2)

The District Court denied Plaintiff's request for fees under Fed. R. Civ. P. 37(c)(2) because "the admission sought was of no substantial importance," finding that because Jaber ultimately admitted ***at trial*** that Food Town Mart owned the subject Facebook page and posted the subject photograph, Prepared Food Photos was not prejudiced by his/Food Town Mart's earlier denials. A14. But the District Court missed the point. Food Town Mart served its responses to Prepared Food Photos' discovery requests on June 28, 2023 – ***sixteen (16) months*** prior to trial. Those responses unequivocally denied that Food Town Mart controlled the subject Facebook page and denied that the subject photograph was ever displayed by Food Town Mart (whether on the Facebook page or otherwise):

8. Admit that the Facebook Page is controlled by NOFAL LLC.

Response 8: Deny that the Villard Foodtown Facebook page is controlled by NOFAL LLC.

9. Admit that, as of September 28, 2020, the Work was displayed on NOFAL LLC's Facebook Page.

Response 9: Deny that the Work was displayed on NOFAL LLC's Facebook page.

10. Admit that NOFAL LLC caused the Work to be displayed on its Facebook Page.

Response 10: Deny that NOFAL LLC caused the Work to be displayed on Villard Foodtown's Facebook page.

12. Admit that NOFAL LLC published and/or displayed the Work on the Facebook Page.

Response 12: Deny that NOFAL LLC published and/or displayed The Work on Villard Foodtown's Facebook page.

15. Admit that the Facebook Page is utilized to market and/or advertise NOFAL LLC's business.

Response 15: Deny that the Villard Foodtown Facebook page is utilized to market and/or advertise NOFAL LLC's business.

16. Admit that the Work was displayed on the Facebook Page in connection with NOFAL LLC's efforts to market its business.

Response 16: Deny that the Work was displayed on Villard Foodtown's Facebook page in connection with NOFAL LLC's efforts to market its business.

According to the District Court, Jaber apparently became aware of the Facebook page and its affiliation with Food Town Mart "several months prior to his denials in discovery," meaning Jaber knew the denials were false yet he made them anyway. A13.

Contrary to the District Court's conclusion, these denials were absolutely of substantial importance. Because Food Town Mart refused to acknowledge ownership of the Facebook page and/or display of the subject photograph, Prepared Food Photos was forced to expend substantial time and fees in taking Jaber's deposition (who repeated the same denials), taking Amjad Hamed's deposition (the floor manager, whose identity was learned only through a subpoena to Meta/Facebook), and participating in extensive written discovery. At ***no point prior to trial*** did Jaber/Food Town Mart serve amendments to their prior discovery denials. Thus, Prepared Food Photos was forced to prepare for trial based on the deposition testimony and written discovery it had obtained (i.e., that Jaber/Food Town Mart continued to deny ownership of the Facebook page/posting of the subject photograph notwithstanding that Jaber's own son flatly contradicted

him). Jaber/Food Town Mart sandbagged Prepared Food Photos by waiting fourteen (14) months to change their story, not on the eve of trial, but rather at trial itself.

"The purpose of requests for admission is to eliminate from the trial matters as to which there is no genuine dispute." Hall v. Cullinan, No. 1:20-cv-918, 2023 U.S. Dist. LEXIS 195121, at *10 (S.D. Ohio Oct. 31, 2023) (internal quotation marks omitted); see also Sovereign Mil. Hospitaller Order of St. John v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of St. John, No. 09-81008-CIV, 2020 U.S. Dist. LEXIS 80322, at *8 (S.D. Fla. May 6, 2020) ("The purpose of Rule 36 is to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial.") (internal quotation marks omitted); McCarthy v. Ameritech Publ., Inc., 763 F.3d 488, 494 (6th Cir. 2014) (stating that "an 'important purpose' of the expense-shifting sanction codified in Rule 37(c)(2) is to establish incentives for litigants 'to respond reasonably and in good faith to appropriate requests for admissions'") (quoting 7 Moore's Federal Practice § 37.70 (3d ed. 2013)). Here, ***Jaber knew – months before*** Food Town Mart served its discovery responses – that Food Town Mart owned the subject Facebook page and posted the subject photograph thereon. Despite this knowledge, Food Town Mart denied the foregoing requests for admissions and Jaber (in his individual and 30(b)(6) deposition) repeated the same denials. Even after Jaber's own son (the floor manager of Food Town Mart) plainly testified (at a deposition that Mr. Steinle attended) that Food Town Mart owned the Facebook page and that he or his brother (the prior floor manager) posted the photograph and all others thereon, Jaber/Food Town Mart still refused to amend their discovery responses or denials in their pleading.

Jaber/Food Town Mart's conduct throughout the underlying lawsuit – needlessly complicating and extending the proceedings by denying matters which they knew to be true – is precisely why Fed. R. Civ. P. 37(c)(2) exists. Nor could the District Court find that the foregoing denials were not of "substantial importance" – indeed, they essentially covered the elements of

Prepared Food Photos' copyright infringement claim. See Richardson v. Kharbouch, 156 F.4th 849, 856 (7th Cir. 2025) ("To make out a copyright infringement claim, a plaintiff must show: (1) 'ownership of a valid copyright,' and (2) 'copying of constituent elements of the work that are original.'") (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Had Jaber/Food Town Mart simply admitted that which they knew to be true, a trial (and all of the preparation appurtenant thereto) would not have been necessary. Despite how absurd Jaber/Food Town Mart's denials were (including denying that Food Town Mart sold products such as hookahs which were displayed on he Facebook page when confronted by a news broadcast of Jaber, standing inside Food Town Mart, in front of the same wall of hookahs), Prepared Food Photos had no choice but to proceed with trial, wholly unexpecting Jaber to reverse course and admit for the first time thereat that infringement occurred. It was clear error for the District Court to find the denials of no 'substantial importance,' and upholding such finding does nothing but encourage other parties to similarly lie throughout a lawsuit, hoodwink their opponents, and then change their tune at the last possible moment. "This is the type of trial by ambush that modern federal discovery rules and pre-trial filing orders were designed to prevent." S. Wabash Communs., Ltd. v. Union Cty. Broad. Co., 69 F. App'x 285, 292 (6th Cir. 2003). It was therefore an abuse of discretion for the District Court to deny Prepared Food Photos' request for fees under Fed. R. Civ. P. 37(c)(2).

## IV. Prepared Food Photos and Jaber are Both Prevailing Parties

Twenty (20) pages of Jaber's initial brief is dedicated to the principle that, in multi-party cases such as this, more than one prevailing party can exist. Prepared Food Photos agrees with Jaber on this point: Prepared Food Photos is the prevailing party on its copyright infringement claim against Food Town Mart, and Jaber is the prevailing party on Prepared Food Photos' vicarious infringement claim against Jaber. Thus, if Jaber had timely filed a motion for fees or the District Court had not abused its discretion in allowing Jaber to file such two (2) months beyond the

deadline, both he and Prepared Food Photos should be allowed to pursue an award of fees as prevailing parties on the respective claims. On this point, Prepared Food Photos agrees with the survey of appellate cases discussed in Jaber's initial brief.

Indeed, while Jaber's initial brief discusses decisions from the Eleventh, Tenth, Second, and Federal Circuit for the proposition that multiple prevailing parties can exist, it appears the Ninth Circuit and Fifth Circuit likewise support the same outcome. For example, in Williams v. Gaye, 895 F.3d 1106 (9th Cir. 2018), the Ninth Circuit affirmed an apportionment of costs between plaintiffs who prevailed on a copyright infringement claim with respect to one song and defendants who prevailed on a copyright infringement claim with respect to a different song. Because each prevailed with respect to one of the copyright infringement claims, the Ninth Circuit held it was not an abuse of discretion to apportion costs between them. Williams, 895 F.3d at 1133; see also Cal. Int'l Chem. Co. v. Sister H. Corp., NOS. 97-15233, 97-16858, 97-16997, 1999 U.S. App. LEXIS 868, at *23 (9th Cir. Jan. 19, 1999) ("In this case, however, there was more than one prevailing party. Both CICC and the Harrises won on certain grounds and lost on others."); Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., 965 F.3d 365, 386 (5th Cir. 2020) ("[T]he district court erroneously treat Petrolink as though it was not the sole prevailing party on the copyright claims.") (where defendant prevailed on copyright infringement and DMCA claims but lost on plaintiff's state law claims).

Notably, the initial brief cites Gray v. Koch Foods, Inc., 144 F.4th 1298 (11th Cir. 2025) multiple times as "hew[ing] most closely to the procedural posture here."[8] Yet despite doing so, the initial brief speaks only to prevailing 'defendants' while remaining silent on whether Prepared Food Photos itself prevailed. But if Gray "hews most closely" and should be followed, Jaber cannot

[8] See initial brief, at p. 21.

ignore that both the plaintiff and defendant therein were treated as prevailing parties in awarding costs:

> While the district court did not specifically use the phrase, "prevailing party," it treated Gray as the prevailing party against Birchfield and McDickinson by awarding her costs against them. It also treated Koch Foods and Ala-Koch as the prevailing parties against Gray by awarding them costs against her.
>
> ***The district court got it right***. To see why, we look at Gray's relationship with each defendant. While she did not prevail on every claim against Birchfield and McDickinson, Gray was indeed awarded some relief by the court—favorable judgments on the assault and battery claims and $50,000 in monetary damages. And that relief materially changed the legal relationship between the parties, since Birchfield and McDickinson will owe Gray those monies….
>
> Next, we look at the relationship between Gray and Koch Foods and Ala-Koch. On Gray's claims against them, Koch Foods and Ala-Koch were awarded some relief—freedom from a judgment against them. And that relief changed the legal relationship between the parties because Koch Foods and Ala-Koch no longer face the prospect of being liable to Gray on her claims against them.

Gray, 144 F.4th at 1314-15 (emphasis added) (internal citations omitted). Jaber cannot have it both ways. He cannot rely on Gray to proclaim himself a prevailing party but then ignore that Gray likewise found the plaintiff therein to be a prevailing party.

There is no question that Prepared Food Photos prevailed on its infringement claim against Food Town Mart. Following a trial, the jury determined that Food Town Mart infringed upon the copyrighted material of Prepared Food Photos, and awarded either $200.00 in actual damages or $1,000.00 in statutory damages (for which Prepared Food Photos elected actual damages as it intended to pursue a motion for new trial and/or appeal). Although Prepared Food Photos did not receive the damages award it intended, this was a total victory whereby Prepared Food Photos succeeded on its claim against Food Town Mart and succeeded on Food Town Mart's affirmative defenses. See, e.g., Glacier Films (USA), Inc. v. Turchin, 896 F.3d 1033, 1038 (9th Cir. 2018) (holding that plaintiff achieved "total success," and that plaintiff's "complete victory" should have

weighed in favor of granting fees). "Actual success in an infringement action involves establishing the defendant's liability." Id. at 1038 – 1039 (holding that $750.00 award to plaintiff was not relevant to whether plaintiff was entitled to fees as plaintiff unquestionably prevailed on liability under the Copyright Act); see also Stross v. NextLuxuryDotCom LLC, No. 2:21-cv-01181-JVS (AFMx), 2022 U.S. Dist. LEXIS 40271, at *8 (C.D. Cal. Feb. 3, 2022) ("[H]is suit against Cornwell was a success because the Court found that Cornwell infringed Stross's copyright. This amounts to 'actual success' in an infringement action."); Harrington v. Dugar, No. 2:22-cv-08230-HDV-E, 2024 U.S. Dist. LEXIS 155470, at *4-5 (C.D. Cal. Aug. 27, 2024) ("Defendant contends that Plaintiff obtained a limited degree of success because the jury did not find that Defendant's conduct was willful and because the damages award was lower than Plaintiff's prior requests. Nevertheless, Plaintiff established Defendant's liability and succeeded in obtaining a jury award in her favor. This factor favors awarding fees.") (internal citations omitted).

Curiously, Jaber's initial brief proffers that Narkiewicz-Laine v. Doyle, 930 F.3d 897 (7th Cir. 2019) "is inapt," but notes that Food Town Mart "reserves its right to argue that Narkiewicz-Laine ma be persuasive with respect to Food Photos's status as a prevailing plaintiff."[9] Nothing in Narkiewicz-Laine, however, lessens the "complete victory" Prepared Food Photos achieved on its copyright infringement claim against Food Town Mart. As this Court knows, the plaintiff in Narkiewicz-Laine asserted a single claim for violation of the Visual Rights Act with respect to 1,457 different works. Narkiewicz-Laine, 930 F.3d at 906. And while the plaintiff prevailed with respect to 4 of those works and was awarded damages in connection therewith, he effectively 'lost' 1,453 independent claims for violation of the Visual Rights Act had they been independently brought:

> As the district court explained, that Narkiewicz-Laine 'chose to plead all of his VARA claims in one count should not dictate who is determined to be the prevailing party.' And, unlike in the context of

[9] Id. at p. 36.

> civil rights suits in which a plaintiff need not prevail on every claim to be considered the prevailing party, plaintiffs and defendants are on equal footing for the purposes of fee awards under § 505. Where, as here, the jury's verdict points in two directions as to who prevailed, the district court was well within its discretion in declining to grant Narkiewicz-Laine fees.

Id. at 906-07 (internal citation omitted). Here, Prepared Food Photos sued Food Town Mart on a ***single*** claim for copyright infringement with respect to a ***single*** work. And it prevailed on that claim entirely, albeit with a lower damages award than it sought from the jury. But to borrow Jaber's words, Narkiewicz-Laine is "inapt" to the present scenario considering that Prepared Food Photos prevailed on 100% or its claims against Food Town Mart whereas the plaintiff in Narkiewicz-Laine prevailed on 00.27% of its claims against the defendant. This case is thus much more akin to Glacier Films (USA), Inc. or Harrington.

Indeed, Prepared Food Photos had little choice but to push forward with the lawsuit, irrespective of an eventual damages award, given that Food Town Mart denied infringement from the get-go and refused to even acknowledge the subject Facebook page as its own. Prepared Food Photos proved otherwise and therefore is a prevailing party, for the purposes of a fee award under 17 U.S.C. § 505, on its claim for copyright infringement against Food Town Mart. See, e.g. Balsley v. LFP, Inc., 691 F.3d 747, 772-74 (6th Cir. 2012) (affirming fee award to party who prevailed on one copyright claim, agreed to dismiss two other copyright claims without prejudice, and lost on four state law claims); 4 Nimmer on Copyright § 14.10[B] ("The plaintiff will ordinarily be regarded as the prevailing party if he succeeds at trial in establishing the defendant's liability, even if the damages awarded are nominal or nothing.") (citations omitted).

## V. This Court Should Remand for Consideration of the Fogerty Factors in Determining Entitlement

Jaber's initial brief concludes with a request that this Court determine entitlement to fees itself (rather than remand to the District Court for application of the Fogerty factors) and render

judgment that Jaber is entitled to his reasonable fees and costs.[10] The problems with this request are several. First, as discussed above, the District Court abused its discretion in allowing Jaber to seek fees months after the deadline for doing so. As such, irrespective of his prevailing party status, he should have been precluded from filing a fee motion in the first place.

Second, while Jaber's initial brief claims "the record here… is complete," it contains no actual discussion of the Fogerty factors or why this Court should find Jaber entitled to fees thereunder. Presumably, Jaber asks this Court to consider the partial record he selected for inclusion in his appendix. But the District Court is clearly in the best position to analyze the Fogerty factors given that it presided over the case for approximately 3 years before the parties even filed their respective fee motions and is certainly more familiar with the parties' conduct/positions throughout. See, e.g. Libertarian Party of Ohio v. Husted, 497 F. App'x 581, 583 (6th Cir. 2012) (noting after remanding that the "case-specific inquiry" into entitlement to attorney's fees under 42 U.S.C. § 1988 "is best left in the first instance to the district court"); Phelps v. Hamilton, No. 94-3066, 1996 U.S. App. LEXIS 1844, at *7-8 (10th Cir. Feb. 7, 1996) ("[T]he district court was concerned only with the amount of fees to be awarded, not with whether plaintiffs were entitled to any fee in the first instance. Because the district court has never had an opportunity to address the arguments the parties now raise as to plaintiffs' status as prevailing parties, and some of those arguments raise factual matters that we are not well suited to determine, we deem it best to remand this matter to the district court for further consideration."); James v. United States Dep't of Hous. & Urban Dev., 783 F.2d 997, 999 (11th Cir. 1986) ("[S]ince a litigant's entitlement to fees under the EAJA is best determined in the first instance by the district court, the case is remanded for a determination of whether the criteria in 28 U.S.C. § 2412(d)(1)(A) for entitlement to fees are satisfied.") (internal

---

[10] Id. at p. 40.

citation omitted); Benesowitz v. Metro. Life Ins. Co., 514 F.3d 174, 176 (2d Cir. 2007) ("Because the district court determined that Benesowitz should not prevail, it had no occasion to consider his entitlement to attorney's fees or pre-judgment interest. We therefore remand in order that the district court may make these determinations in the first instance.").

Finally, Jaber's initial brief appears to misrepresent or disregard this Court's own prior opinions in proffering that "[t]his Court has a long history of awarding copyright defendants their attorney's fees itself."[11] Here, Jaber cites Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630 (7th Cir. 2023), but does not appear to have actually read the holding thereof. Live Face on Web, LLC is undoubtedly a copyright case in which the defendant prevailed and the district court found there was no entitlement to fees. It is not, however, a case in which this Court determined entitlement itself. Rather, this Court expressed its views on the Fogerty factors and remanded to the district court to re-apply such factors and determine entitlement. See Live Face on Web, LLC, 77 F.4th at 635-36 ("We therefore vacate the district court's denial of fees under the Copyright Act and remand so that the district court can reconsider the defendants' motion with the benefit of our views. If, on remand, the district court determines that the defendants should recover their fees, any such award must include the fees incurred in bringing this appeal.").

Nor is Live Face on Web, LLC the only prior decision of this Court remanding for proper application of the subject factors. For example, in LHO Chi. River, L.L.C. v. Perillo, 942 F.3d 384 (7th Cir. 2019), this Court was confronted with whether the Octane factors (which are essentially identical to the Fogerty factors) in patent cases are applicable to trademark infringement claims arising under the Lanham Act for purposes of determining fee entitlement. Holding that the Octane factors are applicable, this Court remanded to the district court to apply such factors and determine

[11] Id. at p. 40.

entitlement. See LHO Chi. River, L.L.C., 942 F.3d at 389 ("Because the district judge here did not address the parties' fee dispute under Octane, we VACATE the attorney fees order and REMAND so he may do so."); see also Gonzales v. Transfer Techs., Inc., 301 F.3d 608, 610 (7th Cir. 2002) ("The judge in this case may have had a good reason to find the presumption [that prevailing parties in copyright actions should be awarded fees] rebutted but this we cannot tell from his extremely brief discussion. The case must therefore be remanded for further consideration consistent with this opinion.")

Nor does Jaber disclose the substantial weight of legal authority, in copyright actions specifically, that remand to the district court to determine entitlement to fees is the proper course of action. See, e.g. Dig. Drilling Data Sys., L.L.C., 965 F.3d at 387 (where defendant prevailed over plaintiff's copyright infringement claims but district court did not find defendant to be prevailing party, reversing on prevailing party determination and remanding with instruction to apply the Fogerty factors in determining entitlement); Galiano v. Harrah's Operating Co., 416 F.3d 411, 423 (5th Cir. 2005) ("The district court did not consider any of the four factors set forth in Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)…. the district court should provide a Fogerty analysis in its ensuing opinion so that its ruling can, if needed, be reviewed on appeal.") (vacating fee award and remanding with instruction to apply the Fogerty factors); Doc's Dream, LLC v. Dolores Press, Inc., 959 F.3d 357, 363 (9th Cir. 2020) ("Because the district court's denial of attorney's fees was based on an erroneous view of the law, we vacate and remand for the district court to consider whether an award of attorney's fees is appropriate under the guiding factors."); Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 362 (6th Cir. 2007) ("[W]e vacate the district court's denial of attorney's fees [in copyright infringement action where plaintiff prevailed] and remand for a determination of whether Thoroughbred, as the prevailing party, is entitled to an award for attorney's fees.") (where district court did not address the Fogerty factors in its fee denial); Glacier Films

(USA), Inc., 896 F.3d at 1044 (holding that district court misapplied the Fogerty factors and remanding with instruction to correctly apply such factors to the particular circumstances of the case); Janik v. Spin Media, Inc., No. 16-cv-7308 (JGK), 2017 U.S. Dist. LEXIS 199343, at *8 (S.D.N.Y. Dec. 4, 2017) (remanding to magistrate for consideration of Fogerty factors where decision denying entitlement to fees did not address any of the factors).

Although this Court certainly *can* apply the Fogerty factors itself and determine whether Prepared Food Photos/Jaber are entitled to fees thereunder, the better practice is to remand to the District Court with instructions to evaluate the Fogerty factors itself based on the then-existing record as opposed to the piecemeal record selected by Jaber for inclusion in his appendix. But, as discussed above, no such instruction should be provided with respect to Jaber's purported entitlement to fees as the District Court abused its discretion in allowing him to seek fees months after the deadline for doing so. Therefore, this Court's remand should only be with respect to determining Prepared Food Photos' entitlement (not Jaber's, who waived such right when he failed to timely move for fees).

## VI. This Court Should Reverse on the Refusal to Award Costs

Finally, the District Court likewise refused to award costs to either Prepared Food Photos or Jaber, whether under 17 U.S.C. § 505 or Fed. R. Civ. P. 54(d)(1), for the same 'no prevailing party' reasons. This was error for the same reasons as discussed above. Indeed, in cases where this Court has affirmed the denial of costs to a party, it was generally because that party succeeded on some claims while losing on other claims against the ***same opponent***. See, e.g. Baker v. Lindgren, 856 F.3d 498, 502-03 (7th Cir. 2017) (affirming denial of costs under Rule 54 in "mixed results" verdict where plaintiff prevailed on 2 out of 6 claims asserted against the same defendant). Here, Prepared Food Photos unequivocally prevailed on its infringement claim against Food Town Mart. As this Court knows, "the determination of whether to award costs requires a different analysis than the

determination of whether to award attorney fees." See Walker v. City of Chi., 513 F. App'x 593, 597 (7th Cir. 2013) (noting that the language of Rule 54(d)(1) suggests a "stronger presumption" in favor of awarding costs that the discretionary language found in § 1983). Although district courts may exercise discretion in awarding costs, "the discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." Contreras v. City of Chicago, 119 F.3d 1286, 1295 (7th Cir. 1997). The Seventh Circuit has recognized "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." Mother & Father v. Cassidy, 338 F.3d 704, 708 (7th Cir. 2003); see also United States ex rel. Pileco, Inc. v. Slurry Sys., 804 F.3d 889, 894 (7th Cir. 2015) (citing Mother & Father for same proposition); Kovacic v. Oconto Cty., No. 23-C-642, 2026 U.S. Dist. LEXIS 26025, at *2 (E.D. Wis. Feb. 9, 2026) (same).

Neither reason for denying costs to Prepared Food Photos exists here. The District Court did not find any misconduct by Prepared Food Photos, nor could it based on the record of the case before it. Prepared Food Photos discovered an unauthorized use of its work, filed a lawsuit for the infringement thereof (its statutory right), and efficiently proceeded through trial to obtain a determination of liability over Food Town Mart's denials throughout the lawsuit. Nor was there any evidence submitted of Food Town Mart's indigency or inability to pay Prepared Food Photos' modest costs ($2,270.55). Because Prepared Food Photos was indisputably a prevailing party on its infringement claim against Food Town Mart, the District Court should have awarded Prepared Food Photos its costs (as set forth in Prepared Food Photos' Bill of Costs) unless one of the two (2) aforementioned exceptions applied (they did not). Thus, this Court should remand with instructions to grant Prepared Food Photos' Bill of Costs and award the costs sought thereunder.

## CONCLUSION

Prepared Food Photos agrees with Jaber with respect to the bulk of his initial brief – the District Court erred in finding that neither Prepared Food Photos nor Jaber was a prevailing party. As set forth in Jaber's brief and herein, the substantial weight of legal authority provides that Jaber is a prevailing party with respect to Prepared Food Photos' vicarious infringement claim and Prepared Food Photos is a prevailing party with respect to its copyright infringement claim against Food Town Mart. The District Court failed to realize that multiple prevailing parties can exist in multi-party cases, and therefore its determination of 'no prevailing parties' was error.

But here is where Prepared Food Photos and Jaber diverge. While Jaber ***was*** a prevailing party who ***could*** have sought fees, he without explanation failed to do so (indeed, he ignored this case entirely post-trial). Jaber's conduct in waiting months after the presumptive deadline to seek fees and after the deadline to appeal, coupled with his refusal to communicate with counsel until Mr. Klema injected himself into the mix and volunteered his services, does not show excusable neglect. As a result, the District Court abused its discretion in allowing Jaber to file his motion for fees. And because the District Court abused its discretion, Jaber's status as a prevailing party is essentially meaningless. This Court should not excuse Jaber's tardiness/lack of interest in his own case by finding that his neglect was anything but inexcusable. As such, while this Court should remand to the District Court with instructions to determine Prepared Food Photos' entitlement to fees and costs as a prevailing party, it should not do so with respect to Jaber who slept on his rights.

Prepared Food Photos thus requests that this Court reverse the Extension Order (finding that the District Court abused its discretion in granting such), reverse the Fees Order insofar as it found that Prepared Food Photos was not a prevailing party on its infringement claim against Food Town Mart and that Prepared Food Photos was not entitled to fees under Fed. R. Civ. P. 37(c)(2), and remand to the District Court to determine the amount of fees to be awarded under Fed. R. Civ. P.

37(c)(2) and to determine whether Prepared Food Photos is entitled to an award of prevailing party fees by application of the Fogerty factors. Except with respect to the existence of multiple prevailing parties, Jaber's requested relief should be denied in its entirety.

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation set forth in 7th Cir. R. 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 10,800 words.

I further certify that this brief complies with the typeface and type-style requirements of 7th Cir. R. 32 because this brief has been prepared in a proportionally spaced typeface using 12-point Times New Roman.

Dated: August 28, 2026.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza______
Daniel DeSouza, Esq.
*Counsel for Appellee/Cross-Appellant Prepared Food Photos*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and e-mailed to all counsel of record.

/s/ Daniel DeSouza___
Daniel DeSouza

# SHORT APPENDIX

**Short Appendix**
(bound herewith)

| **DOCUMENT DESCRIPTION** | **DIST. CT. DE NO.** | **APP'X PAGE NO.** |
|---|---|---|
| Order Granting Jaber's Motion for Extension of Time *Nunc Pro Tunc* to File Motion for Attorney's Fees | 81 | PFP A1 |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

PREPARED FOOD PHOTOS, INC.,

Plaintiff,

v.

SHARIF JABER and NOFAL, LLC, *doing business as* FOOD TOWN MART,

Defendants.

Case No. 22-CV-642-JPS

**ORDER**

In this action, Plaintiff Prepared Food Photos, Inc. ("Plaintiff") prevailed at a jury trial on a claim of copyright infringement against Defendant NOFAL, LLC doing business as Food Town Mart ("NOFAL"), but the jury found NOFAL's principal, Defendant Sharif Jaber ("Jaber"), not vicariously liable for copyright infringement. ECF No. 50 at 1–2. Accordingly, the Court dismissed Plaintiff's claim against Jaber with prejudice. ECF No. 54 at 2. After adjudication of its post-trial motion, Plaintiff filed a motion for attorney's fees, which remains pending. ECF No. 64. Subsequently, former counsel for both Defendants, Timothy Steinle ("Attorney Steinle"), was permitted to withdraw because Jaber had failed to communicate with or pay counsel. ECF No. 68. Since then, pro bono counsel has appeared for Defendants and filed a response to Plaintiff's fee motion. ECF Nos. 73, 80.

Jaber now seeks an extension of time *nunc pro tunc* to file his own motion for attorney's fees, as the prevailing party on Plaintiff's vicarious

infringement claim. ECF No. 76. That motion is fully briefed. ECF Nos. 77, 78. For the reasons stated below, the motion will be granted.

Because the Court resolved Plaintiff's post-trial motion on April 7, 2025, ECF No. 61, the deadline for filing motions for attorney's fees was fourteen days later, April 21, 2025. *See Prude v. Meli*, No. 17-CV-336-SLC, 2024 WL 5455763, at *3 (W.D. Wis. Nov. 21, 2024) (noting that fee motions are due within fourteen days of resolution of a post-trial motion and collecting cases). Plaintiff's fee motion was timely. Jaber did not propose to file his fee motion until mid-June 2025, well after that deadline.

The Court may pardon missed deadlines on a finding that "the party failed to act [by the deadline] because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The excusable neglect analysis

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Whether to find excusable neglect and permit a party to file a motion that would otherwise be untimely is up to the Court's discretion. *Id.*

Jaber argues that he satisfies each of these factors, ECF Nos. 76 and 78, while Plaintiff argues that he has not met any of them, ECF No. 77. The Court examines each factor in turn.

First, Jaber contends that Plaintiff will suffer no prejudice if he is permitted to file his own fee motion. ECF No. 76 at 6–8. Jaber points out that Plaintiff itself "extended" proceedings in this case with post-trial

motion practice and has not opposed other requests to extend deadlines, hypothesizing that its "opposition [to Jaber filing a late fee motion] appears motivated not by any prejudice but rather by its desire to avoid fees liability." *Id.* at 7.[1] Plaintiff responds that it would be prejudiced if Jaber is permitted to file a fee motion because, had Plaintiff known that he would do so, "Plaintiff would have pursued an appeal in this matter," the deadline for which has now passed. ECF No. 77 at 6–7 (citing ECF No. 77-1); Fed. R. App. P. 4(a)(1)(A) and (a)(4) (providing appeal deadline of thirty days after the district court's disposition of a post-trial motion). In reply, Jaber asserts that any appeal by Plaintiff would have been meritless and that Plaintiff's decision to forego an appeal because Jaber did not initially seek his attorney's fees "is simply an admission that it would have used a frivolous merits appeal as a weapon to bully Jaber out of pursuing his fees." ECF No. 78 at 6–8.

Consideration of this first factor cuts narrowly in Jaber's favor. Jaber's arguments about Plaintiff's motives and the merits of its theoretical appeal are largely speculative and of little persuasive value to the Court. The Court notes and appreciates that attorneys and their clients must often undertake tactical decision-making and cost-benefit analysis to determine how far to pursue cases, as it appears that Plaintiff did here. Nevertheless, Plaintiff's recourse if it believed that it had legitimate issues to present on appeal was to appeal. Plaintiff gave up that right and accepted the consequences of doing so. The Court cannot conclude that Plaintiff would

---

[1]Jaber also accuses Plaintiff of being a "serial litigant" and a "copyright troll[]." ECF No. 76 at 6 & n.2; *id.* at 13 (quoting *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 634 (7th Cir. 2023)); ECF No. 78 at 6–8. The Court does not find this argument to be relevant to the excusable neglect analysis and will disregard it.

be prejudiced because the circumstances relative to its decision to forego an appeal have changed. Moreover, there was always some opportunity cost to Plaintiff in deciding to forego an appeal. Awarding attorney's fees is up to the discretion of the Court, *Live Face*, 77 F.4th at 632 (noting the "very strong presumption in favor of [the prevailing party] recovering their fees" but stating that "[t]hat presumption can of course be overcome"), so Plaintiff always knew there was a possibility that the Court might not permit it to recover its attorney's fees in full or at all from NOFAL, regardless of whether it appealed or the outcome of that appeal. For this reason, the Court finds that the prejudice factor weighs narrowly in favor of permitting Jaber to file his proposed fee motion.

The second factor—the length of Jaber's delay in bringing his motion and the impact that permitting him to file it would have on these proceedings—weighs slightly in Jaber's favor. Jaber argues that, if permitted to file his motion, there would be a minimal difference of a few weeks between when Plaintiff's and his fee motions are fully briefed, so any impact on the proceedings would be minimal. ECF No. 76 at 8. Plaintiff volunteers that this factor is "at best . . . neutral" and urges the Court to advance this matter to finality. ECF No. 77 at 7. The Court agrees with Plaintiff that it is time to put this matter to bed, but having to adjudicate two fee motions instead of one would not significantly hinder this goal.

The third factor, the reasons for Jaber's delay in filing the fee petition including whether the delay was within his reasonable control, is neutral. Jaber avers that the reason that Attorney Steinle failed to timely seek fees post-trial was because he "did not initially recognize" that Jaber was a prevailing party and therefore entitled to seek fees. ECF No. 76 at 10; ECF No. 76-1 at 2–3. Plaintiff questions how this could be true when the

pleadings, the parties' discovery responses and pretrial submissions, and the judgment all embody *separate* claims against NOFAL and Jaber. ECF No. 77 at 8–9 (citing and quoting, *e.g.*, ECF Nos. 19, 41, and 42). In any event, Plaintiff argues that if Attorney Steinle did in fact make a mistake, "such neglect would not be 'excusable' under any interpretation" because "attorney in-attentiveness to litigation is not excusable . . . ." *Id.* at 9 (quoting *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004)).

Attorney Steinle's oversight falls "within the gray area between [inexcusable inattentiveness or] carelessness and excusable neglect." *Easley*, 382 F.3d at 698 (quoting *Hough v. Loc. 134, Int'l Bhd. of Elec. Workers*, 867 F.2d 1018, 1022 (7th Cir. 1989)). Should it have been obvious to Attorney Steinle that one of his clients prevailed at trial? Yes. Should it have been obvious to Attorney Steinle that—absent any communication or payment from his clients for months—he nonetheless should have filed a fee motion on Jaber's behalf before the time to do so expired? Not so much. The Court cannot conclude that Attorney Steinle was inexcusably inattentive to this matter; indeed, he successfully defended Plaintiff's post-trial motion without communication or payment from Jaber. Rather, it seems that Attorney Steinle made a perhaps slapdash judgment call about how to move forward with Defendants' case. This conduct narrowly falls on the excusable side of the spectrum, and this portion of the analysis of the third factor favors Jaber.

With respect to whether the delay was within Jaber's reasonable control, he acknowledges that he failed to communicate with Attorney Steinle after trial ended, so "even if [Attorney Steinle] had earlier recognized [that] Jaber was a prevailing party," "Attorney Steinle's ability to pursue a fees motion without Jaber's input and authorization was

compromised." ECF No. 76 at 11.[2] Plaintiff responds that any delay was fully within Jaber's control because he "deliberately ignored [Attorney] Steinle [and] any rights [he] may have had under the [j]udgment."[3] Here, the Court agrees with Plaintiff—Jaber has not provided a good explanation for why he should now be permitted to do, through pro bono counsel, what Steinle could have done on time had Jaber not ignored him. This portion of the analysis of the third factor favors Plaintiff. Because the first portion of the analysis of the third factor favors Jaber, the third factor has an overall neutral effect in the excusable neglect analysis.

As to the fourth and final factor, the Court finds that Jaber, Attorney Steinle, and Jaber's new pro bono counsel have all acted in good faith. Attorney Steinle made diligent attempts to contact Jaber and declined to overextend his authority by filing a fee motion on Jaber's behalf without first consulting with Jaber. Jaber's new pro bono counsel acted promptly to correct the omission. And Jaber seeks to vindicate his right to seek fees, as a prevailing party in this matter, which he is expressly permitted to do. 17 U.S.C. § 505.

After considering all these factors, the Court concludes that Jaber has narrowly demonstrated excusable neglect for his failure to file a fee motion by the original deadline. The Court will therefore permit Jaber to file a fee motion on or before **Wednesday, July 9, 2025**. Thereafter, the briefing

---

[2]Jaber further states that Attorney Steinle could not have filed a fee motion without his consent because "the right to attorney's fees is not that of the lawyer, but of the client." ECF No. 76 at 11–12 (collecting cases).

[3]Plaintiff accuses Defendants' pro bono counsel of having "directly solicit[ed] Jaber" as a client, possibly in violation of Wisconsin's ethical rules for attorneys. ECF No. 77 at 10 & n.6 (citing Wis. Sup. Ct. R. 20:7.3). This argument is wholly irrelevant to the instant motion, and the Court has disregarded it.

schedule and page limits in Civil Local Rule 7 will apply. If the parties wish to submit the matter of their fees to mediation before a magistrate judge, or if the parties settle their fees outside of court, they should indicate as much in writing on the docket as soon as possible.

Accordingly,

**IT IS ORDERED** that Defendant Sharif Jaber's motion for an extension of time *nunc pro tunc* to file a motion for attorney's fees, ECF No. 76, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant Sharif Jaber shall file any fee motion on or before **Wednesday, July 9, 2025**.

Dated at Milwaukee, Wisconsin, this 2nd day of July, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge