**No. 26-1757**
**No. 26-1859**

# In the United States Court of Appeals For the Seventh Circuit

PREPARED FOOD PHOTOS, INC.,
f/k/a Adlife Marketing & Communications Co., Inc.
*Plaintiff-Appellee and Cross-Appellant*

v.

SHARIF JABER,
*Defendant-Appellant, Cross-Appellee*

NOFAL, LLC
*Defendant-Cross Appellee*

An Appeal from a final order of the
United States District Court for the Eastern District of Wisconsin
No. 2:22-cv-000642, Judge Joseph Peter Stadtmueller

**COMBINED RESPONSE BRIEF OF CROSS-APPELLEES NOFAL, LLC AND SHARIF JABER, AND REPLY BRIEF OF APPELLANT SHARIF JABER**

Griffin C. Klema, Esq.
**Klema Law, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606

PO Box 172381
Tampa, FL 33672
(202) 713-5292
Griffin@KlemaLaw.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Cross-Appellees Nofal, LLC and Sharif Jaber, pursuant to Fed. R. App. P. 26.1(d)(2) and 7th Cir. R. 26.1, certify the following are interested persons in this appeal:

Prepared Food Photos, Inc.,
f/k/a AdLife Marketing & Communications Co., Inc.
n/k/a Rockefeller Photos, Inc.

Jaber, Sharif

Stadtmueller, Joseph Peter (District Judge)

CopyCat Legal, PLLC

DeSouza, Daniel, Esq.

Klema Law, PL

Klema, Griffin C., Esq.

Terschan, Steinle, Hodan & Ganzer, Ltd.

Steinle, Timothy, Esq.

Herda, Amber L., Esq.

Jeffrey & Borton SC

Borton, Austin B., Esq.

Leavell, Jeffrey L., Esq.

Nofal, LLC has no parent company and no publicly traded company owns more than ten percent of its stock. Appellant Cross-Appellee Sharif Jaber is the owner of Nofal, LLC.

No publicly traded company or corporation has an interest in the outcome of the underlying case or this appeal.

__/s/ Griffin Klema_________
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Counsel for Appellant Cross-Appellee Sharif Jaber*
*Counsel for Cross-Appellee Nofal, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Cross-appellant Prepared Food Photos, Inc. did not mention oral argument in its brief. For their part, cross-appellees Sharif Jaber and Nofal, LLC respectfully request oral argument in the cross-appeal. While the issue in the main appeal has been conceded by Food Photos (as appellee), oral argument is warranted in the cross-appeal because Nofal raises novel arguments respecting how a plaintiff might not be a prevailing party when the predicate judgment is legally erroneous but left undisturbed due to its nominal amount.

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... ii

STATEMENT REGARDING ORAL ARGUMENT .......... iv

TABLE OF CONTENTS .......... v

TABLE OF CITATIONS .......... vii

NOFAL'S AND JABER'S STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION IN THE CROSS-APPEAL .......... 1

NOFAL'S AND JABER'S STATEMENT OF THE ISSUES IN THE CROSS-APPEAL .......... 2

NOFAL'S AND JABER'S STATEMENT OF THE CASE AND FACTS .......... 4

STANDARD OF REVIEW .......... 10

SUMMARY OF THE ARGUMENT .......... 11

ARGUMENT .......... 14

I. NOFAL DID NOT CONCEDE FOOD PHOTOS WAS A PREVAILING PLAINTIFF IN JABER'S INITIAL BRIEF .......... 14

II. FOOD PHOTOS CAN PROPERLY BE CONSIDERED NONPREVAILING WHERE THE JUDGMENT AGAINST NOFAL IS LEGALLY INCORRECT .......... 15

1. Food Photos' theory of direct infringement against Nofal was legally unsupported by the evidence and thus the judgment cannot be the predicate for Food Photos being a prevailing plaintiff .......... 17

2. This Circuit has never recognized vicarious liability as a theory to recover for another's direct copyright infringement and should not do so now ....................................22

III. THIS COURT MAY AFFIRM THE DISTRICT COURT'S DENIAL OF FEES TO FOOD PHOTOS EVEN IF IT IS TECHNICALLY A PREVAILING PARTY ....................................26

IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY GRANTING JABER AN EXTENSION OF TIME ....................................31

1. The district court employed the correct law and properly weighed the relevant issues ....................................31

2. A district court does not abuse its discretion if any reasonable person could agree with the district court's decision ....................................33

3. PFP's decision to forego an appeal of the final merits judgment was its own to make based on its view of that judgment, not based on subsequent events ....................................36

V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING FOOD PHOTOS' RULE 37 DISCOVERY SANCTIONS ....................................39

1. Food Photos' motion was untimely and inadequately preserved its arguments in the district court ....................................39

2. Nofal's denials of Food Photos' Rule 36 admissions were proper when made, and properly maintained until the trial resolved the factual dispute ....................................43

3. Even if the denials were improper or not amended, Rule 36 admissions are not a discovery device as to disputes of critical facts ....................................45

4. The Court should affirm the denial of Food Photos' Rule 37 sanctions because the disputed admissions were legally irrelevant ....................................46

CONCLUSION ....................................48

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS....................49

CERTIFICATE OF FILING AND SERVICE....................49

## TABLE OF CITATIONS

Page

**Cases**

*Airtex Corp. v. Shelley Radian Ceiling Co.*, 536 F.2d 145 (7th Cir. 1976)....................41

*Bivens v. Trent*, 591 F.3d 555 (7th Cir. 2010)....................17

*Bradley v. Village of University Park, Ill.*, 59 F.4th 887 (7th Cir. 2023).................... passim

*Brandt v. Vulcan, Inc.*, 30 F.3d 752 (7th Cir. 1994)....................41

*Butler v. Pettigrew*, 409 F.2d 1205 (7th Cir. 1969)....................41

*Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008)....................19

*Cartwright v. Stamper*, 7 F.3d 106 (7th Cir. 1993)....................28

*Carver v. Condie*, 169 F.3d 469 (7th Cir. 1999)....................1

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164 (1994)....................23

*Chicano Police Officer's Assn. v. Stover*, 624 F.2d 127 (10th Cir. 1980)....................30

*Cole v. Wodziak*, 169 F.3d 486 (7th Cir. 1999)....................26

*CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004)....................19

*Cox Commc'ns, Inc. v. Sony Music Entm't*, 146 S.Ct. 959 (2026)....................22, 23, 25

*Darden v. Peters*, 488 F.3d 277 (4th Cir. 2007) ....................24

*Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984)....................34, 35

*Easley v. Kirmsee*, 382 F.3d 693 (7th Cir. 2004) ....................32, 33, 35

*Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir. 1994)....................19

*Farrar v. Hobby*, 506 U.S. 103 (1992).................... passim

*Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834 (7th Cir. 2010)....................41

*Fisher v. Kelly*, 105 F.3d 350 (7th Cir. 1997)....................26

*Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012)....................18, 20, 22

*Fletcher v. City of Ft. Wayne, Ind.*, 162 F.3d 975 (7th Cir. 1998)....................27

*Fogerty v. Fantasy*, 510 U.S. 517 (1994) ....................24, 28, 30

*Gardner v. Southern Ry. Sys.*, 675 F.2d 949 (7th Cir. 1982) ....................45

*GC2 Inc. v. Int'l Game Tech. Plc*, 255 F.Supp.3d 812 (N.D. Ill. 2017)....................47

*Hensley v. Eckerhart*, 461 U.S 424 (1983)....................21, 30

*Hyde v. Small*, 123 F.3d 583 (7th Cir. 1997) ....................27, 29, 30

*In re Engle cases*, no. 3:09-cv-10000, 2012 WL 4357431 (M.D. Fla. Sept. 12, 2012)....................45

*Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008)....................40

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600 (7th Cir. 2002)....................45

*Maul v. Constan*, 23 F.3d 143 (7th Cir. 1994)....................27

*Maynard v. Nygren*, 332 F.3d 462 (7th Cir. 2003)....................11

*Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19 (5th Cir. 1968) .......... 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .......... 7, 25

*Meyer v. Holley*, 537 U.S. 280 (2003) .......... 24

*Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198 (6th Cir. 1986) .......... 45

*Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895 (7th Cir. 1996) .......... 30

*Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019) .......... 27

*Paige v. Banks*, 80 U.S. 608 (1871) .......... 24

*Parker v. Google, Inc.*, 242 Fed. App'x 833 (3d Cir. 2007) .......... 19

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) .......... 47

*Peters v. West*, 692 F.3d 629 (7th Cir. 2012) .......... 18, 47

*Pickens v. Equitable Life Assurance Soc'y*, 413 F.2d 1390 (5th Cir. 1969) .......... 45, 46

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) .......... 10, 31, 32

*Popeil Bros., Inc. v. Schick Ele., Inc.*, 516 F.2d 772 (7th Cir. 1975) ... 11, 38, 41, 42

*Puffer v. Allstate Ins. Co.*, 675 F.3d 709 (7th Cir. 2012) .......... 40, 42

*Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir. 2006) .......... 9

*Simpson v. Sheahan*, 104 F.3d 998 (7th Cir. 1997) .......... 29

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .......... 25

*Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544 (7th Cir. 1999) .......... 28

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ..... 40

*Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381 (7th Cir. 1998) ..... 10

*United States v. Cates*, 716 F.3d 445 (7th Cir. 2013) ..... 35

*United States v. U.S. $103,387.27 in U.S. Currency*, 683 F.2d 555 (7th Cir. 1988) ..... 34

*Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081 (7th Cir. 1982) ..... 11

*Westinghouse Ele. And Mfg. Co v. Wagner Ele. And Mfg. Co.*, 225 U.S. 604 (1912) ..... 29

*White v. New Hampshire Dep't of Empl. Security*, 455 U.S. 445 (1982) ..... 38

*Williams v. Dieball*, 724 F.3d 957 (7th Cir. 2013) ..... 41

**Statutes**

17 U.S.C. § 501 ..... 18

17 U.S.C. § 504(c)(1) ..... 37

17 U.S.C. § 504(c)(2) ..... 29

35 U.S.C. § 271(c) ..... 24

**Rules**

Fed. R. App. P. 3(c)(4) .......... 2

Fed. R. Civ. P. 37(c)(2) .......... 7, 39

Fed. R. Civ. P. 6(b)(1)(B) .......... 9

N.D. Ill. L.R. 54.3 .......... 37

S.D. Fla. L.R. 7.3(a)(1) .......... 38

## NOFAL'S AND JABER'S STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION IN THE CROSS-APPEAL

Pursuant to Fed. R. App. P. 28.1(c)(3)(A) and Circuit Rule 28(b), Cross-appellees Nofal, LLC and Sharif Jaber, state that plaintiff Prepared Food Photos, Inc.'s ("Food Photos") amended jurisdictional statement, [DE 32],[1] appears complete and correct insofar as the district court's jurisdiction over the fees order is concerned. However, Food Photos' statement respecting this Court's jurisdiction over the interlocutory order granting Jaber an extension of time is both incomplete and legally incorrect (even if ultimately correct).

First, Food Photos' notice of appeal, filed on April 22, 2026, was more than 30 days after the district court entered its order denying attorney's fees and costs, entered on March 18, 2026. However, Rule 4(a)(3) makes Food Photos' notice of cross-appeal timely, because it was filed within 14 days after Jaber's timely notice of appeal, which he filed on April 13, 2026.

Second, this Court's jurisdiction over the interlocutory order granting Jaber an extension of time involves the doctrine of merger. "Sometimes ... vexing issues of appellate jurisdiction can arise in [the] context" of "post-judgment rulings." *Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999). Jaber, as cross-

[1] This is only one of two citations in this brief to the present appellate docket. Remaining citations by docket number are to the proceedings in the district court.

appellee, has not found clear decisional authority that a post-judgment order granting an extension of time to file a motion for attorney's fees and costs is necessarily merged into a subsequent fees order for purposes of timeliness of appeal, but the cases cited in this Court's Handbook and Federal Rule of Appellate Procedure 3 indicates that it is. Fed. R. App. P. 3(c)(4) (a "notice of appeal encompasses all orders that ... merge into the designated judgment or appealable order"). Here, the district court entered a final judgment respecting the fees motions and bills of costs, ending all further judicial labor on those issues. The fees and costs order was therefore a final judgment for purposes of 28 U.S.C. § 1291, and thus the earlier interlocutory order granting Jaber an extension of time related to that ultimate fees order was merged into it. Consequently, the district court's order granting Jaber an extension of time is properly within this Court's appellate jurisdiction.

## NOFAL'S AND JABER'S STATEMENT OF THE ISSUES IN THE CROSS-APPEAL

Prepared Food Photos' cross-appeal presents three questions. Two of which differ from the novel question presented by the main appeal, and this Court's judgment should likewise differ in the cross-appeal.

But as a threshold matter respecting Food Photos' opposition brief, it conceded the entire issue in Jaber's opening brief. Opp.Br.26 ("Food Photos

agrees with Jaber ... [that he] is the prevailing party on Prepared Food Photos' vicarious infringement claim against Jaber").[2] What now remains for appellate disposition are the issues raised by the cross-appeal.

Food Photos' brief articulates three issues: (1) whether the district court abused its discretion in granting Jaber an extension of time to file his motion for fees and costs; (2) whether the district court abused its discretion in denying Food Photos discovery sanctions under Rule 37; and (3) whether the district court erred in concluding Food Photos was not a prevailing party for purposes of § 505 of the Copyright Act. Opp.Br.1.

The questions presented by Food Photos' cross-appeal respecting the district court's discretion are not ones of first impression. There is nuance, however, respecting Food Photos' status as a prevailing party, and this responsive brief raises novel arguments for why a nominal judgment might not automatically trigger prevailing party status for the judgment creditor. The Court may therefore benefit from oral argument on Food Photos' status as prevailing party.

[2] Cross-appellees' citation to the combined responsive brief in the main appeal and opening brief of Food Photos is designated as "Opp.Br." followed by the pagination number of that document.

## NOFAL'S AND JABER'S STATEMENT OF THE CASE AND FACTS

Food Photos' statement of the case respecting its cross-appeal is, at times, misleading and untrue. Nofal and Jaber therefore submit their own statement of the case and statement of facts, starting first with the Rule 37 issue and then addressing the record respecting Jaber's extension of time.[3]

### 1. Food Photos' Rule 36 admissions

In support of its copyright infringement claims, Food Photos propounded 35 admissions to Nofal and Jaber. PFP A71-88.[4] Among other things, the requests sought to shift liability for fees rather than genuinely eliminate matters that would not be contested. For example, Request No. 32 respecting Nofal's defense of failure to state a claim, sought an admission that Nofal "was not aware of any facts evidencing or supporting" that defense. Such a request was not used to eliminate a matter not in dispute, but calculated for the very purpose of setting up Nofal (and Jaber) for Food Photos' later claim that any denials should constitute sanctionable discovery misconduct under Rule 37. Because Food Photos' requests were being used in a way inconsistent with the

[3] Nofal notes that Food Photos' highlighted copy-and-paste of various district court filings directly in its brief difficult to follow, visually distracting, and impossible to search for want of OCR. It also renders its word count inaccurate. By Nofal's estimate, the Food Photos' brief is 11,739 words, after accounting for the pasted portions of other documents.

[4] Cross-appellees cite to Food Photos' appendix as "PFP A" with page number, corresponding to its pagination.

purpose of Rule 36, both Nofal and Jaber denied many of the requests, but also admitted many that were matters which were not in dispute.

### 2. Nofal's testimony at trial

At trial, Food Photos spent considerable time developing testimony that Amjad Hamed is the son of Sharif Jaber and works for Nofal, LLC. SA4-25.[5] Despite that effort, Food Photos failed to address the key *legal* issue in its extensive questioning of both Amjad Hamad and Sharif Jaber: whether Hamad's job duties were to operate a Facebook page for the benefit of Nofal or Jaber individually. After multiple objections from defense counsel on vague questions lacking in foundation, the district court recognized that Jaber's sons were not synonymous with or equivalent to Nofal for purposes of liability, and gave Food Photos direct feedback about its failing efforts to establish Nofal's liability. It observed Jaber's sons "could be [operating a Facebook page] quite independent of any employment relationship" with Nofal, and the district court went so far as to point out explicitly to Food Photos that "[t]hat's the problem" with its questioning. SA28.

Jaber, as Nofal's corporate representative, also repeatedly testified that he was uncertain *when* he learned of the Facebook page, [DE 57 at 165:24-

[5] Cross-appellees cite to their Supplemental Appendix as "SA" consistent with its pagination.

166:12], and Food Photos never questioned any witness about whether Amjad Hamad's official duties included the Facebook page despite the district court's direct feedback on that failure. SA26-30.

Consistent with Nofal's and Jaber's responses to Food Photos' requests for admissions, Food Photos conceded during its case in chief that whether the Facebook page was within the scope of Amjad Hamad's employment was "a factual dispute." SA29-30.

### 3. Food Photos' Rule 37 motion

Following trial and denial of its Rule 54 motion to alter the judgment, Food Photos then filed a motion for attorney's fees under the Copyright Act. PFP A31-53. Despite its motion encompassing 23 pages, it devoted a singular paragraph to its claim for discovery sanctions under Rule 37(c)(2), effectively asserting the rule provided an alternative basis for the entirety of its fees. PFP A48. It targeted Nofal as the party against which sanctions should issue. *Id.* ("Nofal LLC's failure to admit"). Nowhere did Food Photos identify any particular admission, and instead generically stated the basis for its request was "a multitude of Plaintiff's requests for admissions." *Id.* It didn't contrast any admission response with what was elicited at trial, or bother to specify any dates for any event in the district court. *Id.* Nor did it cite any legal authority

supporting its request, and vaguely asserted that the denials "justify an award of fees under Rule 37 in the full amount of fees Plaintiff was forced to incur from the date of service of the responses through trial." *Id.*

#### 4. The district court's fees order respecting the Rule 37 issue

In evaluating that aspect of Food Photos' motion for attorney's fees, the district court noted that Food Photos' alternative request for fees was "a single paragraph." App.12.[6] It then recounted its recollection of the procedural history and trial testimony, App.12-13, and cited *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005) for the proposition that Nofal's lack of knowledge was immaterial to its liability for Amjad Hamad's copying of the photograph, App.13-14. Because knowledge was immaterial to Nofal's liability, Jaber's denials also were "of no substantial importance." App.14 (quoting Fed. R. Civ. P. 37(c)(2)(A)-(D)).[7]

The district court faulted Food Photos for its Rule 37 request being "excessive," App.14, essentially seeking the entirety of its claimed fees "from the date of service of [Nofal's] responses through trial," PFP A48. The district court also observed that Food Photos' effort to elicit Jaber's testimony on that

[6] Citation to appellant Sharif Jaber's appendix are denoted as "App." followed by its corresponding page number.

[7] That, despite the fact that Food Photos asserted a claim of direct infringement against Nofal, LLC, not a claim for vicarious infringement. App.23.

discrete issue was "only a small portion of" the trial and "[e]ven if the Court had approved [Food Photos'] Rule 37 fee request, the claimed fees would be far in excess of the 'fees incurred in making [the] proof' of" things which Nofal or Jaber earlier failed to admit. App.15.

#### 5. Jaber moves for an extension of time to file his fees motion and bill of costs

After the Court permitted Nofal and Jaber's original counsel to withdraw from representation, [DE 68], Jaber's new counsel appeared and sought an extension of time to file a motion for attorney's fees and costs. PFP A97-110. In support of that motion, Jaber filed the declaration of his prior counsel, Timothy Steinle, explaining how he viewed Nofal and Jaber as "essentially one client" such that he "overlooked the fact that Mr. Jaber, in his individual capacity, had actually succeeded against Prepared Food Photos." PFP A111-13. Based on the change in counsel and Mr. Steinle's oversight, Jaber argued that he had good cause for an extension of time despite the fact the deadline for filing his fees motion had passed.

#### 6. Food Photos opposes the extension of time

Food Photos opposed that request and filed a memorandum of law with a supporting declaration of Rebecca Jones. PFP A114-28. It argued that the *Pioneer* factors did not warrant an extension. PFP A114-26. Ms. Jones asserted

that Food Photos "decided ... to forego the filing of an appeal" supposedly on the sole basis that "there was no risk (at that point) of Jaber seeking fees on the claim he prevailed on." *Id.* Food Photos thus argued that it was prejudiced by its inability to appeal its $200 judgment.

**7. Jaber replies to Food Photos' arguments**

In response to Food Photos' opposition memorandum and declaration of Jones, Jaber filed a reply memorandum of law, pointing out that Food Photos conceded two of the *Pioneer* factors, and argued that Food Photos' claimed loss of appeal of the judgment would have been frivolous. Food Photos "was not prejudiced for its own decision not to take meritless appeal of an adverse verdict irrespective of what Jaber did or did not do." SA38. He further pointed out that nowhere did Food Photos claim it even had a meritorious appeal, but rather Food Photos' argument was "simply an admission that it would have used a frivolous merits appeal as a weapon to bully Jaber out of pursuing his fees." *Id.*

**8. The district court's order weighing the *Pioneer* factors**

In ruling on Jaber's motion for an extension of time, the district court first cited Rule 6(b)(1)(B) as the basis for its procedural authority to excuse a missed deadline. It then proceeded to cite *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) which in turn cited *Pioneer Inv. Servs. Co. v.*

*Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). It then proceeded to analyze Jaber's and Food Photos' competing arguments under each of the four *Pioneer* factors.

On the first (prejudice) it found that factor "cut[] narrowly in Jaber's favor." PFP A3. It ruled similarly on the second (length of delay). PFP A4. The third (reasons for the delay) it concluded was "neutral" and analyzed that issue over nearly two pages. PFP A4-6. On the fourth factor (good faith), the district court concluded that Jaber and his counsel, both prior and present, acted in good faith. PFP A6. It then weighed those factors to conclude "that Jaber has narrowly demonstrated excusable neglect" and granted the motion and provided a definite time for him to file his fees motion and bill of costs. *Id.*

## STANDARD OF REVIEW

Food Photos correctly states the standard of review of its status as a prevailing plaintiff is reviewed de novo.

Its statement on the standard of review is likewise correct respecting the order granting Jaber an extension of time: abuse of discretion. However, "[a]buse of discretion 'is a hard standard to overcome.'" *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). "Under the abuse of discretion standard of review, the relevant inquiry is not 'how the reviewing judges would

have ruled if they had been considering the case in the first place.' Rather, 'an abuse of discretion is established only where no reasonable man could agree with the district court; if reasonable men could differ as to the propriety of the court's action, no abuse of discretion has been shown." *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982).

Food Photos did not state the standard of review of an order denying Rule 37 sanctions. It is the same: abuse of discretion. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) ("Discovery sanctions are reviewed for abuse of discretion."). This Court will "uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently." *Id.* And a district court has "many bases on which [he] can exercise discretion under" Rule 37(c). *Popeil Bros., Inc. v. Schick Ele., Inc.*, 516 F.2d 772, 777 (7th Cir. 1975).

## SUMMARY OF THE ARGUMENT

Food Photos has conceded the merits of Jaber's appeal, making explicit that it "agrees with the core of Jaber's argument." Opp.Br.11. Thus, the sole scope for further appellate labor is Food Photos' cross-appeal. The issues it raises as cross-appellant, however, show that the district court's orders should be affirmed.

First, Nofal, as a cross-appellee, did not concede in Jaber's brief that Food Photos was a prevailing party. Initial Br. of Jaber at 36 n.15 (Nofal "reserves its right to argue that *Narkiewicz-Laine* may be persuasive with respect to Food Photos' status as a prevailing plaintiff"). Food Photos correctly observed that Jaber's "brief speaks only to prevailing 'defendants' while remaining silent on whether Prepared Food Photos itself prevailed." Opp.Br.27. That is because it is not a foregone conclusion that Food Photos can properly be regarded as a prevailing party, or that other reasons exist to affirm the district court's order denying Food Photos its attorney's fees and costs. It was not Jaber's obligation to argue that point in his opening brief raising only the issue of *his* status as a prevailing defendant. It was Food Photos' obligation as cross-appellant, as it is now Nofal's obligation, as cross-appellee, to argue why Food Photos may not be a prevailing party, or why the district court's fees order should otherwise be affirmed as to Food Photos.

The $200 judgment obtained by Food Photos is actually a legally impermissible outcome on the record, such that it cannot form the predicate to support its claim to prevailing party status. Nofal could never have been liable for direct copyright infringement. Nor could it be liable under any secondary theory of liability. Yet the de minimis recovery by Food Photos resulted in a practical

dilemma for Nofal: spend vastly more on fighting a legally improper outcome, or wait and directly confront the question of Food Photos' claim to attorney's fees later. This Circuit recognizes that in unusual circumstances, as here, an appellee does not waive its ability to argue why a lower court's judgment was wrong where there were practical and "financial reasons" for doing so. *Cf. Bradley v. Village of University Park, Ill.*, 59 F.4th 887, 897-98 (7th Cir. 2023).

Even if Food Photos is technically a prevailing party on a legally-flawed nominal judgment, it would be an abuse of discretion to grant Food Photos any fees, and thus any error on that threshold question was harmless such that this Court should affirm the district court's denial of fees to Food Photos.

Apart from the prevailing party issue, Food Photos is wrong to argue the district court abused its discretion in granting Jaber an extension of time, and wrong to argue the district court abused its discretion in denying discovery sanctions against Nofal. The district court applied the correct law and reached a reasoned result.

Jaber and Nofal respond to each of those issues in their capacities as cross-appellees, and show why affirmance of the district court's orders on those issues is appropriate.

## ARGUMENT

### I. NOFAL DID NOT CONCEDE FOOD PHOTOS WAS A PREVAILING PLAINTIFF IN JABER'S INITIAL BRIEF

As a threshold matter, Food Photos errs in its lack of distinction between Nofal, LLC and Sharif Jaber, and their respective capacities on appeal. Those capacities matter for purposes of a party's obligation to assert (and correspondingly waive) arguments. Nofal did not waive an argument or concede any issues that would be raised in Food Photos' cross-appeal because Nofal was not an appellant or party to Jaber's opening brief. Instead, Nofal is solely a cross-appellee in these proceedings. *See Bradley*, 59 F.4th at 897-98 (discussing the difference between an appellant and appellee for purposes of waiver of arguments).

Jaber is the original appellant in this matter. [DE 90] (identifying only Sharif Jaber as appealing the district court's fees order). Nofal was not a party to this appellate proceeding until Food Photos decided to cross-appeal that same order. [DE 94]. That distinction matters because it determines which party must raise and argue which issues, and thus who waives or concedes arguments. *See Bradley*, 59 F.4th at 897-98.

The notices invoking this Court's jurisdiction established which parties were responsible for and required to argue which issues and when. The

subsequent briefing orders simplified—but did not change—the appellate obligations of each party or their appellate party status.

Consequently, Jaber's initial brief raised and argued the issue solely concerning him: whether the district court erred in concluding that he was not a prevailing defendant. That was the only issue in his original appeal. But, in (correct) anticipation that Food Photos would attempt to mischaracterize his brief, Nofal, even though not a party to the main appeal, made explicit reference to its potential position in its opposition brief. Nofal was not required to argue anything in Jaber's appeal and, for his part, Jaber did not concede Food Photos' status vis-à-vis Nofal.

Therefore, Nofal, as a cross-appellee, did not waive or concede that Food Photos was a prevailing plaintiff in Jaber's initial brief. *Bradley*, 59 F.4th at 897.

## II. FOOD PHOTOS CAN PROPERLY BE CONSIDERED NONPREVAILING WHERE THE JUDGMENT AGAINST NOFAL IS LEGALLY INCORRECT

While a plaintiff normally prevails when actual relief on the merits of its claim materially alters the legal relationship between it and a defendant by modifying the defendant's behavior in a way that directly benefits the plaintiff, *Farrar v. Hobby*, 506 U.S. 130 (1992) , that necessarily assumes that the

predicate judgment for prevailing party status is legally correct. Here, it is not.

Nofal could not have been liable under a theory of direct infringement where the evidence showed Amjad Hamed was the person that committed the infringing act. At best, Nofal's liability could only have been secondary, but the Supreme Court's recent decision in *Cox Communications* forecloses even that alternative.

The unusual fact of the judgment's low value, despite being erroneous, led Nofal to simply let it be. But that decision as to the merits did not waive its ability to attack the judgment as a predicate for collateral purposes of an award of attorney's fees, because Nofal, as a potential appellee on an appeal of the merits by Food Photos had "financial reasons" to preserve a near-nominal $200 judgment against it "without wanting to fight all possible theories" for why that judgment was error. *Bradley*, 59 F.4th at 898. Leaving the judgment in place was the only rational thing for Nofal to do when it was doubtful Food Photos would even be awarded attorney's fees on that judgment. Nofal was better off by simply opposing Food Photos' claim to fees later rather risking attack of the judgment itself because, had Nofal challenged and vacated the judgment in the district court, then Food Photos certainly would have

appealed the merits of the case, leading to more expense than paying the judgment. Nor did it make sense for Nofal to appeal that judgment, where the filing fee alone would have exceeded the face value of the judgment. Any objective litigant would have simply let the incorrect judgment stand purely as a result of its nominal amount and address Food Photos' fee claim instead, assuming it would in fact pursue such fees.

For purposes of this appeal on Food Photos' fee claim, this Court may affirm the judgment of the district court on any basis that appears in the record, *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010), and the evidence shows that Food Photos should not have obtained any judgment against Nofal, under either a direct or secondary liability theory.

On the unusual facts of this case, Food Photos can properly be considered nonprevailing as a consequence of the legally unsupportable judgment it obtained.

1. **Food Photos' theory of direct infringement against Nofal was legally unsupported by the evidence and thus the judgment cannot be the predicate for Food Photos being a prevailing plaintiff**

That Food Photos recovered on a legally incorrect theory of direct infringement when the evidence established *it* did not infringe, means Food Photos cannot, as a matter of law, be considered a prevailing party.

Direct copyright infringement is a well-established legal theory founded on the language of the Copyright Act itself. 17 U.S.C. § 501 ("[a]nyone who violates any of the exclusive rights [under] sections 106 through 122 ... is an infringer"). Proof, therefore, of a direct infringement claim embodies just two elements: (1) ownership of a valid copyright and (2) copying of original elements of the work. *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012). But "who" does the "copying" when the legal fiction of a corporation is involved? The answer depends on the identity of the actor itself, not the relationship between the actor and another.

On this record, there is no evidence that Nofal, as a juristic entity, infringed Food Photos' copyright. In the mine run of social media photograph copyright infringement cases, as here, a corporation should rarely be liable on a theory of direct infringement where an employee was the rogue individual that engaged in a copyright violation and the company did not encourage or otherwise participate in the employee's act of infringement. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012) ("The infringers are the uploaders of copyrighted work."). Stated differently, direct infringement requires what has been called "volitional conduct."

This Court's decision in *Flava Works* reflects the requirement that direct

copyright infringement requires volitional conduct, meaning action taken by a human being that violates an enumerated right under § 106. That is the generally prevailing view of the circuit courts. *See, e.g.*, *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130-32 (2d Cir. 2008) ("the person who actually presses the button to make the recording, supplies the necessary element of volition"); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550-51 (4th Cir. 2004) (direct infringement "requires conduct by a person who causes in some meaningful way an infringement" and that "person [must] engage in volitional conduct—specifically, the act constituting infringement—to become a direct infringer"); *Parker v. Google, Inc.*, 242 Fed. App'x 833, 837 (3d Cir. 2007) (per curiam) ("to state a direct copyright infringement claim, a plaintiff must allege volitional conduct [by] the defendant"). Therefore, "if there was an infringement by the corporation" that infringement could only be secondary, since it "was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done." *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) (applying the principle to trademark and patent infringement); *see also Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349-50 (5th Cir. 1994) (applying *Mead Jonson* and respondeat superior to copyright infringement).

However, this circuit has not embraced a theory of vicarious liability for copyright infringement, and *Flava Works* illustrates that even on a theory of contributory copyright infringement, a corporation must actively "encourage" that infringement. *Flava Works*, 689 F.3d at 758. *Cox Communications* also implicitly forecloses vicarious liability theories more broadly. *See* Section II.2., *infra*.

With that understanding, Food Photos' entire theory of direct infringement against Nofal was legally incorrect where Nofal never acted. It never instructed, encouraged, or condoned the copying of a copyrighted image without a license. *Nofal* didn't act. Amjad Hamed did. And Nofal didn't instruct him to do what he did, and thus would not be liable even under the test articulated in *Flava Works*. 689 F.3d at 757 (only "personal conduct that encourages or assists the infringement" makes one secondarily liable for the infringement of another). Here, Nofal was entirely without knowledge of what Hamed was doing as a general matter with respect to a Facebook account it didn't even control as a company, nor did it encourage or assist in the infringement by Hamed. SA26-30. Consequently, the record shows that Hamed's liability was direct and he was the *only* one conceivably liable for that conduct, direct or otherwise.

Accordingly, because the record shows no possible theory for which Nofal could have been liable for copyright infringement, Food Photos cannot be considered a prevailing party, notwithstanding the judgment's uncontested merits. That Nofal didn't appeal or otherwise challenge that impermissible result does not mean it waived its ability to attack the judgment for a collateral purpose, such as here, where it simply serves as a predicate for an award of attorney's fees, and because Nofal, as a potential appellee on an appeal of the merits by Food Photos had "financial reasons" to preserve a near-nominal $200 judgment against it "without wanting to fight all possible theories" for why that judgment was error. *Bradley*, 59 F.4th at 898.

That outcome is also consistent with the goals of finality of judgments and ensuring that disputes over fees do not become a "second major litigation." *Hensley v. Eckerhart*, 461 U.S 424, 437 (1983). Forcing a litigant to contest an erroneous but nominal judgment on its merits solely for the purpose of foreclosing an opponent's potential claim to discretionary attorney's fees wastes judicial resources, especially where it is unclear the opponent will even be awarded fees. Conversely, on a fully developed record, an appellate court can properly ascertain on de novo review whether a party claiming prevailing party status has in fact prevailed for purposes of attorney's fees and costs.

Assigning the risks of an erroneous judgment to the putative winner also properly aligns incentives at the outset of litigation by requiring a plaintiff to properly frame its claim, since it, as the potential beneficiary of the judgment and fee-applicant, has the most incentive to ensure it is legally correct in the first instance. Stated differently, it properly allocates the burden on the beneficiary of fees.

While the facts of this case are unusual, they are not unexpected from high-volume copyright claimants seeking excessive payouts. Food Photos was not legally a prevailing party.

### 2. This Circuit has never recognized vicarious liability as a theory to recover for another's direct copyright infringement and should not do so now

To the extent Food Photos attempts to argue that the judgment against Nofal is correct under a theory of vicarious liability, that too would be incorrect. This Circuit has never recognized a theory of vicarious liability for copyright infringement under the 1976 Copyright Act, but it has held, consistent with the Supreme Court's recent decision in *Cox Communications*, that contributory infringement is the only viable secondary theory. *Flava Works*, 689 F.3d 754; *accord Cox Commc'ns, Inc. v. Sony Music Entm't*, 146 S.Ct. 959, 970 (2026) (recognizing that the majority opinion limited copyright infringement

to "only two forms of secondary liability") (Sotomayor, J., concurring in the judgment).

Indeed, *Cox* suggests that vicarious liability as a legal theory of recovery does not exist at all under the Copyright Act—which is a pure statutory cause of action not grounded on any common law. "The Copyright Act does not expressly render anyone liable for infringement committed by another." *Cox Communications*, 146 S.Ct. at 967. And the Court's admonition that it was "loath to expand" secondary "liability beyond" its two earlier cases narrowly focused on contributory infringement, *id.*, illustrates that it would not read-in a theory of vicarious liability into the Copyright Act where none exists.

Those two pronouncements (no statutory language and reluctance to expand non-statutory liability) can be best understood when one considers the type of statutory right codified, and thus what Congress implicitly included (or not) in a statutory scheme. Where Congress creates a purely novel right, one not premised on preexisting common law, it does not silently import common law doctrines, whereas codification of rights bottomed on preexisting common law might. *Compare Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164 (1994) (rejecting aiding and abetting common law theory as being implicitly within Section 10b of the 1934 Securities Act and

limiting liability to the "maker" of the statement), *with Meyer v. Holley*, 537 U.S. 280, 285-86 (2003) ("when Congress creates a tort action, it legislates against the background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules" and finding housing discrimination was "a tort action"). Copyright stands as a pure statutory creature; it derives directly and originally from the Constitution as a right granted directly from the state itself. *Paige v. Banks*, 80 U.S. 608, 611 (1871) (copyright is "a creature of statute" and therefore a "man has no more 'copyright' than what the statutes gives him"); *see also Darden v. Peters*, 488 F.3d 277, 284 (4th Cir. 2007) ("Copyright is solely a creature of statute; whatever rights and remedies exist do so only because Congress provided them."). Therefore, without an express Congressional grant of a cause of action for secondary liability in the Copyright Act, none can be read-in.[8]

What is evident from a review of that case law is that "vicarious" liability for copyright infringement is simply the "culmination of a long line of bootstrapping from nothing to something." *See Fogerty v. Fantasy*, 510 U.S. 517, 532 n.18 (1994) (quoting district judge Warriner, who recognized that the

[8] That the Patent Act does include secondary liability further reinforces that conclusion. 35 U.S.C. § 271(c) (identifying conduct that makes one "liable as a contributory infringer").

asymmetric recovery of attorney fees under § 505, which had developed over time in multiple opinions, was atextual, and which the high court finally overruled in *Fogerty*). *Cox* all but puts an end to that boostrapping. *Cox Communications*, 146 S. Ct. at 967.

And so this Court should not recognize any theory of secondary liability beyond what *Cox* has allowed. And that is limited to a very narrow species of contributory infringement embodied in just two decisions: *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984). *Cox Communications*, 146 S. Ct. 967 ("we are loath to expand [secondary] liability beyond those precedents"). The narrowness of contributory liability is illustrated by the Court's clarification of what must be proved: "affirmative intent," which in turn can be shown "only if the party induced infringement or the [defendant's] service is tailored to [the asserted] infringement." *Id.* Consequently, "mere knowledge," it said, "is insufficient." *Id.*

Therefore, this Court should not find occasion to construe the judgment below as permissible on a theory of vicarious liability. That secondary liability is not found in the Copyright Act. Instead, the inescapable conclusion is that the judgment cannot form the predicate requirement for Food Photos to be

considered a prevailing party, even while the judgment stands.

## III. THIS COURT MAY AFFIRM THE DISTRICT COURT'S DENIAL OF FEES TO FOOD PHOTOS EVEN IF IT IS TECHNICALLY A PREVAILING PARTY

Even if Food Photos is technically a prevailing party simply because Nofal did not challenge the judgment's legal propriety, the district court did not err in disallowing fees to it, because the record shows that "no fee at all" is the "only reasonable fee." *Farrar*, 506 U.S. at 115 (O'Connor, J., concurring). Thus, a different reason is evident from the record for why Food Photos ought not be awarded any costs or fees. On this record, it would be an abuse of discretion to grant plaintiff its fees for recovering a de minimis, technical victory.

After a full lawsuit concluded by a trial on the merits in which Food Photos obtained a $200 judgment, that recovery is properly characterized as "minimal or pyrrhic when it had demanded four hundred and fifty times more than that ($90,000) just days before the jury returned its verdict. App.29, 111.

"Exaggerated claims impede settlement and consume scarce judicial resources." *Cole v. Wodziak*, 169 F.3d 486, 489 (7th Cir. 1999) ("a person who suffers a slight injury and makes an exaggerated claim should [not] be treated similarly" to "a plaintiff who suffers a slight injury and does not over-claim"); *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir. 1997) (plaintiff was not a prevailing

party when it accepted a $7,500 Rule 68 "nuisance value" settlement offer from the defendant after it had demanded $80,000); *Fletcher v. City of Ft. Wayne, Ind.*, 162 F.3d 975, 976 (7th Cir. 1998) ("for trivial recoveries, the only reasonable reward is zero"); *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997) (denial of fees is appropriate where the plaintiff engages in a process of "inflicting heavy costs on his opponent and wasting the time of the court"); *Maul v. Constan*, 23 F.3d 143, 147 (7th Cir. 1994) ("the district court abused its discretion by awarding attorney's fees to" the plaintiff because "the difference between the judgment sought and obtained was great").

The outcome in *Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019) is consistent with these authorities, where although the plaintiff prevailed on each of its claims, at least in part, it nonetheless was not the prevailing party. Why? Because the plaintiff did not prevail "across the board." *Id.* at 906. Stated differently, the plaintiff did not prevail to the extent of its contentions, "seeking damages far beyond what he actually recovered." *Id.*

Where a plaintiff's success is minimal, "it would be wasteful [] to require that courts laboriously ... go through" either the lodestar analysis or the factors relevant to the particular statute providing for court discretion in a fee award. *Farrar*, 506 U.S. at 118 (O'Connor, concurring). Summarily denying

fees even to a plaintiff that obtains some enforceable judgment is both "common sense and sound judicial administration." *Id.* at 117-18. That is because a minimal recovery "makes the proper fee immediately obvious." *Id.* at 118.

In civil rights litigation fee awards, this circuit employs a three-factor test to determine whether a plaintiff's recovery supports a fee award. *Cartwright v. Stamper*, 7 F.3d 106, 109-10 (7th Cir. 1993) (for a "purely technical" win, "the appropriate fee is no fee," and observing that the district court "should have summarily denied" the plaintiff's fees). The chief factor is "the difference between the judgment recovered and the recovery sought." *Id.* at 109. This line of cases emanates from civil rights litigation, and this Court has "cautioned against" treating all attorney's fees statutes "as if they were insignificant variations on [42 U.S.C.] § 1988." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 558 n.7 (7th Cir. 1999). Yet the same demand-to-results comparison principle applies in the copyright context where the plaintiff's purpose of enforcement, especially here by Food Photos, is "the recovery of private damages," *Farrar*, 506 U.S. at 114. *Fogerty*'s equitable list of factors in copyright cases is not exhaustive. 510 U.S. at 534. Accordingly, this Court's precedents in civil rights cases, driven often by the fee-shifting statute for the recovery of minor injuries, should apply with equal force in a copyright case where the

plaintiff stands in similar posture as the nominally slighted civil rights plaintiff.

The amount Food Photos recovered was almost a nominal sum, and the minimum on a statutory award. If a nominal damages award 113 years ago was a single dollar, *Westinghouse Ele. And Mfg. Co v. Wagner Ele. And Mfg. Co.*, 225 U.S. 604 (1912) (patentee entitled to $1 in nominal damages), then the equivalent nominal award today, accounting for inflation, would be $34.[9] That makes Food Photos' $200 recovery less than a sixfold difference over a contemporary nominal award, and equivalent to the statutory minimum for non-willful infringement. 17 U.S.C. § 504(c)(2). This Court has suggested that even a $500 judgment may not support a fee award to a plaintiff. *Hyde*, 123 F.3d at 585 ("[I]f $1 is the equivalent of losing, what about $140 or, as in this case, $500? We mention the intermediate figure because it was the amount of damages awarded by the district court in *Simpson v. Sheahan*, 104 F.3d 998 (7th Cir. 1997), and we held that in the circumstances of that case the court had erred in awarding the plaintiff his fees.").

Given Food Photos' $200 recovery, in contrast to its $90,000 pre-trial

[9] Calculated from January 1913 to present using the United States Bureau of Labor Statistics CPI inflation calculator. https://www.bls.gov/data/inflation_calculator.htm

demand, the district court could, and indeed should, have simply "explain[ed] why the victory [was] de minimis and announce[d]" that it would award no fees at all. *Farrar*, 506 U.S. at 118 (O'Connor, concurring); *cf. Fogerty*, 510 U.S. at 534 ("[t]here is no precise rule or formula for making these determinations") (quoting *Hensley*, 461 U. S. at 436-437). Moreover, Food Photos never approached the dispute with a view towards the actual harm suffered, instead demanding an unapportioned (and unsupportable) sum of $30,000. App.98. Had it made a proper demand based on actual harm, Food Photos might well be entitled to pursue its rights in the face of an obstinate infringer. But that's not what Food Photos does. Indeed, even tendering $750 is rejected by Food Photos. Br. of Amici at 21.

Here, a "summary denial of fees" is "appropriate" on this record. *Farrar*, 506 U.S. at 118; *accord Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996) (when a plaintiff's success is minimal "no fees may be awarded, even if the plaintiff has succeeded on an issue in the litigation and may thus be technically a 'prevailing party'"); *Hyde*, 123 F.3d at 585 (a court should treat a plaintiff "as if she had lost" where the suit had only "nuisance value"); *Farrar*, 506 U.S. at 122 (same, citing *Chicano Police Officer's Assn. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980)) (O'Connor, concurring).

This Court may affirm the district court's Fees Order to the extent the lower court denied those fees and costs to Food Photos because its recovery from Nofal was minimal, constituting just two thousandths (0.2%) of its pre-trial demand. Affirmance on that basis would also be supported for the reasons articulated by amici insofar as Food Photos is precisely what this Court has characterized as a copyright "troll."

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY GRANTING JABER AN EXTENSION OF TIME

Besides correctly concluding Food Photos was not a prevailing party, the district court did not err in providing Sharif Jaber with an extension of time to file his motion for attorney's fees and costs.

### 1. The district court employed the correct law and properly weighed the relevant issues

Food Photos does not dispute that the district court used the correct law in rendering its decision on Jaber's motion for extension of time, that is, it correctly applied the four factors in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380 (1993). Those factors are (1) the danger of prejudice to the other party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

*Id.* at 388. In its brief, after reciting various cases for the legal framework employed in analyzing a post-deadline extension under Rule 6, Opp.Br.13-14, Food Photos addresses the district court's application of each of those factors.

Its principal argument is that the district court erred in analyzing the first and a combination of the third and fourth. On the second (length of delay and impact on the proceedings) it concedes that the factor was neutral, Opp.Br.18, just as the district court concluded, PFP A4. However, Food Photos also conceded certain matters within the fourth factor, as noted by Jaber in his reply memorandum. SA34 ("Mr. Steinle certainly acted in good faith") (quoting Food Photos' opposition, PFP A124).

On its combined third and fourth factors argument, Food Photos overlooks the unequivocal statement in *Pioneer* that "negligence" which causes a "failure to comply with a filing deadline" is "understood to" be "'excusable neglect.'" *Pioneer*, 507 U.S. at 394. Negligence can also encompass "inadvertence, ignorance of the rules, or mistakes construing the rules." *Id.* at 392. Consequently, excusable neglect is "a somewhat 'elastic concept.'" *Id.*

Food Photos ignores that broad statement from *Pioneer*, and instead mischaracterizes predecessor counsel as being "inattentive," tying that conclusion to *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004). Opp.Br.20. Even then,

this Court has recognized that simple "carelessness can constitute 'excusable neglect'" and there is a "gray area between carelessness and 'excusable neglect.'" In contrast, "outright and consistent disregard of [the] court's scheduling orders" may not be excusable. *Easly*, 382 F.3d at 698. "Easly's attorney's conduct ... [would have] give[n] the trial court sufficient reason under" Rule "41(b) to involuntarily dismiss [the] action for want of prosecution." *Id.* So bad were the facts in Easly that the court characterized it as "a 'clear record of delay or contumacious conduct.'" *Id.* That is not what happened here, and Food Photos' attempt to rely on *Easly* is misplaced.

The same can be said for the remainder of its arguments respecting the facts that led to the need for the extension of time, including a change in counsel and simple oversight occurring during that time period by predecessor counsel. The district court did not abuse its discretion in granting Jaber's motion.

**2. A district court does not abuse its discretion if any reasonable person could agree with the district court's decision**

When a district court applies the correct law, "the proper inquiry is not how" this Court "would have ruled if it had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court." *United States v. U.S. $103,387.27 in U.S. Currency*, 683 F.2d

555, 561 (7th Cir. 1988). The standard is not even limited to a jurist's view of the decision, and includes the hypothetical reasonable person of any walk of life. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984) ("*any* reasonable person") (emphasis in original). That is a very demanding standard to overcome, and Food Photos does not meet it.

Here, the district court reached a reasoned judgment employing the correct law. PFP A2 ("The Court examines each [*Pioneer*] factor in turn."); PFP A6 ("After considering all these factors, the Court concludes that Jaber has narrowly demonstrated excusable neglect .... [and t]he Court will therefore permit Jaber to file a fee motion.").

Rather than disputing the law, Food Photos takes issue with the *facts* themselves. Opp.Br.21-22. It doesn't even argue that no reasonable person could have decided the way the district court did, as the law requires for overturning a lower court's decision. Its entire argument for reversal is that other courts reached different results, on (possibly) similar facts, and so the district court here should have ruled differently. Opp.Br.20. That is not an abuse of discretion.

To be sure, the district court did not fully agree with Jaber's arguments that each factor favored granting him an extension of time. It found at least

two of the prongs were neutral. PFP A4 (finding the second and third factors neutral). And it also concluded the issue was a "narrow" one, yet chose to exercise its discretion in granting the extension of time. PFP A6.

Food Photos argues that the attorneys' good faith is irrelevant in a *Pioneer* analysis, Opp.Br.22 ("it was error to include" Jaber's attorneys in its analysis because *Pioneer* focuses on the movant "alone"). That is wrong. Contrary to that unsupported assertion, this Court has allowed district courts to analyze the attorney's good faith. *United States v. Cates*, 716 F.3d 445, 450 (7th Cir. 2013) (affirming the district court's exercise of discretion that included its analysis "that Cates and his attorney acted in good faith"); *see also Easley*, 382 F.3d at 698 (analyzing the attorney's conduct as to the first factor). Even then, the district court included all relevant actors in its final holding. PFP A6 ("Jaber, Attorney Steinle, and Jaber's new pro bono counsel have all acted in good faith").

Even if this Court would decide the matter differently, that does not make the district court's exercise of its discretion an abuse. *Deitchman*, 740 F.2d at 563-64. The order granting Jaber an extension of time to file his fees motion should be affirmed.

### 3. PFP's decision to forego an appeal of the final merits judgment was its own to make based on its view of that judgment, not based on subsequent events

On the first *Pioneer* factor (danger of prejudice), Food Photos argues vehemently that it suffered irreparable prejudice by Jaber's late-filed fees motion, outside the time when Food Photos could have filed an appeal of the judgment. Opp.Br.14-18. Like its analysis of the fourth, Food Photos offers no reversible error to overturn the order granting Jaber additional time to file his fees motion and bill of costs. Again, it complains of the *facts* without arguing that no reasonable person could have decided the way the district court did on that one factor. And once again, its entire argument for reversal is that other district courts reached different results such that the district court here should have agreed with it rather than Jaber. At the risk of needless repetition: that does not constitute an abuse of discretion.

Food Photos chose to litigate its $200 copyright claim to a jury verdict, and when it was dissatisfied with that outcome, sought to have the subsequent judgment overturned by the district judge. Plf.'s Mot. [DE 56]. Food Photos knew full-well by the time the district court denied its Rule 59(a) and (e) motion for new trial and to amend the judgment, App.40-71, that it could have raised in an appeal of right thirty days after that order, but it chose not to.

That was its own decision to make.[10]

When Jaber then sought to file his fees motion out of time, PFP A97-110, Food Photos suddenly claimed it would have appealed the merits—not based on the judgment itself, but rather because Jaber might become entitled to a fee award. PFP A114-25; PFP A128 ("there was no risk (at that point) of Jaber seeking fees"). As the brief of amici suggests, the credibility of Ms. Jones is questionable. And as the amici also recognize Food Photos' assertion appears consistent with an inappropriate *tactical* intent to use an appeal for *in terrorem* purposes rather than a genuine desire to reverse the judgment.

Even if Ms. Jones's declaration is credible, her assertions still would not have been a plausible basis to deny Jaber an extension of time because at least one district in this circuit (and others outside this circuit) expressly allow a longer timeframe for pursuing fees post-judgment. *E.g.*, N.D. Ill. L.R. 54.3

[10] As Jaber argued below, an appeal by Food Photos of the judgment would likely have been meritless, and Food Photos' decision to forego an appeal was a commendable one. SA37. Food Photos' argument here is also disingenuous. It was statutorily-required to make its election following the verdict and *prior* to judgment. 17 U.S.C. § 504(c)(1) (copyright owner "may elect, at any time before final judgment is rendered"); *see also* Tr. [DE 58 at 94, 326:21-326:15 (after reading the verdict, the district court directed the plaintiff "to inform the Court not later than [] of [Food Photos'] election with respect to accepting either the actual damages awarded or the statutory damages awarded"). Consistent with that law, it made its election, App.34, prior to the entry of the judgment, App.37 and thus prior to its Rule 59 challenge to that judgment, Plf.'s Mot. for New Trial and/or to Amend the J. [DE 56]. Its election was for the purpose of its planned Rule 59 motion, not, as it now asserts, solely for the purpose of appealing the judgment.

(providing for 90 days); S.D. Fla. L.R. 7.3(a)(1) (60 days). The same facts cannot amount to an abuse of discretion in some districts and not others by virtue of their own local rules. *See White v. New Hampshire Dep't of Empl. Security*, 455 U.S. 445, 454 (1982) ("district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees"). And this Court has recognized that even as to bills of costs, those previously were "presented after appeals" and failing to pursue those costs did not "depriv[e] the prevailing party of its presumption that costs would be included in the final judgment upon the mandate after appeal." *Popeil Bros.*, 516 F.2d at 777.

Stated differently, Food Photos argues that the district court abused its discretion by failing to give dispositive weight to Food Photos' claimed loss of a tactical weapon against Jaber. Not so. In fact, the district court concluded Jaber's argument about Food Photos' motivations was speculative. PFP A3. Yet it also correctly recognized that Food Photos' "recourse if it believed that it had legitimate issues to present on appeal was to appeal." *Id.* That reasoning was not an abuse of discretion.

Even if Food Photos' sudden newfound desire to appeal the merits upon the possibility it would be ordered to pay Jaber a fee award was a legitimate basis

to deny Jaber an extension of time, the district court did not abuse its discretion in concluding, as part of its overall evaluation under the correct law, that Food Photos' assertion did not warrant denying the extension of time. The district court gave it the weight it believed appropriate. The order granting Jaber an extension of time should be affirmed.

## V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING FOOD PHOTOS' RULE 37 DISCOVERY SANCTIONS

Food Photos also asserts error with respect to the district court's refusal to grant it fees pursuant to Rule 37(c)(2). Opp.Br.23-26.[11] Its arguments suffer from myriad problems, but the most salient is its unfounded assertion that the testimony at trial proved that Nofal's earlier responses were false. They weren't. Even if the denials were improper or should have been withdrawn and amended to be affirmative admissions, the district court did not abuse its discretion in denying to award Food Photos attorney's fees because, at a minimum, the admissions were legally irrelevant to Food Photos' claims.

### 1. Food Photos' motion was untimely and inadequately preserved its arguments in the district court

Food Photos' appeal respecting its request for Rule 37 sanctions can be

[11] Nofal points out that Food Photos' appellate briefing incorrectly characterizes the record. The date of Nofal's responses to Food Photos' Rule 36 admissions was August 23, 2023.

quickly disposed of on prudential grounds. It failed to preserve its arguments where its briefing on the issue in the district court consisted of a singular paragraph which cited exactly zero legal authority.[12] Its Rule 37 argument was an undeveloped afterthought to Food Photos' primary request for fees pursuant to the Copyright Act. The district court recognized as much. App.12 (observing that Food Photos' Rule 37 argument "comprises a single paragraph in its brief"). Not only that, Food Photos did not identify any particular admission it believed was improperly denied, characterizing its position as "a multitude of Plaintiff's requests for admissions." PFP A18. Thus, Food Photos failed to preserve the issue for appeal. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 626-27 (7th Cir. 2014) (a conclusory response in an opposition brief "did not sufficiently raise" the issue in the district court "to preserve it for appeal") (citing *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718-19 (7th Cir. 2012) ("arguments not raised to the district court are waived on appeal [and e]ven arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law")); *Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008) ("Failure adequately to present an issue to the

[12] However, Nofal's arguments presented here on appeal were not waived. *Bradley*, 59 F.4th 897-98.

district court waives the issue on appeal."); *Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) (where a party "fail[s] to present [a] specific argument to the district court, even though the issue may have been before the district court in more general terms" waives the issue for appeal) (quoting *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010)).

Affirmance is warranted for a further reason that Food Photos' request was untimely. Temporally, a motion for "Rule 37(c) expenses and fees must be timely sought prior to judgment" and "if the judgment is silent in regard [to such fees], they are deemed waived or denied." *Popeil Bros.,* 516 F.2d at 777-78; *see also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756-57 (7th Cir. 1994) (affirming the district court's denial of sanctions under Rule 37(b) because the plaintiff had the "information indicating that defendant's discovery responses were incomplete long before trial"); *Airtex Corp. v. Shelley Radian Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976) (finding defendant's Rule 37(d) motion for fees which "was made after trial and before judgment" was timely); *Butler v. Pettigrew*, 409 F.2d 1205, 1207 (7th Cir. 1969) (affirming district court's finding plaintiff had waived its Rule 37(b) request where it "was first presented to the trial court after the trial and after entry of judgment on the merits of the action").

Here, Food Photos did not seek Rule 37 fees promptly after the jury's verdict. Nor did it raise the issue when it filed its motion to alter or amend the subsequent judgment. Instead, Food Photos waited nearly six months post-verdict to make its one-paragraph request—an apparent afterthought to its primary argument for fees pursuant to the Copyright Act. That was simultaneously untimely and a preservation error. *Popeil Bros.*, 516 F.2d at 777-78.

As further evidence of its lack of preservation is any specific denial it contended was wrongfully denied, or the additional fees or costs it incurred as a direct consequence of that denial. Once again, the district court recognized the vagueness of Food Photos' request and the resulting decisional scope problem, with the court concluding that Food Photos' "fee request [was] excessive for the Rule 37 context" where its "billing records include[d] numerous entries during [the relevant] time frame that have an extremely tenuous or no relationship to [Nofal's] failure to admit." App.14. There was no temporal or substantive scope to the argument Food Photos made below respecting its Rule 37 request, and thus it didn't properly preserve its argument for appeal. *Puffer*, 675 F.3d at 718-19.

In the end, Food Photos' request for Rule 37 attorney's fees simply reflects its frustration that it was forced to try its case rather than have Nofal roll-over

and improperly concede every triable issue. That is not sanctionable as a discovery violation. The district court did not err in denying Food Photos any attorney's fees under Rule 37.

#### 2. Nofal's denials of Food Photos' Rule 36 admissions were proper when made, and properly maintained until the trial resolved the factual dispute

Apart from Food Photos' failure to properly preserve the issue for appeal, Both Jaber's and Nofal's responses to Food Photos' Rule 36 admissions were fair when made, and remained a fair response through trial which finally resolved the disputed fact issue. That the jury ultimately returned a verdict adverse to Nofal doesn't transform a fair pre-trial denial into a Rule 37 sanction.

Nofal's liability for infringement through Hamed's conduct was debatable until resolved at trial. And even then, Food Photos improperly attempted to impeach Jaber (Nofal's corporate representative) with the admissions, which the district court again recognized "were [made] as of a particular date" and observing that "any reasonable litigant and judge and lawyer understands, the dynamic of litigation such that answers that may be unknown at one point in the litigation become better understood at some point later." SA27.

Consistent with Food Photos' inability to elicit proper testimony at trial, the District Court had earlier denied Food Photos' motion for summary

judgment as to liability. Text Only Order, Feb. 9, 2024 (the parties' competing submissions "reveal differences that ... may preclude summary judgment altogether"). It did so when Food Photos asserted that Meta Platforms, Inc.'s response to a subpoena simply identified Amjad Hamad "as the owner of the Facebook Page," Plf.'s Mot. for Summary J., [DE 36 at 10], while Nofal asserted that the business "never gave instruction to Amjad Hamad on how to post material to the Facebook page" and "did not inform Amjad Hamad to post the [subject] photo to the Facebook page but, rather, Amjad Hamad, put it there himself," Def.'s Opp'n [DE 37 at 7] (citing Amjad Hamad's deposition testimony). The record makes clear that both Nofal's and Jaber's Rule 36 denials were properly made. Consequently, the district court's refusal to provide Food Photos with Rule 37 sanctions was correct.

Food Photos' own admission at trial confirms that result and dooms this part of its appeal: it stated that whether the Facebook page was within the scope of Amjad Hamad's employment was "a factual dispute." SA30. Once again, the district court recognized Food Photos' oversight: "Where is there in this case any allegation, much less proof that" Amjad Hamad's Facebook post "was done here [] within the scope of [his] employment?" *Id.* The district court rightly denied Food Photos' request for Rule 37 sanctions.

### 3. Even if the denials were improper or not amended, Rule 36 admissions are not a discovery device as to disputes of critical facts

Even apart from the validly submitted and maintained responses to Food Photos' Rule 36 admissions, the district court's order denying Food Photos any attorney's fees under Rule 37 did not constitute an abuse of discretion. That is because Rule 36 admissions are not even be a discovery device as such. *See Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 605 n.2 (7th Cir. 2002) (declining to decide "whether request for admission are a discovery device"); *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205-06 (6th Cir. 1986) ("Requests for admissions are not a general discovery device."); *Pickens v. Equitable Life Assurance Soc'y*, 413 F.2d 1390, 1393-94 (5th Cir. 1969) ("Rule 36 is not a discovery device" and "admissions as to central facts in dispute are beyond the proper scope of the rule"); *but see In re Engle cases*, no. 3:09-cv-10000, 2012 WL 4357431 at *1 (M.D. Fla. Sept. 12, 2012) (recognizing disagreement among district courts "as to whether a request for admission is a discovery device subject to discovery deadlines"). If "[t]he purpose of Rule 36 is to permit the person obtaining the admission to rely thereon in preparation for trial," *Gardner v. Southern Ry. Sys.*, 675 F.2d 949, 954 (7th Cir. 1982), then a denial of an admission can hardly be "reliance" that would warrant

sanctions. The purpose of Rule 36 admissions is to simplify the disputed matters for trial, not a "gotcha" backdoor to attorney's fees. *See Pickens*, 413 F.2d at 1393 ("admissions as to central facts in dispute are beyond the proper scope of the rule" and instead their "proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove").

#### 4. The Court should affirm the denial of Food Photos' Rule 37 sanctions because the disputed admissions were legally irrelevant

The Court may also affirm the denial of sanctions to Food Photos because the disputed admissions were legally irrelevant to its claim against Nofal on its theory of direct liability. The district court recognized as much. App.23-25.

While Food Photos pressed a theory of direct liability against Nofal (a juristic entity), such a theory does not lie against it where the sole act of alleged infringement was committed by a singular employee. *See* Section II, *supra*. Instead, its only possible liability would be secondary, and even then such a theory does not exist. *See* Section II, *supra*.

The district court's order denying discovery sanctions to Food Photos' was correct. Based on the theory of liability it advanced, the only two elements Food Photos needed to establish as to Nofal were simply (1) ownership of a

valid copyright and (2) copying of original elements of the work. *Peters* 692 F.3d at 632. Under its direct infringement theory, Food Photos did not need to establish knowledge. And so the admissions it complained of as improperly denied by Nofal were simply not probative of its claim against Nofal.

The district court correctly recognized that the issue "was legally irrelevant," even though that conclusion was misattributed to Food Photos' claim against Jaber. App. 14.[13] Jaber's "knowledge" of the Facebook post was also legally irrelevant because Food Photos' theory of vicarious liability against Jaber (again, assuming such a theory is proper) only required proof of (1) direct infringement by an agent, (2) right and ability to supervise that infringer, and (3) direct financial interest in the infringing activity. *GC2 Inc. v. Int'l Game Tech. Plc*, 255 F.Supp.3d 812, 824 (N.D. Ill. 2017) (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)). Regardless, under neither theory was knowledge of the Facebook post relevant, and thus the district court did not err in denying sanctions for either Nofal (or Jaber's) denials of Food Photos' Rule 36 admissions.

[13] However, the District Court's assertion that Nofal was correctly adjudged the "direct" infringer is legally incorrect.

## CONCLUSION

The Court should affirm the district court in the cross-appeal and reverse on the main appeal. Specifically, it should affirm that Prepared Food Photos, Inc. was not a prevailing party under this Court's existing precedent and would not be a prevailing party under *Cox Communications*.

It should also affirm the district court's order in granting appellant Sharif Jaber an extension of time to file his motion for attorney's fees and costs and its order denying Food Photos' request for attorney fees under Rule 37. Neither were abuses of the district court's discretion.

On the other hand, it should reverse the district court's order that Sharif Jaber was not a prevailing party in the main appeal because Food Photos wholly conceded the relief sought by Jaber as appellant.

__/s/ Griffin Klema________
Griffin C. Klema, Esq.
Fla. Bar No. 100279
**Klema Law, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606
PO Box 172381
Tampa, FL 33672
(202) 713-5292
Griffin@KlemaLaw.com
*Counsel for Appellant and Cross-appellee Sharif Jaber*
*Counsel for Cross-Appellee Nofal, LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of 7th Cir. R. 28.1 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,738 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Expanded BT font.

__/s/ Griffin Klema________
Griffin C. Klema, Esq.
*Counsel for Appellant Sharif Jaber*
*Counsel for Cross-Appellee Nofal, LLC*

## CERTIFICATE OF FILING AND SERVICE

I certify that, pursuant to and in compliance with Fed. R. App. P. 25 and 7th Cir. R. 25, this Initial Brief was filed with the Clerk of the United States Court of Appeals for the Seventh Circuit via the Case Management, Electronic Case Filing (CM/ECF) system and e-mailed (unless other service means are indicated) on September 28, 2026, to all counsel of record.

__/s/ Griffin Klema________

Griffin C. Klema, Esq.
*Counsel for Appellant Sharif Jaber*
*Counsel for Cross-Appellee Nofal, LLC*

Dated: September 28, 2026